IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Topeka Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 13-40057-DDC |
| v. | ) | |
| | ) | |
| JONATHAN KEARN, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**GOVERNMENT RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION FOR A JUDGMENT OF ACQUITTAL**

The United States of America, by and through Barry R. Grissom, United States Attorney
for the District of Kansas, and Christine E. Kenney, Assistant United States Attorney for said
District, hereby submits this response in opposition to the Defendant's Motion for a Judgment of
Acquittal. (Doc. 99.) For the reasons set forth below, the Court should overrule and deny this
motion.

**I.      Background**

On April 16, 2013, an individual using the email address
"cheyenneandliberty@yahoo.com," sent a message to Detective Sergeant Stuart Butler, an
investigator with the Queensland, Australia Police Service. Det. Sgt. Butler was posing
undercover as an individual using the email address, "man69girl@gmail.com." The message
from "cheyenneandliberty@yahoo.com," contained a picture of a female minor, wearing pink
cowboy boots, sitting on a piece of playground equipment. The message read, "Dad of four,

1

found you in Imgsru.  Be fun to talk, swap, or whatnot.  :-) ~Jeff," and was signed, "ProudPapa,<3."  (Ex. 1.)  Det. Sgt. Butler testified that imgsrc.ru was a Russian website used by individuals who traded in sexually explicit images of children.  Det. Sgt. Butler explained that his goal was to identify any contact child molesters as quickly as possible.

On April 18, 2013, Det. Sgt. Butler responded to "cheyenneandliberty@yahoo.com," stating that he was from "Oztralia," and to send "some pics/vids dude & I'll return the favor." The content of the emails between "cheyenneandliberty@yahoo.com," and Det. Sgt. Butler, made clear that the two were discussing the sexual abuse of children.  (Ex. 1.)

Early morning on April 28, 2013, "cheyenneandliberty@yahoo.com," sent Det. Sgt. Butler three emails containing images of a minor female lying on a bed.  The first emailed image showed the child lying on a flowered bed sheet, wearing a dark pink dress and a diaper.  (Ex. 1-4.)  The image focused on the child's exposed thigh area.  Det. Sgt. Butler captured the EXIF data imbedded in the image, which showed that the image was taken with an Apple iPhone 4s about seven minutes prior to the email.

The second emailed image showed the same child wearing the diaper lying on the flowered bed sheet.  (Ex. 1-5.)  The image focused on the child's covered buttocks and vaginal area.  Det. Sgt. Butler captured the EXIF data, which showed that the image was taken with an Apple iPhone 4s about the same time as the image in Ex. 1-4, and again about seven minutes prior to the email.

The third emailed image was a close up of the same minor female, with an adult male's hand pushing aside the diaper to expose the child's genital area.  (Ex. 1-6.)  Det. Sgt. Butler

captured the EXIF data, which showed that the image was taken with an Apple iPhone 4s a few minutes after the image in Ex.1-4, and about six minutes prior to the email.

Later on April 28, 2013, "cheyenneandliberty@yahoo.com," sent Det. Sgt. Butler an email that contained an image of three minor females sitting on a deck. (Ex. 1-9.) The children were identified as the defendant's 10 year old twins, and youngest daughter age four. The youngest daughter was wearing the same pink boots as the child in the first image emailed to Det. Sgt. Butler. (Ex. 1.) The child was also wearing the same pink dress shown in Ex. 1-4. Det. Sgt. Butler captured the EXIF data, which showed that the image was taken with an Apple iPhone 4s. Comparing the Yahoo! records with that EXIF data, the image was taken about 25 minutes prior to the email. (Ex. 29.)

Finally, on April 28, 2013, "cheyenneandliberty@yahoo.com," sent Det. Sgt. Butler an email that contained an image of a minor female, inside a vehicle, bending over the back seat. (Ex. 1-10.) The child is wearing the same pink boots as shown in the images emailed in Ex. 1 and Ex. 1-4. Det. Sgt. Butler captured the EXIF data, which showed that the image was taken with an Apple iPhone 4s. Comparing the Yahoo! records in Ex. 29 with that EXIF data, the image was taken about 17 minutes prior to the email.

During the email exchanges with "cheyenneandliberty@yahoo.com," Det. Sgt. Butler also captured many of the IP addresses used to send the emails. In reviewing records from Yahoo! (Ex. 2), and AT&T (Ex. 4, Ex. 6), investigators found that many of the IP addresses were assigned by the service provider for the use of wireless devices, and therefore could not be tied to any one account or address. However, these records did show that the IP address used to send

Ex. 1-4, Ex. 1-5, Ex. 1-6, and 1-7 were assigned to the defendant at his home address at the time that the emails were sent.

On May 7, 2013, investigators executed a search warrant at the defendant's residence. Investigators seized an iPhone 4s from the defendant (Ex. 15), as well as several other electronic devices.  Investigators also seized bedding, a pink dress, and diapers that matched items in some of the images "cheyenneandliberty@yahoo.com," sent to Det. Sgt. Butler.  (Ex. 10, Ex. 11, Ex.12, Ex. 13.)

During the execution of the search warrant, investigators also seized the defendant's home security system.  (Ex. 17.)  Special Agent Cassidy Casner, Homeland Security Investigations, testified that she reviewed the security system, and compared the events shown on the system to the dates and times "cheyenneandliberty@yahoo.com," sent emails to Det. Sgt. Butler, and to the dates and times shown in images with EXIF data.

Agent Casner testified that on April 16, 2013, the security system captured the defendant on his phone, appearing to send a message at the same time as the first email was sent to Det. Sgt. Butler.  (Ex. 1, Ex. 18.)[1]  Agent Casner further testified that in the early morning hours of April 28, 2013, when Ex. 1-4, Ex. 1-5, and Ex. 1-6 were sent to Det. Sgt. Butler, the security system showed that the defendant was at home with his youngest daughter, and in possession of his phone.  (Ex. 19, page 1 – 3.)  During this time period, Det. Sgt. Butler received a total of eight emails from "cheyenneandliberty@yahoo.com."  (Ex. 1, "Wow… :) I haven't gotten that

---

[1]   Det. Sgt. Butler testified that the time in Queensland, Australia was 14 or 15 hours ahead of Topeka, Kansas, depending upon daylight savings time.  Agent Cassidy testified that the time on the security system recordings was an hour off due to daylight savings time.  So in this instance, the security system showed 18:56 (6:56 p.m.) instead of 17:56 (5:56 p.m.).

far yet ;) but I'm starting out . . . ; Ex. 1-4; Ex. 1-5, 1-6, 1-7; Ex. 1, "https://www.dropbox.com . . . ; Ex. 1, "It'd be cool to find someone like you to do a photo shoot of each of mine :); Ex. 1-8, family photo.)

The government admitted, with a stipulation from the defense, the examination conducted by Special Agent Brian Jones, who was with Homeland Security Investigations at the time of the examination.  (Ex. 26, Ex. 26-1.)  Agent Jones compared the image from Ex. 1-6 and positively identified the left index finger with the defendant's known exemplars.

Later on April 28, 2013, at 1:06 p.m., the security system captured the defendant leaving the residence with his youngest daughter, who was wearing the same pink dress seen in Ex. 1-9.  (Ex. 19, page 4.)  Agent Casner also testified that the youngest daughter was wearing the same pink boots and leggings also seen in Ex. 1-9.

Finally, on April 28, 2013, at 6:17 p.m., the security system captured the defendant, again holding his phone, leaving the residence with his youngest daughter, who was wearing the pink boots, no leggings, and a multi-colored jacket.  The two are seen returning to the residence at 6:54 p.m., and at 6:57 p.m., Det. Sgt. Butler received Ex. 1-10, the image of the minor female bent over the back seat of a vehicle wearing a multi-colored jacket, pink boots, and no leggings.

Special Agent Craig Beebe, Homeland Security Investigations, testified as an expert in the area of forensic electronic evidence examinations.  Agent Beebe conducted an examination on the defendant's iPhone 4s and the defendant's Acer computer (Ex. 14).  Agent Beebe also reviewed the Cellebrite extraction report of the defendant's iPhone 4s prepared by Detective Patrick Ladd, Topeka Police Department.  (Ex. 21.)

5

Agent Beebe testified that at the time it was seized, the defendant's iPhone was password protected.  During his examination, Agent Beebe found one of the images emailed to Det. Sgt. Butler on the defendant's iPhone, in a password protected application called "com.galazystudio.pictureprivacy."  (Ex. 23, page 3.)  Within this same password protected application, Agent Beebe found images of other minor females posed in lascivious displays of the genital area.  Some of the other images emailed to Det. Sgt. Butler were identified on the defendant's iPhone by the Cellebrite report.  (Ex. 21, pages 2, 4, 6, 8.)

Agent Beebe also testified that during his examination of the defendant's iPhone, he found evidence of the email address "cheyenneandliberty@yahoo.com."  (See also, Ex. 502.) Agent Beebe testified that he found evidence of "cheyenneandliberty@yahoo.com," during his examination of the defendant's computer as well.  Agent Beebe found the term "imgsrc" on the defendant's computer, and search terms he believed were significant to child pornography investigations.

**Defendant's case in chief**

The defendant took the stand and admitted that he took the images that were emailed to Det. Sgt. Butler in Ex. 1-4, Ex. 1-5, and Ex. 1-6.  The defendant explained that in April 2012, his youngest daughter reported to him that her mother's boyfriend had touched her inappropriately. The defendant testified that the allegation was not substantiated, so in July or August 2012, he took those images for future documentation.  The defendant also testified that he took the videos of his youngest daughter for the same reason.  (Ex. 25.)

The defendant testified that he had no knowledge of the email address, "cheyenneandliberty@yahoo.com."  The defendant said that he had terminated two employees

6

months prior to the emails to Det. Sgt. Butler.  The defendant testified that the employee he terminated three months prior to the emails had set up all his computers, phones, and security system.  The defendant testified that this former employee had all the passwords to his electronic devices as well as his wireless internet service.

The defendant testified that it was fairly routine for him to have his phone in his hand, as depicted in some of the security footage.  However, he did not know how the pictures in the "com.galaxystudio.picturesprivacy" application got on his phone.

The defendant presented the testimony of Andreaux Doty, an examiner with Private Digital Investigators.  Mr. Doty agreed with the conclusions from Agent Beebe's examination. Mr. Doty also agreed that an IP address assigned to the defendant's home internet service was used by "cheyenneandliberty@yahoo.com," to send some of the emails to Det. Sgt. Butler.  (Ex. 504, page 7.)  Mr. Doty agreed that the emails to Det. Sgt. Butler were sent using an iPhone device with Operating System 5.1.1.  (Ex. 504, page 4.)  According to the Cellebrite report, the defendant's iPhone also had Operating System 5.1.1.  (Ex. 21, page 1.)

In his report, Mr. Doty stated that he had no concerns about the data provided by law enforcement, but did have concerns with data that was not provided.  (Ex. 504, page 3.)  An example Mr. Doty used was the investigators' failure to seize the Netgear router.  However, Mr. Doty testified that he examined the router and found no relevant data.  Mr. Doty agreed with the testimony of Agent Beebe that the router would only have held about one day's worth of information.

**II.     Motion for Judgment of Acquittal pursuant to Rule 29**

The defendant claims in his motion that there was insufficient evidence to convict him of Count 1 because the image of his youngest daughter that was emailed to Det. Sgt. Butler does not meet the definition of sexually explicit conduct.  The defendant supports this claim by pointing to his testimony that the image was taken eight or nine months prior to the date it was emailed to Det. Sgt. Butler to document the child's vaginal area in the event that abuse happened again in the future.  Considering the evidence in the light most favorable to the prosecution, the image meets the definition of sexually explicit conduct.  Therefore, the Court should overrule and deny this motion.

**Standard of Review**

When deciding a motion for judgment of acquittal under Federal Rules of Criminal Procedure 29, the Court must "view the evidence in the light most favorable to the government and then determine whether there is sufficient evidence from which a jury might properly find the accused guilty beyond a reasonable doubt." *United States v. White,* 673 F.2d 299, 301 (10th Cir.1982).  The evidence is sufficient if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *United States v. Hollis*, 971 F.2d 1441, 1447 (10th Cir. 1992). "The Court does not weigh the evidence or consider the credibility of witnesses." *United States v. Parker*, 521 F.Supp.2d 1174, 1176 (D.Kan. 2007), *citing Burks v. United States,* 437 U.S. 1, 16, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

The jury may base its verdict on both direct and circumstantial evidence, together with all reasonable inferences that could be drawn therefrom, in the light most favorable to the

government.  *Id.*; *United States v. Hooks,* 780 F.2d 1526, 1531 (10th Cir. 1986).  "The test is the same, whether applied by the appellate court or by the trial court in ruling on a motion for judgment of acquittal."  *Id.* at FN 1.  "Acquittal is proper only if the evidence implicating defendant is nonexistent or is 'so meager that no reasonable jury could find guilt beyond a reasonable doubt.'"  *United States v. Parker*, 521 F. Supp. 2d 1174, 1176 (D. Kan. 2007), quoting, *White,* 673 F.2d at 301.  The Court should presume "the jury resolved evidentiary conflicts in favor of the prosecution, and defers to the jury's resolution."  *United States v. Roberts*, 185 F.3d 1125, 1140 (10th Cir. 1999), *cert. denied*, 120 S.Ct. 1960 (2000).

**Discussion**

To convict the defendant of the crime of Production of Child Pornography, a violation of 18 U.S.C. § 2251(b) as charged in Count 1, the government was required to prove beyond a reasonable doubt that:  1) the victim was under the age of eighteen years; 2) the defendant was a parent or person having custody or control of the victim; 3) the defendant knowingly permitted the victim to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct; and 4) the defendant knew or had reason to know that the visual depiction would be mailed or transported across state lines or in foreign commerce, or the visual depiction was actually mailed or transported across state lines or in foreign commerce.  Model Crim. Jury Instr. 9th Cir. 8.182 (2010).  "Sexually explicit conduct" is defined to include the "lascivious exhibition of the genitals or pubic area."  18 U.S.C. § 2256(2)(E).

In determining whether a visual depiction of a minor constitutes a "lascivious exhibition of the genitals or pubic area," the trier of fact should look to what are referred to as the "*Dost* factors."  These factors include the following non-exhaustive list:

1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;

2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

4) whether the child is fully or partially clothed, or nude;

5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;

6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986) aff'd sub nom. *United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987) and aff'd, 813 F.2d 1231 (9th Cir. 1987).

The *Dost* Court emphasized that a visual depiction need not involve all of the above factors, and the determination must be "based on the overall content of the visual depiction, taking into account the age of the minor." *Id.*

The images at issue in *Dost* all involved nude underage females, and the Court held all met the definition of sexually explicit conduct. *Id.* at 833. However, nudity is not required. *See*, *United States v. Knox*, 32 F.3d 733, 745 - 746 (3rd Cir. 1994) (finding that lascivious exhibition includes the fully covered genitals or pubic area of minor children, and the images at issue qualified where the video focused on close-up views of the genitals and pubic area); *United States v. Helton*, 302 Fed.Appx. 842 (10th Cir. 2008) (finding a video of a young girl getting off the toilet sexually explicit conduct where the girl's underpants and pubic area were the center of the focused area, and the defendant intended the videotape to elicit a sexual response in the viewer) *unpublished*; *United States v. Nichols*, 527 F. App'x 344, 347 (6th Cir.) *cert. denied*, 134

S. Ct. 359, 187 L. Ed. 2d 249 (2013) (finding that fully naked images of the victim while she appears to be asleep, which include close-up images of the victim's vagina and pubic area met definition of lascivious) citing, *United States v. Wolf*,  890 F.2d 241, 246 (10th Cir. 1989) (finding lasciviousness where the sleeping child was positioned such that her sleeping garment was pushed above the waist and the focal point of the photograph was the genital area).

The only element the defendant contests in his motion is whether the image meets the definition of sexually explicit conduct.  Applying the *Dost* factors to the evidence presented at trial, there was ample evidence on which the jury could find the image in fact contained a lascivious exhibition of the genital or pubic area.

**1.      The focal point of the image was on the child's genitalia or pubic area.**

The image contained in Ex. 1-6 clearly meets this factor.  The focal point of the image is on the child's genital or pubic area, and the focus is highlighted by the defendant's hand holding back the child's diaper to expose her genital area.

**2.      The setting of the image is sexually suggestive.**

Although the setting of the image contained in Ex. 1-6, standing alone, is unclear, the series of emails and images show the viewer that the child is lying on bedding, sending the message that the child is in a bedroom, a place generally associated with sexual activity.

**4.      The child is partially clothed, or nude**.

The child in the image contained in Ex. 1-6 could be described as partially nude, but this only adds to the focus of the image on the child's bare genitalia or pubic area.

**6.      The image was intended to elicit a sexual response in the viewer.**

In applying the sixth Dost factor, courts have considered "contextual" evidence from outside the "four corners" of the visual depiction at issue, particularly in cases where the defendant participated in the visual depiction's production.  *See, e.g., United States v. Larkin*, 629 F.3d 177, 184 (3d Cir. 2010) (consideration of the fact that the defendant trafficked photograph over the internet to an interested pedophile); *United States v. Brown*, 579 F.3d 672, 682-83 (6th Cir. 2009) (consideration of the circumstances of production of the images and other contemporaneous images of same victim); *United States v. Overton*, 573 F.3d 679, 689 (9th Cir. 2009) (consideration of the circumstances of production of the images); *United States v. Wallenfang*, 568 F.3d 649, 659 (8th Cir. 2009) (consideration of recipients of produced images).

In *Overton*, the defendant producer argued that the evidence was insufficient to prove that the charged images depicted the lascivious exhibition of the victim's genitals or pubic area. 573 F.3d at 687.  The Ninth Circuit affirmed, noting that the sixth *Dost* factor is "of particular utility" where the "criminal conduct at issue relates to a defendant's role in the production of the exploitative images under review" because courts must consider the "intended effect" of the images on the viewer.  *Id*. at 688, *citing United States v. Villard*, 885 F.2d 117, 125 (3d Cir. 1989).  In Overton, as in the instant case, the circumstances underlying the images' production provided "profound insight into the exhibition seen within the four corners of the photographs" and made clear that the images were designed to elicit a sexual response in their viewer. *Overton*, 573 F.3d at 689.  Thus, the identities of the intended audience or recipients of the visual depictions produced by the defendant are significant to determining whether the depiction

was "intended or designed to elicit a sexual response in the viewer." *Larkin*, 629 F.3d at 183-84; *Wallenfang*, 568 F.3d at 659 (citing defendant producer's posting of the pictures in a newsgroup "known to be used by people interested in viewing and trading child pornography" as evidence that "he wanted to create a sexual response in the newsgroup's viewers").

In the instant case, the Court should consider all of the evidence that pertains to the emails and other images.  First, the content of the email messages left no question that the conversation participants were discussing the trading of images, the taking of images, and the sexual abuse of children.  In the initial communication sent on April 16, 2013, the defendant attaches a picture of his youngest daughter and states, "[b]e fun to talk, swap, or whatnot," and Det. Sgt. Butler's, first response was, "[s]end me some pics/vids dude & I'll return the favor." (Ex. 1.)  Later, in the conversation, Det. Sgt. Butler makes a very blatant statement about sexually abusing his girlfriend's daughters.  On April 28, 2013, about five minutes after sending Ex. 1-6, the defendant sent Det. Sgt. Butler an email that contained a link to a "dropbox.com" photo album.  According to Agent Casner, the videos in this photo album were of minor females, engaged in sexually explicit conduct.   Subsequent to the dropbox.com email, Det. Sgt. Butler sends another blatant statement about his sexual interest in children.

Second, the Court should consider the other images taken by, and possessed by the defendant in deciding whether the image was designed to elicit a sexual response.  For example, the image contained in Ex. 1-10 is sexually suggestive, showing the defendant's youngest daughter bending over the backseat of a vehicle.  The child is wearing what appears to be one of the diapers, but the article just barely covers the genitalia.  The Court should also consider the videos of the defendant's youngest daughter found on his iPhone 4s.  (Ex. 25.)  These videos

13

depict the child jumping on the bed, partially nude and wearing only a t-shirt with her genital or pubic area exposed.  During the video, the defendant focuses in on the child's nude buttocks and pubic area.

The defendant's justification for taking the images of his daughter is insufficient to overcome the otherwise overwhelming evidence against him.  The defendant testified that he took the images in Ex. 1-4, Ex. 1-5, Ex. 1-6, and the videos in Ex. 25, in response to a sexual abuse allegation he reported in April 2012.  However, the EXIF data on the images and videos support that they were taken contemporaneous to — or the case of the videos, the day after — the emails sent to Det. Sgt. Butler.

Taking all the evidence, and viewing it in the light most favorable to the prosecution, the Court should find sufficient evidence to support the jury's verdict.

## Conclusion

For the reasons outlined above, the government requests that the Court overrule and deny Defendant's Motion for a Judgment of Acquittal.

Respectfully submitted,

BARRY R. GRISSOM
United States Attorney

/s/ Christine E. Kenney
Christine E. Kenney, #13542
Assistant U.S. Attorney
444 SE Quincy, Room 290
Topeka, KS   66683
(785) 295-2850
christine.kenney@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of May, 2015, I electronically filed the foregoing response with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

s/ Christine E. Kenney
Christine E. Kenney, #13542
Assistant United States Attorney
444 S.E. Quincy, Suite 290
Topeka, KS 66683
(785) 295-2850
christine.kenney@usdoj.gov

15