1

```
                IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF KANSAS
                           TOPEKA, KANSAS


      UNITED STATES OF AMERICA,     ) ORIGINAL
      ------------------ Plaintiff,)
                                    ) Case No.
           vs.                      ) 13-40057-DDC
                                    )
      JONATHAN KEARN,               ) App. No.
      ------------------ Defendant.) 15-3121


                    TRANSCRIPT OF MOTIONS HEARING

              PROCEEDINGS had before the Honorable

      Daniel D. Crabtree, United States District

      Court Judge, for the District of Kansas,

      Topeka, Kansas, on the 20th day of October,

      2014.


      APPEARANCES:

      For the Plaintiff:   Christine E. Kenney
                           Asst. U.S. Attorney
                           290 U.S. Courthouse
                           444 S.E. Quincy Street
                           Topeka, KS  66683

      For the Defendant:   Michael E. Francis
                           Attorney at Law
                           434 S.W. Topeka Boulevard
                           Topeka, KS  66603

                           Jonathan Kearn
                           Defendant

      Court Reporter:      Sherry A. Harris, C.S.R.
```

|    |                                                          |
|----|----------------------------------------------------------|
| 1  | PROCEEDINGS                                              |
| 2  | THE COURT:  All right.  This is                          |
| 3  | United States against Jonathan Kearn.  It's              |
| 4  | case number 13-40057.  Counsel, would you                |
| 5  | make your appearances, please?                           |
| 6  | MS. KENNEY:  May it please the                           |
| 7  | Court, the United States appears by Christine            |
| 8  | Kenney of the United States Attorney's                   |
| 9  | Office.                                                  |
| 10 | THE COURT:  Good afternoon.                              |
| 11 | MR. FRANCIS:  May it please the                          |
| 12 | Court, the defendant appears in person                   |
| 13 | through counsel, Mike Francis.                           |
| 14 | THE COURT:  Good afternoon to both                       |
| 15 | of you, gentlemen.                                       |
| 16 | MR. FRANCIS:  Good afternoon, Your                       |
| 17 | Honor.                                                   |
| 18 | THE COURT:  This is noticed as a                         |
| 19 | motion hearing on the defendant's motion for             |
| 20 | access to certain seized computers and other             |
| 21 | property seized.  I have read the parties'               |
| 22 | papers on this, and in truth I'm not quite               |
| 23 | sure where things stand.  So instead of me               |
| 24 | stumbling around in the dark for a minute,               |
| 25 | maybe it makes sense for me to be quiet and              |

1     hear from the movant and then from the
2     government, and we can talk about where to go
3     from there.
4               MR. FRANCIS:  Judge, after I filed
5     this motion, I had a conversation with
6     Ms. Kenney, and her response seems to bear
7     out what our conversation was.  She doesn't
8     have objection to permitting Mr. Doty access
9     to the equipment that we seek to have access
10    to.  She doesn't want this to extend any
11    trial time, neither does my client, neither
12    do I.  And I don't anticipate that it would.
13              I understand that the person who
14    would be present while my expert is looking
15    over the equipment is indisposed for a while,
16    but it's not like we're reinventing the wheel
17    from the start.  We already got information
18    from them and I believe he knows where to go,
19    what machines to look at, and I think he
20    knows what information he's looking for;
21    particularly and perhaps what information he
22    cannot find after looking at that.
23              THE COURT:  Okay.  Well, given that
24    history of the cooperative way the government
25    has given access to the defendant of the kind

1        the motion sought, is there any need for me
2        to do anything at this point?
3                MR. FRANCIS:  I don't believe there
4        is.  We're of the mind that we don't want to
5        continue the trial date if we can avoid it.
6        I know Ms. Kenney is going to work hard to
7        see that we'll have sufficient time to take a
8        look at the equipment -- and I've never
9        questioned that -- so I don't know there's
10       anything the Court can really do.
11               THE COURT:  All right.  Ms. Kenney,
12       do you think I need to do anything?
13               MS. KENNEY:  I don't, Your Honor.
14       And the lengthy procedural background I
15       provided in my response was mostly for Your
16       Honor's information since this case has been
17       going on for a while, and trying to be
18       mindful of any potential Toombs concerns.
19               I have-- I am exploring whether or
20       not the one piece of equipment, the modem,
21       was seized.  It's my understanding, based on
22       talking to the agents, we do not have that
23       piece of equipment.  But the agent who was
24       out of town last week, when she returns, will
25       check the boxes to physically confirm that we

|    |                                                                 |
|----|-----------------------------------------------------------------|
| 1  | do not have that particular piece of                           |
| 2  | equipment.                                                      |
| 3  | And then the other agent, who would                            |
| 4  | be the forensic expert who needs to set up                     |
| 5  | the mirror image for the defense to review,                    |
| 6  | is out-of-pocket until the end of the month.                   |
| 7  | So we won't really be able to get that set up                  |
| 8  | until the beginning of November.  From that                    |
| 9  | point on, it will be a determination of how                    |
| 10 | long it would take him to do his review.                       |
| 11 | The only other thing I would point                             |
| 12 | out for the parties and for the Court is I                     |
| 13 | believe we had arranged to have a hearing                      |
| 14 | November 17th, which I believe we scheduled                    |
| 15 | for-- as a Daubert hearing for the                             |
| 16 | determination of experts.  I'm going to guess                  |
| 17 | at this point it will be difficult to get the                  |
| 18 | defense-- if they're going to call an expert,                  |
| 19 | to get their Rule 15 disclosure on file in                     |
| 20 | time for that.  But that's still a few weeks                   |
| 21 | before the jury trial was scheduled.                           |
| 22 | And typically-- well, I shouldn't                              |
| 23 | say typically because in the few cases where                   |
| 24 | I have had an expert and there may or may not                  |
| 25 | have been a challenge to the expert's                          |

1   methodology or credibility as an expert--
2   excuse me, credentials as an expert, we've
3   been able to really take that up during the
4   course of the trial prior to the expert's
5   actually testifying to the jury.  I'm just
6   providing that to you as background for all
7   of this.
8              THE COURT:  I guess a couple of
9   things.  I hear and understand from both
10  parties that they want to keep the December--
11  what is it, December 17th, is that the trial
12  date?
13             MS. KENNEY:  I think it's the 9th.
14             THE COURT:  The 9th, okay.  Want to
15  keep that trial date.  Ms. Kenney, let me
16  just push around on this notion.  I don't
17  know what the circumstances are that you have
18  to have this other individual who's
19  out-of-pocket until the end of the month, but
20  does that postponement create a risk that
21  neither party wants, and that is the trial
22  date becomes unworkable?
23             MS. KENNEY:  Your Honor, I don't
24  think so.  And I will say that the-- this is
25  the same individual who set up all of the

1         mirror images of the electronics for the
2         previous expert's review.  So this is the
3         same person who's already done it once.  I
4         don't think once he's available it will take
5         very long to get it set up.  Obviously,
6         depending on Mr. Doty's schedule.
7                   I guess I can't actually answer the
8         Court's question on whether or not that's
9         going to cause a delay because I have no idea
10        what Mr. Doty is looking at, I have no idea
11        how long it will take him to write his
12        reports or whatever it is he's going to do
13        once he's had a chance to review it.
14                  THE COURT:  Mr. Francis, are you
15        concerned about that timeline?
16                  MR. FRANCIS:  Well, it does give me
17        a little concern, but I've been informed by
18        Mr. Doty that he thinks he knows where he's
19        looking and what he's looking for.  The one
20        thing that I'm not quite sure about is the
21        mirror image thing.  I think that Mr. Doty
22        would prefer to look at this-- the real McCoy
23        and not something that's been reproduced.  I
24        understand a reproduction is supposed to be a
25        mirror image of exactly what's on there, but

1   I think he would want to see the real McCoy.
2           THE COURT:  So we've talked long
3   enough and now we do have a dispute?
4           MS. KENNEY:  Well, and I will
5   represent to everyone that what our
6   agency-- agents and the designated expert
7   looked at is the mirror image.  That
8   typically these examinations are not done on
9   the actual equipment for the purposes of
10  preserving it.  Now, that doesn't mean that
11  he can't look at the equipment.  But--
12          THE COURT:  I mean, but just looking
13  at it with eyeballs is unlikely to tell him
14  very much.
15          MS. KENNEY:  Exactly.  Exactly.
16          MR. FRANCIS:  If he's present while
17  they're doing the running of the mirror image
18  to satisfy himself that it is in fact an
19  exact duplicate of what's on the machine, I
20  don't think that would pose a problem.
21          THE COURT:  Is that what you
22  contemplated, Ms. Kenney?
23          MS. KENNEY:  That is what I
24  contemplated.
25          THE COURT:  Okay.

1           MS. KENNEY:  And I don't-- Your
2     Honor, we're not in-- we want to be as open
3     as possible with this.
4           THE COURT:  I would expect you
5     would.
6           MS. KENNEY:  But I will point out
7     that this is the first that we've heard of a
8     second expert.  So, you know, this case has
9     been going on for a long time and this is the
10    first time we were told that they want to
11    have a second person look at the evidence.
12          THE COURT:  Well, let me not borrow
13    trouble where there may not be any, but I
14    guess I would meddle only in this sense,
15    Ms. Kenney, and that is I think I would make
16    it a priority to get that material available
17    to Mr. Doty so that you don't have a-- we
18    don't face an argument later on that, well, I
19    didn't get it until actually November 10th
20    and then it was too late to do all I needed
21    to do because I didn't know X, Y and Z.  And
22    I guess what I want to ask you to consider is
23    whether that continuity of having the same
24    person set it up is really worth the 10 days
25    of delay.

1                MS. KENNEY:  It's really not a
2     question, Your Honor.  He's the only person.
3     It's not like there's a lot of forensic
4     examiners that can set this up.  He's the
5     only person with Immigration and Customs
6     Enforcement who does this in the Kansas City
7     office right now.  The person-- the other
8     person is in Chicago.  So we have one person
9     who can set this up for this agency.
10               THE COURT:  Yeah.  And the only
11    thing I'd say, kind of arguing the other side
12    of this, is you've got somebody scheduled to
13    fly in, as I recall it, from Australia for
14    this trial, isn't it?  Is that this case?
15               MS. KENNEY:  It is.  But that's not
16    the person who did the forensics.
17               THE COURT:  No, I get that.  But if
18    you've got a person coming in-- it's
19    obviously a significant matter to the
20    government.
21               MS. KENNEY:  Your Honor, we have
22    every intention of making this available as
23    soon as possible.  Absolutely.
24               THE COURT:  All right.  Well, I'll
25    stop meddling then.

```
1              Let me just ask, while we're here on
2     the subject of the Daubert hearing that is
3     scheduled, is there enough terrain behind you
4     to know what that Daubert hearing would look
5     like?  In other words, do you anticipate it
6     being an evidentiary hearing?
7              MS. KENNEY:  Well--
8              THE COURT:  I don't even know who
9     asked for the hearing.
10             MS. KENNEY:  I did.
11             THE COURT:  Is it on-- you did?  All
12    right.
13             MS. KENNEY:  Based on my
14    understanding of the previous expert who was
15    hired by the defense, I would still have the
16    same concerns about this individual that's
17    now been identified.  What I would need,
18    obviously, is that individual is going to
19    have to do his review.
20             THE COURT:  When will his disclosure
21    be due?
22             MR. FRANCIS:  Judge, I can get her
23    the information regarding his background and
24    those kinds of things by Wednesday at the
25    very latest.
```

12

1        MS. KENNEY:  Right.
2        MR. FRANCIS:  So they can have an
3    idea of what we're working with here as far
4    as he's concerned, his qualifications.  I can
5    give her a general idea of what we're looking
6    for, but I cannot give the specifics.
7        THE COURT:  And the current schedule
8    date is November 16th?
9        MR. FRANCIS:  17th is the date.
10       MS. KENNEY:  This hearing is
11   November 17th at 9 clock.
12       THE COURT:  Well, do what you can to
13   make it stick.  I mean, I appreciate what
14   you've done in the past.  And if it's a
15   confined Daubert dispute, it's the kind of
16   thing that you can take up 30 minutes before
17   the jury's here, that's fine.  I really would
18   not prefer to keep them waiting while we're
19   in here having a, you know, 45-minute or hour
20   and a half Daubert hearing.
21       So I think we ought to do the very
22   best we can to have that hearing in advance
23   of the trial.  If you tell me this hearing
24   won't make any sense until it's dropped into
25   the context of the evidence, then I'll trust

SHERRY A. HARRIS
Official Court Reporter

1        your judgment on it; but I will be trying to
2        move this along so we don't have jurors
3        idling down the hall.
4                MS. KENNEY:  Well, Your Honor,
5        understanding that today is the 20th, if for
6        whatever reason I cannot get the forensic
7        examiner available to set this up before the
8        end of the month as I represented, I'll let
9        Mr. Francis know.  And if that jeopardizes
10       the current trial date, then so be it.  But I
11       have no incentive to delay this.
12               THE COURT:  And I didn't attribute
13       that to either one of you.
14               Anything else we ought to talk about
15       today?
16               MR. FRANCIS:  None known by the
17       defense at this time, Your Honor.
18               THE COURT:  All right.  Very well.
19       I won't-- we'll terminate the motion since it
20       seems to have resolved itself as moot and
21       we'll wait to hear from you on that scheduled
22       Daubert hearing if it needs to move.  And you
23       might just keep Ms. Garrett informed about
24       how long you think it will take in the day so
25       we can schedule appropriately.

1       MS. KENNEY:  Regardless, I can't
2  imagine it's going to take more than an hour.
3  But that's just an estimate.
4       THE COURT:  Well, that would be a
5  happy surprise.  Nothing in my life seems to
6  come in an hour increment anymore.  So thank
7  you all very much.
8       MR. FRANCIS:  Thank you, Your Honor.
9  Are we excused?
10      THE COURT:  Please.
11      MR. FRANCIS:  Thank you, Your Honor.
12           (THEREUPON, the hearing
13  concluded).

15

1     UNITED STATES OF AMERICA  )
                                      )     ss:
2     DISTRICT OF KANSAS        )

3

4                C E R T I F I C A T E

5

6       I, Sherry A. Harris, Certified Shorthand

7     Reporter in and for the State of Kansas, do

8     hereby certify that I was present at and

9     reported in machine shorthand the proceedings

10    had the 20th day of October, 2014, in the

11    above-mentioned court; that the foregoing

12    transcript is a true, correct, and complete

13    transcript of the requested proceedings.

14       I further certify that I am not attorney

15    for, nor employed by, nor related to any of

16    the parties or attorneys in this action, nor

17    financially interested in the action.

18       IN WITNESS WHEREOF, I have hereunto set

19    my hand and official seal at Topeka, Kansas,

20    this 11th day of May, 2016.

21

22                       /s/ Sherry A. Harris
                            Certified Shorthand Reporter
23

24

25