```
 1            IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF KANSAS
 2                      TOPEKA, KANSAS

 3
        UNITED STATES OF AMERICA,    ) ORIGINAL
 4      ------------------ Plaintiff,)
                                     ) Case No.
 5          vs.                      ) 13-40057-DDC
                                     )
 6      JONATHAN KEARN,              ) App. No.
        ------------------ Defendant.) 15-3121
 7

 8                 TRANSCRIPT OF MOTIONS HEARING

 9            PROCEEDINGS had before the Honorable

10      Daniel D. Crabtree, United States District

11      Court Judge, for the District of Kansas,

12      Topeka, Kansas, on the 17th day of November,

13      2014.

14
        APPEARANCES:
15
        For the Plaintiff:   Christine E. Kenney
16                           Asst. U.S. Attorney
                             290 U.S. Courthouse
17                           444 S.E. Quincy Street
                             Topeka, KS  66683
18
        For the Defendant:   Michael E. Francis
19                           Attorney at Law
                             434 S.W. Topeka Boulevard
20                           Topeka, KS  66603

21                           Jonathan Kearn
                             Defendant
22
        Court Reporter:      Sherry A. Harris, C.S.R.
23

24

25
```

```
 1                    PROCEEDINGS
 2           THE COURT:  The next case is
 3   Jonathan Kearn.
 4           MR. FRANCIS:  Good afternoon.
 5           THE COURT:  Good afternoon.  I'm
 6   sorry, I still was processing that case.  I
 7   apologize to you all.
 8           All right.  This is the United
 9   States against Jonathan Kearn.  It is case
10   number 13-40057.  Counsel, may I have your
11   appearances, please?
12           MS. KENNEY:  May it please the
13   Court, the United States appears by Christine
14   Kenney of the United States Attorney's
15   Office.
16           MR. FRANCIS:  Defendant appears in
17   person through counsel, Mike Francis.
18           THE COURT:  Good afternoon to all of
19   you.
20           MR. FRANCIS:  Good afternoon.
21           THE COURT:  This was set today as a
22   motion hearing, but our review of the docket
23   shows there aren't any motions to hear.  Am I
24   reading the docket correctly?
25           MS. KENNEY:  You are, Your Honor.
```

1    And if the Court would like a little update
2    of--
3              THE COURT:  That would be great.
4              MS. KENNEY:  --what happened.  And I
5    suggested that we keep this on the schedule
6    once we realized that the motion-- wasn't
7    going to be practical for any motions to be
8    filed in time for this hearing.  The last
9    time we were together it was on a motion that
10   the defense had filed for an examiner to
11   review--
12             THE COURT:  I remember now.
13             MS. KENNEY:  --the electronics.  And
14   I had indicated -- I think that was October
15   20th -- and I had indicated that the person
16   that I thought would be responsible for that
17   was going to be tied up till the end of the
18   month.  I hadn't-- I didn't understand all
19   the moving parts involved.  And in fact, it
20   required not just the person in Kansas City,
21   but the person in Chicago to get the devices
22   to the Kansas City office and then to the
23   RCFL.
24             That has all occurred, but I just
25   learned-- I found out the middle of last week

1    that Mr. Francis' examiner has not yet been
2    contacted by the RCFL.  So he has not even
3    had his person look at the stuff yet.  And
4    until that happens, I would imagine that
5    there won't be any reports-- or he's not in a
6    position where he could do his expert witness
7    notice.  So that's the background on the
8    defense examination.
9              I was talking with our witnesses and
10   learned that my goal of maintaining this
11   trial deadline was probably misguided and
12   that in fact several of my witnesses have
13   conflicts.  Not that we wouldn't make it
14   work, Your Honor, but my zeal for maintaining
15   that date because of witness scheduling has
16   disappeared.  So that's sort of where we are
17   now.  I mean, the bottom line is when I get
18   out of court today I'm going to call the RCFL
19   and find out the status of getting this
20   information set up for the examiner to
21   review.  And I defer to Mr. Francis whether
22   or not he knows how long it will be from that
23   point.
24             THE COURT:  Mr. Francis, maybe I
25   could hear from you and you can continue my

1   education.  Because I do remember the
2   inspection that you requested, but I don't
3   remember it with the clarity that you two do
4   and will.
5              MR. FRANCIS:  Judge, I called our
6   examiner today to-- the way we had this set
7   up was that when they had completed making a
8   transfer of the information to an external
9   hard drive we provided the U.S. Attorney's
10  Office with, the agents would contact my
11  examiner.  I contacted him at about 12:30
12  this afternoon to see if he had heard
13  anything from them, and he's not heard
14  anything from them as of that time.
15             The $64,000 question, at least in my
16  mind, was so let's say you get it here
17  tomorrow; how long does it take to go through
18  it?  And his answer was, "Quite frankly, I
19  don't know because I don't know what they
20  have."
21             THE COURT:  He won't know until-- or
22  she won't know until they see it?
23             MR. FRANCIS:  That's correct.  So my
24  client very much would like to hold fast to
25  the trial date we have; but by the same

1   token, we want to make sure all the bases are
2   covered before we go into the courtroom.  I'm
3   not optimistic that we're going to be in that
4   position to where I'll get a report back off
5   to Ms. Kenney and be ready to go by the 9th
6   as we initially anticipated, particularly in
7   light of the fact that we do have generally
8   like a two-day holiday coming up here.
9            THE COURT:  Okay.  And this is about
10  a week to try?  Five days maybe?
11           MR. FRANCIS:  Four days to five days
12  I think is what we discussed.
13           THE COURT:  Well, I guess just
14  trying to figure out where to go from here, I
15  hate to set another table without knowing--
16  without you all knowing more than you do.  So
17  is the better play at this point to continue
18  the trial but to come back-- be back here say
19  in mid-December to talk about when it is
20  realistic to set it?
21           MS. KENNEY:  Your Honor, I think
22  that's actually a good plan, to have a status
23  conference.  Regardless of whether the Court
24  goes ahead and sets this for a trial date, I
25  happen to know that after the first of the

1      year I should not have any more witness
2      conflicts.  And again, the witnesses will be
3      here so that's not the big concern.
4               THE COURT:  I mean, we-- I'm sorry,
5      Mr. Francis.  You get the chance to talk.
6      I'm not going to--
7               MR. FRANCIS:  Judge, I advised my
8      client he has a right, of course, to a speedy
9      trial.
10              THE COURT:  That's where I was
11     headed next.
12              MR. FRANCIS:  He's of the same mind.
13     He sure doesn't want to enter the courtroom
14     somewhat tied because we don't have what we
15     had asked to see.  So I think he's willing to
16     go ahead and waive that right to whatever
17     extent is necessary under these peculiar
18     circumstances, and I think it would be wise.
19     I certainly can't stand here and tell you
20     when-- like it's going to take five days or a
21     month to even look at this.
22              THE COURT:  But you do think your
23     expert, once he or she gets hands on the
24     materials that the government's going to
25     provide, can give you a height and weight

1     sort of estimate of what they need?
2              MR. FRANCIS:  I'm convinced he could
3     probably do that.
4              THE COURT:  Well, I'm hard-pressed
5     to-- I'm kind of holding fire on a four-week
6     trial in February, which would be an obvious
7     place for you all to land moving from
8     December, but I can't give you that-- I can't
9     give you that spot right now because it's
10    still occupied.  If-- let's say that you--
11    well, let me do this instead of continuing to
12    stammer around looking for a place to finish
13    this.
14             Let's-- I'm going to continue the
15    trial date, at the joint request of the
16    parties, and I'm going to ask you to come
17    back on the 15th of December.  Mr. Francis
18    and Ms. Kenney, if I see you all again on--
19    if your schedules work on the 15th, if I see
20    you again is that going to be soon enough to
21    try to get this case on your calendar to try
22    in February if that date becomes available?
23             MR. FRANCIS:  I would certainly-- I
24    would think so.
25             THE COURT: Yeah, okay.  I didn't

1       want to go out too far and then put you in a
2       position-- let me just ask, Ms. Garrett, when
3       is our hearing in our February trial?
4              (Conference off the record).
5              THE COURT:  Well, what I'm-- let's
6       do this.  Let's set it for-- do we have a
7       docket on Monday, the 15th?  Let's set it for
8       the afternoon of the 15th.  Is that the
9       better spot for you all?
10             MR. FRANCIS:  Judge, I have a
11      hearing that's scheduled on a case in a
12      Shawnee County District Court on a waiver on
13      a homicide case from juvenile to adult status
14      that starts in the afternoon.  Would it be
15      possible-- do you have a morning docket that
16      day?
17             THE COURT:  Aren't we having a
18      morning docket then?  Yeah, let's-- we'll put
19      it on the morning docket on the 15th.
20             MR. FRANCIS:  That would be fine,
21      Judge.
22             THE COURT:  So we'll show that the
23      trial date of December 9 is continued and
24      then to be reset on the 15th, the morning of
25      the 15th.

1               And, Ms. Kenney, I would encourage
2     you to encourage the people who control the
3     flow of things and information for
4     Mr. Francis' expert to make that happen.
5     Because we really do need to get the case
6     set.  And so that's what we'll do for now,
7     and then I'll look forward to seeing you on
8     the morning of the 15th.
9               Is there something else we ought to
10    do today?
11              MS. KENNEY:  No, Your Honor.  And I
12    didn't really want to pry, but do you have a
13    potential date in February that I could just
14    give a heads-up?  If not, that's fine.  I
15    certainly understand.
16              THE COURT:  Well, I can tell you
17    when it won't be.  It won't be the week of
18    the 23rd.
19              MS. KENNEY:  Okay.
20              THE COURT:  The other two-- let's
21    see, the 3rd and the-- whatever those weeks
22    are, the 3rd and the 10th-- well, I guess
23    there's three weeks before the 23rd.  I don't
24    know that they're going to be available and I
25    won't know until December 3rd and may not

1       know then.  But if you all have a particular
2       date you want to lay a stake down on, I'll do
3       our best to honor it.
4                  MS. KENNEY:  Your Honor, that-- that
5       is helpful to me.  I have two cases set--
6                  THE COURT:  You're more easily
7       pleased than many.  Thank you.
8                  MS. KENNEY:  Well, I happen to have
9       two cases set before you in February.  I
10      don't believe-- I mean, I can't tell you
11      right now they're not going to be trials, but
12      they're not ones that I know are going to be
13      trials.  So--
14                 THE COURT:  Which two are they?
15                 MS. KENNEY:  I have LaFlora set on
16      February 10th and McDonald set on February--
17      actually, I don't think McDonald is you.
18                 THE COURT:  I don't recognize it.
19                 MS. KENNEY:  I think that's Judge
20      Melgren.  So I just have the one.  But that's
21      fine.  That's-- that's helpful.
22                 THE COURT:  And, Mr. Francis, I
23      mean, I-- kind of where I am in this is I
24      know I'm out-of-pocket the week of February
25      23rd.  I think I'll know by early December

1    whether those first three weeks in February
2    are going to be available or not, and that's
3    why I think we can have a more mean-- if
4    there's-- you know, and I'll be as flexible
5    with you all during that February time frame
6    as I can possibly be.
7                MR. FRANCIS:  Appreciate it, Judge.
8                THE COURT:  All right.  Thank you
9    very much for reporting back, and I'll see
10   you mid-December.  Thank you so much.
11                   (THEREUPON, the hearing
12   concluded).

```
1      UNITED STATES OF AMERICA  )
                                 )    ss:
2      DISTRICT OF KANSAS        )

3

4                      C E R T I F I C A T E

5

6           I, Sherry A. Harris, Certified Shorthand

7      Reporter in and for the State of Kansas, do

8      hereby certify that I was present at and

9      reported in machine shorthand the proceedings

10     had the 17th day of November, 2014, in the

11     above-mentioned court; that the foregoing

12     transcript is a true, correct, and complete

13     transcript of the requested proceedings.

14          I further certify that I am not attorney

15     for, nor employed by, nor related to any of

16     the parties or attorneys in this action, nor

17     financially interested in the action.

18          IN WITNESS WHEREOF, I have hereunto set

19     my hand and official seal at Topeka, Kansas,

20     this 11th day of May, 2016.

21

22                         /s/ Sherry A. Harris
                           Certified Shorthand Reporter
23

24

25
```