```
 1              IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF KANSAS
 2                        TOPEKA, KANSAS


 3

        UNITED STATES OF AMERICA,     )  ORIGINAL
 4      ------------------ Plaintiff,)
                                      )  Case No.
 5           vs.                      )  13-40057-DDC
                                      )
 6      JONATHAN KEARN,               )  App. No.
        ------------------ Defendant.)  15-3121
 7


 8                 TRANSCRIPT OF MOTIONS HEARING
                    (MOTION TO CONTINUE TRIAL)
 9


10          PROCEEDINGS had before the Honorable

11      Daniel D. Crabtree, United States District

12      Court Judge, for the District of Kansas,

13      Topeka, Kansas, on the 21st day of January,

14      2015.


15

        APPEARANCES:
16

        For the Plaintiff:  Christine E. Kenney
17                          Asst. U.S. Attorney
                            290 U.S. Courthouse
18                          444 S.E. Quincy Street
                            Topeka, KS  66683
19
        For the Defendant:  Michael E. Francis
20                          Attorney at Law
                            434 S.W. Topeka Boulevard
21                          Topeka, KS  66603

22                          Jonathan Kearn
                            Defendant
23
        Court Reporter:     Sherry A. Harris, C.S.R.
24

25
```

```
 1                    PROCEEDINGS

 2           THE COURT:  Good morning everyone.

 3    Please be seated.  All right.  We're here on

 4    the United States against Jonathan Kearn.  It

 5    is case number 13-40057.  Counsel, your

 6    appearances, please.

 7              MS. KENNEY:  May it please the

 8    Court, the United States appears by Christine

 9    Kenney of the United States Attorney's

10    Office.

11              THE COURT:  Good morning,

12    Ms. Kenney.

13              MS. KENNEY:  Good morning, Your

14    Honor.

15              MR. FRANCIS:  Jonathan Kearn appears

16    personally and through counsel, Mike Francis.

17              THE COURT:  Good morning to both of

18    you.

19              MR. FRANCIS:  Good morning.

20              THE COURT:  You can be seated.  We

21    are here on document 77, which is defendant's

22    third motion which is identified in the

23    filing as Defendant's Third Motion to

24    Continue Trial.  I have read it and I have

25    also read document 79, the government's
```

1      response, and I have spent, to be honest with

2      you, a fair amount of time, more than I would

3      normally spend on a continuance motion,

4      trying to understand the electronic backdrop

5      that sort of the facts of the motion reside

6      within.

7              I think I'm a little farther along

8      in understanding that backdrop, but I by no

9      means feel like I do understand.  So I would

10     like to hear from you in the hopes that that

11     will enhance my understanding, particularly,

12     Mr. Francis, from Mr. Kearn's standpoint,

13     trying to understand two questions that I

14     think are important to this motion.  And that

15     is:  Why does this new IPN address matter so

16     much to the defense's presentation?  And

17     secondly, what is the-- what is the basis for

18     the belief that the additional, I'll call it

19     discovery, to borrow a civil term, the

20     additional work that Mr. Doty outlines, what

21     reason is there to believe that that will

22     generate information that is meaningful to

23     the determination of Mr. Kearn's guilt or

24     not?

25              So if I could hear from you, I would

1          be grateful in the hopes that I'll be smarter

2          when you finish.

3                    MR. FRANCIS:  Insofar as the new

4          addresses are concerned, as I understand,

5          Ms. Kenney got I call it a report but we're

6          thinking maybe these are notes that

7          Mr. Butler sent over.  And she got those just

8          recently, I believe it was last Thursday, and

9          forwarded those to me.

10                    What concerned me immediately was

11         that he identifies in that report an IP

12         address that we had not seen before; and then

13         he identifies another IP address that is

14         shown, I believe in a Yahoo response to a

15         subpoena, that shows that Mr. Kearn used

16         that, supposedly or allegedly, to send

17         E-mails to Mr. Butler.

18                    The-- and we had not-- we had seen

19         the Yahoo report before but did not know of

20         Mr. Butler's report.  Mr. Butler's report

21         ties one or two of the people named in his

22         report to that IP address and also says that

23         those persons or people that had those

24         accounts were determined to have been run

25         through a website that I listed in my--

1              THE COURT:  This is the Russian

2      website?

3              MR. FRANCIS:  The Russian website.

4      It's IMGRSC.RU, which is, among other things,

5      what's been used to hold child pornography

6      and used to traffic in pornography.  And one

7      of the reasons that that struck me as being

8      important in this case is that I believe in

9      one of the attachments you received from

10     Ms. Kenney there is an E-mail that was

11     printed out on the 16th of April of 2013 and

12     it says, "dad of four, found you in imgsru."

13             THE COURT:  This is attachment A?

14             MR. FRANCIS:  I believe it is.

15             THE COURT:  It's the long and--

16             MR. FRANCIS:  Long and--

17             THE COURT:  --tiny print?

18             MR. FRANCIS:  Yes.  And I'm looking

19     at a note that's about one, two,

20     three-quarters at the bottom of the page.  It

21     says "content," above that "content," above

22     that "content," above that "Apple," then "dad

23     of four."

24             THE COURT:  All right.  I want to

25     find where you are, but I can't find it from

1          that.  Do you have the ECF identifiers at the

2          top of the page you have?

3                    MR. FRANCIS:  I have-- this is not

4          the one from her attachment.  I haven't used

5          that.

6                    THE COURT:  Okay.  All right.

7                    MR. FRANCIS:  But chronologically

8          it's supposedly the first one that was

9          allegedly sent by my client.  And the only

10         people that he ties to those addresses are

11         the two that are listed in his report.  One

12         is tsears and the other one that I've listed

13         in my motion.

14                    Well, it seems to me that if there

15         are other people that have used this address,

16         this protocol, this internet protocol, this

17         IP address, that are transferring stuff that

18         they're accused of trading in child

19         pornography, just like my client is, and

20         those are open and available to almost

21         everybody, they're not closed, as I

22         understand, it's just a block of internet

23         addresses that are set off, what's

24         significant about this case is that there was

25         allegedly an E-mail sent from another IP

1          address that is directly related to my

2          client's business.

3                    The significance of that is that my

4          client had informed the Homeland Security

5          people when he was interviewed in May of 2003

6          that other people have had access to that

7          internet address and that they have that

8          because the password has been out.  He had a

9          gentleman that lived in his basement that

10         worked for him doing his IT work for his

11         business, and he gave out that address.  He's

12         not the only one that uses that.

13                   And that address can handle more

14         than just one phone or more than one

15         computer.  It's like the ones that are in a

16         block that can handle all kinds, except this

17         one anybody who's connected to it can use it.

18         So if I have access, if I have the password

19         on that and I'm within range, I can send

20         something out over that address and, sure, it

21         came from that address, but nobody knows

22         whether I sent it, whether my client sent it,

23         whether it was sent from one machine or

24         another machine.  It might have been sent

25         from somebody across the street.  Or

1    historically, these things will go-- can go

2    out about 300 yards.  So it can be anywhere

3    in the neighborhood.

4         And having seen these two things at

5    this time and not knowing about these other

6    two folks that are listed in the report, I

7    discussed that with Mr. Doty, who's doing the

8    technology work on behalf of my client, and

9    he suggested if the Court would look at that,

10   it would seem to me that it was very

11   important to look at that also.

12        I don't think this is just a fishing

13   expedition.  But if there's claimed relevancy

14   because my client supposedly sent stuff out

15   on some of these addresses, then we want to

16   be sure that we cover that and find out

17   whether other people are using these

18   addresses also.  And if so, are they somebody

19   who might be-- can be tied to someone in the

20   neighborhood.  Because he does maintain he

21   didn't send these out.

22        THE COURT:  Let me-- thank you for

23   that.  Let me ask some follow-up questions

24   because I think if there's any real hope that

25   I'll grasp the significance of what you call

1           these new-- this new information, I think I

2           have to sort of do it at a granular level,

3           and so let me painfully drag you through some

4           of the details that I've tried to understand

5           as I read and charted this information.

6                   As I understand the government's

7           theory in the case, it seems to be based on

8           two photographs, two images, that were sent

9           on April 28th of 2013?

10                  MR. FRANCIS:  As I understand in

11          their response now, that's it, yes.

12                  THE COURT:  And those two pictures,

13          I'll call them, were sent through the

14          cheyenneandliberty Yahoo E-mail address?

15                  MR. FRANCIS:  That's what the

16          government's evidence indicates, yes.

17                  THE COURT:  And those-- that E-mail

18          address at the time of those transmissions is

19          attached, for lack of a better word, to two

20          IPNs that are identified-- I'll just use the

21          last series-- oh, no, I won't, it will be

22          chaotic, but they're sent from

23          166.147.96.182; and the second, the one that

24          supposedly pictures Mr. Kearns' finger, is

25          108.92.13.21.  Am I tracking your

1      understanding at least of the government's

2      theory?

3              MR. FRANCIS:  I believe that's

4      correct, Judge.

5              THE COURT:  And so the new

6      information that Mr. Doty derived from

7      Mr. Butler's report is the tsears, S-E-A-R-S,

8      and tsears123 E-mail?

9              MR. FRANCIS:  That's correct, Judge.

10             THE COURT:  And those tie-- I guess

11     I can't-- I don't understand how those two,

12     the two tsears E-mail addresses, matter to

13     the issue of whether Mr. Kearn had possession

14     of and transmitted the two photographs on

15     April 28th.

16             MR. FRANCIS:  Well, it's my

17     understanding that in the list of Yahoo--

18     excuse me, cheyenneandliberty.com-- or

19     yahoo.com transmissions that were listed in

20     government's documents, those addresses had

21     been used.  Excuse me.  The 166 address had

22     been used on a previous date.

23             THE COURT:  The 166 address?

24             MR. FRANCIS:  I think-- I believe

25     that's-- yeah.  I didn't write down the

1          number you gave me, but let me take a look

2          here.

3                    THE COURT:  Oh, I'm sorry, that's

4          one of them.  I'm with you now.

5                    MR. FRANCIS:  Right.

6                    THE COURT:  I was looking at the

7          last numbers, and you were talking about the

8          first numbers.

9                    MR. FRANCIS:  And if I might, Judge,

10         let me look back up here and see what that--

11         Judge, there-- in the Yahoo return for

12         business records, it shows that during the

13         time when some of these E-mails were sent

14         that the 166.147.97.64 number was used.

15         Looks like on one, two, three, four, five,

16         six times.  No, more than that.  And then the

17         166.147.96.143 number was used at least three

18         times during this period.  And I'm looking--

19         let me see if I can find it.  I don't see the

20         964 on there, but there's like 8 or 9 or 10

21         or more instances during this period of time

22         when those addresses were used in relation to

23         the other target with yahoo.com.

24                    THE COURT:  Mr. Francis, let me move

25         to something that's slightly less technical

1    on the hopes that-- well, let me move to it.

2    In the government's response, you know, they

3    respond to the assertion that Mr. Doty and

4    the defense hadn't seen the 166.147.97.232

5    IPN before saying that you all have had this

6    since July of last summer.  What's

7    the-- what's the response to that?

8              MR. FRANCIS:  Judge, the-- that one

9    I have looked for and I cannot find that on

10   the Yahoo account management tool that was

11   provided.  I-- I just-- I am unable to find

12   it on this list that I have.  And I don't--

13   if it's someplace else, I may have missed it.

14   But I sure did not-- I don't have it where I

15   would expect to find it, and that is in

16   response to a request for all of the

17   transmissions made on the

18   cheyenneandliberty@yahoo.com account.

19             THE COURT:  So tell me what-- let's

20   say that the motion is granted and you get to

21   do the additional work you want to do.

22   What's it going to yield?

23             MR. FRANCIS:  Well, it could yield a

24   couple of things.  As stated early on, when

25   Mr.-- when my client talked-- Mr. Kearn,

1      talked to the agents with Homeland Security,

2      he told them that other people had access to

3      these accounts.  By trying to get the

4      business records from Yahoo on those, we may

5      be able to determine who those people were

6      and see if they had any other operation on

7      this account at this time.

8              My client has always said he has

9      never been made aware until this came down

10     that there was a cheyenneandliberty@yahoo.com

11     account.  It operated from-- this is

12     interesting.  It operated from-- it was

13     opened up on about the 27th of December,

14     2012.  There were a number of exchanges up

15     until about the 21st of January, 2013.

16     There's not any other traffic on that until

17     about the 16th of April when this case

18     arises.

19             And interestingly enough, in a

20     search of one of the very first records to

21     come in to cheyenneandliberty -- by the way,

22     those are his twin daughters who at this time

23     would have been about 10 years old -- there

24     is an E-mail from-- I guess it's a guy, he

25     goes by, I think, Silver Fox or Silver Wolf,

1           and it's to Chey or Chey (pronouncing shy),

2           one of the girls, Cheyenne.  And he has some

3           stuff in there, "I don't know when to call

4           you or not because I don't know if your dad's

5           going to be using your phone or if you're

6           going to be using your phone."

7                    And it's interesting because how

8           would anybody know that-- if that's the

9           earliest transmission on there, that Cheyenne

10          has a father?  How would anybody know that

11          she has a cell phone?  How would anybody know

12          that the father used the cell phone?  There's

13          no indication how old she is when this opens

14          up.

15                   This is one of the very first

16          transmissions to this account.  Which would

17          indicate, I would think, it does to me

18          anyway, that if somebody's saying they know

19          the dad uses the phone, then somebody's got

20          to be around there to see Dad using the

21          phone.  And if it was Dad sending these

22          things out, that doesn't make any sense at

23          all.  And that's one of the most troubling

24          things about this.

25                   THE COURT:  Somewhere the government

1      says, if I captured it right, look, we've

2      already gone to AT&T, the people who I guess

3      I'll call it are the owners of this block of

4      IP addresses, if I can use that term, and

5      they say they don't have anything.  If your

6      hope is to pursue information on downstream a

7      level than that, as I understand it, what-- I

8      mean I guess you don't know, you haven't

9      looked, but did Mr. Doty tell you that--

10              MR. FRANCIS:  Well, what I'm

11     expecting to actually do is not look at AT&T.

12     I'm expecting to look at Yahoo and at

13     Hushmail and see if there's anything in those

14     addresses that will bear on it.  Because AT&T

15     has said:  If you're using these blocks, we

16     don't have any records on them.  So that

17     doesn't help.  There's no sense really

18     pursuing that.

19              But what's not done and the

20     government wouldn't have done, because they

21     didn't get this information till last

22     Thursday, is to find out about these two

23     other Yahoo addresses and the one Hushmail

24     address.  And that's what I'd like to take a

25     look at.

1            THE COURT:  Okay.  Thank you for

2      laboring through that with me.

3            Ms. Kenney, can you add any light to

4      my efforts to understand?

5            MS. KENNEY:  Your Honor, I'll

6      certainly try not to complicate it more.

7            THE COURT:  I don't-- I'm not sure

8      there's room up there for that to happen.

9            MS. KENNEY:  Well, and this is--

10      this is complicated and I-- my attempt in

11      inundating the Court and counsel with these

12      attachments was to try to at least put it

13      before you so we could have this discussion

14      with the documents in front of us.

15            I guess the first thing I would like

16      to discuss is the attachment 79-4, which is

17      the-- what I would call the notes of

18      Investigator Butler.  Your Honor, what I

19      understand this to be is basically just some

20      cursory information he put down pertaining to

21      his communication and the-- the images that

22      he received from cheyenneandliberty and an

23      initial attempt to try to identify the user,

24      who is Cheyenne and Liberty.  And his attempt

25      was to do an historical data search of--

1          associated with this Image Source website,

2          the img-- I'm sorry--

3                    THE COURT:  The Russian one.

4                    MS. KENNEY:  The Russian one.  And

5          typically we refer to that as Image Source,

6          the Russian website.  And this is what he

7          found.  And this is the information that he

8          would have passed on to Homeland Security

9          which would have made its way to the Kansas

10         City field office for further follow up.

11                   THE COURT:  So when is it your

12         understanding that he kind of prepared these

13         notes?

14                   MS. KENNEY:  If I understood

15         correctly, these were actually prepared at

16         about the time of the initial E-mail contact.

17         This was the basis for his referral to

18         Homeland Security back in May of 2013.

19                   THE COURT:  Okay.

20                   MS. KENNEY:  They-- typically, I

21         don't receive investigator notes.  This came

22         in a-- Mr. Butler was getting ready to come

23         here for his testimony next week and as part

24         of that he uploaded all of his files, which

25         was not a report, it was these notes, but it

1          also included the E-mail exchanges and the

2          images that were attached to those E-mail

3          exchanges.  I believe he did that in late

4          December, early January.  And in early

5          January my case agent pulled it off the

6          website, gave it to us.

7                    As soon as I saw it-- I didn't

8          really examine what it was, I just felt like

9          there was enough potential Jencks Act

10         material in these notes that I wanted to turn

11         it over to counsel given the proximity to

12         trial.  So I say all that just to give you

13         some historical perspective as to why he even

14         was looking.

15                    Because what he had were the

16         E-mails.  And when I said in my response that

17         the-- the IP addresses had been provided to

18         counsel, what I meant was the redacted-- the

19         redacted E-mail exchanges between

20         Investigator Butler and cheyenneandliberty,

21         the headnotes of which is what I pulled out

22         and made a part of attachment A.

23                    So, for example, if you look at the

24         very first page--

25                    THE COURT:  And look at it is about

1          what I can do.

2                    MS. KENNEY:  I understand.  And

3          these are screenshots, Your Honor, so there's

4          no hope of being able to blow those up.  But

5          if you look at document 79-1, page 2 of 14.

6                    THE COURT:  Yes.

7                    MS. KENNEY:  The highlighted parts,

8          I just highlighted the Tuesday, August --

9          excuse me -- April 16th of 2013 and the

10         cheyenneandliberty at 166.147.97.232.  That's

11         what I was referencing in my response, that

12         we had provided this to the defense this past

13         summer.

14                   THE COURT:  So attachment A is a

15         series of correspondence between-- what is

16         he, Officer Butler?

17                   MS. KENNEY:  I'm calling him an

18         investigator because I'm not sure what the

19         Queensland Police Service calls their--

20                   THE COURT:  Between--

21                   MS. KENNEY:  --law enforcement.

22                   THE COURT:  Between Mr. Butler,

23         we'll call him and the cheyenneandliberty

24         E-mail address?

25                   MS. KENNEY:  Yes.  And what

1          attachment A is, Your Honor, is not the

2          entire exchanges because it doesn't include

3          the E-mail and it doesn't include the images

4          that were attached to the E-mail.  I was just

5          focusing, for purposes of this hearing, on

6          the header information from those E-mails.

7          And that's what attachment A is, is just the

8          header information that indicates the date,

9          the to, the from, the IP address.

10                    THE COURT:  Okay.

11                    MS. KENNEY:  Okay.  Your Honor, I

12          also-- and this just did not occur to me,

13          quite frankly, until sometime last night--

14          and by the way, I wasn't going to go through

15          my entire response.  I assume if the Court

16          has specific questions you'll inquire.  But

17          before you do, I wanted to advise you that

18          all of these service providers have

19          compliance guides for law enforcement.

20                    So this morning when I got to the

21          office I did a Google search for the Yahoo

22          compliance guide for law enforcement, and I

23          was able to find the one for Yahoo.  I have

24          that marked as Exhibit 1 for purposes of this

25          hearing.  But the reason I wanted to bring

1          that to the Court's and counsel's attention

2          is-- well, let me-- let me move to admit this

3          exhibit so we can be looking at it at the

4          same time.

5                    THE COURT:  Okay.

6                    MS. KENNEY:  And again, I just

7          pulled this off of Google, a public Google

8          search.  I didn't get this from any law

9          enforcement source.  But on page 4 of the

10         compliance guide under What Information Can

11         Yahoo Provide, under Subscriber Information

12         the second bullet point says, "IP addresses

13         associated with log-in to a user account are

14         available for up to one year."

15                    It occurred to me-- and I knew this

16         in the back of my head but it didn't occur to

17         me to share this or to do further research

18         about it, but these service providers don't

19         keep this information indefinitely.  And as

20         we stand here today, we're talking about

21         information that could be over three years

22         old.  So the chances of there being any

23         business records that might relate to these

24         Yahoo -- and I think Mr. Francis mentioned

25         Hushmail -- E-mail accounts is very slim.

1                    So, Your Honor, I guess I come back

2          to the main concern of the government at this

3          point is that although this is titled a third

4          motion to continue jury trial, when I look

5          back at the docket sheet, I believe this

6          trial has already been continued six or seven

7          times.  So this would be the seventh or

8          eighth continuance.  Which raises, quite

9          frankly, a <u>Toombs</u> concern as to whether or

10         not this would be an ends of justice

11         continuance.  That's the reason why I put all

12         the information in my response regarding

13         whether or not this information-- whether or

14         not there is a valid chance this information

15         would lead to material evidence that would go

16         to the defense in this case.

17                    THE COURT:  I guess as I sit here, I

18         don't know whether it will or it won't.  But

19         I'm concerned about your assertion that this

20         may not be an ends of justice continuance.

21         Why wouldn't it be?

22                    MS. KENNEY:  For the reasons that

23         I-- basically for the reasons I outlined in

24         my response, that it's very-- it's

25         speculative whether or not this information

1       is going to lead to anything that's going to

2       assist the defense at all.  You know, when

3       you look at-- first of all, it's clear -- and

4       truthfully I would put this in my response

5       but I couldn't find a good dictionary

6       definition -- these are dynamic IP addresses.

7       Meaning that they're changing.

8               If you look at the defendant's

9       internet history in this short period of

10      time, I don't remember but I believe, well,

11      one, two, three, four, five, seven different

12      IP addresses are associated with those

13      E-mails between April 16th and April 28th.

14      So lots of people could be using these

15      particular IP addresses even today.  So

16      that's my concern regarding-- it-- it seems

17      to me that the continuance-- the basis for

18      the continuance should have at least the

19      possibility of resulting in some material

20      information.  And my concern is that we

21      don't-- we don't have any information that it

22      can.

23              THE COURT:  Yeah.  There's an answer

24      to the question out there somewhere.  It's

25      not what I know as I sit here.  And I don't

1          hear anybody-- I mean, we can, I guess, argue

2          about whether it's likely to or not likely

3          to.  It's sort of talking about, you know,

4          the outcome of Saturday's basketball game.  I

5          mean, there's a way to find out, and that's

6          to wait till Saturday, right?

7                    MS. KENNEY:  And I do understand

8          that, Your Honor.  I really do.  But I felt

9          that it was my obligation to bring all this

10         historical information into this discussion.

11                   THE COURT:  Okay.

12                   MR. FRANCIS:  Judge, if I might.

13                   THE COURT:  You may.

14                   MR. FRANCIS:  One thing that came to

15         mind while Ms. Kenney was talking was

16         Mr. Butler does a search on the semisource,

17         and he reports people that he doesn't report

18         to cheyenneandliberty.com.

19                   THE COURT:  Say that again.  I just

20         didn't quite hear it.

21                   MR. FRANCIS:  He reports on other

22         entities using these IP addresses.  But one

23         that he doesn't-- doesn't find any sort of

24         data on is cheyenneandliberty.com.  I have to

25         admit that I'm not technologically versed in

1      that, Your Honor, but it's out there.

2                THE COURT:  Well, it's a really

3      dense and problematic situation.  And, you

4      know, I look at-- I look at the guiding cases

5      that provide factors for the Court to

6      consider when determining whether to grant a

7      late motion continuance, and this does come

8      at the end of this.

9                Ms. Kenney, let me ask one question.

10     So let's say the case is continued.  What

11     happens on your end?  Do you have-- is

12     Mr. Butler already here?

13               MS. KENNEY:  He is not, Your Honor.

14     And I appreciate-- I appreciate the inquiry.

15     And the reason why-- and I appreciate the

16     Court hearing us on such quick notice.

17     Truthfully, he needs to apply for certain

18     paperwork, probably today, whatever today is

19     in Australia.  And--

20               THE COURT:  It's tomorrow.

21               MS. KENNEY:  --his flight itinerary

22     is for him to arrive in Kansas on Sunday.  So

23     I need to make a decision or at least--

24               THE COURT:  Actually, you need me to

25     make a decision.

1          MS. KENNEY:  Thank you, yes.  I

2     didn't mean to overstep my bounds there.

3          THE COURT:  No, no, I--

4          MS. KENNEY:  And I-- well--

5          THE COURT:  Go ahead.

6          MS. KENNEY:  I don't want to put the

7     cart before the horse; but if the Court is

8     going to grant a continuance, I have not made

9     any inquiry requiring availability, and I

10    don't even know if the Court has looked at

11    your availability.  So--

12         THE COURT:  Well, Mr. Kearn, I'm

13    very concerned about the length of this case.

14    It's a 2013 case.  It's got age on it.  I'm

15    very concerned about the number of

16    continuances that have been-- please, you

17    don't need to stand.  It's nice of you but

18    you--

19         THE DEFENDANT:  Sure.

20         THE COURT:  --do not need to.  This

21    is kind of what it sounds like when a judge

22    thinks aloud.  Probably not the best habit.

23    But I-- there are a variety of factors here

24    that push me in the direction of denying the

25    motion.  I don't-- I think the showing of the

1           likelihood that there will be useful

2           information that will assist the

3           determination is thin.  I don't-- I don't

4           think the defendant has been anything other

5           than diligent in making the request.  I

6           don't-- the likely inconvenience to the

7           government is manageable.

8                    So on balance, I think the factors

9           that the governing case says I'm supposed to

10          consider when I make a judgment like this are

11          mixed and probably you don't carry the day.

12          Your motion doesn't carry the day under those

13          factors.  So on a strict application of them

14          I would probably deny the motion.

15                   I am, though, mindful that the

16          charges in the case are serious ones and they

17          are life-changing allegations and I think

18          that the wiser course is to grant the motion

19          and to err on the side of giving you access

20          to everything that you believe might assist

21          your defense of the allegations in the case.

22                   Like I said, I don't know, as I sit

23          here, whether the additional work that

24          Mr. Doty says he believes should be done will

25          yield information, but the only way I know to

1          find out is to let him do that work and it

2          provides what it provides, whether it be

3          something that's nothing or something that's

4          meaningful.

5                    So I'm going to grant the motion.  I

6          do it very reluctantly.  And I'm going to

7          memorialize that ruling in a written order

8          because I-- it is-- in my judgment, it is an

9          ends of justice determination, but I think I

10         want to make sure that the findings that

11         support it are appropriately identified.  I

12         am going to, Mr. Francis, exclude the time

13         between the time you filed your motion and

14         the new trial date.  Do you have an objection

15         to that?

16                    MR. FRANCIS:  No, sir, I do not.

17                    THE COURT:  All right.  So in any

18         event, I'm going to sustain the motion.  I do

19         it very reluctantly.

20                    And, Mr. Kearn, I hope you

21         understand that the Court has given you every

22         opportunity here to meet the charges that are

23         made against you.

24                    Let's talk about the timetable for

25         the case.  The motion sought 60 days.  I

1          don't think I can accommodate that because

2          I'm supposed to be in the middle of another

3          trial.  I think I can come close to the 60

4          days though.  What about a trial starting

5          on-- is May 5th a Tuesday?  Is that right?

6          May 5th?

7                    MS. KENNEY:  I'm sorry, Your Honor,

8          I didn't bring my calendar.  I'm sure if the

9          Court's available then I probably am too.

10                   THE COURT:  What about Mr. Butler

11         and his--

12                   MS. KENNEY:  I will-- as soon as I

13         leave the courtroom, I'll send out an E-mail.

14         And if that's a problem, I'll notify everyone

15         immediately.

16                   THE COURT:  Okay.  Mr. Francis.

17                   MR. FRANCIS:  I have that available,

18         Judge.

19                   THE COURT:  All right.  As I say,

20         I'm going to enter a written order

21         memorializing the ruling and resetting the

22         case for Tuesday, May 5th.  Obviously, we'll

23         scrub this Friday's in limine conference, so

24         that will come off the calendar.  We'll

25         reissue the new pretrial order number 2,

1      though I recognize by this point you've done

2      most of the work on it.  I'm going to reset

3      those deadlines so that if there are new

4      issues that emerge between now and then that

5      we will join those issues on the timeline

6      that we generally use to get cases ready for

7      trial.

8              Mr. Francis, I guess the last thing

9      I'd say to you is this is it for me.

10             MR. FRANCIS:  Judge, I understand

11     that.  And we wouldn't even be here had not

12     Ms. Kenney been so kind as to send this

13     document to us on Thursday.

14             THE COURT:  Yeah.  I mean, there--

15     if we're not going to have a trial on May

16     5th, it better be because the case has

17     disposed of itself in some other fashion or

18     somebody's having a baby or somebody's in the

19     hospital or something like that.  Because

20     this case has considerable age on it and it

21     needs to be decided consistent with the

22     congressional--

23             MR. FRANCIS:  I agree.  My client

24     wants it decided, too, Judge.

25             THE DEFENDANT:  Yeah.

1                    THE COURT:  Well, by the way, thank

2          you very much for pulling me through the

3          facts of the case.  I'll be honest with you:

4          I'm not your quickest study on this technical

5          stuff and I spent more time on this motion

6          yesterday than it sounded like today, but

7          there are a lot of moving parts.  I want to

8          get it right.  And as I said, I'm not

9          convinced that the law requires this

10          continuance, but I think it is the safer

11          course.

12                    So I'm grateful for your efforts,

13          and we'll be in recess unless there's

14          anything else we ought to do.

15                    MR. FRANCIS:  Not from defendant.

16                    MS. KENNEY:  Thank you, Your Honor.

17                    THE COURT:  Thank you very much.

18                         (THEREUPON, the hearing

19          concluded).

20

21

22

23

24

25

```
1          UNITED STATES OF AMERICA   )
                                      )    ss:
2          DISTRICT OF KANSAS         )

3

4                    C E R T I F I C A T E

5

6          I, Sherry A. Harris, Certified Shorthand

7     Reporter in and for the State of Kansas, do

8     hereby certify that I was present at and

9     reported in machine shorthand the proceedings

10    had the 21st day of January, 2015, in the

11    above-mentioned court; that the foregoing

12    transcript is a true, correct, and complete

13    transcript of the requested proceedings.

14         I further certify that I am not attorney

15    for, nor employed by, nor related to any of

16    the parties or attorneys in this action, nor

17    financially interested in the action.

18         IN WITNESS WHEREOF, I have hereunto set

19    my hand and official seal at Topeka, Kansas,

20    this 11th day of May, 2016.

21

22                    /s/ Sherry A. Harris
                      Certified Shorthand Reporter
23

24

25
```