```
1                IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF KANSAS
2                          TOPEKA, KANSAS


3
        UNITED STATES OF AMERICA,    )  ORIGINAL
4       ------------------ Plaintiff,)
                                     )  Case No.
5            vs.                     )  13-40057-JAR
                                     )
6       JONATHAN KEARN,              )  App. No.
        ------------------ Defendant.)  15-3121
7


8             TRANSCRIPT OF IN LIMINE CONFERENCE

9             PROCEEDINGS had before the Honorable

10      Daniel D. Crabtree, United States District

11      Court Judge, for the District of Kansas,

12      Topeka, Kansas, on the 1st day of May, 2015.


13
        APPEARANCES:
14
        For the Plaintiff:   Christine E. Kenney
15                           Office of the U.S. Attorney
                             290 U.S. Courthouse
16                           444 S.E. Quincy Street
                             Topeka, KS  66683
17
        For the Defendant:   Michael E. Francis
18                           Attorney at Law
                             434 S.W. Topeka Boulevard
19                           Topeka, KS  66603

20                           Jonathan Kearn
                             Defendant
21
        Court Reporter:      Sherry A. Harris, C.S.R.
22


23


24


25
```

```
1                       PROCEEDINGS

2               THE COURT:  All right.  We're here

3      on the United States of America against

4      Jonathan Kearn.  It's case number 13-40057.

5      Can I hear from counsel with their

6      appearances, please?

7               MS. KENNEY:  May it please the

8      Court, the United States appears by Christine

9      Kenney, Assistant United States Attorney.

10              THE COURT:  Good afternoon,

11     Ms. Kenney.

12              MS. KENNEY:  Good afternoon, Your

13     Honor.

14              MR. FRANCIS:  The defendant appears

15     in person, he is not in custody and appears

16     through counsel, Mike Francis.

17              THE COURT:  Good afternoon to the

18     two of you.

19              MR. FRANCIS:  Good afternoon, Judge.

20              THE COURT:  Please be seated.  This

21     is set for a motion in limine hearing on the

22     trial that is scheduled to start Tuesday, May

23     5th.  Just a couple of-- I guess I was going

24     to talk about some preliminary matters.

25     Maybe the place that makes sense to start is
```

1    by addressing the government's motion in

2    limine.  I did have a chance to review the

3    government's motion and the case that's cited

4    in it.  And I'm prepared to hear from--

5    Mr. Francis, I will say I looked for-- I

6    didn't see a written response from you.  Do

7    you wish to be heard on that today?

8              MR. FRANCIS:  Well, only to tell

9    you, Judge, I've discussed this with

10   Ms. Kenney, and what she pointed out I humbly

11   agree with.  I think that might be invasion

12   of the province of the jury.  What we have

13   discussed is the prospect of coming to some

14   language we believe would be agreeable to

15   redact into the offensive language.

16   Ms. Kenney tells me there's another portion

17   of the report that she has a similar thought

18   about, and we're going to discuss that also.

19             THE COURT:  All right.

20             MR. FRANCIS:  I guess you could say

21   for that purpose we'll agree to the

22   restrictions.  It's just a matter of us

23   getting the language down.

24             THE COURT:  All right.  Thank you

25   for getting me up to date.  I'm going to hold

1          the motion.  I won't rule it today.  Give you

2          all some additional time to see if you can

3          resolve it by agreement.  And if you do,

4          we'll terminate the motion as moot.  And if

5          you need a ruling on it, you'll get a ruling.

6          So we'll carry that forward and see what

7          comes up.

8                    I wanted to talk to you all and

9          determine-- get a sense from you on what you

10          expect the evidence to look like in the case

11          because I think it's something that fairly

12          has to be addressed during voir dire.  So I

13          don't know what discussions you've had.  I

14          don't have a feel.  I did review the exhibit

15          list, but I can't make out much from them.

16          So tell me what you expect the evidence to be

17          and whether there are quantity or timing

18          concerns that you all have addressed.

19                    MS. KENNEY:  Well, Your Honor, I'll

20          start by saying Mr. Francis and I haven't

21          addressed anything of that nature yet, but my

22          experience has been that he's pretty willing

23          to carry on the dialogue.  So I think that if

24          there's any concerns about the evidence we--

25          chances are we may be able to work something

1        out.

2                    THE COURT:  Okay.

3                    MS. KENNEY:  The nature of the

4        evidence is that there will be sexually

5        explicit images of children.  And while I'm

6        thinking about it, at the point that we would

7        be asking to publish some of the evidence --

8        because we need to show it with the witness

9        and the jury seeing it -- we would probably

10       ask that the big screen not be used, if

11       that's possible.  And I know there would be a

12       monitor that we could somehow minimize the

13       exposure of those images-- or maybe I should

14       say the exposure of the public to those

15       images, anyone that's not involved in the

16       trial.  Of course that's assuming that the

17       Court admits them into evidence.  Beyond

18       that--

19                   THE COURT:  Are these--

20                   MS. KENNEY:  And it's not a-- I'm

21       sorry.

22                   THE COURT:  Are these still images

23       or video?  Is there audio?

24                   MS. KENNEY:  They are stills.

25                   THE COURT:  No audio involved?

1          MS. KENNEY:  There are two very

2     short video clips that we will ask to be

3     introduced -- they're like 10 seconds each --

4     that do have audio that the government feels

5     is important-- relevant to this case.  The

6     only other video I think would be about a

7     minute and a half video from the security

8     camera.  So that wouldn't--

9          THE COURT:  It's not an explicit

10    comment?

11         MS. KENNEY:  No.  No.  And there's

12    no sound to that.  So the only sound would be

13    those two very short video clips.  The rest

14    of the evidence-- and the Court's heard some

15    of this probably at the last-- or may

16    remember it from the last motion to continue,

17    testimony regarding service providers, IP

18    address.  There will be some testimony-- and

19    maybe I'm getting far afield from what the

20    Court's looking for.  But there will be

21    testimony from individuals who looked at or

22    did some type of extraction or report on the

23    electronic devices, a phone and a computer.

24    So I think the Court maybe was focusing

25    specifically on the sexually explicit images.

1           THE COURT:  I was.  I mean, I-- in

2      fairness, I want to have a sense of what's

3      coming.  I want to be able to fairly describe

4      the evidence during voir dire.  I want to

5      make sure that the Court staff is prepared

6      for it.

7           MS. KENNEY:  Right.  And, Your

8      Honor, my intent -- we're working on it -- is

9      to get copies of the exhibits.  We would give

10     defense counsel a redacted copy of the

11     exhibits and make the exhibits that we plan

12     to introduce available for them to review on

13     Monday.  This is probably all going to happen

14     Monday now.  And my intent was to provide a

15     copy to the Court because of-- particularly

16     because of the nature of the images.  I'm

17     assuming, since I haven't had one of these

18     cases before you, that this will be your

19     first exposure to this kind of a case, so I

20     would think that you would want to see the

21     exhibits-- the unredacted exhibits ahead of

22     time.  So we were planning on making a copy

23     for the Court.

24           THE COURT:  I think I-- you are

25     correct, it's my first experience with this

1          kind of evidence, and I do think I need to

2          prepare for that experience.  And I also-- I

3          guess I'm not tracking the discussion about

4          redaction.  Can you--

5                    MS. KENNEY:  Oh, okay.  Well,

6          typically, Your Honor, we do not make copies

7          for anyone other than the Court of any of the

8          sexually explicit images.  So we would have a

9          mark like a place marker or we would redact

10         from the exhibit the actual picture.  Beyond

11         that, I don't think there's any other

12         redactions.

13                    THE COURT:  Okay.

14                    MS. KENNEY:  That would be it.  Just

15         dealing with the pictures that we think would

16         be defined as child pornography.  I'll use a

17         generic term.

18                    THE COURT:  Okay.

19                    MS. KENNEY:  So that's what we

20         provide to defense counsel.  But we-- my

21         practice is to give the Court an actual and

22         make a full copy available to defense counsel

23         but make a copy available to the Court.

24                    THE COURT:  All right.  Thank you

25         for that background.  I guess one of the--

1          Mr. Francis, I've skipped over you

2     talking, and I didn't mean to do that.  So

3     let me recognize you.

4          MR. FRANCIS:  I want to inform the

5     Court that fairly early on when I got into

6     this case that I inherited from the lawyer,

7     Ms. Kenney graciously allowed me to come over

8     to her office and review the photographs, of

9     which I've got a redacted copy but I've

10     actually got to see the real McCoy.  So it's

11     not going to be a huge surprise to me, and I

12     want to let the Court know that we had that

13     dialog before.

14          THE COURT:  Okay.

15          MR. FRANCIS:  I did-- it did raise a

16     housekeeping question though.  I've had other

17     sex cases that during voir dire the Court or

18     the lawyers, however you launch off on this,

19     would make a comment to the venire that if

20     there was a question asked that they would

21     prefer to answer just in the presence of the

22     three of us, and I didn't know if that was

23     your--

24          THE COURT:  It is.  And I was going

25     to-- I'm happy to talk about it now.  I mean,

```
1        wanted to talk to you all about the procedure
2        for that.  Let's finish this up, and I'll
3        come back and talk about kind of-- because I
4        think Ms. Kenney's had a trial with me but
5        you haven't and I'd kind of like for you to--
6        I'd like to talk through the process I
7        imagine using to deal with sensitive
8        subjects, including the one you just raised.
9                  MR. FRANCIS:  Well, I can tell you
10       up front, Judge, we are going to admit that
11       the photo was taken and we're going to give
12       them a reason why the photo was taken.
13                 THE COURT:  Okay.
14                 MR. FRANCIS:  And my client also had
15       reported-- what happened was his ex-wife was
16       living with a man and this little girl
17       mentioned that she had been molested by him.
18       And so he took the photo to keep his-- some
19       kind of evidence on how she looked and then
20       he reported this to the sheriff.  We have a
21       sheriff's deputy subpoenaed and also his
22       report.  And he also talked to his lawyer who
23       he'd been going through a divorce with who
24       indicated, you know, it wouldn't be a bad
25       idea to get a recording.  So he got a
```

1       recording of what the little girl said.  So

2       that's kind of where we are there.

3               My client denies he sent this on his

4       phone to anybody.  Was not intended for that.

5       Don't know how it got out there.  Although we

6       do have Mr. Doty here, who is our forensic

7       witness who's going to put on his opinions as

8       to what his findings were in reviewing the

9       government's evidence.

10              So I don't know if that gives you

11      kind of a feel for where we are.

12              THE COURT:  It does.

13              MR. FRANCIS:  And in regard, I guess

14      I'll go on and say the government was going

15      to call a fingerprint examiner.  We've told

16      them that's okay and we'll go ahead and

17      stipulate that he took the picture and you

18      don't need to bring the guy.  If you want to

19      introduce the prints and show the latents and

20      the knowns, why that's fine, we can do that

21      too, and we'll stipulate to that.  So that

22      will clear one witness down the road for you.

23              THE COURT:  Good.  Yeah, let me

24      just-- while we're on this subject, what do

25      you think the trial-- let's say we get to

1          picking the jury Tuesday morning.  It

2          probably takes us several hours to get

3          through that.  So assuming that that happens,

4          working on the premise that we get at least

5          opening statements made on-- if you wish to

6          make yours on Tuesday, kind of what do you

7          think the length of the trial will be?

8                    MS. KENNEY:  Your Honor, we'll be

9          ready to present evidence, if the time

10         allows, on Tuesday.  But practically, I'm not

11         sure how much evidence we would get to on

12         Tuesday past opening statement.  So my

13         assumption is that we would really start our

14         evidence Wednesday morning.  And worse case

15         scenario, I think we would finish our last

16         witness Thursday morning if that-- if that's

17         the case.  Obviously, if we start Tuesday,

18         then we might finish by the end of the day

19         Wednesday.  But I think the Court should

20         probably count on the government's case going

21         into Thursday morning.

22                    THE COURT:  All right.  Thank you.

23                    MR. FRANCIS:  Judge, I can tell you

24         that based on the discussions that we had, I

25         had issued my subpoena for my first witness

1          at 1:30 on Thursday.  Or 1 o'clock.  One or

2          the other.  Somewhere in there.

3                    THE COURT:  Okay.

4                    MR. FRANCIS:  I do have another

5          witness that we could call in the event that

6          we get ahead of that particular schedule.

7                    MS. KENNEY:  And, Your Honor, that

8          might give us time to do jury instructions if

9          we have a break in there.  So I don't know

10         how the Court feels about that.

11                   THE COURT:  No, no, I-- I-- we got

12         to do the instructions at some point.

13         If-- if it looks like that's something we can

14         do late in the day and send the jury home, or

15         something along those lines, then I might ask

16         you to skip to the witness that would be

17         available immediately and come back to your

18         subpoenaed witness.  But we can see how it

19         plays out.

20                   Just some housekeeping stuff.  Sort

21         of a typical trial schedule.  9 to noon; an

22         hour; 1 to 5; half hour-- you know, 15,

23         20-minute break both morning and afternoon.

24         If we do lapse into a second week, I can't

25         spend Monday with you because of the docket

1       that is scheduled that day, so we'd pick up

2       on the following Tuesday.

3               It's my practice to do a pretty

4       extensive voir dire, and so you can count on

5       me taking the first hour, two hours, whatever

6       with them.  But I would permit you all to do

7       limited questioning.  I tend to think of that

8       as sort of a-- let me put it this way.  I've

9       allowed 30 minutes per party in the past and

10      nobody's ever used it.  But if you were

11      covering new topics and thought you needed a

12      little more time, I don't think I'm hung up

13      on the 30 minutes.

14              Mr. Francis, you raised the question

15      of the dealing with sensitive matters.  And I

16      think what I'm inclined to do, there's

17      usually a passage of the voir dire that I

18      conduct where I ask about people's

19      involvement with the criminal justice system,

20      either as a victim or in some other capacity,

21      and invite them, if they wish, to have that

22      conversation on that subject privately at the

23      bench right over here with you all present.

24      And I thought about combining that question

25      with concerns about sitting as a juror in a

1          trial in a case involving evidence like this.

2                    MR. FRANCIS:  In trials -- I somehow

3          got on a list to represent sexually violent

4          predators in the district court here in

5          Shawnee County -- it normally comes up in

6          those situations where the jurors are asked,

7          "Have any of you, either personally or had

8          some close family member, been a victim of

9          anything like this?"  And that's where most

10         of the stuff would come up.  And I, in my

11         voir dire probably would have asked have any

12         of you had any experience with child

13         pornography or had children exposed or

14         anything like that that might cause them to

15         want to come up.

16                   THE COURT:  Yeah.  I'm inclined to

17         try to combine those two topics so that-- I

18         had a friend who was on a jury in a sex

19         offense case, wasn't a pornography trial, but

20         the subject came up and that-- my friend

21         ended up at the bench and it was clear why

22         they were there.  And I thought if I could

23         combine those two topics it would be a more

24         generic enterprise and experience and it

25         could be simply because they have a family

1           member who's been a victim of a crime.

2                      MR. FRANCIS:  I'd certainly have no

3           objection to that.

4                      THE COURT:  Okay.  I'll plan to get

5           to that topic.  Of course, you will be here

6           at the bench for those discussions.

7                      And typically on the cause issue,

8           when someone says whatever they've said, I

9           excuse them and then talk with counsel about

10          whether either party thinks that they heard

11          something that means the juror ought to be

12          excused for cause.  And if not, we go back.

13          And if we do, I make a decision.  And if we

14          replace them, unless it's blatant cause, I

15          don't release them but I trade them out and

16          ask them to wait in the gallery to see if we

17          run out of jurors.  So that's the way I'll

18          handle it.

19                      I will ask you one last time, of

20          course, whether you pass the panel for cause.

21          And so if something comes up during your

22          questioning, my preference would be, unless

23          it's just plainly apparent that that person

24          is going to be excused for cause, that you

25          save that request to excuse to the end of

1          your questioning and approach the bench and

2          raise it there.  But if it's obvious this

3          person needs to sit on another case, I'd ask

4          you to approach right then so that we could

5          get that person traded out and you'd have a

6          chance to question the new person.

7                    MR. FRANCIS:  All right, sir.

8                    THE COURT:  Does that make sense?

9                    MR. FRANCIS:  Yes, Your Honor.

10                   THE COURT:  During the voir dire

11         that you yourselves conduct, the only real

12         restriction I would ask, besides the ones

13         that the law imposes, is I'd rather you not

14         turn this into a time to give your opening

15         statement or closing argument.  There will be

16         a time for that.  And I'm not-- I do believe

17         very much in letting experienced trial

18         lawyers like yourselves try their case, but

19         it's a time, place, and manner issue.  So

20         enough said.

21                   On-- so when we get to the time to

22         exercise the peremptories we'll do it, you

23         know, government, defendant, government,

24         defendant until she's out of challenges, and

25         you have the last, I guess, four or so by

1        yourself.  We'll seat seven and seven.  Two

2        rows of seven.  And then we'll put four

3        people on a row by themselves, and those four

4        will be the pool for the alternates.  We'll

5        strike one each and end up with two.

6                Yes, sir.

7                MR. FRANCIS:  Were you contemplating

8        once we get down to our challenges that we

9        pass the pad back and forth?  Is that--

10               THE COURT:  I was.  I typically-- I

11       typically leave the panel sitting there

12       because in my experience when I was in

13       your-- at your table, it helped me to

14       remember to be able to look at them.  If this

15       becomes prolonged, then I probably would

16       excuse them.  But, yes, I would-- Ms. Garrett

17       or you can pass the paper back and forth

18       until we get that sheet completed.

19               So there will be 32.  There will be

20       four rows of seven, 28, that we'll strike

21       down to our 12.  And then there will be a row

22       of four, one strike each down to our two.

23       Does the math not sound right to you?

24               MS. KENNEY:  No, Your Honor.

25               THE COURT:  I do it every time.

1              Ms. KENNEY:  No, no, no.

2              THE COURT:  I write it down every

3        time because it never adds up in my head.

4              MS. KENNEY:  I will confess I have

5        no idea how many strikes I get by statute.

6        So I was just-- in my own head was trying to

7        do the math.  I'm not asking--

8              THE COURT:  You get--

9              MS. KENNEY:  --or questioning; I'm

10       just--

11             THE COURT:  You get six and he gets

12       10.

13             MS. KENNEY:  Okay.  Thank you.

14             THE COURT:  All right.  And then at

15       the end of the peremptories I will want to

16       ask you before we announce who's selected --

17       you'll have a chance to see each other's --

18       whether there are any Batson concerns based

19       on-- based on race or any McCullum concerns

20       based on gender.  Of course, that requires a

21       timely objection, and most of the cases say

22       before the jury is empaneled.  So I'll ask

23       you explicitly whether you have any

24       objections to make on that.  And I don't want

25       to surprise you.

1          I will then-- we'll get the jury

2     sworn.  We'll excuse everyone else.  I will

3     give a preliminary instruction that-- I have

4     a set of preliminary instructions that I

5     think are Tenth Circuit models, but I'll give

6     you a set to go home with today so that you

7     can look at them between now and Tuesday and

8     if you see something of concern in there

9     you'll have time to raise it before we get

10    the jury up on Tuesday.

11          One of the things I do in my

12    questioning of the panel is to at least tell

13    them what the case is about.  And generally

14    that is a somewhat simplified statement of

15    the charges in the indictment.  I actually

16    had time to do it today.  And I'll give you

17    those so that you can see what I plan to say

18    that the case is about.  And if either of you

19    think it wrongly informs them of the general

20    nature of the case, that's something also we

21    can take up on Tuesday.  But I believe it to

22    be sort of an abridged version of the three

23    counts in the indictment.

24          What else?  Tell me about-- have you

25    all talked about how long you would want for

1          opening statement?

2                    MS. KENNEY:  No.  Your Honor, I

3          can't imagine--

4                    THE COURT:  Four or five hours?

5                    MS. KENNEY:  No.  I'd like to get my

6          evidence in in that time.  But, no, I can't

7          imagine I would need more than 15, 20

8          minutes.  In a case like this where I'm not

9          going to have any demonstrative aids, I don't

10         tend to belabor opening.  So--

11                   THE COURT:  Mr. Francis.

12                   MR. FRANCIS:  Judge, I honestly

13         think I'm going to struggle to get through 10

14         minutes on an opening statement.  There's

15         just not all that much.  They say this and we

16         say that.

17                   THE COURT:  How about if we place it

18         at 20 and if you, in preparing over the

19         weekend, find yourself with new ideas that

20         make you think I might need 10 more, we can

21         talk about that on Tuesday morning?

22                   I don't have sort of a territorial

23         view about the courtroom.  I think lawyers

24         need to be able to be free to move around.

25         So you should not-- you don't need to ask for

1    permission to approach and hand the witness

2    an exhibit.  So long as you're going up there

3    for a proper purpose, feel free to go right

4    ahead.  If you misbehave while you're up

5    there, then you'll go back and you'll be put

6    in a foothold there at the lectern.  I do ask

7    you to keep an arms-length from the jury box,

8    and I know this group of lawyers would

9    anyway.

10            I don't know that this is a case

11    that really involves it, but remember the

12    privacy concerns that are addressed in the

13    federal rules.  Don't ask witnesses to state

14    addresses.  And I don't know whether there

15    will be any testimony about minors in terms

16    of names; but if so, we ought to talk about

17    that.

18            MS. KENNEY:  There will be, Your

19    Honor.  The--

20            THE COURT:  What is it, Rule 44?  I

21    looked up this morning and now I've forgotten

22    already.

23            MS. KENNEY:  I'm sorry, I did not

24    look at that.  I should have because I was

25    thinking about it earlier.  There is-- there

1        are minors whose names or whose identities

2        will be -- let me try that again -- who will

3        be identified somehow.  Specifically, the

4        defendant's-- four of the defendant's

5        children.

6                    THE COURT:  49.1.

7                    MS. KENNEY:  The-- I would defer to

8        the Court how you would like to-- how you

9        think we need to handle this.  Three of the

10       young ladies have the same first initial.

11       Two of the young ladies, they are the name in

12       the E-mail address that's going to be

13       mentioned time and time again,

14       cheyenneandliberty@yahoo.com.  So-- and then

15       the minor-- the youngest, her images are part

16       of this case.  So--

17                    THE COURT:  Are these people who

18       live in this area?

19                    MS. KENNEY:  Yes.  Yes.  And they're

20       all under 18.  I mean, they're all under--

21       I'm guessing they're probably all under 15.

22                    THE COURT:  Will they be identified

23       by full name?  Does he have--

24                    MS. KENNEY:  They don't really need

25       to be.

1          THE COURT:  Mr. Francis, what's your

2     view on this?

3          MR. FRANCIS:  The only concern I

4     have about that, and I don't know exactly how

5     to get around it, is this E-mail address.

6     Because the E-mail address is a combination

7     of two of my client's twin daughters.  It's

8     like aandb@yahoo.com and the use of their

9     name.  And in all the reports we've had that

10    was the two daughters.  I'm going to have

11    those names on there.  My forensic man has

12    put that address throughout his report.  It's

13    mentioned all over.

14          MS. KENNEY:  And, Your Honor, the

15    name-- you know, obviously the government's

16    perspective is that is a connection to the

17    defendant which is relevant to what we

18    understand the defense in this case will be,

19    and that's that somebody else sent this mail.

20    So--

21          THE COURT:  Well, in a narrow sense,

22    Rule 49.1 refers to filings with the Court.

23    Naturally, the transcript could become that.

24    And I think where we may end up, depending on

25    where the evidence goes, is to have to

1          restrict access to the transcript, if one is

2          prepared, to try to protect the privacy

3          interest of those minors.  We can't get in a

4          business of sort of hamstringing parties'

5          presentation of the evidence based on this

6          concern from either side.  And so I'm not

7          going to limit you to initials.  We'll-- the

8          evidence will be what it will be.  I would

9          ask you to be thoughtful about it and then to

10         raise the issue, obviously outside the

11         hearing of the jury, about portions of the

12         transcript that may need to be sealed.

13                  MR. FRANCIS:  All right, sir.

14                  THE COURT:  All right.  Does either

15         party plan -- and I'm just planning ahead --

16         to invoke Rule 615 to exclude the witnesses?

17                  MS. KENNEY:  Your Honor, I probably

18         would.  My intent would be to not have the

19         government witnesses, with the exception of

20         the experts.  I think that that would be a

21         necessary exception to that rule.  But we

22         would not otherwise have our witnesses in the

23         courtroom.

24                  THE COURT:  Well, so you are

25         invoking the rule?

1          MS. KENNEY:  Yes.

2          THE COURT:  All right.  I think it's

3    mandatory, Mr. Francis.  I guess the question

4    always becomes on when does it start?  And by

5    the way, I think certainly there is-- I have

6    to go look at the language, but I think 615

7    makes explicit allowance for experts to be

8    outside.  Is there any dispute about each

9    side's respective experts being excluded from

10   the exclusion rule?  Is there any-- do you

11   contest that?

12         MS. KENNEY:  No, Your Honor.

13         THE COURT:  Mr. Francis?

14         MR. FRANCIS:  I don't contest it,

15   Judge.

16         THE COURT:  You were going to say

17   something and I--

18         MR. FRANCIS:  I normally ask for

19   sequestration except for experts anyway.  So

20   I don't have a problem with that.

21         THE COURT:  And do you want them out

22   for the whole thing including voir dire?  Is

23   that the parties' position?

24         MR. FRANCIS:  That's agreeable with

25   me.

1          MS. KENNEY:  That's fine.

2          THE COURT:  All right.  We'll--

3          MS. KENNEY:  I wouldn't probably

4     have my witnesses here anyway.

5          THE COURT:  Yeah.  There's sometimes

6     a dispute about exactly when does the

7     exclusion rule start.  We'll just-- with the

8     parties' consent, we'll just start it from

9     the beginning of the trial and ask them not

10    to be present at that time.

11         I have a set of instructions--

12         MS. KENNEY:  Sorry, Your Honor.  I

13    also-- our case agent would also be a witness

14    in the case.  And I can't honestly say I have

15    read the rule, but it's always been my

16    understanding in federal court that the case

17    agent would be allowed to be at counsel table

18    for the duration of the trial.

19         THE COURT:  That's my recollection

20    of what the-- yeah, 615(b), Mr. Francis, says

21    that, "The rule does not exclude an officer

22    or employee of a party who is not a natural

23    person after being designated."  She gets a

24    representative.  I've always-- I actually had

25    this come up, and I think the caselaw in the

1          circuit is she gets one such representative.

2          What's your position on it?

3                    MR. FRANCIS:  Well, I've experienced

4          it before and it hasn't caused any great

5          trouble in this court, whether it be the lab,

6          representative of the government, to stay

7          there, as long as they don't keep going back

8          and saying what happened, this person said

9          this and that.

10                   THE COURT:  Yeah.  And we need to

11         talk about witnesses' interaction with other

12         witnesses, which I think the caselaw says

13         that the rule doesn't allow a witness, even

14         one who is not a party controlled by a party,

15         to, in effect, evade the rule excluding

16         witnesses.  So you are both instructed to

17         advise your witnesses that they are not to

18         interact with other witnesses either

19         verbally, orally, or in some textual form

20         about the content of their testimony or the

21         cross-examination of them and so forth.  All

22         right.

23                   A couple of things.  Mr. Francis,

24         it's my practice to address any Lafler/Frye

25         concerns by asking the prosecutor on the

1          morning of trial to recite the full history

2          of any plea offers that were made available

3          to the defendant in front of the defendant.

4          And I would anticipate doing that again on

5          Tuesday morning.  And I don't want to

6          surprise you by doing that.

7                    MR. FRANCIS:  All right.  I

8          understand.

9                    THE COURT:  I also, once the

10         government has rested and motions have been

11         ruled, assuming the case continues, I would

12         engage in a colloquy with Mr. Kearn about his

13         right to testify, obviously outside the

14         hearing of the jury.

15                   MR. FRANCIS:  Anticipated that, too.

16                   THE COURT:  Okay.  It's my practice

17         now of almost a year to instruct before

18         argument, and so I will do so.  Typically I

19         read to the instructions.  By rule I think

20         I'm required to.  I believe the premise is

21         that jurors are unable to read, but we do

22         read and we try to cut the monotony a little

23         bit by displaying-- Ms. Garrett will display

24         the instructions I'm reading on the screen as

25         I read them.  Because it is, I'm sure, as

1    interesting for the jury as it is for me.

2    But we do that to at least allow them to

3    follow along.  They will all also have their

4    own set of the instructions as I review them

5    and to take with them.

6              And that's, I think, unless I've

7    forgotten something, that's normally

8    addressed at this kind of setting.

9              Mr. Francis.

10             MR. FRANCIS:  I had one thing that

11   my client raised that I hadn't thought about

12   in this respect of the names of the children.

13   I don't know if anything can be done, if

14   there's any news media here, to protect their

15   names from going out.  It is a public trial.

16             THE COURT:  It is.  Do you-- is

17   there any reason-- anybody anticipate--

18             MR. FRANCIS:  I certainly don't.

19             MS. KENNEY:  The news media?  No, I

20   do not, Your Honor.  And the nature of the

21   case and what I anticipate the defense is

22   going to dictate that the names are going to

23   be used, but I expect to try to minimize that

24   and I think that we can-- you know, once an

25   individual has been identified-- with the

1       exception of the E-mail address, once

2       individuals have been identified, we can

3       start referring to them as the

4       four-and-a-half-year-old or the youngest or--

5       and I-- I will-- I think my witnesses are

6       exclusively law enforcement so I will

7       instruct all of them.  And I only expect

8       really one witness will be involved with the

9       names that much.  So--

10                      THE COURT:  Well, let's do this.  We

11      usually get a courtesy call from any media

12      that's going to come in.  They want to bring

13      their computer in or their phone.  They

14      actually want to Tweet about proceedings in

15      this day and age.  It's a whole new world.

16      And so if we get some indication that there

17      is media that's covering this, we'll try to

18      have-- in my experience they've been pretty

19      good about that issue, but we'll try to make

20      sure that they're mindful of the appropriate

21      sensitivity to it.  And if we get any sign

22      that they're not sensitive to it, then we'll

23      have an on-the-record discussion about

24      whether any relief is appropriate on that

25      front.  I don't know that it's possible.

1          I've never faced the issue, but--

2                    MS. KENNEY:  No, Your Honor, my--

3                    THE COURT:  But let's not borrow

4          that trouble today.

5                    MS. KENNEY:  No.  And my experience

6          is that most of the media, at least in this

7          area, and I don't know if it's a universal

8          policy, they don't publish minors' names.

9          But, Your Honor, I have one question.

10                   THE COURT:  Please.

11                   MS. KENNEY:  This is so trivial, but

12         are the rest rooms going to be finished?

13                   THE COURT:  They're not.

14                   MS. KENNEY:  Okay.  That's just--

15                   THE COURT:  It's not trivial.  I

16         hadn't considered--

17                   MS. KENNEY:  I was thinking of that

18         in terms of the breaks.

19                   THE COURT:  Yeah.  They'll have to

20         go to the third floor.  The jurors will be

21         taken care of.

22                   MS. KENNEY:  And that was my only

23         concern was coming up, because we have to

24         come up the elevators to get back.  So--

25                   THE COURT:  They have two.  There

1          are two back there, right?

2                    MS. KENNEY:  Okay.

3                    THE COURT:  There's two rest rooms

4          in the jury room, as I remember the

5          geography.  So I don't think it will be a

6          problem for them.  Obviously, for the parties

7          and for you all it will be.

8                    MS. KENNEY:  Okay.  Thank you.

9                    THE COURT:  So let me give you your

10         copies of the preliminary jury instructions

11         that I would read before opening statement

12         and the insert that I would use to describe

13         generally what the case is about during my

14         voir dire.  You don't need to sit there

15         today, unless you want to, and review them,

16         but I'd ask you to look those over and if you

17         see something in there that concerns you,

18         that we take it up before we get the jury up

19         here on Tuesday.

20                   MR. FRANCIS:  All right.

21                   THE COURT:  And if you could be

22         here, you know, 8:30ish on Tuesday.  You'll

23         end up burning some time, I recognize, but we

24         may find that they're available to us.  Our

25         jury coordinator does a wonderful job and so

1      as soon as they're available to us we'll get

2      them up here even if it's not formally 9

3      o'clock so long as you're ready.

4              Ms. Kenney, anything else you can

5      think of that we ought to discuss today?

6              MS. KENNEY:  No, Your Honor.  I

7      think our biggest concern is all the

8      monitors.  But we can--

9              THE COURT:  Let me get some help on

10     this.  This one will be available.  Is there

11     a second one?  There's not, is there?  I

12     thought I remembered there being a second

13     monitor there.

14             MS. KENNEY:  There used to be.

15             THE COURT:  We will look into the

16     possibility that we could have a monitor at

17     either end of the jury box.  Because if you

18     rely on just this one at what I think is the

19     east end of this jury box, then it's

20     difficult to see from down there.  But if you

21     have one on both ends-- we'll see if that's a

22     possibility.  And if it is, we'll do it and

23     we'll just forego that one.

24             And, Mr. Francis, anything else from

25     the defendant's standpoint that we ought to

1          take up?

2                    MR. FRANCIS:  Not at this time, Your

3          Honor.

4                    THE COURT:  All right.  Thank you

5          very much for your appearances this afternoon

6          and your preparation for the proceeding.  And

7          I'll see you come Tuesday, and we'll be

8          adjourned at this time.

9                         (THEREUPON, the hearing

10         concluded).

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          UNITED STATES OF AMERICA   )
                                      )    ss:
2          DISTRICT OF KANSAS         )

3

4                    C E R T I F I C A T E

5

6          I, Sherry A. Harris, Certified Shorthand

7     Reporter in and for the State of Kansas, do

8     hereby certify that I was present at and

9     reported in machine shorthand the proceedings

10    had the 1st day of May, 2015, in the

11    above-mentioned court; that the foregoing

12    transcript is a true, correct, and complete

13    transcript of the requested proceedings.

14         I further certify that I am not attorney

15    for, nor employed by, nor related to any of

16    the parties or attorneys in this action, nor

17    financially interested in the action.

18         IN WITNESS WHEREOF, I have hereunto set

19    my hand and official seal at Topeka, Kansas,

20    this 11th day of May, 2016.

21

22                        /s/ Sherry A. Harris
                          Certified Shorthand Reporter
23

24

25