```
 1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF KANSAS
 2                       TOPEKA, KANSAS


 3
        UNITED STATES OF AMERICA,    )  ORIGINAL
 4      ------------------ Plaintiff,)
                                     )  Case No.
 5           vs.                     )  13-40057-DDC
                                     )
 6      JONATHAN KEARN,              )  App. No.
        ------------------ Defendant.) 15-3121
 7


 8            TRANSCRIPT OF SENTENCING HEARING

 9          PROCEEDINGS had before the Honorable

10      Daniel D. Crabtree, United States District

11      Court Judge, for the District of Kansas,

12      Topeka, Kansas, on the 16th day of November,

13      2015.


14
        APPEARANCES:
15
        For the Plaintiff:  Christine E. Kenney
16                          Office of the U.S. Attorney
                            290 U.S. Courthouse
17                          444 S.E. Quincy Street
                            Topeka, KS  66683
18
        For the Defendant:  Michael E. Francis
19                          Attorney at Law
                            434 S.W. Topeka Boulevard
20                          Topeka, KS  66603

21                          Jonathan Kearn
                            Defendant
22
        Court Reporter:     Sherry A. Harris, C.S.R.
23

24

25
```

2

1                         I   N   D   E   X

2                       W   I   T   N   E   S   S

3

        TESTIMONY ON BEHALF OF DEFENDANT         PAGE
4

        SUE ANN SEAL
5       Direct Examination by Mr. Francis          9
        Cross-Examination by Ms. Kenney           11
6
        BRUCE H. ROBINSON
7       Direct Examination by Mr. Francis         12

8       KATHY MARKHAM
        Direct Examination by Mr. Francis         15
9       Cross-Examination by Ms. Kenney           17

10      TERRY BARKER
        Direct Examination by Mr. Francis         18
11      Cross-Examination by Ms. Kenney           20

12

13      TESTIMONY ON BEHALF OF PLAINTIFF         PAGE

14      CASSIDY CASNER
        Direct Examination by Ms. Kenney          22
15      Cross-Examination by Mr. Francis          25

16
        Certificate ----------------------------- 43
17

18

19

20

21

22

23

24

25

```
 1                      PROCEEDINGS
 2              THE COURT:  All right.  We're here
 3      on case number 13-40047, which is the
 4      United States of America against Jonathan
 5      Kearn.  I'll begin with your appearances,
 6      please.
 7              MS. KENNEY:  May it please the
 8      Court, the United States appears by Christine
 9      Kenney, Assistant United States Attorney.
10              THE COURT:  All right.  Good
11      afternoon, Ms. Kenney.
12              MR. FRANCIS:  May it please the
13      Court, the defendant appears in person, in
14      custody, and through counsel, Mike Francis.
15              THE COURT:  All right.  Mr. Francis,
16      Mr. Kearn, good afternoon to the two of you.
17              MR. KEARN:  Good afternoon.
18              THE COURT:  Ms. Kenney, I know we
19      talked about this issue before, a new
20      hearing, so let me return to it.  My
21      recollection is that there is at least one
22      identifiable victim of the crime.  So I ask:
23      Has notice been provided to that victim?
24              MS. KENNEY:  Notice has been
25      provided I believe technically to the
```

1       guardian, and we have not received any

2       feedback from that notice.

3                   THE COURT:  All right.  So you have

4       provided notice to the guardian of the victim

5       and you have received no information

6       suggesting that the victim or her guardian

7       wishes to participate in this hearing?  That

8       the sum of it?

9                   MS. KENNEY:  That is, Your Honor.

10                   THE COURT:  All right.  Thank you

11       very much.

12                   I will again enumerate the materials

13       that I have reviewed to prepare for this

14       hearing.  I, of course, have read the

15       presentence report, document 106.  I've also

16       reviewed the government's sentencing

17       memorandum, which is designated as document

18       107.  And Mr. Kearn's sentencing memorandum,

19       document 113.  I also have received and read

20       10 pieces of correspondence that were

21       provided by Mr. Kearn's attorney.  I do not

22       make-- plan to make that correspondence a

23       part of the record unless there's a formal

24       request to do so.  And last, I have received

25       and reviewed the sentencing recommendations

1      prepared.  Consistent with the normal process

2      by the United States Probation Office, I do

3      not plan to make them part of the record.

4              Mr. Kearn, we started this hearing

5      once.  Let me remind you of that

6      conversation.  The purpose of a sentencing

7      hearing, of course, is to decide and impose

8      sentence.  I will hear from the lawyers today

9      and from you if you wish to make a statement.

10     As I think I explained when we were together

11     before, the rule governing this hearing

12     entitles you to make a statement, but it does

13     not require you to make one, and I will call

14     on you later in the hearing if you do wish to

15     make a statement.  I do want to, however,

16     make sure as a foundation for this hearing,

17     Mr. Kearn, that you have read and discussed

18     the presentence report that was prepared

19     about you.

20              And so let me start with you,

21     Mr. Francis.  Have you read the presentence

22     investigation report about your client?

23              MR. FRANCIS:  Yes, I have, Your

24     Honor.

25              THE COURT:  And did you discuss it

1          with Mr. Kearn?

2                    MR. FRANCIS:  Yes, we did.

3                    THE COURT:  Did you have enough time

4          to discuss the presentence report with your

5          client?

6                    MR. FRANCIS:  I believe we did, and

7          I believe we also submitted some

8          recommendations or corrections to Mr. Deters

9          as a result of that conversation.

10                    THE COURT:  All right.  And in terms

11          of Mr. Kearn's questions about the

12          presentence report, did you answer all his

13          questions to the best of your ability?

14                    MR. FRANCIS:  Yes, sir.

15                    THE COURT:  And did you answer

16          questions that he had about the sentencing

17          process or this hearing?

18                    MR. FRANCIS:  Yes.

19                    THE COURT:  Am I correct that the

20          only remaining issue in the case is the

21          determination of the defendant's sentence?

22                    MR. FRANCIS:  That's correct, Judge.

23                    THE COURT:  All right.  Do you know

24          of any reason, Mr. Francis, that sentencing

25          should not proceed today?

1          MR. FRANCIS:  None is known.

2          THE COURT:  Thank you very much.

3          Mr. Kearn, I'll speak to you

4     directly.  At this point I want to make sure

5     that you are thinking clearly today.  Have

6     you consumed any drugs or alcohol in the last

7     48 hours?

8          THE DEFENDANT:  No, sir.

9          THE COURT:  I didn't imagine that

10    you had, but I always ask.  In your

11    estimation, are you thinking clearly today?

12         THE DEFENDANT:  I am, Your Honor.

13         THE COURT:  You understanding me

14    okay?

15         THE DEFENDANT:  Completely.

16         THE COURT:  All right.  Very well.

17    Can I ask you then directly:  Have you read

18    the presentence report that was prepared

19    about you in this case?

20         THE DEFENDANT:  Yes, I have.

21         THE COURT:  And did you discuss it

22    with Mr. Francis?

23         THE DEFENDANT:  I did.

24         THE COURT:  Did you ask him all the

25    questions you wished to ask about the

1    presentence report, this sentencing hearing,

2    or the sentencing process?

3                THE DEFENDANT:  Yes.

4                THE COURT:  And did he answer all

5    your questions to your satisfaction?

6                THE DEFENDANT:  He did.

7                THE COURT:  All right.  Very well.

8                Is any party planning to present any

9    evidence of any kind today?

10               Ms. Kenney.

11               MS. KENNEY:  No, Your Honor.  We'll

12   rely on the evidence that was presented at

13   the jury trial in this case.

14               THE COURT:  Mr. Francis, are you

15   planning to put on anything?

16               MR. FRANCIS:  Yes.  We have four

17   short witnesses who would like to address the

18   Court regarding sentencing.

19               THE COURT:  All right.  I'll hear

20   from them now, and after that I would intend

21   to provide my tentative sentence.  So why

22   don't you proceed, Mr. Francis.

23               MR. FRANCIS:  Call Sue Ann Seel.

24               THE COURT:  And if you'll stop and

25   raise your right hand, the clerk will

```
 1        administer the oath.
 2                        SUE ANN SEEL,
 3        called as a witness on behalf of the
 4        defendant, was sworn, and testified as
 5        follows:
 6                THE COURT:  Ms. Seel, you may be
 7        seated.  Please adjust the chair and the
 8        microphone so it will amplify your voice.
 9        Thank you very much.
10                Mr. Francis.
11                MR. FRANCIS:  Thank you.
12                        DIRECT EXAMINATION
13   BY MR. FRANCIS:
14   Q.   State your name for our record, please.
15   A.   Sue Ann Seel.
16   Q.   And would you tell the Court what you do?
17   A.   I am the pastor of Potwin Presbyterian
18        Church.
19   Q.   Do you know Jon Kearn?
20   A.   I do.
21   Q.   How do you know Jon?
22   A.   We have a small building as part of our
23        property that we rent out, and Jonathan and
24        his partner rented that building from us at
25        the time.  He had a heating and
```

| | | |
|---|---|---|
| 1 | | air-conditioning-- he was a renter and then |
| 2 | | he also did the heating and cooling for the |
| 3 | | church. |
| 4 | Q. | And did you have occasion to visit with Jon |
| 5 | | about his family and his children? |
| 6 | A. | Yes.  As he worked around the building we got |
| 7 | | friendly and we had a lot of conversations |
| 8 | | about, you know, what was going on in his |
| 9 | | life and that kind of thing. |
| 10 | Q. | All right.  Do you have any observations or |
| 11 | | comments you wish to make to the Court |
| 12 | | regarding Jon and his family and his |
| 13 | | children? |
| 14 | A. | I have not had direct contact with his |
| 15 | | children; but in the time that we had |
| 16 | | conversations together most of what he talked |
| 17 | | about was his relationship with his daughters |
| 18 | | and how much they meant to him and how his |
| 19 | | goal in life was to be a good father to them. |
| 20 | | And I had no inclination in any sort of way |
| 21 | | that that wasn't the absolute truth. |
| 22 | Q. | Was there anything else you want to tell the |
| 23 | | Court? |
| 24 | A. | Not necessarily, unless they have questions |
| 25 | | of me. |

1           MR. FRANCIS:  That's all I have,

2      Judge.

3           THE COURT:  Ms. Kenney, did you have

4      questions?

5                    CROSS-EXAMINATION

6      BY MS. KENNEY:

7  Q.  What time frame was it that the defendant

8      rented this-- or used this building that

9      belonged to the church?

10  A.  Going to guess it was about 2009, 2010.

11     Around in there.  I should have looked it up.

12     But it's been awhile back.

13  Q.  Thank you.

14  A.  Uh-huh.

15           MS. KENNEY:  Thank you, Your Honor.

16           MR. FRANCIS:  No redirect, Judge.

17           THE COURT:  Thank you very much.

18     You may step down.

19           Mr. Francis.

20           MR. FRANCIS:  Judge, I would call

21     Mr. Bruce Robinson.

22           THE COURT:  All right.

23     Mr. Robinson, please come forward.

24           MR. FRANCIS:  And Ms. Seel, may she

25     be excused?

```
 1                    THE COURT:  She may.

 2               I assume that's correct.

 3               Mr. Robinson, if you'll come to the

 4          witness chair and raise your right hand.

 5                    BRUCE H. ROBINSON,

 6          called as a witness on behalf of the

 7          defendant, was sworn, and testified as

 8          follows:

 9                    DIRECT EXAMINATION

10          BY MR. FRANCIS:

11     Q.   Mr. Robinson, will you tell the Court what

12          you do for a living?

13     A.   I'm a mechanical contractor, sir.

14     Q.   Sir, do you know Jon Kearn?

15     A.   Quite well.

16     Q.   How did you become acquainted with Jon?

17     A.   I'll tell it as shortly as I can.  I was

18          doing some business with his partner at the

19          time the partnership was alive, and his

20          partner let me down.  And I complained to my

21          daughter, who turns out to be friends with

22          Jonathan, and she said, you really need to

23          talk about it with Jonathan.  And I said,

24          that's not necessary.  But Jonathan sought me

25          out even though the partnership had been
```

```
1              dissolved.  We struck up a friendship.  I've

2              taken the opportunity to mentor him.  He

3              works for me.  I work for him.  And through

4              that process we became quite great friends.

5      Q.      How long have you and Mr. Kearn worked

6              together?

7      A.      Just a little over four years.

8      Q.      And were you working with him as recently as

9              just this past summer?

10     A.      Oh, yes.

11     Q.      Did you have an opportunity to see what his

12             work ethic was like?

13     A.      I'll tell you a little story about that.  I

14             get busy from time to time, and I would ask

15             Jon to do things for me.  And he was working

16             at my house, and I knew there was some

17             valuables stashed in the area where he was

18             working.  It didn't bother me.  And he

19             shortly came to me and he said, Bruce, I need

20             to talk to you about something.  And he took

21             me aside and said, I found some valuables.

22             And he said, I put them back where they were.

23             And I said, what else?  And he said, I didn't

24             tell a soul.  He's smiling.  He remembers

25             this story.  It was-- his honesty is just
```

```
1              unparalleled.  His kindness is maybe to a

2              fault.  I've seen him give away more than he

3              even has to people that he regards as needy.

4     Q.  Did you have an opportunity to see Jon

5              interact with his children?

6     A.  I did not.  I did not.

7     Q.  Is there anything else that you care to tell

8              the Court about?

9     A.  As Pastor Seel said, when you're with

10             Jonathan, all he wants to talk about is his

11             daughters.  And it occurs to me they are very

12             special, and I wish that he could be reunited

13             with his daughters as soon as possible.

14    Q.  Thank you, sir.

15                  THE COURT:  Ms. Kenney, do you have

16             any examination?

17                  MS. KENNEY:  No, Your Honor.  Thank

18             you.

19                  THE COURT:  All right, sir.  Thank

20             you.  You may step down.

21                  MR. FRANCIS:  May he be excused

22             also?

23                  THE COURT:  He may.

24                  MR. FRANCIS:  I would call Kathy

25             Markham, please.
```

1        THE COURT:  All right.  Ms. Markham.

2    Ms. Markham, you've seen the routine now.  If

3    you would pause and raise your right hand, I

4    will be grateful.  Thank you.

5                    KATHY MARKHAM,

6    called as a witness on behalf of the

7    defendant, was sworn, and testified as

8    follows:

9        THE COURT:  Please be seated.

10                DIRECT EXAMINATION

11   BY MR. FRANCIS:

12   Q.  Ms. Markham, would you please tell the Court

13       your relationship with Mr. Kearn?

14   A.  Sure.  Jon is my nephew.  My brother is

15       Jonathan's father.

16   Q.  I have a little hearing difficulty.  Could

17       you speak a little louder, please?

18   A.  Jon is my nephew.  Jon's father, Ed, is my

19       brother.

20   Q.  All right.  Was there an opportunity you had

21       to watch Jon interact with his children?

22   A.  Yes.  Actually, we've lived in the same town

23       ever since Jon was a baby.  In fact, Jon was

24       born while I lived with his parents.  We

25       shared a room.  So I've known Jon all his

```
 1              life.  Our children grew up together.  And
 2              then my daughters and Jon's children were
 3              kind of the same age, attended church camps
 4              together, Bible camps.  We were not daily in
 5              touch, but I was able to witness the
 6              children.
 7    Q.   Do you have an opinion as to-- would you tell
 8              the judge how he interacted with his
 9              children?  Was he a loving father?
10    A.   Yes.  Jon was a great dad.  Always looking
11              for creative and adventurous opportunities
12              for the children.  Like many young families,
13              they didn't have a lot of money, but Jon
14              found very creative ways to give his kids
15              better opportunities than movies and TVs and
16              electronics.  He had lots of opportunities to
17              take them on hikes and seeing nature and was
18              involved with lots of creative things with
19              his children that a lot of kids don't have
20              the opportunity or don't take the opportunity
21              to do.
22    Q.   Was there anything else you wanted to tell
23              the Court about Jon that you have not?
24    A.   Jon lived with us for six months right after
25              his charges, and I can genuinely tell you
```

1     that his heart is for his children.  I think

2     that's probably all-- all I would have to

3     say.

4              MR. FRANCIS:  I don't have any

5     further questions, Your Honor.

6              THE COURT:  Ms. Kenney, do you wish

7     to examine?

8              MS. KENNEY:  Yes, Your Honor.

9                   CROSS-EXAMINATION

10    BY MS. KENNEY:

11    Q.   Ms. Markham, did you have an opportunity to

12         see the house where the defendant last lived

13         with all four of his daughters?

14    A.   I did.

15    Q.   Did you ever go into that house?

16    A.   Yes, I did.

17    Q.   Can you describe for the Court the condition

18         of that house?

19    A.   I think that a lot of things had been removed

20         at the time that I actually entered the home,

21         so we were just going in to remove a few

22         remaining items.

23    Q.   So you hadn't actually been in there when he

24         was living with his daughters?

25    A.   No.  No, I was not.

```
1   Q.   So you couldn't describe the living

2        conditions in which the children were living?

3   A.   No, I could not.

4   Q.   All right.  Thank you.

5                  MR. FRANCIS:  I'm done.

6                  THE COURT:  All right.  You may step

7        down.  Thank you very much.

8                  And the witness is excused?

9                  MS. KENNEY:  Yes, Your Honor.

10                 THE COURT:  All right.  Mr. Francis.

11                 MR. FRANCIS:  Judge, my final

12       witness is Terry Barker.

13                 THE COURT:  I'm sorry, can you say

14       that again?

15                 MR. FRANCIS:  Terry Barker,

16       B-A-R-K-E-R.

17                 THE COURT:  Mr. Barker, if you will

18       come forward.  And before you're seated, if

19       you'll raise your right hand, we'll

20       administer the oath.

21                      TERRY BARKER,

22       called as a witness on behalf of the

23       defendant, was sworn, and testified as

24       follows:

25                      DIRECT EXAMINATION
```

```
 1          BY MR. FRANCIS:

 2     Q.   Mr. Barker, can you tell us how you're

 3          acquainted with Jon Kearn?

 4     A.   I've been acquainted with Jon and his family

 5          for quite a number of years.  I think since

 6          1984.

 7     Q.   Have you had any interaction with Jon in his

 8          business with heating and air-conditioning?

 9     A.   Yes.  Quite a bit.

10     Q.   And can you tell the Court what that is?

11     A.   He's done a number of projects for me

12          personally, and I have recommended him to

13          other people, including family members, and

14          he's done a number of jobs, completed those

15          jobs, done very good work.

16     Q.   Have you had an opportunity to see Jon

17          interact with his children?

18     A.   Yes, I have.

19     Q.   Can you tell the Court what those

20          observations are?

21     A.   Well, I characterize them as healthy.  The

22          children seem to be happy.  And I saw no

23          signs of any stress or duress there.  In

24          fact, on one of the projects I think his-- he

25          needed to bring his youngest daughter,
```

```
 1            Cassidy, with him, and he did, and so I got

 2            to interact with her quite a bit.  And she

 3            seems to be very, very happy, healthy, well

 4            adjusted and loving towards her dad.  So--

 5     Q.     About how long would that have been?

 6     A.     Well, I'd say probably year and a half to two

 7            years ago.

 8     Q.     Okay.  Was there anything else you wanted to

 9            tell the Court about Jon?

10     A.     Yes.  He's-- he's a great craftsman.

11            Productive guy.  A guy that does well in his

12            business.  I'd characterize him personally as

13            unusually caring, loving.  Kind of guy that

14            just naturally cares about people and

15            interacts well with people and just appears

16            to very much love people.

17     Q.     I don't believe I have any further questions.

18                     THE COURT:  Do you have questions,

19            Ms. Kenney?

20                     MS. KENNEY:  Just very briefly, Your

21            Honor.

22                     CROSS-EXAMINATION

23     BY MS. KENNEY:

24     Q.     Is it Mr. Barker?  Is that correct?

25     A.     Yes.
```

1    Q.    Did you have an opportunity to see the home

2          where the children were living with the

3          defendant?

4    A.    I was never in their home, no.

5    Q.    Okay.  Thank you.

6                    MS. KENNEY:  No other questions,

7          Your Honor.

8                    MR. FRANCIS:  No questions in light

9          of that.

10                   THE COURT:  Sir, you may step down,

11         and you are released.

12                   MR. FRANCIS:  Judge, that would

13         conclude the testimony.

14                   THE COURT:  Thank you very much.

15                   MS. KENNEY:  Your Honor, I didn't

16         intend to present any evidence, but I think

17         based on the testimony that the Court has

18         heard I do want to put on a little limited

19         testimony from the case agent.

20                   THE COURT:  Please proceed.

21                   MS. KENNEY:  Call Case Agent Cassidy

22         Casner.

23                   THE COURT:  Ms. Casner, if you would

24         stop before you're in the witness chair and

25         raise your right hand, please.

                          CASSIDY CASNER,

1

2          called as a witness on behalf of the

3          plaintiff, was sworn, and testified as

4          follows:

5                    THE COURT:  All right.  Please be

6          seated.

7                    DIRECT EXAMINATION

8     BY MS. KENNEY:

9     Q.   Agent Casner, I know the Court heard from you

10         back during the trial in May, but just for

11         the record, what do you do for a living?

12    A.   I'm a criminal investigator for Homeland

13         Security Investigations in Kansas City,

14         Missouri.

15    Q.   And you were the case agent assigned to the

16         investigation that involved the defendant,

17         Jonathan Kearn?

18    A.   Yes.

19    Q.   Did you participate in the execution of a

20         search warrant at the defendant's home in

21         May?

22    A.   Yes.

23    Q.   Do you recall the address?

24    A.   429 Southwest Taylor Street, I believe.

25    Q.   Somewhere around that?

| | | |
|---|---|---|
| 1 | A. | I could be wrong, yes. |
| 2 | Q. | And do you recall if that would have been |
| 3 | | around early May of 2013? |
| 4 | A. | Yes. |
| 5 | Q. | Can you describe-- when you first arrived, |
| 6 | | who was at the home? |
| 7 | A. | Mr. Kearn, his daughters, and then agents |
| 8 | | from my office as well as police officers |
| 9 | | from the Topeka Police Department. |
| 10 | Q. | Was the defendant there when you arrived?  Or |
| 11 | | did he come later? |
| 12 | A. | No, he was there. |
| 13 | Q. | Okay.  Can you describe the conditions of the |
| 14 | | home? |
| 15 | A. | The house-- the inside of the home was pretty |
| 16 | | cluttered, and there was animal feces on the |
| 17 | | floors in the children's bedrooms.  One of |
| 18 | | the bedrooms appeared to have, like, rice |
| 19 | | from a bag that had been spilled and was all |
| 20 | | over the floor.  The kitchen, a lot of food |
| 21 | | items were in the refrigerator, which, you |
| 22 | | know, I didn't see any, but indicates to me |
| 23 | | that there could be infestation of |
| 24 | | cockroaches or other rodents.  Lots of |
| 25 | | laundry. |

1   Q.   What about the beds?  Were they made?

2   A.   No.

3   Q.   Were there sheets on the beds?

4   A.   I don't recall specifically.

5   Q.   Okay.

6   A.   But it seemed, if I remember right, there

7        were just kind of blankets thrown on the

8        beds.

9   Q.   What was the condition of the youngest

10       daughter?

11  A.   She was physically dirty.  I was not there

12       when they made entry on the house, but it was

13       reported to me that she was only clothed in a

14       T-shirt, that one of the agents actually

15       found some pants and some shoes for her to

16       put on.

17  Q.   And when you said there were animal feces in

18       the house, what kind of animals?

19  A.   There was a dog and a cat that just had a

20       litter of kittens and in the basement there

21       was a duck.  And I think the remains of

22       another duck were also in the basement.

23            MS. KENNEY:  No further questions,

24       Your Honor.

25            THE COURT:  Mr. Francis.

```
 1                    CROSS-EXAMINATION
 2          BY MR. FRANCIS:
 3     Q.   Agent Casner, did you happen to see any of
 4          the children besides the smallest one?
 5     A.   I saw all four children.
 6     Q.   And did the other children appear to be well
 7          cared for?
 8     A.   Yes.
 9     Q.   All right.  And were the children saddened in
10          any way they were going to be separated from
11          their father?
12     A.   Yes.
13     Q.   And actually they were crying, weren't they?
14     A.   I believe at one point, yes.
15     Q.   And just because the house must have been
16          messy, you don't have any notion of how good
17          of a parent he was, do you?
18     A.   No, I do not.
19                    MR. FRANCIS:  I don't have any
20          further questions.
21                    THE COURT:  Ms. Kenney, anything
22          else?
23                    MS. KENNEY:  No, Your Honor.
24                    THE COURT:  All right.  You may step
25          down.
```

1           Counsel, do you have any additional

2       argument you want to make before I share my

3       proposed findings and tentative sentence?

4               MR. FRANCIS:  None other than was

5       made on the sentencing memorandum, Judge.

6               THE COURT:  Ms. Kenney?

7               MS. KENNEY:  No, Your Honor.  Thank

8       you.

9               THE COURT:  All right.  In terms of

10      the proposed findings and tentative sentence,

11      let me begin with the findings that I intend

12      to make.  First, as outlined in the

13      presentence report, I intend to find the

14      total offense level that applies to the

15      crimes of conviction is a level 40.  I also

16      intend to find that Mr. Kearn's criminal

17      history is a category 1.

18              There are three counts of

19      conviction.  On Count 1, the statute

20      authorizes a sentence of at least 15 years,

21      with a maximum of 30 years; Count 2, a

22      minimum of five and a maximum of 20 years;

23      and Count 3, a sentence range of zero to 10

24      years.  Under the sentencing guidelines, they

25      recommend a sentence in the range of 292

1    months to 365 months.  I intend tentatively

2    to sentence Mr. Kearn to a sentence on

3    Count 1 of 292 months; on Count 2, 240

4    months; on Count 3, 120 months; all counts to

5    be served concurrently to one another.

6            I do want to pause and explain what

7    drives the guideline range and my tentative

8    sentence.  The primary factors that direct to

9    that are the total offense level of 40 and

10   the criminal history category 1 plays a role,

11   but it mostly is driven by the adjusted

12   offense level of category-- or, I'm sorry, of

13   adjusted offense level 40.  Of the 40, 32 is

14   derived from the base offense level of 32.

15   And I should explain where that 32 comes

16   from.

17           First, Mr. Kearn was convicted of a

18   charge under 18 U.S.C. Section 2251(e), which

19   makes it unlawful to produce child

20   pornography.  A conviction under this

21   provision is governed by Guideline Section

22   2G2.1.

23           At an earlier time, in the 1980s,

24   the base offense level for this guideline for

25   a conviction under this provision was a level

1      25.  In 1995, Congress passed the Sex Crimes

2      Against Children Prevention Act of 1995 and

3      it directed the United States Sentencing

4      Commission to increase the penalties for

5      convictions under Section 2251 and as a

6      result the base offense level increased from

7      25 to 27.

8              Nine years later the Commission

9      again implemented directives in the

10     protective act that Congress has passed, and

11     that resulted in the base offense level being

12     increased for crimes under Section 2251 from

13     27 to 32.  This is-- this 32 base offense

14     level is the base offense level, Mr. Kearn,

15     that the presentence report assigns to you.

16             There are, as reflected in the

17     presentence report, eight additional levels

18     of enhancements that are applied in

19     paragraphs 36, 37, and 38.  They represent

20     enhancements of various levels that were

21     imposed under Sentencing Commission issued

22     guidelines that, for instance, added

23     additional punishment for children under 12

24     years old.  That adds four levels.  Here, the

25     production involved a child that was three

1          years old at the time of production.

2                    Paragraph 37 added an additional

3          two, and the jury concluded, based on

4          evidence presented during the trial, that

5          Mr. Kearn had not only produced but

6          distributed pornographic images of this

7          child, including providing them, as it turned

8          out, to a police officer acting undercover in

9          Australia.

10                   Last, under paragraph 38, a

11         two-level enhancement is provided if a

12         defendant -- as was the case here -- a

13         defendant is found to have an image of his

14         own child.  So those add an additional eight

15         levels.

16                   I might also explain that

17         Mr. Kearn's decision not to accept

18         responsibility added a considerable amount of

19         time to the sentence that was calculated

20         under the sentencing guidelines.

21                   Mr. Kearn, in terms of supervised

22         release following custody, the relevant

23         provisions and statutory provisions authorize

24         a supervised release on each count from at

25         least five years to a period of life.  The

1          sentencing guidelines on all three crimes of

2          conviction reflect the same.  My tentative

3          sentence plans to impose a five-year term of

4          supervised release on each of the three

5          counts, to be served concurrently.

6                    Under the statute, Mr. Kearn is

7          ineligible for probation, and that is not a

8          component of the sentence.

9                    The fine authorize-- I'm sorry.  The

10         statute authorizes a fine of $250,000 for

11         each of the three counts, while the

12         guidelines recommend a fine of up to

13         $250,000.  In light of the circumstances as

14         reported in the presentence report, I do not

15         intend to impose a fine.

16                    Restitution is not requested here,

17         and so that is not a component of my

18         sentence.

19                    In terms of special assessment

20         payable to the Crime Victims Fund, I do

21         intend to impose a $300 obligation payable to

22         that fund.

23                    Finally, the denial of federal

24         benefits does not apply here and it's not a

25         component of the sentence.

1              As you likely have heard, Mr. Kearn,

2      I am required by statute to impose a sentence

3      on you that is sufficient, but not greater

4      than necessary, to comply with the purposes

5      of sentencing that our Congress has chosen to

6      identify in federal statute.

7              This is a serious crime and the

8      sentence is reflective of that.  I believe

9      that this sentence is sufficient, but no

10     greater than necessary, to promote the

11     serious nature of the criminal offenses you

12     committed, to promote respect for the law

13     among others, and to provide just punishment

14     and to deter criminal conduct and protect the

15     public from further crimes that you might

16     commit.

17             The supervised release in addition

18     or at the end of the prison sentence will

19     allow you to receive continuing correctional

20     treatment effectively and assist your efforts

21     to reintegrate into the community.

22             As I said, the $100 per count

23     conviction is mandatory and I intend to

24     impose that, of course.

25             The conditions of supervision that

1      will apply during your term of supervised

2      release, I intend to impose all mandatory and

3      special conditions that are set out in part D

4      of the presentence report.  Federal statute

5      requires the Court to impose -- and I plan to

6      impose those, Mr. Kearn -- that you will be

7      prohibited by federal law from possessing or

8      purchasing a firearm or other ammunition

9      because of the convictions.  This prohibition

10     against purchasing or possessing a

11     destructive device or any other dangerous

12     weaponry is, I find, warranted to ensure the

13     safety of the public while you are serving

14     your term of supervised release.

15              The nature of the offense, or the

16     offenses, the defendant has committed and his

17     history that's outlined in the presentence

18     report warrant the conditions for no contact

19     with the victim of this offense and other

20     minors, a prohibition against possessing any

21     pornographic materials, a condition requiring

22     the defendant to submit to a sex offender

23     assessment, and one requiring the defendant

24     to follow the probation office's policies in

25     regards to abiding by computer and internet

1          monitoring.

2                    In addition, the Court finds that

3          the condition requiring a search of Mr.

4          Kearn's person, home, or any other property

5          he controls on reasonable suspicion of the

6          conditions of supervised release or

7          possession of contraband is necessary to

8          monitor the defendant's compliance with his

9          supervision.

10                   And last, I notice, and I'm not sure

11         what the parties' plan on this is, there is a

12         forfeiture allegation in the indictment.  I

13         don't believe a preliminary order of

14         forfeiture has been filed and so forfeiture

15         is not a portion of this sentence.

16                   So in broad form, that's the

17         tentative sentence I plan to impose.  I

18         recognize it is a significant sentence, but I

19         believe it conforms to explicit policy

20         choices that the representatives of our

21         country have made and I plan to impose a

22         sentence that is faithful to those policy

23         choices.

24                   I will now hear from the parties

25         with any sentencing comments or objections

1          they wish to make.

2                    Ms. Kenney.

3                    MS. KENNEY:  Your Honor, although

4      the Court's aware that the government was

5      requesting the statutory maximum of 30 years

6      in this case, we do not have any objection to

7      the Court's proposed sentence of 292 months,

8      understanding that the Court has taken into

9      consideration all of the evidence that you

10     heard at the jury trial in addition to the

11     information that was in the presentence

12     report and the information that was presented

13     to the Court at today's sentencing.  So for

14     all of those reasons we have no objection to

15     the Court's tentative sentence.

16                    THE COURT:  Thank you, Ms. Kenney.

17     It was may feeling that the trial and the

18     exhibits that were admitted as part of your

19     case I believe that a sentence in the range

20     of your request is greater than necessary

21     under these facts and so I am not imposing

22     that sentence.  I understand your position.

23                    MS. KENNEY:  Thank you, Your Honor.

24                    THE COURT:  Mr. Francis, I'll hear

25     from you with objections or other concerns as

1          well.

2                    MR. FRANCIS:  I have a couple of

3          comments.  One was in regard to the

4          understanding of the victim and no contact

5          with the victim.  I think there was a letter

6          that was received from a counselor where the

7          victim talks about the interaction my client

8          had.  And I'm wondering as with regards to

9          all of his children if the Court might allow

10         an exception that that is deemed in some

11         fashion therapeutic benefit for the children.

12         I mean, there were three girls that are not

13         involved in this out of the four.

14                    THE COURT:  You're talking about

15         while he's in custody, or are you talking

16         about during the term of supervised release?

17                    MR. FRANCIS:  During the term while

18         he's under supervision.  And in custody if

19         that applies to custody.

20                    THE COURT:  Yeah, I'm not sure.  I

21         don't think the restriction prohibiting

22         contact with the victim or any minor applies

23         during the term of his incarceration.  Maybe

24         I'm wrong about that.

25                    MS. KENNEY:  Your Honor, I

1          understand that would be a condition of

2          supervised release.  I assume that while the

3          defendant is incarcerated that visitation and

4          contact would somewhat be controlled by the

5          Bureau of Prisons and their policies.

6          Frankly, all of his children will be of the

7          age of majority by the time he completes his

8          sentence.

9                    THE COURT:  Yeah.  I think-- doesn't

10         that obviate the concern?

11                   Mr. Francis, as I understand it, the

12         Bureau of Prisons decides who Mr. Kearn can

13         visit with during his incarceration.  Do you

14         agree with that?

15                   MR. FRANCIS:  I agree with that.

16                   THE COURT:  And I think as it

17         applies to his children, given the sentence

18         that I plan to impose, a concern about

19         contact is obviated.  If for some

20         circumstance somebody is still of minority

21         age when he is under his term of supervised

22         release, I think he would be in a position to

23         present that issue at the time.  So I

24         understand the request.  I'm not going to

25         modify the condition.

37

1              MR. FRANCIS:  The other thing I

2     would ask the Court, if the Court would

3     consider recommendation to the Bureau of

4     Prisons to placement in Englewood, Colorado.

5     He does have a lot of family support behind

6     him.  I would ask the Court to grant that

7     favorable consideration or recommendation.

8              THE COURT:  Anything else,

9     Mr. Francis?

10             MR. FRANCIS:  No.

11             THE COURT:  Ms. Kenney, is there any

12    objection to the recommendation for

13    Englewood?

14             MS. KENNEY:  No, Your Honor.

15             THE COURT:  I'll include that.

16             Mr. Francis, does Mr. Kearn wish to

17    make a statement today?

18             MR. FRANCIS:  I believe he does,

19    Your Honor.

20             THE COURT:  Mr. Kearn, you are

21    entitled by rule to make a statement.  I'm

22    mindful that this is a case that was tried

23    and you have applied to appeal, which that is

24    of course your right, but I'm just going to

25    caution you that you're now going to talk on

1          the record and anything that you say can be

2          used by the law enforcement officials or

3          other authority in an additional proceeding.

4          Do you understand that issue?

5                    THE DEFENDANT:  I do, Your Honor.

6                    THE COURT:  All right.  I'll

7          recognize you now, sir, for your statement.

8                    THE DEFENDANT:  I wanted to go on

9          record with the Court that I miss my

10         children.  They miss me even more.  I also

11         want Ms. Kenney, the prosecutor, and

12         Ms. Casner, as well as ICE and Homeland

13         Security and yourself, Your Honor, to know

14         that I have been completely forthright with

15         you since the moment you came in my house and

16         took my kids away, and I have told the truth

17         to you 100 percent of the time, and I feel if

18         that's something you don't understand.  At

19         this point I'm at a loss.  I know that God's

20         gotten a lot better people through worse

21         things.  Thank you, Your Honor.

22                    THE COURT:  Thank you, Mr. Kearn.

23                    All right.  Excuse me just a second.

24                    All right.  Mr. Francis, do you know

25         of any reason I should not impose sentence at

1          this time?

2                    MR. FRANCIS:  No, Your Honor.

3                    THE COURT:  Can I ask Mr. Kearn,

4          please, to stand, and I will formally impose

5          sentence.

6                    The Court determines that the

7          presentence investigation report and the

8          previously stated findings are accurate and

9          orders those findings incorporated into the

10         following sentence.  Under the Sentencing

11         Reform Act of 1984, it is the judgment of

12         this Court that the defendant, Jonathan

13         Kearn, is hereby sentenced to the custody of

14         the Bureau of Prisons for a term of 292

15         months for Count 1, 240 months for Count 2,

16         and 120 months for Count 3.  All counts are

17         to be served concurrently to one another.

18                   This term of imprisonment shall be

19         followed by five years of supervised release

20         for each count, those terms also served

21         concurrently.

22                   I will include, as requested, a

23         recommendation to the Bureau of Prisons that

24         Mr. Kearn be designated for assignment to the

25         Bureau of Prisons facility in Englewood,

1          Colorado.

2                    Mr. Kearn, you need to know I can

3          recommend to the Bureau of Prisons, but they

4          are not-- they make their own judgments and

5          they're not required to seek my

6          recommendations.

7                    Mr. Kearn, within 72 hours after you

8          are released from custody of the Bureau of

9          Prisons, you must report to the United States

10         Probation Office in the district where you

11         are released.  While you are on supervised

12         release, you must not commit any other

13         federal, state, or local crime; you must

14         comply with all the standard conditions that

15         this Court has adopted; and you must also

16         comply with the special and mandatory

17         conditions that are spelled out in part D of

18         the presentence report.

19                   Mr. Kearn, you are ordered to pay to

20         the United States a special assessment of

21         $300, payable to the Crime Victims Fund.

22         Under 18 U.S.C. Section 3013, payment of this

23         assessment is due immediately, but you may

24         satisfy this obligation while you are in the

25         custody of the Bureau of Prisons.

1              No fine is imposed.  In the event

2       that any of the guideline determinations made

3       in this case are later found to be incorrect,

4       the record should reflect that the Court

5       would impose a sentence identical to the

6       sentence I have just imposed under the

7       factors that are spelled out in 18 U.S.C.

8       Section 3553(a).

9              Both the government and Mr. Kearn

10      are advised of their respective rights to

11      appeal from this sentence and the convictions

12      on which this sentence is based.  Any appeal

13      taken from this sentence is subject to

14      18 U.S.C. Section 3742.

15             Mr. Kearn, you are advised that it

16      is your right to appeal the convictions and

17      this sentence, but you can lose your right to

18      appeal if you do not timely file a notice of

19      appeal in the district court.  Under

20      Rule 4(b) of the Federal Rules of Appellate

21      Procedure, you have 14 days after the entry

22      of judgment to file a notice of appeal.  If

23      you request, the clerk of our court will

24      immediately prepare and file a notice of

25      appeal on your behalf.  If you are unable to

42

1          pay the costs of an appeal, you have the

2          right to apply for leave to appeal in forma

3          pauperis.

4                    At the end of this hearing the Court

5          remands the defendant to the custody of the

6          United States Marshal Service pending

7          designation by the Federal Bureau of Prisons.

8          That is the sentence of the Court.

9                    All right.  Ms. Kenney, are you

10         aware of any other undecided issues that the

11         Court needs to decide in this matter?

12                   MS. KENNEY:  I don't believe so,

13         Your Honor.  There's no counts to dismiss and

14         I think the Court has already ruled on the--

15         any pending motions.

16                   THE COURT:  All right.  Very well.

17                   Mr. Francis, are you aware of any

18         undecided or unresolved issues that the Court

19         needs to take up?

20                   MR. FRANCIS:  No, sir.

21                   THE COURT:  All right.  Thank you

22         for your appearances today, and this matter

23         will be in recess.

24                        (THEREUPON, the hearing

25         concluded).

1          UNITED STATES OF AMERICA   )
                                      )    ss:
2          DISTRICT OF KANSAS         )

3

4                    C E R T I F I C A T E

5

6          I, Sherry A. Harris, Certified Shorthand

7     Reporter in and for the State of Kansas, do

8     hereby certify that I was present at and

9     reported in machine shorthand the proceedings

10    had the 16th day of November, 2015, in the

11    above-mentioned court; that the foregoing

12    transcript is a true, correct, and complete

13    transcript of the requested proceedings.

14         I further certify that I am not attorney

15    for, nor employed by, nor related to any of

16    the parties or attorneys in this action, nor

17    financially interested in the action.

18         IN WITNESS WHEREOF, I have hereunto set

19    my hand and official seal at Topeka, Kansas,

20    this 27th day of June, 2016.

21

22                    /s/ Sherry A. Harris
                      Certified Shorthand Reporter
23

24

25