FILED
United States Court of Appeals
Tenth Circuit

**July 21, 2017**

Elisabeth A. Shumaker
Clerk of Court

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JONATHAN KEARN,

    Defendant - Appellant.

No. 15-3121

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. NO. 5:13-CR-40057-DDC-1)**

_____

Daniel T. Hansmeier, Appellate Chief (Melody Brannon, Federal Public Defender, with him on the briefs), Office of the Federal Public Defender, Kansas City, Kansas, for Appellant.

Christine E. Kenney, Assistant United States Attorney (Thomas E. Beall, United States Attorney, with her on the brief), Office of the United States Attorney, Topeka, Kansas, for Appellee.

_____

Before **TYMKOVICH**, Chief Judge, **MATHESON** and **MORITZ**, Circuit Judges.

_____

**TYMKOVICH**, Chief Judge.

_____

  A jury convicted Jonathan Kearn of federal child pornography charges

arising from pictures he took of his four-and-a-half year old daughter and shared

on the internet.  He was sentenced to a lengthy prison term followed by five years of supervised release.

Kearn contends the district court committed various errors at trial and sentencing.  First, Kearn raises several evidentiary objections.  He argues that the government elicited hearsay testimony when it asked a witness about the contents of an inculpatory report written by an expert who did not testify at trial.  Even assuming this testimony was hearsay, however, we find no plain error, since admitting it did not affect the outcome of the trial.  Kearn also argues that testimony identifying certain images as "child pornography" was inadmissible, because it was not helpful to the jury.  The testimony was helpful, however, since whether the images depicted sexually explicit conduct was a fact in issue.  The testimony also helped explain steps in the investigation.  Finally, Kearn argues that evidence was improperly admitted under Federal Rule of Evidence 404(b), but he fails to direct us to any evidence actually admitted under that rule.

Second, Kearn argues the jury should have been instructed that they had to agree unanimously on which specific images formed the basis for conviction.  In his view, all of the jurors had to agree that at least one specific image violated federal law.  But this misstates the case law: unanimity is only required for elements of a crime, not for means of satisfying a given element.  Different images satisfying the statutory criteria are merely different means.

Third, Kearn argues that a supervised-release condition that will prohibit him from contacting his victim—his youngest daughter—was improper, because it was not "reasonably related" to the offense of conviction, and because it interfered with his right of familial association.  But he has waived these arguments, which he did not make at sentencing, by failing to argue for plain error.

Finally, Kearn argues that the cumulative effect of the errors in this case mandates reversal.  But we only identify one possible error here, so cumulative error analysis—which addresses whether *multiple* errors can prejudice a defendant—is unavailing.

We thus conclude that none of the issues Kearn raises requires reversal.

## I.  Background

Detective Sergeant Stuart Butler, a police investigator in Australia, operated an undercover online persona that purports to trade in child pornography in order to help catch perpetrators.  In 2013, "cheyenneandliberty@yahoo.com" began an e-mail exchange with Detective Butler, during which "cheyenneandliberty" sent several images of young girls later identified as Kearn's daughters.  In most of the pictures the girls were clothed, but one of the images showed the genitals of Kearn's youngest, four-and-a-half year old daughter.  "Cheyenneandliberty" also sent Detective Butler a link to three explicit videos of young girls who were not Kearn's daughters.  In these e-mails,

"cheyenneandliberty" described himself as a thirty-eight year old from Kansas, and a single father to four daughters: a four-and-a-half year old, two ten-year-old twins, and a thirteen year old.  When Detective Butler asked him for a family photo, "cheyenneandliberty" sent him a photograph of Kearn standing with three of his daughters.

Detective Butler looked at the data embedded in the digital images, which shows when they were taken and the device used to take them.  The data showed the explicit images were taken with an iPhone 4s shortly before "cheyenneandliberty" sent the e-mails.  This fact indicated to Detective Butler that "cheyenneandliberty" was not merely sending images he found on the internet, but taking the images himself.  He therefore referred the exchange to the U.S. Department of Homeland Security.

Investigators found the IP address used to send some of the images was associated with Kearn's Kansas home address.  Kearn's age, family situation, and location matched the description given by "cheyenneandliberty."  Investigators executed a search warrant at Kearn's house.  Kearn's daughters were present, and the investigating agent, Special Agent Cassidy Casner, recognized the girls from the images sent to Detective Butler.  Investigators seized Kearn's iPhone 4s—the same model that had taken the photographs—and footage from his home security system.

When Agent Casner reviewed the home security footage, it corroborated the e-mails sent to Detective Butler and the embedded data from the images. That is, the footage confirmed that Kearn was using his phone when the e-mails were sent; Kearn was with his daughters when the pictures were taken; and the daughters were wearing the same clothes shown in the pictures on the dates the pictures were taken.

A grand jury indicted Kearn with (1) permitting his minor child to engage in sexually explicit conduct in violation of 18 U.S.C. § 2251(b); (2) distributing child pornography in violation of 18 U.S.C. § 2252(a)(2); and (3) possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B).

At trial, in addition to the home security footage and the e-mail exchange with Detective Butler, the government presented the expert testimony of Special Agent Craig Beebe, who specializes in forensic examinations of electronic evidence. Agent Beebe testified that Kearn's iPhone contained explicit images of young girls, evidence of the "cheyenneandliberty" e-mail address, and two videos of Kearn's youngest daughter naked with Kearn's voice in the background. Agent Beebe also found one of the images e-mailed to Detective Butler on the iPhone. On Kearn's computer, Agent Beebe found further evidence of "cheyenneandliberty," the website through which Detective Butler's undercover persona was contacted, and "ProudPapa," a nom de plume used in the e-mails with Detective Butler.

Kearn testified at trial.  He admitted he had taken the explicit photo and videos of his youngest daughter.  But in his defense, he said she had reported being molested by her mother's boyfriend and he had taken the photos and videos as evidence of the molestation.  A sheriff's report indeed showed that Kearn had reported this alleged molestation to the sheriff a year before the e-mail exchange with Butler.  Kearn denied any knowledge of the "cheyenneandliberty" account or the explicit images on his phone other than the ones of his youngest daughter. Kearn operated a heating and air conditioning business from his home, and suggested a former employee with access to his iPhone could have downloaded the images and e-mailed them to Detective Butler.

Kearn also presented evidence from his own computer expert, Andreux Doty.  Doty testified he found only an isolated reference to "cheyenneandliberty" in a file created from the iPhone data.  He testified he did not find any evidence in government materials he reviewed that the "cheyenneandliberty" e-mails had been sent from Kearn's phone.

The jury found Kearn guilty on all counts.  The district court sentenced Kearn to 292 months in prison followed by five years of supervised release, during which he may not contact minors or the victim of the offense (his youngest daughter).

## II. Analysis

Kearn raises a number of issues on appeal.  He argues various evidence introduced at trial was inadmissible on hearsay or relevancy grounds, and that the admission of the hearsay evidence violated his Confrontation Clause rights.  He also contends the court should have instructed the jury to agree unanimously on which specific images were the basis for his conviction.  He urges us to find these errors cumulatively mandate relief.  And he submits that a supervised-release condition that will prohibit him from contacting his victim—his youngest daughter—was improper.[1]

Kearn did not raise these issues at trial, so we review them for plain error. "Under the plain error standard, [the appellant] must demonstrate: (1) an error, (2) that is plain, meaning clear or obvious under current law, (3) that affects

---

[1]  We do not address in detail two other issues Kearn raises.  First, Kearn challenges the constitutionality of the Tenth Circuit reasonable-doubt instructions given at his trial, but we have recently upheld the constitutionality of those instructions.  *See United States v. Petty*, 856 F.3d 1306, 1311 (10th Cir. 2017) (concluding that the Tenth Circuit Pattern Jury Instruction on reasonable doubt, "taken as a whole, adequately convey[s] the concept of reasonable doubt to the jury").

Second, Kearn argues that if we do not find plain error, we should remand to the district court for an evidentiary hearing on claims of ineffective assistance of counsel.  But our decision in *United States v. Galloway*, 56 F.3d 1239 (10th Cir. 1995) (en banc) forecloses that approach.  *See id.* at 1240 ("Ineffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal.  Such claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed.").

substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Piper*, 839 F.3d 1261, 1265–66 (10th Cir. 2016) (citing *United States v. Rosales-Miranda*, 755 F.3d 1253, 1257–58 (10th Cir. 2014)). Crucially, "[t]o satisfy the third prong of plain-error review, a defendant generally must demonstrate that an error was 'prejudicial, meaning that there is a reasonable probability that, but for the error claimed, the result of the proceeding would have been different.'" *United States v. Bustamante-Conchas*, 850 F.3d 1130, 1138 (10th Cir. 2017) (en banc) (quoting *United States v. Algarate-Valencia*, 550 F.3d 1238, 1242 (10th Cir. 2008)).

We review each of the issues raised in turn, and find no plain error as to any.

A. *Hearsay Testimony*

Kearn first contends the district court improperly admitted hearsay evidence through his expert witness. At trial, Kearn presented the testimony of computer expert Andreux Doty, who testified he did not find any evidence the "cheyenneandliberty" e-mails were sent from Kearn's phone. On cross-examination, the government asked Doty what documents he had reviewed. As part of this line of inquiry, the government asked about a report prepared by a previously retained defense expert, Tammy Loehrs. Loehrs did not testify at trial. After Doty said he had read the Loehrs Report, the prosecutor asked him if "it would help [his] memory if [she] showed [him] a copy" of the report. R., Vol. 2

at 718.  When he said yes, she showed him the report, which was marked as a Government Exhibit.

The Loehrs Report, even though solicited by the defense, was substantially more inculpatory than Doty's report.  The prosecution asked Doty whether Loehrs "did a key word search for cheyenneandliberty . . . [that] resulted in over 1,000 hits located in numerous folders on . . . both the phone and the hard drive[.]"  R., Vol. 2 at 726–27.  The prosecution also asked whether the Loehrs Report located "45 hits" for the term ProudPapa—used in the e-mails with Detective Butler—on Kearn's iPhone.  R., Vol. 2 at 727.  Doty said the Loehrs Report asserted both those points.  On redirect, Kearn's lawyer asked Doty more questions about the Loehrs Report, and Doty criticized the Loehrs Report for failing to "validate" the more-than-one-thousand hits for "cheyenneandliberty" in the report, and for indicating that files on the computer had been accessed after the computer had been taken into custody.  R., Vol. 2 at 739–41.

Kearn contends that eliciting the contents of the Loehrs Report from Doty violated Federal Rule of Evidence 802, which generally prohibits the admission of hearsay evidence, as well as the Confrontation Clause of the Sixth Amendment.

Assuming without deciding that the Loehrs Report was hearsay and violated Kearn's rights under the Confrontation Clause, Kearn cannot demonstrate that the district court plainly erred by admitting it.  "To satisfy the third prong of plain-error review, a defendant generally must demonstrate that an error was

'prejudicial, meaning that there is a reasonable probability that, but for the error claimed, the result of the proceeding would have been different.'"

*Bustamante-Conchas*, 850 F.3d at 1138 (quoting *United States v. Algarate-Valencia*, 550 F.3d 1238, 1242 (10th Cir. 2008)).  Kearn cannot do that here.[2]

The prosecution's colloquy with Doty regarding the Loehrs Report is relatively short.  The facts elicited about the report from Doty were: (1) "there

---

[2]  Kearn argues that under the third prong of plain-error analysis "prejudice for purposes of a Confrontation Clause violation focuses 'on the particular witness, not on the outcome of the entire trial.'"  Aplt. Br. at 27 (quoting *United States v. Holloway*, 826 F.3d 1237, 1249 (10th Cir. 2016)).  But this conflates the prejudice requirement in the third prong of plain-error analysis with the showing of prejudice required to state a *violation* of the Confrontation Clause.  Although the word "prejudice" appears in both contexts, the cases are not referring to the same inquiry.

It is true that in order to state a violation of the Confrontation Clause, a defendant need only make a showing of prejudice as to a particular witness, not as to the trial as a whole.  *See, e.g.*, *Holloway*, 826 F.3d at 1249.  But the third prong of plain-error analysis is not where we address whether there has been a violation of the Confrontation Clause.  Rather, it is at the first prong of plain-error analysis, when we ask whether there is error, that we look to whether there is a violation of the Confrontation Clause—and therefore, whether there is prejudice as to a particular witness.

Here, then, because we assume error and decide the issue on the third prong, we ask not whether there has been a violation of the Confrontation Clause, but instead make the normal inquiry: whether there is a reasonable probability that, but for the error claimed, the result of the proceeding would have been different.  *See, e.g.*, *United States v. Pablo*, 696 F.3d 1280, 1293–94 (10th Cir. 2012) (finding that an assumed Confrontation Clause violation did not affect a defendant's substantial rights where the defendant would have been convicted even without the erroneous testimony).

was an application on [Kearn's] phone that was for storing a photograph," R.,
Vol. 2 at 725; (2) "the Loehrs[] examination also determined that the [e]-mail
cheyenneandliberty[] was being used on the iPhone with other accounts but
[Loehrs] was unable to recover any actual [e]-mails," R., Vol. 2 at 726; (3) "a key
word search for cheyenneandliberty . . . resulted in over 1,000 hits . . . [on] both
the phone and the [personal computer] hard drive," R., Vol. 2 at 726–27; and
(4) Loehrs found 45 hits for "ProudPapa" on the iPhone, R., Vol. 2 at 727.

Most of these points came out in the properly admitted non-hearsay
testimony of the prosecution's expert witness, Agent Beebe.  See R., Vol. 2
at 565–66 (password-protected application on phone for storing photographs
contained possible child pornography); R., Vol. 2 at 564–65 (examination
revealed that the "cheyenneandliberty" e-mail address was being used on the
phone); R., Vol. 2 at 580–81 (search results for "cheyenneandliberty" and
"ProudPapa").  The only distinction is that Special Agent Beebe did not number
the hits for "cheyenneandliberty" "over 1,000," but that distinction is immaterial
in context.

For instance, Kearn admitted taking the explicit pictures and videos.  The
pictures were e-mailed using an IP address associated with Kearn's house.  The
embedded data showed the pictures were taken shortly before they were e-mailed,
which was a year *after* Kearn claimed his daughter had been molested.  The home
security system showed Kearn using his phone around the time the e-mails were

sent.  Kearn's phone contained evidence of the e-mail address from which the pictures were sent.  Finally, Kearn's phone contained other explicit photographs of children.

Because the information elicited about the Loehrs Report did not affect the outcome of the trial, we find the district court did not commit plain error by admitting it.

### B.  *Helpfulness of Testimony*

Kearn next argues several statements by government witnesses violated Federal Rules of Evidence 701 and 702, which provide that opinion testimony must be helpful to the trier of fact to be admissible.  *See* Fed. R. Evid. 701(b) ("If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is . . . helpful to clearly understanding the witness's testimony or to determining a fact in issue."); *id.* 702(a) ("A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if . . . the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.").

He contends two prosecution witnesses improperly testified that certain images qualified as child pornography.  In Kearn's view, these statements were

inadmissible because they were not helpful to the jury.[3]  For example, at trial the government asked Agent Beebe whether he prepared a report of his findings from searching Kearn's phone.  He answered: "Yes.  In my preview I reported that I saw images that were child pornographic in nature."  R., Vol. 2 at 557.  Later the government asked Agent Beebe whether he found "images that [he] believed were child pornography on the iPhone."  He responded yes.  R., Vol. 2 at 566.

Rule 701 applies to the lay testimony of Detective Butler and Agent Casner, and Rule 702 applies to the expert testimony of Agent Beebe.  But "helpfulness" is similar for both lay and expert testimony.  Testimony is not helpful if it "simply tell[s] the jury what result it should reach without providing any explanation of the criteria on which that opinion is based or any means by which the jury can exercise independent judgment."  *United States v. Dazey*, 403 F.3d 1147, 1171 (10th Cir. 2005).  We have excluded this type of testimony because "it usurps the function of the jury in deciding the facts," or because it "interferes with the function of the judge in instructing the jury on the law."  *Id.* at 1171 (internal quotation marks omitted).

---

[3]  Kearn also argues that testimony he distributed the images to Detective Butler and that he owned the iPhone on which the images were recovered violated these rules.  But these are facts, not opinions, so these rules do not apply.

In addition, Kearn cites Rule 704(b), which prohibits experts from testifying "about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense."  But none of the statements Kearn cites opine on his mental state or knowledge: that is, whether he possessed, produced, or disseminated the images knowingly.

In support of his argument that the testimony identifying child pornography was not helpful, Kearn points to a Seventh Circuit case, which found inadmissible a federal agent's testimony that photos on the defendant's computer met the federal definition of child pornography. *United States v. Noel*, 581 F.3d 490, 496–99 (7th Cir. 2009). The *Noel* court found that the agent's testimony was "[l]ay testimony offering a legal conclusion" and thus "inadmissible because it [was] not helpful to the jury." *Id.* at 496.

But the witness comments here are distinguishable from the comments in *Noel*, because these witnesses did not mention the legal definition, or tell the jury what to find. Indeed, the government made clear its questions did *not* concern the legal definition of child pornography. *See* R., Vol. 2 at 437–38.

We resolved a similar question in *United States v. Stanley*, 896 F.2d 450, 451–52 (10th Cir. 1990). In *Stanley*, a U.S. Postal Inspector testified that he had "specialized in the investigation of prohibited mailings such as child pornography" for decades. *Id.* at 451. The government offered as lay opinion testimony the inspector's opinion that "several of the children depicted in sexually explicit conduct were under the age of eighteen." *Id*. at 451–52. On appeal, the defendant argued this testimony was not helpful because the pictures "spoke for themselves." *Id.* at 452. This court disagreed, finding that the inspector's testimony was helpful (1) "in determining the age of the subjects," which was "a fact in issue;" and (2) "as an explanation of why he ordered a

supervised delivery, obtained a search warrant, and seized the defendant's

package." *Id.* at 452.

The same analysis holds here.  Testimony about whether particular images

were child pornography was helpful to the jury, since whether the images

depicted "sexually explicit conduct" was a fact in issue.  *See* R., Vol. 1 at 23–25

(the indictment, citing 18 U.S.C. §§ 2251(b), 2252(a)(2), 2252(a)(4)(B)).  And

testimony about the law-enforcement officers' views on the images was helpful as

an explanation of why they took certain steps in their investigation.

We therefore do not find the district court plainly erred by admitting this

testimony.

### C.  Rule 404(b) Evidence—Prior Similar Acts

The government filed a pre-trial motion to introduce evidence "located on

the defendant's smart phone and computer, including but not limited to sexually

explicit images of any minors, nude video clips of [Kearn's youngest daughter],

and search terms indicating an interest in such material."  R., Vol. 1 at 74.  The

government sought to introduce the evidence under Rule 404(b) to show "the

defendant's intent, knowledge, absence of mistake and lack of accident."  *Id.*

Kearn argues this was error, because the government did not "precisely articulate

the purpose of the proffered evidence."  Aplt. Br. at 41 (citing *United States v.

Birch*, 39 F.3d 1089, 1093 (10th Cir. 1994)).

Under Rule 404(b), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). It may, however, "be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* The prosecutor must provide notice if he intends to offer such evidence at trial. *Id.*

We have held that "the government must precisely articulate the purpose of the proffered [404(b)] evidence." *United States v. Birch*, 39 F.3d 1089, 1093 (10th Cir. 1994). Moreover, the trial court must "specifically identify the purpose for which such evidence is offered." *Id.* (quoting *United States v. Kendall*, 766 F.2d 1426, 1436 (10th Cir. 1985)). "[A] broad statement merely invoking or restating Rule 404(b) will not suffice." *Id.* (quoting *Kendall*, 766 F.2d at 1436). We have therefore held that a statement providing that the evidence's purpose was "to prove the defendant's knowledge, identity and absence of mistake or accident" "failed to articulate with precision the evidentiary purpose of the Rule 404(b) evidence it offered." *Id.*

The broad statement offered by the government in its pre-trial motion tracks almost exactly the statement we found inadequate in *Birch*. But the government responds that the district court here never ruled on the pre-trial Rule 404(b) motion. In its view, the evidence at trial was intrinsic to the charged

-16-

conduct, and was not admitted under Rule 404(b).  The government's brief canvasses the evidence, and explains the purpose for which each piece was admitted—making out the elements of the charged offenses.  Because Kearn was on trial for knowingly distributing and possessing child pornography, sexually explicit images on his phone and search terms indicating his mental state did not need to come into trial under 404(b).  They were the very point of the trial.

Kearn does not point us to the district court's ruling on the proposed evidence, and does not dispute the government's assertion that the evidence at trial did not come in under Rule 404(b).  There are no references to Rule 404(b) in the trial record, other than the government's motion.

Kearn, moreover, does not point to any evidence actually admitted under Rule 404(b), and does not rebut the government's argument that none was.  Given that, we cannot find that the district court erred here.

### D.  Instruction on Unanimity of Theory

Kearn next argues the district court erred in failing to instruct the jury that it must agree unanimously on which specific images were the basis for conviction.  The district court only gave a general unanimity instruction.  R., Vol. 1 at 217 ("Your verdict on each count of the Indictment must be unanimous.").  Kearn argues this instruction was insufficient, and Tenth Circuit Criminal Pattern Jury Instruction § 1.24, at 37 (2011 ed., rev. 2017) ("Unanimity of Theory") was legally required.  The relevant part of that instruction provides that "in order to

-17-

return a guilty verdict, all twelve of you must agree upon which of the listed acts, if any, the defendant committed." Since, argues Kearn, there were multiple images that arguably violated federal law, different jurors could have had in mind different images when finding Kearn guilty.

We disagree that Instruction § 1.24 was required. Its use note explains that Instruction § 1.24 "should be used when the government introduces evidence that the defendant has committed multiple acts which may constitute an *element* of the crime." *Id.* (emphasis added). Instruction § 1.24 is a response to *Richardson v. United States*, 526 U.S. 813 (1999), which involved different statutory language than the language relevant to Kearn's conviction.

*Richardson* involved a conviction under 21 U.S.C. § 848(a), which prohibits persons from "engag[ing] in a continuing criminal enterprise," defined by the statute as a "'violat[ion]' of the drug statutes where 'such violation is part of a continuing series of violations.'" *Id.* at 815 (quoting 21 U.S.C. § 848(a), (c)). The Supreme Court held that "a jury in a federal criminal case brought under § 848 must unanimously agree not only that the defendant committed some 'continuing series of violations' but also that the defendant committed each of the individual 'violations' necessary to make up that 'continuing series.'" *Id.* (quoting 21 U.S.C. § 848(a), (c)).

*Richardson* based its holding on a distinction between the *elements* of an offense and the *means* by which the government may satisfy an element.

-18-

Elements, the Court held, must be found unanimously by the jury. *Id.* at 817.  On the other hand, the jury need not agree unanimously on the means by which an element is proven. *Id.*  Consequently, "a federal jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime." *Id.*

Instruction § 1.24 applies to situations like the one in *Richardson*, where the government produces evidence the defendant has committed multiple acts that might be considered elements of the crime. *See United States v. Sorensen*, 801 F.3d 1217, 1237 (10th Cir. 2015) (describing Instruction § 1.24 as "anchored in *Richardson*'s holding" and finding fault in its use in a charge "far different from *Richardson*"), *cert. denied*, 136 S. Ct. 1163 (2016).  It does not apply to situations where multiple acts might be considered different means of satisfying the element requirement. *Id.*

Looking at the statutes under which Kearn was charged and convicted, we find they do not require unanimity as to which images formed the basis for conviction.  Different images are merely different means of satisfying the element requirement, not different statutory elements.

Kearn was convicted of three offenses: violations of 18 U.S.C. § 2251(b), 18 U.S.C. § 2252(a)(2), and 18 U.S.C. § 2252(a)(4)(B).  Stripped to the relevant language, we have:

- "Any parent . . . who knowingly permits such minor to engage in . . . sexually explicit conduct for the purpose of producing *any visual depiction* of such conduct . . . shall be punished  . . . [if the depiction travels in interstate commerce.]"  18 U.S.C. § 2251(b) (emphasis added).

- "Any person who . . . knowingly receives, or distributes, *any visual depiction* [in interstate commerce] . . . if—(A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (B) such visual depiction is of such conduct . . . shall be punished . . . ."  18 U.S.C. § 2252(a)(2) (emphasis added).

- "Any person who . . . knowingly possesses . . . 1 or more [media] . . . which contain *any visual depiction* that has [traveled in interstate commerce] . . . if—(i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (ii) such visual depiction is of such conduct; shall be punished . . . ."  18 U.S.C. § 2252(a)(4)(B).

All three statutes thus refer to "any visual depiction" meeting the statutory criteria.  In other words, if the government has shown the jury that the defendant has produced (§ 2251(b)), distributed (§ 2252(a)(2)), or possessed (§ 2252(a)(4)) any visual depictions of minors engaged in sexually explicit conduct, the jury may convict.  The government's evidence thus went to means of satisfying the statutory language, rather than different possible elements.  *Richardson* and Instruction § 1.24 therefore have no application here.

An example may clarify this interpretation.  Suppose a statute makes the following conduct illegal: "The murdering of another in the room of a house with a blunt household instrument."  This statute thus has three elements: (1) "the murdering of another" (2) "in the room of a house" (3) "with a blunt household instrument."  The evidence at trial is that Peter and Paul were in a house alone

together, all entrances and exits to the house were locked, and Paul died from

head trauma from a blunt instrument.  Peter's fingerprints and DNA were found

on a candlestick, a wrench, and a lead pipe in the house, but it is not clear which

was the murder weapon.  It is also unclear where in the house the murder

occurred.  Under Kearn's theory of the law, the jury cannot convict unless they

unanimously agree on the murder weapon and the room where the murder

occurred.  But the holding of *Richardson* sets a lower bar than the rules of

"Clue."  The jury need only unanimously agree that (1) Peter murdered Paul,

(2) in the room of a house, (3) with a blunt household instrument.  If the evidence

at trial persuades them of those elements, they may convict.  They need not agree

unanimously on which room and weapon; the different weapons and rooms are

merely *means* of satisfying the statutory elements.  If six jurors are persuaded it

happened in the library with a candlestick, and six jurors think it happened in the

observatory with a lead pipe, that would not vitiate the conviction.  So too here.

Because unanimity as to which images formed the basis for conviction is

not required, we do not find the district court erred.

E.  *Cumulative Error*

Kearn argues the cumulative effect of the district court's errors rendered

his trial fundamentally unfair.

"A cumulative-error analysis aggregates all errors found to be harmless and

analyzes whether their cumulative effect on the outcome of the trial is such that

collectively they can no longer be determined to be harmless." *United States v. Toles*, 297 F.3d 959, 972 (10th Cir. 2002). We have explained above why most of Kearn's putative errors were not, in fact, errors. Kearn adds two more errors in the cumulative-error section of his brief.

First, he argues that the district court erred by allowing government witnesses to provide expert testimony without satisfying the expert witness disclosure requirement. In his view, once the government established that Agent Casner and Detective Butler were trained to recognize child pornography, their testimony that certain images were child pornography was expert testimony. But we are not persuaded. Rule 701 "does not permit a lay witness to express an opinion as to matters which are beyond the realm of common experience and which require the special skill and knowledge of an expert witness." *Randolph v. Collectramatic, Inc.*, 590 F.2d 844, 846 (10th Cir. 1979). But "Rule 701 allows lay witnesses to offer 'observations [that] are common enough and require . . . a limited amount of expertise, if any.'" *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1214 (10th Cir. 2011). The testimony here—that child pornography involves sexually explicit imagery of children, and that certain explicit images qualified—did not go beyond the realm of common experience. They therefore did not constitute expert testimony.

Second, Kearn argues that Detective Butler's statement that "cheyenneandliberty" was a "contact child sex offender" was irrelevant and

prejudicial.  R., Vol. 2 at 406.  To put this statement in context, the prosecutor asked Detective Butler: "What else did you do as part of your investigation?"  R., Vol. 2 at 406.  He responded: "As soon as I received even the first couple of images I was very alarmed by it and realized this guy was a contact sex offender and immediate action had to be taken, so I contacted Homeland Security Investigations in the USA and I referred the matter straight away."  *Id.*

Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.  This portion of the testimony, taken as a whole, made it more probable that Kearn produced and distributed sexually explicit images through interstate commerce.  That fact is of consequence, since it forms the basis of two of the three charges of the indictment.  It is plainly relevant.

Nor was it prejudicial.  Under Federal Rule of Evidence 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice."  The supposed unfair prejudice here was in implying that Kearn was a contact sex offender.  But the government's entire theory of the case was that Kearn was a contact sex offender.  Any prejudice added by Detective Butler's statement was therefore minimal.

Because this statement violated neither Rule 401 or 403, there was no error.

Thus, the only possible error we have identified is the admission of the hearsay evidence from the Loehrs Report. But "[t]he purpose of cumulative error analysis is to address whether the cumulative effect of *two or more* individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error." *United States v. Rogers*, 556 F.3d 1130, 1144 (10th Cir. 2009) (emphasis added) (internal quotation marks omitted). Because we have not found multiple errors, cumulative error analysis is unavailing here. Moreover, as noted, the evidence of Kearn's guilt was overwhelming, and we doubt, even absent any of Kearn's alleged errors, the outcome of the trial would have been different.

### F. Supervised-Release Condition

The district court sentenced Kearn to five years of supervised release following his term of imprisonment. One of the special conditions of his supervised release is that he may have no contact with the victim of the offense, i.e., his youngest daughter. Kearn has a 292-month (24 1/3 year) sentence, so his youngest daughter will be over 30 years old by the time Kearn is released from prison. Kearn objects to this condition, arguing the district court abused its discretion by imposing it.

Kearn provides two reasons why this condition was improper. First, the condition is not "reasonably related" to the offense of conviction, as the statute requires. *See* 18 U.S.C. § 3583(d)(1). Second, he has a "fundamental right of

familial association," and the district court did not have the requisite "compelling" reason for interfering with this right.  Aplt. Br. at 49 (quoting *United States v. Lonjose*, 663 F.3d 1292, 1303 (10th Cir. 2011)).

But Kearn has waived this issue by failing to argue for plain error.  Neither of these arguments—reasonable relationship or familial association—was raised at sentencing.  *See* R., Vol. 2 at 885–87 (relevant portion of the sentencing colloquy).  Generally, "the failure to argue for plain error and its application on appeal . . . marks the end of the road for an argument for reversal not first presented to the district court."  *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1131 (10th Cir. 2011).

We therefore affirm the no-contact-with-victims condition.  Kearn's failure to argue these points under the plain-error standard marks the end of the road.[4]

## III.  Conclusion

For the reasons above, we AFFIRM the judgment and sentence of the district court and DISMISS without prejudice Kearn's claim of ineffective assistance of counsel.

---

[4] It is worth noting that, like any special condition, the defendant can petition the court based on changed circumstances at the time of his release.

# UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT
## OFFICE OF THE CLERK
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

Elisabeth A. Shumaker                                        Chris Wolpert
Clerk of Court                    July 21, 2017           Chief Deputy Clerk


Ms. Melody Brannon
Office of the Federal Public Defender
District of Kansas
117 SW 6th Avenue, Suite 200
Topeka, KS 66603

Mr. Daniel T. Hansmeier
Office of the Federal Public Defender
District of Kansas
201 U.S. Courthouse
500 State Avenue
Kansas City, KS 66101


RE:      **15-3121, United States v. Kearn**
         Dist/Ag docket: 5:13-CR-40057-DDC-1

Dear Counsel:

Enclosed is a copy of the opinion of the court issued today in this matter. The court has
entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. Rule 40, any petition for rehearing must be filed within 14
days after entry of judgment. Please note, however, that if the appeal is a civil case in
which the United States or its officer or agency is a party, any petition for rehearing must
be filed within 45 days after entry of judgment. Parties should consult both the Federal
Rules and local rules of this court with regard to applicable standards and requirements.
In particular, petitions for rehearing may not exceed 15 pages in length, and no answer is
permitted unless the court enters an order requiring a response. If requesting rehearing en
banc, the requesting party must file 6 paper copies with the clerk, in addition to satisfying
all Electronic Case Filing requirements. *See* Fed. R. App. P. Rules 35 and 40, and 10th
Cir. R. 35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Elisabeth A. Shumaker
Clerk of the Court

cc:       Christine E. Kenney

EAS/sls