UNITED STATES DISTRICT COURT
DISTRICT OF KANSSAS

---

UNITED STATES OF AMERICA,   )
    Plaintiff,   )
       )
vs.   )    Case No.: 5:13-CR-40057-DDC
       )    Habeas No.: 5:19-cv-4032-DDC
JONATHAN KEARN,   )
    Defendant/Movant/Petitioner.   )

---

**DEFENDANT'S REPLY**
TO GOVERNMENT'S RESPONSE

---

**JONATHAN KEARN** appears *pro se* and replies by leave to the Government's

response in opposition to his Motion under 28 U.S.C. § 2255.

A reply is necessary because Respondent obscures relevant issues by error and

omission. Each area of concern is addressed below. To make it as easy as possible to

digest, Kearn uses a Thomist format for each Ground's Reply: A Short Description for

the Ground ("Article"), a Listing of the Government's Objections, an "On the Contrary"

rebuttal-by-authority, and Answers to the Objections and Omissions.

1

**Ground One:  "Counsel Failed to Raise the Question of Competency."** (Doc. 168: Response at IV Discussion.)

The government explains its understanding of Ground One as, "defendant claims that Mr. Francis was ineffective for failing to request and obtain a competency hearing;" and also, "prior to and during trial [Kearn] was under the influence of a combination of drugs, both legal and illegal, was unable to understand the nature and consequences of the proceedings against him, and was unable to properly assist in his defense." (*Id.*, citing Doc. 157-1 at 1).

The Government raises three objections to this Ground, relying on in-court conversations that took less than two minutes, the subsequent recapitulation of facts in testimony, and Respondent's untrue premise that overlooked the 2255's exhibits:

First, "the Court had two opportunities to converse directly with the defendant" (once at the *Lafler/Frye* first-day-of-trial plea colloquy, and second, at Kearn's decision to testify during trial).  But in the examples given, Mr. Francis does not inform the court of the objective fact of Kearn's intoxication.

The second objection is "defendant's trial testimony demonstrated that he understood the evidence and followed the defense strategy designed to address the government's evidence;"

And the third objection (is actually an oversight by Respondent): "defendant presents no evidence that he was incompetent to stand trial." (Doc. 168: Response).

2

As a result, the story goes, "the defendant followed his trial strategy of attempting to explain or discredit the government's theory and evidence," and therefore "cannot meet the highly demanding standard to establish that counsel's omissions fell outside the wide range of professionally competent assistance." *Id*. The government primarily relies on *Bryson v. Ward*, 187 F.3d 1193 (10th Cir. 1999) (rejecting defendant's claim that *after* having been found competent to stand trial he took medication that impaired his thinking.) The Government faults Kearn for failing to demonstrate how the "result of the proceeding" would have been different. For whatever reason, the government circles around vaginal photographs "for an innocent reason", and then hits on some of the points Kearn testified about at trial. *Id*.

On the contrary, Ground One implicates not only IAC of *Strickland v. Washington*, 466 U.S. 668 (1984), but also the Due Process clause as explained by *Godinez v. Moran*, 509 U.S. 389 (1993), as well as the competency statute 18 U.S.C. § 4241.

Quite unlike *Bryson* – which argued events that occurred *after* the "threshold" hearing to order a competency exam by a medical expert, and what "standard of proof" to use in light of *Cooper v. Oklahoma*, 517 U.S. 348 (1996) – Mr. Francis never asked for a "threshold" hearing, rendering the Government's use of *Bryson* a confused distraction: Mr. Bryson *had* a competency hearing before trial, Mr. Kearn at bar did not.

Kearn answers that the Government's objections avoid unstated facts:

1. Kearn's ability to "follow" – in the prosecutor's opinion – evidence and strategy (using the terms loosely), goes to only *one* of *three* people whose responsibility it is to move for a competency hearing under § 4241(a); Notably, Respondent leaves defense counsel Francis out of her objection, but where Francis' knowledge and belief are what matters to an IAC determination;

2. Overlooking the "Overwhelming" evidence of Kearn's liberal drug use history (Exhibits 52, 2, 60), objective proof of prescriptions, testing positive in a blood/urine analysis just a month before trial for "opiates, methamphetamine, and amphetamine," and witness accounts of his behavior and eye-witness drug use (Exhibits 4, 5, 6, Affidavits of Ed Kearn, Connie Kearn, Dawn Dittemore, Michael Watkins, Evelyn Emery, Steven Scritchfield, and Mr. Kearn himself), and

3. References from both the D.E.A. and U.S. Food and Drug Administration explaining the effects these drugs had on Mr. Kearn (Exhibits 7 and 9).

The government can only say Kearn "presents no evidence that he was incompetent to stand trial," by omitting the "overwhelming" evidence (a term Respondent used six times in a short section of her brief). But the Government *knew* of Kearn's relative state of health (see Affidavit of Jon Kearn, ¶15. "Due to my heavy drug use of meth-mixed-with-prescription medication, I had lost almost 40 pounds in over 5-1/2 months prior to

4

trial; so much that my Federal Pretrial Release Officer, Diana Kerns, re-took my

photograph because she claimed I 'looked like a different person'."

The competency statute, section 4241 (a) reads, in relevant part, "at any time … the

defendant or the attorney for the Government may file a motion for a hearing to

determine the mental competency of the defendant. The court shall grant the motion, or

shall order such a hearing on its own motion, if there is reasonable cause to believe that

the defendant may presently be suffering from a mental disease or defect rendering him

mentally incompetent to the extent that he is unable to understand the nature and

consequences of the proceedings against him or to assist properly in his defense."

§ 4241(a).

So, the government's "objections" ignore what Mr. Francis knew (but kept to

himself), and insinuates what the Court might have thought.  Respondent assumes

without proving that no one knew any better. Kearn answers that even a drunk driver

can make it home in one piece for years before finding the right tree.

To the extent the Government tries to retrospectively find Kearn's long-term, and at-

trial-and-plea-hearing drug abuse to be "competent", she – respectfully – demonstrates a

lack of understanding about the proper legal standard for competency and effective

representation on habeas review.

No presumption of correctness attaches to a retrospective competency analysis

when there was either no competency hearing held, or the burden of proof used at that

5

hearing was unconstitutional. See, for example, *Barnett v. Hargett*, 174 F.3d 1128, 1136 (10th Cir. 1999) (in a habeas corpus, no deference given to prior finding of competence when the court never held a hearing); *McGregor v. Gibson*, 248 F.3d 946, 952 (10th Cir. 2001) (*en banc*) (unconstitutional burden of proof makes for no presumption of correctness.)

A good question to ask attorney Francis is, "given that the defendant's father, and the defendant's own habits, alerted you to his inability to testify, why did you not request a competency hearing under § 4241?" Another good question would be, "did Mr. Kearn talk about his drug use history?" and so on. After all, the statute itself gives liberal permission for a hearing.

On a habeas petition, "when a petitioner establishes that the evidence before the state trial court raised a bona fide doubt as to his competency, a further inquiry into his actual competency is not necessary due to the difficulties in making retrospective competency determinations." *Blazak v. Ricketts*, 1 F.3d 891, 894 n.3 (9th Cir. 1993), cert. denied, 511 U.S. 1097 (1994). (Meaning, a new trial, because competency's due process issues do not need to take the inquiry further.)

And the standard does not say – as the prosecutor laments – that "the results of the *proceeding* would have been different had counsel raised the competency issue." (Doc. 168: Response, emphasis added). The real question, indeed the threshold for granting the writ, is if there is a reasonable probability that the trial court would have

determined that "the defendant was incompetent"; *not* whether his trial would have

had different results. *Griffen v. Lockhart*, 935 F.2d at 931 (granting habeas corpus relief

because "due process was violated by the state court's failure to provide an adequate

hearing" on petitioner's competency to stand trial, and "it seems impossible to now

conduct a meaningful *nunc pro tunc* hearing" on competency three years after trial);

*McInerney v. Puckett*, 919 F.2d 350,351-52 (5th Cir. 1990); *Tiller v. Esposito*, 911 F.2d 575,

576-77 (11th Cir. 1990); *United States ex rel Bilyew v. Franzen*, 842 F.2d 189, 192-93 (7th

Cir. 88); *Hull v. Kyler*, 190 F.3d 88, 111-13 (3rd Cir. 1999).

It is helpful to see an example where the defendant was denied relief on this issue, in

*Gallegos v. United States*, D.N.M., Case No. 1:17-cv-00909 (Feb. 26, 2018). In *Gallegos*, the

defense attorney "obtained funds for a psychological evaluation" based on Gallegos'

twenty-year "history of alcohol and substance abuse." That report from a board-certified

psychologist and professor found that he was "competent to stand trial and otherwise

collaborate meaningfully with his attorney."

Important for our discussion at bar is the prejudice standard that the government

got wrong. It is not the outcome of the *trial*, but whether Kearn would have been found

*incompetent*. Our Tenth Circuit has said that the defendant must "show[] a reasonable

probability **he would have been found incompetent** to stand trial if counsel had

requested and obtained a competency hearing." *Gallegos*, citing *United States v. Hartman*,

487 Fed. App'x 437, 440 (10th Cir. 2012); and *Williamson v. Ward*, 110 F.3d 1508 (10th Cir. 1997) (same). (Emphasis added.)

Because petitioner Kearn provides facts undermining a retrospective competency hearing, his claim should proceed to a hearing on the evidence now present in the 2255. In the alternative, if the Court determines a retrospective competency hearing is not feasible, the court should grant the writ and order the government to retry Mr. Kearn or release him. *McGregor v. Gibson*, 248 F.3d at 963-64.


**Ground Two: Failure to Investigate**

The government here denies there was anything to find out that was not already in the record.

On the contrary, in response to trial counsel's off the record, post-trial question to the jury coordinator "What went wrong?" she answered that the jurors really wanted to know what type of parent Mr. Kearn was, and what his kids' and his relationships were like (JONATHAN KEARN AFFIDAVIT, PG. 4 OF 6, #28). Here, the jury's own words contradict the government's self-serving opinion that the testimonial affidavits of Connie Kearn and Sarah Parnell would not have affected the outcome of the trial (they actually answer a nagging question in the jury's mind).

Mr. Kearn was aware before trial that his healthy relationship with his children (and other's knowledge thereof) would be under scrutiny and was tantamount to the

8

evidence at hand in their upcoming decision. Knowing this, the government sanitized and amended their exhibit the day before trial (see Doc. 88-1). Anything that showed Mr. Kearn and his children's relationship in a favorable light was removed. Given this weight of evidence, Mr. Francis ignored Mr. Kearn's notes and pleas to investigate and interview those who could give this necessary favorable testimony. (see exhibits "12", "13", "35-38", and "63"). Mr. Francis' post-conviction statement to Mr. Kearn about the jury's wanting this information shows why it was needed and why Mr. Kearn was prejudiced by it not being obtained and presented to the jury.

Stacy Johnson (children's therapist), Connie Kearn, Sarah Parnell, Judy Polinskey-Perez, the defendant's daughters and their school teachers, neighbors and other witnesses close to Mr. Kearn and his children should've been interviewed and/or called to testify. Testimonial evidence can be found at CONNIE KEARN AFFIDAVIT and SARAH PARNELL AFFIDAVIT. The variety of perspectives and relationships would have bolstered Kearn's credibility and added weight to the alternate-offender theory.

As an example, both Connie Kearn and Sarah Parnell aver it was *their* advice as women to have Kearn photograph his daughter (and not submit her to the experience of a rape exam). This was a central issue in this case and a deciding factor the jury never heard. The government mentions Sarah Parnell's Affidavit in a 'dark light' to Mr. Kearn's testimony, but they get the facts wrong and show a misunderstanding of the

9

actual timeline (a common occurrence in this case). On the one hand, had Mr. Kearn

been competent on the stand, he would've been able to help the government and the

jury understand better what actually occurred, and when.  On the other hand, Mrs.

Kearn and Mrs. Parnell's testimony would've shown the jury a much more complete

picture in favor of "an innocent purpose" defense, and a Bob Henry-as-actual-offender

theory.

The AUSA then brings up Bob Henry (pg. 25, para. 2) and uses a note that Mr.

Kearn gave his trial attorney,(see exhibit "13", pg. 15) but leaves out the previous notes

that explain why Bob should be investigated and interviewed: Criticizing that Bob

wouldn't talk to Ms. Emery at a laundromat just a few years after trial,

mischaracterizing this fact as an indication for what his response would've been to trial

counsel before trial.

Kearn answers there is an obvious 'spin-factor' here, because subpoena powers

are better than laundromat confrontations at discerning the truth.

Mike Francis and defense expert witness Andreux Doty agreed with Kearn's

theory that Bob Henry was the actual perpetrator of the crimes (see JONATHAN

KEARN AFFIDAVIT, pg. 2 of 6, #11), yet Francis failed to investigate (see *Siripongs v.*

*Calderon*, 35 F.3d 1308 (CA9 1994). This prejudiced Mr. Kearn (2255, pg. 8, 4th para.)

"Due process includes a right to a meaningful opportunity to present a complete

defense. That constitutional right is violated by the exclusion of probative admissible

evidence that another person may have committed the crime (see *Crane v. Kentucky*, 476

U.S. 683, 690 (1984).)


No Hacking?

The government says that there is no evidence the defendant's computer was

hacked by ignoring the evidence presented, found in text messages from Mr. Kearn's

iPhone (pg. 27 line 10, also see Exhibit "61"). Mr. Kearn's computer and Wi-Fi system

were hacked two weeks prior to the Yahoo email's creation (used to commit the

crime(s). These were synced with Mr. Kearn's iPhone and pointed out as the route of the

nefarious activity which Mr. Kearn ultimately was condemned for.

Francis told the Court as well as Mr. Kearn that counsel was going to investigate

and subpoena additional evidence associated with IP addressees, allegedly linked to

Mr. Kearn by a Q.P.S. Investigator. Francis also told Kearn he would subpoena the

phone line secretly installed in his home by Bob Henry, but did not do so. (2255, pg. 9-

11). This failure cannot be a strategic and tactical decision, as assumed by the

government, but rather a prejudicial and clear mistake. An evidentiary hearing would

determine whether or not subpoenas said to be needed by defense counsel and defense

expert witness (exhibits "32" and "33"), but never served would establish the source of

the emails and changed the outcome of the trial, or prevented a trial of Mr. Kearn

altogether.  Although arguably raised on appeal, the failure to object and the ultimate

lack of any subpoena would have lowered the appeal standard from plain error review to de novo.

"No Drop Box Link or Evidence From KEARN's Property". (2255, Ground 2, page 9)

What the jury never heard, and what the AUSA concedes by failing to respond to, is that three videos hoisted onto Mr. Kearn never actually show up in record possession evidence, nor discovery, and were never seen by Mr. Kearn (nor his counsel). These were used in trial to prejudice the jury into making a guilty verdict, perhaps even charging Mr. Kearn with possession. Descriptions of these videos, as well as projections of still pictures before the jury from the videos, overwhelmingly damaged the jury's perception of Mr. Kearn's innocence. A new trial is justified.

Finally, Mr. Kearn does state in Part IV of Ground Two (pg. 12,13) what certain individuals, Bradley Rhodd, Connie Kearn, and many others would testify and to what. Each of these eight points show items that would affect the outcome of his trial had they been obtained and presented to the jury.

MICHAEL FRANCIS said in January and again in February of 2015 that he would subpoena Bob Henry. He eventually told me that these subpoenas were denied." But failing to actually do so, meant ignoring several witness statements corroborating Kearn's concern about the government catching the right man.  This evidence carried weight.

**Ground Three: Failure to Engage in Trail Practice Strategy**

The government's objection is house primarily in the "absence of evidence" point of view.

On the contrary, "at the heart of an effective defense is an adequate investigation. Without sufficient investigation, a defense attorney, no matter how persuasive in court, renders deficient performance and jeopardizes his client's defense." (see, *Richter v. Hickman*, 578 F.3d 944 (CA9 2009, p.946. Reinhardt, Circuit Judge: "To not prepare is the greatest of crimes; to be prepared beforehand for any contingency is the greatest of virtues. --Sun Tzu, The Art of War.")

The government fails to mention that large swaths of iPhone cell data were not seen by the defense due to Mr. Doty not having the ability to view the image of the iPhone the government provided for inspection (see Exhibit "34" and pg. 14, para. 3 of Amended Motion 2255).This is also mentioned in Doty's testimony at trial (Vol. III, pg. 573, lines 21-24).

This ground was also based on failure to file a motion to suppress based on *Riley v. California*, 134 S. Ct. 2473. 189 L.Ed 2d 430 (2014) (*See*, 2255 Motion at Ground 3, Part III(b). and Ground 3, part IV(h), fully incorporated here.)

On Mr. Kearn's 2255, page 16, "Counsel was aware of *Riley v. California,* and told Kearn it wouldn't apply here because Kearn's home had been raided one year before *Riley* was decided." However, Mr. Kearn's *trial* was post-*Riley*. Mike Francis would have succeeded in filing a Motion to Suppress based on *Riley*. This was a "slam dunk" issue and is prejudicial error.

The government conceded this ground by failing to respond or otherwise plead (see, Response, mentioning only the "IP address" usage in a table, but <u>not</u> the warrantless cell phone search under *Riley*). After all, *Riley* required the agency to seek and obtain a separate search warrant for Kearn's cell phone. Given that none was obtained, prospective relief in light of *Riley* is warranted, and suppression would have been granted, changing the outcome of events.

The government continues, "the defendant cannot show that counsel's failure to object during trial was unreasonable. The defendant cannot say that any objections would have changed the outcome of the trial." (2255, pg. 35, lines 16-18) But by contrast, **(1)** They would've preserved the issues for appeal, thus allowing Mr. Kearn to argue to an easier standard than Plain Error as the 10th Circuit and appellate attorney Hansmiller opined, and **(2)** any reasonable layman, much less a skilled lawyer, can see these objections would changed the outcome of the trial when the jury knows the basis for the public objection.

14

List of Overlooked Objections

1. The Dropbox link objection, where there was no link evidence on Kearn's equipment, which caused the projection of images, and descriptions and testimony obtained to prejudice the jury; an objection would have lowered the standard on appeal from "plain error" to "de novo."

2. Objection to cherry-picked, incomplete security footage shown to the jury and included in the prosecution's Closing which omitted Bob Henry's clandestine movements on the premises. The government's misconduct and clear *Brady* violation (had it been objected by trial counsel) would likely have been stricken from use during trial. This prejudiced the jury; or in the alternative, an objection as to its seizure absent the DVR even appearing on the warrant, would have either been granted, or would have lowered the standard on appeal from "plain error" to "de novo."

3. *Riley violation: warrantless search.* The use of evidence from Mr. Kearn's iPhone 4S, taken off his person while he was cuffed and asking for his attorney, was removed from the property, "cloned" then returned. This invokes *Riley* (as the government conceded), prejudiced the jury, or in the alternative, an objection would have lowered the standard on appeal from "plain error" to "de novo."

**Ground Four:  "Counsel Failed to Advise the Defendant of the Maximum Sentence and Plea Offer"**

The Government's objection to granting relief on this ground begins with the uncontested fact of his appearance on the indicted charges. (Doc. 10: Recording of Rule 5 Hearing held on May 13, 2013) (two years prior to trial). This was repeated at arraignment on June 6, 2013. But the objection relies on caselaw about the knowing and voluntariness of a Rule 11(c) plea hearing, not a *trial*. (Doc. 168: Response)  (citing to *United States v. Norwood*, 487 F. App'x 431, 435 (10th Cir. 2012) (unpublished, quoting *United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1993).)

And the Government's last objection is that Kearn cannot show he was actually prejudiced. This is based on what it calls his "admi[ssion] that he could not plead guilty because 'he would essentially be lying to the Court and thus committing perjury by accepting responsibility for criminal actions he had no part of.'" (*Id.*, citing to Doc. 157-1 at 25.)

On the contrary, it was his **attorney's advice** about committing perjury, and also about not advising him of the possibility of a *nolo contendre* option.  This lack of information about Rule 11(c) and non-Rule 11(c) plea (that is, a trial or an "open" plea) options that confused things.  Even setting to one side Kearn's questionable competence during the entire discussion, none of those facts appear in Respondent's answer and are therefore waived.  (Federal Rules of Habeas Corpus, Rule 5.)

16

To the extent Respondent feels that this claim does not amount to the legal standard for ineffective assistance of counsel, she is incorrect. *See, Williams v. Jones*, 571 F.3d 1086 (10th Cir. 2009) (it is constitutionally deficient performance under Strickland to advice a defendant that "he would be committing perjury by accepting the plea offer and insisting that [he] proceed to trial[.]") See also, *Julian v. Bartley*, 495 F.3d 487-99 (7th Cir. 2007) (same). Even if we assume for the same of argument that Mr. Kearn subsequently received a fair trial (with a much greater sentence) that fact would not vitiate the prejudice from the constitutional violation. See, *Engelen v. United States*, 68 f.3d 238, 241 (8th Cir. 1995) (collecting cases).

Kearn answers that his uncontested statutory range instructions at appearance and arraignment have nothing to do with the Guidelines or IAC law surrounding accepting or not accepting a "plea". The authority relied upon by the Government (*Norwood*) has more to do with asking and answering the question of whether a *guilty plea* was unknowing and involuntary, not that going to trial would produce a different sentence. Kearn's offer was an 11(c) plea, an agreed-upon sentence "max".

The government avoids saying Kearn was *not* advised, as the defendant in *Gordon* was, that "the district court would consider all information in determining his sentence and that his sentence might differ from the calculation made by his attorney." *Gordon*. But even more to the point, consider that *Lafler* had to do with an attorney's bad advice

to go to trial, instead of taking a plea based on the attorney's error (there, non-comprehension of a burden of proof on an element of the crime, here not getting the elements of the offense right with Kearn in plea discussions). Clearly, Mr. Kearn was very "*pro se*" in his two pages explaining this ground in the 2255: Attorney Francis' misadvice concerned a fundamental misunderstanding of the proof of the elements, where the proof of elements directly affects the sentencing range where an attorney (like at bar) tells his client he will beat all but one of the charges for sure, and stands a chance to win on the last one.

Frankly, it comes as a surprise to Mr. Kearn that the Government is now talking about *not* taking a *nolo contendre* plea. That is new information because he found out after trial that it was an option. Lastly, since the plea substantively involved dropping production, it affects his due process rights and his right to effective counsel where counsel (besides not ensuring Kearn was competent to engage in such life-altering discussions), counsel Francis did not discuss dropping charges, and misadvised him about "lying to the Court if you admit to such-and-such a charge" in a confusion over the burden of proof for the offense(s).

Evidence from Kearn's affidavit (summaries):

¶13. MICHAEL FRANCIS never communicated to me that the plea deal also agreed to drop the Production charge. He also told me that I could

not honestly plea guilty as I would be lying to the Court and could be
charged with perjury.

¶14. MICHAEL FRANCIS never talked to me about concurrent versus
consecutive sentencing, nor did I have any idea that the stakes were so
high in going to trial. I could've been sentenced consecutively, thus
resulting in over 54 years in prison.

**Ground Five: *Brady* Violation by Government and IAC by Francis (Doc. 1 at ¶   )**

The government has conceded this argument by failing to respond and defend
*their own* actions, which resulted in a violation under the *Brady* doctrine.  The only thing
that the government argued in their response is trial counsel's decision to not defend
against this violation. *Brady v Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963), "The
suppression by the prosecution of evidence favorable to and requested by an accused
violates due process where the evidence is material either to guilt or to punishment,
irrespective of the good faith or bad faith of the prosecution." The 10th Circuit
recognizes this in *United States v Webb*, 6551 Fed. App'x. 740 (10th Cir. 2016). (*See*, 2255
at Ground Five, ¶1, pg. 23.)

Mr. Kearn set forth how the government violated the Brady doctrine (2255, pgs.
23, 24 and 25). Being "*pro se*" it is possible Mr. Kearn could have clarified about "[**Bob
Henry**] entering his home to gain access to Kearn's cell phone, computer, and/or other
evidentiary items" (*See*, Emphasis Bold Print in original 2255, and 2nd paragraph pg.

19

25.) This tends to prove the activities of the actual perpetrator Bob Henry. If correct, this is the exculpatory DVR footage kept in bad faith by the prosecution.

The camera footage is important because it does show Bob Henry entering and leaving the Kearn residence, and his behavior on camera is not neutral evidence (especially for the jury to consider). The jury would have seen these actions of Bob Henry in light of the defense theory of a different perpetrator. The greater weight of the evidence would have caused reasonable doubt as to Jonathan Kearn.

In opening statements, trial counsel mentions the Yahoo! "email account was opened on 12/27/2012, and that account was used up until 1/20/2013. And Jon's going to get on the stand and tell you what happened on January 20, 2013 ..." (Vol. I, Pg. 262, Lines 4-8). Continuing, "That account, according to yahoo records, was dead from about the time of January 20th to mid-April when all of a sudden there's E-mails that were sent from that account to the officer in Australia." (*Id.*, lines 17-21).

Although counsel did <u>not</u> make good on his opening statement to the jury by failing to (1) assure his client's competency, and (2) prepare Mr. Kearn to reveal this on the stand[1], it is important to note that Bob Henry moved out of Mr. Kearn's home and moved into Dwayne Zinn's home, two houses south, on January 20, 2013.

---

[1] As raised in Ground Three, "lack of preparing Kearn for his testimony, or the strategy therein, as well as Ground One [competency], and Ground Seven [cumulative error]. These specifically states "failure to make good on his promise in opening in court to have Kearn explain what happened to cause a gap in the Yahoo email timeline." And not clearly presenting Kearn's defense.

The government claims to not have Kearn's DVR footage from when the Yahoo email activity resumed but do state they have it up to May 7, 2013, when the DVR was seized during the raid on the Kearn home.

The GPS on Kearn's iPhone was also disabled by Bob Henry in late December 2012, and then re-enabled on April 28th, 2013 (dates from Kearn's notes on Discovery). The government refused to release the entirety of the DVR security footage overlapping that April date, in relevant part to Bob Henry's presence on the premises. Ostensibly, this supports Bob's subsequent access to Kearn's iPhone, computer, and so on. The jury was left to rely on the assumption the government was fair, when in fact they did not provide exculpatory evidence (or evidence that at the least was material to the matter at hand).

**Ground Six: "Counsel Failed to Raise a Violation of *Blockburger v. United States*"**

Here, the Government recites the elements of each of the three Counts of conviction (Production, Distribution, and Possession), and then says "each count requires an additional fact that the other counts do not." (Doc. 168: Response at F. Ground Six).

On the contrary, rather than confront authority that spells out the factual scenarios where double jeopardy is found, the Government dances around the issue by omitting

the fact that our Tenth Circuit finds double jeopardy violations where the "proof of fact" at trial "was based on the same, non-distinct visual depictions of Child Pornography."

Sensing the weakness, the Government offers a concession for sake of argument: "Assuming the counts were multiplicitous, the Court would simply vacate one of the convictions." But Respondent's logic then says that relief is unwarranted. Why? That position contradicts the approach used in *United States v. Benoit*, 713 F.3d 1, 18 (10th Cir. 2013). Further, a revised PSR would be drafted and USSG § 1B1.11 would apply, and 18 U.S.C. § 3553(a)'s *parsimony* clause would also operate, calling for a new sentencing.

Overstated criminal convictions are vacated because they are inherently prejudicial. Said another way, if multiplicitous convictions don't matter based on speculation about a sentencing range, then why not charge Kearn with Production, Distribution, and Possession on each image for a total of 10 or 20 Counts? Speculation about sentencing ranges remaining unchanged is not the measuring stick for habeas relief on multiplicitous counts, it is a Due Process issue for one, and overall sentencing factors are also considered. Multiplicitous convictions affect care and custody in the BOP, treatment options, supervised release, public safety calculations, and the use of criminal history by extra-governmental agencies.

Mr. Francis was ineffective on this Ground because the deleterious effects of multiplicitous convictions are spelled out in *Blockburger's* progeny. Further, multiplicitous charges are grounds for a new trial, because the jury will automatically

think the criminal defendant is many times more guilty than what the actual, applicable charges imply. *See, Graham v. Koerner*, 322 Fed. App'x. 577 (10th Cir. 2009)  (The Government may submit multiplicitous charges to the jury so long as multiple convictions on the charges are not permitted to stand) said another way, if they are allowed to stand, they should not have been submitted to the jury and the trial was inherently unfair; *see* also, *United States v. Frierson*, 698 F.3d 1267 (10th Cir. 2012) (Multiplicity refers to multiple counts of an indictment which cover the same criminal behavior.  But multiplicitous sentences violate the Double Jeopardy Clause, so if a defendant is convicted of both charges, the district court must vacate one of the convictions.)

**Ground Seven:  Cumulative Error**

The government argues that "the defendant fails to identify any actual errors, much less two or more", and that, "Counsel was not deficient for failing to raise this issue." "The cumulative-error analysis addresses the possibility that the cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error." *Grissom v. Carpenter*, (10th Cir. 2018) 2018 U.S. App. LEXIS 24922).

On the contrary, omission plagues the Response.  The government has conceded that counsel should have moved to suppress the Dropbox Link (see Ground Two) that

23

was only found on *their* end of the computer, failing to address *Riley v. California* and a

suppression hearing of Mr. Kearn's iPhone, and thirdly that they were themselves at

fault under the Brady Doctrine in regards to exculpatory evidence never given to Mr.

Kearn, nor his trial counsel.

Additional errors from his Motion 2255 (Doc. 157) which the government

Response includes on it's page one, and Kearn reincorporates fully here:

1. Not acting on the information given from Kearn's father and from Kearn himself implying that he was not fit to stand trial and not holding a competency hearing under 18 U.S.C. §4241.

2. Failure to Investigate (and thus interview) Stacy Johnson MS LCPC, KEARN's children, Robert (Bob) Henry, Antwaun (A-T) Williams, QPS Agent Butler's report/notes, not issuing subpoenas for the information he said he would in Court, not issuing a subpoena for Bob Henry's phone line as he told KEARN he would, Dwayne Zinn, and other issues.

3. Not providing defense's expert witness Doty with conditions for success, failing in the Discovery Process.

5. Failing to move for a **Suppression Hearing** for: Warrantless **seizure** of KEARN's Bunker Hill DVR Security System (DVR) (not listed on the search warrant); and warrantless **search** of KEARN's iPhone 4S (under *Riley*).

6. **Failure to object** to the following, which would have lowered the burden on appeal from plain error to de novo review; including the LOEHR Report, the district Court's reasonable-doubt instruction, the government allowing the introduction of other acts of evidence without first identifying its non-propensity purpose, the no-contact provision as a special condition of supervised release, the projection of images and testimony of a Dropbox link during trial, the use of KEARN's security footage in trial, the wording of exhibits put forth by the government implicating KEARN as the offender instead of leaving it up to the jury to decide, the use of any and all information from KEARN's iPhone 4S, the testimony of Mr. Butler, Cassidy Casner, and Craig Beebe outlined in Ground Three.

7. Failure to move for Judgment of Acquittal during trial.

8. Not discussing with KEARN his right to testify or not testify and the strategy therein.

9. Not communicating to KEARN what his maximum sentence exposure was if he went to trial.

10. Telling KEARN false statements about the amount of time KEARN could do and about KEARN not being able to plea guilty.

11. Not advising KEARN of the details of a plea deal.

12. Stating "The Judge may make a downward departure", and then not requesting one.

13. Failing to get KEARN a sentencing mitigation specialist as KEARN repeatedly asked for.

14. Failing to get defense expert witness Doty access to the evidence, including KEARN's iPhone 4S.

15. Failing to advise KEARN whether a particular plea to a charge appears to be desirable.

16. Failing to object to Brady material.

17. Failing to object to *Riley v California* material.

18. Failing to offer any Jury Instructions.

19. Failure to add limiting instruction to the Jury.

20. Failure to object to any of the government's Jury Instructions.

21. Failure to recognize a Blockburger violation.

22. Failure to make good on his promise in Opening in Court to have KEARN explain what happened to cause a gap in the Yahoo email timeline (thus pointing directly to Bob Henry as the perpetrator).

23. Presenting false statement in his Closing Argument.

24. Not clearly presenting KEARN's defense.

25. Not interviewing potential witnesses and fact-builders.

## Conclusion

Mr. Kearn prays for relief as outlined in the 2255, appointment of counsel, a new trial, an evidentiary hearing, or other such relief as the Court deems appropriate. And even if the Court does not feel that relief is warranted, reasonable jurists could debate the basis supported here, which is all that a Certificate of Appealability requires. (*Slack v. McDaniel, Miller-El v. Cochrell*).

July 30th, 2019 /s/ _____

Date Executed                                   JONATHAN KEARN, *pro se*
Under penalty of perjury pursuant to            USM # _____
28 U.S.C. § 1746, I hereby swear and verify that        P.O. Box 1000
The foregoing is true and correct as an affidavit;      Marion, IL  62959
Further, that it has been deposited under Prison
Mailbox Rule this day in the institution's internal
mail system designed for legal mail, United States Postal
Service, first-class postage prepaid.


## Certificate of Service

I hereby certify that I have mailed a copy of the foregoing via United States Postal
Service, first-class postage prepaid upon the following:

July 30th, 2019 /s/ _____

Date Executed                                   JONATHAN KEARN, *pro se*
                                                USM # _____
                                                        P.O. Box 1000
                                                        Marion, IL  62959