## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

     Plaintiff,

v.

JONATHAN KEARN,

     Defendant.

Case No. 13-40057-01-DDC

## MEMORANDUM AND ORDER

This matter comes before the court on pro se[1] prisoner Jonathan Kearn's First Amended

Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence (Doc. 165).  The

government has responded to his Motion (Doc. 168), and Mr. Kearn has filed a Reply (Doc.

172).  Mr. Kearn also has filed a Motion to Correct (Doc. 167), asking the court to consider his

previously filed exhibits with his amended § 2255 motion.  The government never has replied to

Mr. Kearns's Motion to Correct.  The court addresses each motion separately, beginning with

Mr. Kearn's Motion to Correct, below.

### I.     Procedural Background

On May 29, 2013, the grand jury indicted Mr. Kearn with three counts:  (1) producing a

visual depiction of a minor engaged in sexually explicit conduct, in violation of 18 U.S.C.

§ 2251(b); (2) distributing a visual depiction of a minor engaged in sexually explicit conduct, in

violation of 18 U.S.C. § 2252(a)(2); and (3) possessing a visual depiction of a minor engaged in

---

[1]     Because Mr. Kearn proceeds pro se, the court construes his filings liberally and holds them to a less stringent standard than formal pleadings drafted by lawyers.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  But the court does not assume the role of advocate for a pro se litigant.  *Id.*

sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(4)(B).  Doc. 15.  After a four-day

trial in May 2015, a jury convicted Mr. Kearn on all three charges.  Doc. 97.  This court

sentenced Mr. Kearn to 292 months' imprisonment on Count 1, 240 months' imprisonment on

Count 2, and 120 months' imprisonment on Count 3, all to run concurrently.  Doc. 123.  The

court also ordered five years of supervised release.  *Id.*  Mr. Kearn appealed his conviction to the

Tenth Circuit, challenging the admission of hearsay evidence, the jury instructions, and his

supervised-release condition that prohibits him from contacting his victim.  *United States v.*

*Kearn*, 863 F.3d 1299, 1302–03 (10th Cir. 2017).  Mr. Kearn also argued the cumulative effect

of the errors in the case merited reversal.  *Id.* at 1303.  The Tenth Circuit affirmed Mr. Kearn's

conviction.  *Id.* at 1313; *see also* Doc. 152-1.  Mr. Kearn petitioned for a writ of certiorari from

the United States Supreme Court, which the Court denied on May 21, 2018.  Doc. 156.

On April 25, 2019, Mr. Kearn filed a Motion for Relief under 28 U.S.C. § 2255 along

with 70 exhibits, asking the court to vacate his sentence based on ineffective assistance of trial

counsel.  Doc. 157.  Mr. Kearn also filed a Motion for Leave to File his exhibits under seal.  Doc.

160.  But Mr. Kearn also filed a concurrent Motion to Amend, seeking leave to file an amended

"pleading."  Doc. 161.  The motion actually sought leave to amend his § 2255 motion, which the

court granted.  But because his proposed amended § 2255 motion did not include any exhibits, it

denied his motion to seal as moot.  Doc. 166.  Mr. Kearn filed an amended § 2255 motion (Doc.

165) and also filed a Motion to Correct (Doc. 167), asking the court to consider his previously

filed exhibits with his amended § 2255 motion.  The government never has replied to Mr.

Kearns's Motion to Correct.

## II.     Factual Background

In 2013, Australian Detective Sergeant Stuart Butler conducted an undercover operation targeting individuals trading child pornography online. *Kearn*, 863 F.3d at 1303. Detective Butler exchanged emails with "cheyenneandliberty@yahoo.com." *Id.* That email account sent several photographs of Kearn's daughters, including one sexually explicit image of his youngest daughter. *Id.* In emails from "cheyenneandliberty@yahoo.com," the sender "described himself as a thirty-eight year old from Kansas, and a single father to four daughters[.]" *Id.* When Detective Butler asked for a picture of the daughters, the email account sent a photo of Mr. Kearn and three of his daughters. *Id.*

Using embedded data from the image, Detective Butler determined that "explicit images were taken with an iPhone 4s shortly before 'cheyenneandliberty' sent the emails." *Id.* Detective Butler referred the case to the United States Department of Homeland Security. *Id.* The domestic investigation traced the IP address used to send the explicit image of the little girl to Mr. Kearn's address in Kansas. *Id.* Concluding that Mr. Kearn matched the description given by "cheyenneandliberty," law enforcement officers executed a search warrant at Mr. Kearn's home. *Id.*

While executing the search warrant, law enforcement officers recognized Mr. Kearn's daughters from the images emailed by "cheyenneandliberty" and seized his iPhone 4s and home security footage. *Id.* The home security footage "confirmed that [Mr.] Kearn was using his phone when the emails were sent; [Mr.] Kearn was with his daughters when the pictures were taken; and the daughters were wearing the same clothes shown in the pictures on the dates the pictures were taken." *Id.* at 1304. At trial, Special Agent Craig Beene, a specialist in forensic examination of electronics, testified as an expert witness. *Id.* He testified that Mr. Kearn's

phone "contained explicit images of young girls, evidence of the 'cheyenneandliberty' email address, and two videos of [his] youngest daughter naked with [his] voice in the background." *Id.*

Mr. Kearn admitted that he took the explicit photo and videos but testified that he did so for an innocent purpose. *Id.* Mr. Kearn testified that he feared his youngest daughter was being molested and he took the photos and videos as "evidence of the molestation" more than a year before the "cheyenneandliberty" account emailed them to Detective Butler. *Id.* Mr. Kearn also testified that a former employee could have emailed the pictures to Detective Butler. *Id.* Mr. Kearn also put on his own expert—Andreux Doty—who testified that he found no evidence that emails from "cheyenneandliberty" were sent from Mr. Kearn's iPhone. *Id.*

### III.  Motion to Correct

Mr. Kearn filed an Amended Motion (Doc. 165) on May 24, 2019. Although Mr. Kearn also moved to seal the exhibits in his Amended Motion (Doc. 160), the Amended Motion had no exhibits attached. The court denied Mr. Kearn's Motion to Seal, noting that his Amended Motion obviated the Motion to Seal. Doc. 166 at 1. The court also held that his previous motion was moot "and the material attached to it will not form the basis for the court's decision on Mr. Kearn's motion." *Id.* at 1–2.

After the court denied his motion to seal, Mr. Kearn filed a Motion to Correct (Doc. 167), seeking "to clarify" that he intended to include the exhibits attached to his original motion with his Amended Motion. Doc. 167 at 1. He asked that "all his exhibits and the amended [§] 2255 [Motion] be read together as one document . . . and that it form the basis for the court's decision . . . ." *Id.* at 3. The government never has responded to Mr. Kearn's Motion to Correct;

4

however, the government has referred to Mr. Kearn's exhibits in its Response. *See, e.g.*, Doc. 168 at 26 (citing Doc. 157-7).

Mr. Kearn's pro se status entitles his papers to liberal construction. *Hall*, 935 F.2d at 1110 (the court should liberally construe pro se litigant's papers, despite confusion about or unfamiliarity with court rules). Thus, the court grants Mr. Kearn's Motion to Correct (Doc. 167). The court has reviewed and considered Mr. Kearn's exhibits attached to his original motion with his Amended Motion.

## IV.   Section 2255 Motion

Mr. Kearn asserts that his trial counsel, Michael Francis, provided ineffective assistance of counsel. The court first recites the legal standard applicable to Mr. Kearn's claims in subpart A, below. The court next considers Mr. Kearn's ineffective assistance of counsel claims in subpart B.

### A.  Legal Standard

A prisoner in federal custody may move to vacate his sentence under 28 U.S.C. § 2255(a) if such "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). The Sixth Amendment provides a person charged with a crime the right to assistance of counsel. U.S. Const. amend. VI. While the Sixth Amendment does not explicitly require effective assistance, the Supreme Court has explained that "[the Sixth Amendment] relies instead on the legal profession's maintenance of standards sufficient to justify the law's presumption that counsel will fulfill the role in the adversary process that the Amendment envisions." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). So, a habeas claim will lie where the petitioner shows by a preponderance of the evidence that his counsel provided ineffective assistance. *United States v. Walters*, 492 F. App'x 900, 903 (10th Cir. 2012).

An ineffective-assistance claim requires petitioner to "show both that his counsel's performance 'fell below an objective standard of reasonableness' *and* that 'the deficient performance prejudiced the defense.'" *Byrd v. Workman*, 645 F.3d 1159, 1167 (10th Cir. 2011) (quoting *Strickland*, 466 U.S. at 687–88). The court may address the prongs in any order because if the petition fails to satisfy either prong it is fatal to the petitioner's claim. *Id.* (citing *Strickland*, 466 U.S. at 697) (further citation omitted).

The first prong of the *Strickland* standard requires the petitioner to demonstrate counsel's conduct fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. The court applies a "strong presumption that 'counsel's conduct falls within the wide range of reasonable professional assistance.'" *Walters*, 492 F. App'x at 903 (quoting *Strickland*, 466 U.S. at 689). "Strategic or tactical decisions on the part of counsel are presumed correct, unless they were 'completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy.'" *United States v. McDonald*, No. 11-10158-EFM, 2013 WL 3867802, at *3 (D. Kan. July 25, 2013) (quoting *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (further quotations and citations omitted)).

*Strickland*'s second requirement, commonly called the prejudice prong, requires the petitioner to show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

### B. Discussion

Mr. Kearn divides his ineffective assistance claim into seven parts:

1. Trial counsel was ineffective because he failed to request a competency hearing under 18 U.S.C. § 4241 (Doc. 165 at 6, 17);

2. Trial counsel was ineffective because he failed to investigate and interview witnesses (*Id.* at 7, 20);

3. Trial counsel was ineffective because he failed "to engage in proper trial practice and/or strategy" (*Id.* at 9, 30);

4. Trial counsel was ineffective because he failed to advise him of available plea deals and his possible maximum sentence (*Id.* at 10, 37);

5. Trial counsel failed to object to *Brady* violations (*Id.* at 12, 39);

6. Trial counsel failed to defend against a double jeopardy violation (*Id.* at 12, 42); and

7. Trial counsel's cumulative errors "violated the trial's fundamental fairness" (*Id.* at 12, 54).

The court denies Mr. Kearn's § 2255 motion in part. The following seven sections—each corresponding to Mr. Kearn's seven-part ineffective assistance claim—explain why.

### 1. Was trial counsel ineffective because he failed to request a competency hearing under 18 U.S.C. § 4241?

Mr. Kearn asserts his counsel was ineffective for "not acting on the information and clues given or implied" and requesting a competency hearing. *Id.* at 1. Mr. Kearn asserts he was on a "drug cocktail" of both "legally prescribed" and "illegal controlled substances" before and during trial. *Id.* Mr. Kearn lists various "clues" tending to show evidence of his drug use, including his statements that he was a "cannabis activist" when he was arrested, "marijuana and rolling papers" found at his home, medical records detailing his various prescription medications, his urinalysis from March 31, 2015, his father's affidavit, and his own appearance in court. Mr. Kearn submits various affidavits from witnesses to support his claim that he was under the influence of methamphetamine before and during the trial. Doc. 157-7 at 25–41.

The government contends that the record does not support Mr. Kearn's claims. First, the government asserts, the court directly conversed with Mr. Kearn during both the *Lafler/Frye* colloquy and before Mr. Kearn decided whether to testify in his own defense. Second, the

government argues, Mr. Kearn's demeanor on the witness stand contradicts his competency argument. Mr. Kearn "followed his trial strategy" on the stand and "demonstrated that he understood the evidence." Doc. 168 at 20. He "was careful to deny any criminal activity" and tried "to show how someone else could have committed [the charged crimes]." *Id.* at 21. The government thus argues that Mr. Kearn cannot show he was prejudiced by his counsel's alleged failure to raise competency because he "cannot show a reasonable probability that . . . the result of the proceeding would have been different." *Id.* at 22. So, in the government's judgment, there was so little chance the court would have found Mr. Kearn incompetent, that his counsel's decision not to raise the issue was reasonable.

The court agrees with the government. Mr. Kearn's argument relies on *Strickland*'s first prong: that his counsel's decision to not request a competency hearing fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Mr. Kearn contends that his counsel ignored relevant information about his drug use, such as Mr. Kearn's interview with law enforcement, medical records, an email from Mr. Kearn's father, and Mr. Kearn's behavior in court. Doc. 165 at 17–19. Mr. Kearn argues that his counsel "should have acted on the information and clues given" and his counsel's failure to notify the court "prejudiced" him. *Id.* at 19. But even if the court presumes that Mr. Kearn's argument satisfies *Strickland*'s first prong, his claim still fails.

To prevail on his ineffective assistance claim, Mr. Kearn must also show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. That is, even if the court assumes without deciding that Mr. Kearn's counsel failed to raise the issue of competency and fell below the standard of reasonableness, Mr. Kearn still must show a "probability sufficient to undermine confidence in

the outcome," *i.e.*, that the court would have found him incompetent to stand trial.  *Id.*  Mr.

Kearn's Reply concedes that he must shoulder this burden.  Doc. 172 at 6–7 (recognizing that

"[t]he real question . . . is if there is a reasonable probability that the trial court would have

determined" he was incompetent).  But Mr. Kearn still fails to demonstrate facts that create a

reasonable likelihood the court would have found him incompetent to stand trial.

Mr. Kearn's argument is that his counsel should have raised the issue of his competency

because he had a history of marijuana use, he was taking prescribed medications, and his father

expressed concern about putting him on the stand.  Mr. Kearn focuses on his "change in

appearance" and asserts he was "distraught, unengaged, [and had] red and glassy eye[]s" during

his trial.  Doc. 165 at 2.  And even in his Reply, Mr. Kearn continues to focus his analysis on

what his lawyer should have done, arguing only that he has provided "facts undermining a

retrospective competency hearing."  Doc. 172 at 8.  Drug use alone does not "per se render a

defendant incompetent to stand trial."  *United States v. Oliver*, 626 F.2d 254, 259 (2d Cir. 1980).

Instead, it is merely a relevant factor the court can consider when evaluating competency.  *Id.*

Similarly, complaints of "stress, lack of sleep and general depression [] are not the type of mental

disease or defect rendering individuals mentally incompetent."  *United States v. Minnis*, 489 F.3d

325, 329 (8th Cir. 2007); *see also United States v. Hartman*, 487 F. App'x 437, 440 (10th Cir.

2012) (concluding defendant had failed to demonstrate he was prejudiced by his counsel's

alleged failure to raise the issue of competency because "there is no indication [defendant] did

not have a rational understanding of the proceedings against him, and all of the evidence

indicates he was able to assist counsel and understand the charges against him").  Other than his

alleged drug use, and "out of character behavior," Mr. Kearn presents no facts supporting a

reasonable likelihood the court would have found him incompetent to stand trial.  Indeed, the

court's colloquies with Mr. Kearn, *i.e.*, about *Lafler/*Frye issues and his control over the decision to testify, persuade the court that Mr. Kearn possessed a rational understanding of the proceedings against him.  The court thus denies Mr. Kearn's request for relief on this ground.

> **2.   Was trial counsel ineffective because he failed to investigate and interview witnesses?**

Mr. Kearn also argues that his trial counsel was ineffective because his counsel failed to investigate and interview potential witnesses.  These witnesses include:  "his children's therapists, Stacy Johnson and others[,] his sister's, mother's, and children's likely testimony about the clear candidate for distributing the porn, Robert (Bob) Henry[,] Bob Henry himself, (a neo-counterculture hacker)[,] expert on unavailable evidence, 'A-T' Williams (finding of KEARN's data corruption)[,] KEARN's home security expert, Dwayne Zinn, (Bob Henry's partner in unlawful activity)[.]"  Doc. 165 at 20.  Mr. Kearn asserts that he gave his attorney a list of tasks, contact information, and notes.  *Id.*  And Mr. Kearn also asserts his father suggested that counsel "pursue" various leads.  *Id.* at 21.

To show the requisite prejudice on an ineffective assistance of counsel claim based on counsel's failure to investigate or call a witness, Mr. Kearn must show:  (1) "'that the testimony of an uncalled witness would have been favorable,'" and (2) "that 'the witness would have testified at trial.'"  *United States v. Jordan*, 461 F. App'x 771, 775 (10th Cir. 2012) (quoting *Snow v. Sirmons*, 474 F.3d 693, 731 n.42 (10th Cir. 2007)).  Or, to put it differently, Mr. Kearn must do more than provide "his own allegations of the proposed testimony."  *Id.*

Here, Mr. Kearn merely has provided his own allegations about proposed testimony for the following witnesses:  Stacy Johnson, Bob Henry, his children, various therapists for his children, A-T Williams, and Dwayne Zinn.  Mr. Kearn fails to carry his burden to show *Strickland* prejudice for any of these witnesses.  For example, he merely speculates that "an

10

interview with [Stacy Johnson] could have affirmed to the jury why [Mr. Kearn] took the video(s) and photo of [his daughter] . . . ." Doc. 165 at 22. But Mr. Kearn also notes that, though his counsel did not contact Ms. Johnson before trial, his counsel noted that he was "not sure what all [Ms. Johnson] can tell the court other than [Mr. Kearn's] interaction with the kids while she was there . . . ." *Id.* at 21 (internal quotation marks omitted). "Strategic or tactical decisions on the part of counsel are presumed correct, unless they were 'completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy.'" *McDonald*, 2013 WL 3867802, at *3 (quoting *Fox*, 200 F.3d at 1296 (further quotations and citations omitted)). Without an affidavit from his proposed witnesses describing their proffered testimony, Mr. Kearn fails to carry his burden to show counsel's failure to call the witnesses prejudiced him at trial.

In contrast, Mr. Kearn has provided affidavits from other witnesses. These witnesses include: Connie Kearn, Edward Kearn, Dawn Dittemore, Michael Watkins, Evelyn Emery, Steven Scritchfield, and Sarah Parnell. Doc. 157-7 at 25–43. For two reasons, Mr. Kearn cannot demonstrate that the testimony of any of these witnesses would have changed the trial's outcome.

*First*, the majority of Mr. Kearn's proposed witnesses' affidavits describe their experience with Mr. Kearn's drug abuse or Mr. Kearn's behavior during his trial. *See, e.g.*, Doc. 157-7 at 25, 28, 31, 34, 37, 39 (various witnesses describing Mr. Kearn's drug use before and during trial). These witnesses provide no information about the charges Mr. Kearn faced at trial, nor do the contents of their affidavits contain information about Mr. Kearn's guilt or innocence.

*Second*, though Mr. Kearn provides affidavits from three witnesses who discuss issues central to trial, these witnesses do not provide adequate support to create a "reasonable

11

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. For example, proposed witness Evelyn Emery stated that she was "aware of the issues" in the case because Mr. Kearn told her that "he was confident the evidence should show Bob Henry . . . was the actual perpetrator of the crime(s) he's been accused of." Doc. 157-7 at 37. She also states that in 2018, she confronted Bob Henry in a laundromat, telling him to "man-up and confess to the crime." *Id.* (internal quotation marks omitted). But, despite her efforts, Mr. Henry "load[ed] up his wet clothes in a basket" and left. *Id.* Nothing in Ms. Emery's affidavit suggests that Mr. Henry would have admitted to a crime had he testified. Also, the jury heard Mr. Kearn's testimony about Mr. Henry at trial, Doc. 145 at 22–24, 35–37 (Tr. of Jury Trial (Volume 3) 523:9–525:22, 536:19–538:3), and in his closing argument, Mr. Kearn's counsel explicitly argued that Mr. Henry had committed the charged crimes. *Id.* at 181–82 (Tr. of Jury Trial (Volume 3) 682:22–683:19). But the jury did not find the alternative explanation persuasive in light of all of the evidence.

Similarly, Mr. Kearn's sister, Sarah Parnell, stated that in 2012 Mr. Kearn informed her of his concerns about his four-year-old daughter and her possible abuse. Doc. 157-7 at 41. She "encouraged him to document any injury and report everything [his daughter] told him about the injury to the proper authorities." *Id.* She also told Mr. Kearn that "any photo taken for the purpose of documenting possible abuse should be taken to the authorities lest the purpose of the photo be misconstrued and used against him." *Id.* Mr. Kearn's mother, Connie Kearn, also stated that she told Mr. Kearn to "document and photograph everything" concerning his youngest daughter "in late spring or early summer of 2012." Doc. 157-7 at 26.

The problem with Mr. Kearn's argument is that these witnesses do more harm to Mr. Kearn's version of events than good. Mr. Kearn's defense rested on his "innocent" reason for

the videos and photos of his youngest daughter.  His timeline of events placed his concern about

his daughter's safety in April 2012.  Doc. 145 at 29 (Tr. of Jury Trial (Volume 3) 530:4–18).

Mr. Kearn testified that he made a report to the sheriff's department around the same time, but

the investigation was unsubstantiated.  *Id.* at 30 (Tr. of Jury Trial (Volume 3) 531:4–5).  He also

testified that he took the pictures and videos in question around July or August 2012 to document

what his daughter's vaginal area "looked like in a normal circumstance" and not "to be displayed

in a federal court."  *Id.* (Tr. of Jury Trial (Volume 3) 531:16–21).  Mr. Kearn's sister and mother

indicated that they told him to document his daughter's *injury* and report it to the authorities.

But Mr. Kearn provides no evidence that either witness ever advised him to take photos of his

daughter to show her condition *in a normal circumstance*—as opposed to what they actually

advised him to document, *i.e.* suspected abuse.  And, his sister's affidavit explicitly testified that

she advised him to turn all photos over to the proper authorities.  Doc. 157-7 at 41.  Thus, Mr.

Kearn's proposed witnesses would not have bolstered his credibility, and likely would have

undermined it.

Mr. Kearn had ample opportunity to present his version of events to the jury.  He testified

that he took the pictures and videos of his daughters for an innocent purpose:  to document what

he believed was sexual abuse.  He also testified that he took the pictures and videos nine to ten

months before the government claimed he took them.  He told the jury that at least two other

people could have had access to his phone via his shared internet connection.  He put on an

expert witness who testified that the email account "cheyenneandliberty@yahoo.com" didn't

appear on Mr. Kearn's phone before December 27, 2012, and that the IP addresses used to email

the images were not confirmed to belong to Mr. Kearn.  The fact that Mr. Kearn's counsel did

not call these three other witnesses to testify does not "undermine confidence" in the trial's

outcome. *Strickland*, 466 U.S. at 694. Mr. Kearn has failed to carry his burden to demonstrate ineffective assistance on this basis, and the court thus denies his request for relief.

### 3. Was trial counsel ineffective because he failed to engage in proper trial practice or strategy?

Mr. Kearn asserts his trial counsel was ineffective for failing to engage in proper trial practice and strategy. He asserts five bases for this argument. The court addresses each one in parts i–v, below.

### i. Failure to Provide Expert Witness with Conditions for Success

Mr. Kearn asserts his counsel failed to assist his expert witness, Mr. Doty, during the expert's review of discovery. Mr. Kearn asserts these failures include: (1) failing to assist Mr. Doty in his attempts to access certain evidence, (2) failing to ensure Mr. Doty reviewed the 4,500 page unredacted Cellubrite Report, (3) agreeing with the government to modify Mr. Doty's expert report, and (4) allowing Mr. Doty to reference the Loehr Report during his trial testimony. Doc. 165 at 30–31.

The government responds, arguing that Mr. Kearn has not shown how his counsel's purported errors affected his defense strategy. Or, that his counsel's "omissions fell outside the wide range of professionally competent assistance." Doc. 168 at 33. And, the government notes, the Tenth Circuit already has resolved some of Mr. Kearn's arguments about his expert witness's testimony. *Id.*; *see also Kearn*, 863 F.3d at 1305–07 (addressing Mr. Kearn's argument that the district court erred when it allowed the government to elicit hearsay testimony from Mr. Kearn's expert and concluding the testimony "did not affect the outcome of the trial"). The government also notes that, despite the purposed change in Mr. Doty's expert opinion, the original opinion still was presented to the jury at trial. Doc. 168 at 32 n.4. At bottom, the government asserts Mr. Kearn cannot show his counsel's performance was deficient under the *Strickland* standard.

The court agrees with the government.  Mr. Kearn fails to shoulder his burden under either *Strickland* prong.  He relies only on the theory that failure to prepare "'for any contingency'" somehow jeopardized his defense.  Doc. 172 at 13 (quoting *Richter v. Hickman*, 578 F.3d 944, 946 (9th Cir. 2009), *rev'd*, *Harrington v. Richter*, 562 U.S. 86 (2011)).  Mr. Kearn merely lists his counsel's purported missteps while preparing his expert witness for trial.  Mr. Kearn does not explain how any of the alleged errors falls below "the wide range of professionally competent assistance" or created a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 690, 694.  Mr. Kearn has not demonstrated that his claim survives either *Strickland* prong.  The court denies Mr. Kearn's request for relief on this ground.

### ii.        *Failure in Discovery*

Mr. Kearn asserts his counsel failed to request his own discovery order, and instead relied on his former counsel's discovery order.  This failure, according to Mr. Kearn, resulted in "jumbled, incomplete, and inaccurate" case materials.  Doc. 165 at 31.  Mr. Kearn asserts his counsel's failure to acquire full discovery in his case "jeopardize[d] his . . . defense."  *Id.*

The government argues that Mr. Kearn cannot show that his counsel's failure to acquire full discovery prejudiced him at trial because he cannot show that any alleged deficiency "'had an adverse effect on the defense,' as opposed to 'some conceivable effect on the outcome of the proceeding.'"  Doc. 168 at 34 (quoting *Strickland*, 466 U.S. at 693).

The court again agrees with the government.  Mr. Kearn has not shown that his counsel's performance was deficient, so he cannot satisfy the first component of the *Strickland* test.  But, even if he could, Mr. Kearn also fails to make the required showing for the second component.  Mr. Francis's actions were not so serious that they deprived Mr. Kearn of a fair trial.  The

government presented sufficient evidence for the jury to find Mr. Kearn guilty beyond a reasonable doubt. Mr. Kearn does not show how Mr. Francis's actions prejudiced him such that the jury would have reached a different outcome in response to the government's trial evidence. The court thus rejects Mr. Kearn's ineffective assistance of counsel claim on this ground.

### iii.    Failure to Move for Suppression Hearing

Mr. Kearn also asserts, citing *Riley v. California*, 573 U.S. 373 (2014), that his counsel failed to file a motion asking to suppress law enforcement's search of his cell phone because it was outside the scope of the search warrant. Doc. 165 at 32. Mr. Kearn notes that "[c]ounsel was aware of *Riley v. California* and told [him] that it wouldn't apply here because [his] home had been raided in 2013, not 2014 when *Riley* was decided." *Id.* But, Mr. Kearn argues, because his trial happened after *Riley*, *Riley* applied to the search of his phone. Mr. Kearn's argument is mistaken for two reasons.

*First*, Mr. Kearn's counsel correctly concluded that Mr. Kearn could not use *Riley* to support a valid suppression argument for his cell phone data. When Mr. Kearn's cell phone was searched, the Supreme Court had not decided *Riley*, and so *Riley* would not have provided a basis for suppression. *See Davis v. United States*, 564 U.S. 229, 241 (2011) ("An officer who conducts a search in reliance on binding appellate precedent does no more than act as a reasonable officer would and should act under the circumstances." (citation and internal quotation marks omitted)); *see also id.* ("Evidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule."). An attorney does not provide ineffective assistance of counsel by failing to raise a meritless claim. *United States v. Young*, 862 F.2d 815, 820 (10th Cir. 1988) (holding the defendant was not prejudiced by counsel's failure to raise a meritless argument). So, Mr. Francis did not provide ineffective

assistance to Mr. Kearn when he refused to move to suppress evidence under *Riley*, because—as Mr. Francis informed Mr. Kearn—*Riley* did not apply to Mr. Kearn's case.

*Second*, even if *Riley* was available to Mr. Kearn, it would not have helped him.  Law enforcement officers did not search Mr. Kearn's phone without a warrant.  In *Riley*, the Supreme Court held that law enforcement officers could not use the "search incident to arrest" exception to the warrant requirement to conduct a warrantless search a cell phone's digital content.  *Riley*, 573 U.S. at 386 ("[O]fficers must generally secure a warrant before conducting . . . a search [of a cell phone].").  The Court clarified its holding, explaining "a warrant is generally required" before law enforcement officers may search a cell phone's contents "even when a cell phone is seized incident to arrest."  *Id.* at 401.  But "information on a cell phone is [not] immune from search" under a valid search warrant.  *Id.* at 401.  Here, Mr. Kearn concedes law enforcement officers seized his cell phone under a search warrant on May 7, 2013—in other words, it was not taken from his person when he was arrested on May 10, 2013.  Doc. 165 at 16–17 (acknowledging his cell phone was seized on May 7, 2013, and that law enforcement officers informed him that his cell phone was included in the search warrant); Doc. 144 at 30–31 (Officer Butler's testimony that the search warranted was executed on May 7, 2013); Doc. 12 at 2 (arrest warrant executed on May 10, 2013).  So, because Mr. Kearn's phone was seized and searched via a search warrant—not incident to arrest—*Riley* does not apply to this case.

Mr. Kearn has failed to show his counsel's performance was deficient, so he cannot satisfy the first component of the *Strickland* test.  The court thus denies Mr. Kearn's request for relief on this ground.

### iv. Failure to Object

Mr. Kearn argues his counsel's failure to object "to anything" at pretrial, trial, and sentencing prejudiced him by forcing him to argue the plain error standard on appeal. Doc. 165 at 33. Mr. Kearn lists 20 times when his counsel should have objected. *Id.* at 34–36.

The government responds that Mr. Kearn cannot show that any of his counsel's purported failures to object were unreasonable, would have succeeded, or would have changed the outcome of the trial. Doc. 168 at 35. "Failure to make a particular objection does not usually constitute ineffectiveness because objections necessarily fall within trial strategy," the government asserts. *Id.* (citing *Lundgren v. Mitchell*, 440 F.3d 754, 774–75 (6th Cir. 2006)). Finally, the government contends, "[t]he evidence in this case was overwhelming." *Id.* at 36.

The court agrees with the government. Mr. Kearn bases this argument on the premise that had his counsel objected to various purported errors, he would have faced a less rigorous standard on appeal and thus, he would have secured a better outcome on appeal. But Mr. Kearn's arguments fail for multiple reasons. He does not support his lengthy list of absent objections with any argument about the likelihood that the court would have sustained any of the objections. Nor does he argue how the objections, even if sustained, would have affected the outcome of the trial. "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. This standard is "highly deferential." *Id.* at 689. In other words, "the general presumption of objective reasonableness requires a petitioner to overcome the presumption that, under all the circumstances, the challenged action *might* be considered sound trial strategy." *Bullock v. Carver*, 297 F.3d 1036, 1046 (10th Cir. 2002) (quoting *Strickland*, 466 U.S. at 689 (internal quotation marks omitted)). "Strategic or tactical decisions on the part of

18

counsel are presumed correct, unless they were 'completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy.'" *Moore v. Marr*, 254 F.3d 1235, 1239 (10th Cir. 2001) (quoting *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000)).

Even if Mr. Kearn could satisfy *Strickland*'s first prong, Mr. Kearn also must show how "there is a reasonable probability that, but for" the errors, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  Here, Mr. Kearn has failed to demonstrate a reasonable probability that if his counsel had made any—or even all—of the objections, the trial would have had a different outcome.  The court denies Mr. Kearn's request for relief on this ground.

### v.       *Failure to Discuss Right to Testify with Mr. Kearn*

Finally, Mr. Kearn asserts his counsel did not discuss his right to testify, or meaningfully discuss his testimony strategy with him.  Mr. Kearn seems to contend his counsel failed to discuss the overall strategy behind his trial testimony and failed to elicit basic facts from him when he testified.

The government asserts Mr. Kearn's arguments are "disputed by the trial record."  Doc. 168 at 36.  The government references several times where Mr. Kearn's counsel asked for time to discuss the right to testify with his client, and when the court conducted a colloquy directly with Mr. Kearn.  Mr. Kearn asserted that he had not discussed his right to testify "at length" with counsel, but that he did not believe he needed more time to discuss the issue.  Doc. 168 at 38. And, when Mr. Kearn indicated that he had not "entirely discussed" whether he would testify, the court paused the proceedings and instructed Mr. Kearn and his counsel to discuss the issue in private.  *Id.*  So, the government argues, the record reflects that Mr. Kearn had many opportunities to discuss his right to testify with counsel.  And, even if Mr. Kearn's counsel did

not discuss the issue with him, the court's colloquy with Mr. Kearn "fully covered the right and potential consequences" of testifying. *Id.* at 39.

Mr. Kearn argues that his counsel didn't prepare his testimony with him—to his standard—before trial. He does not argue that his counsel, when directed by the court, failed to advise him of his right to testify. In fact, Mr. Kearn appears to critique the way Mr. Francis elicited his testimony while he was on the witness stand. Mr. Kearn does not argue that, had his counsel provided him with different advice, he would not have taken the stand. Instead, Mr. Kearn leaves the court to guess what change—if any—would have resulted had Mr. Kearn received all the advice he now alleges he was denied. Also, the court examined Mr. Kearn on this subject during the trial. Doc. 145 at 8–14 (Tr. of Jury Trial (Volume 3) 509:18–515:2). The court ensured Mr. Kearn was fully aware of his rights and, when Mr. Kearn informed the court that he and Mr. Francis had not entirely discussed the issue, the court asked Mr. Kearn and Mr. Francis to step outside the courtroom and take the time needed to discuss Mr. Kearn's right to testify. *Id.* at 11 (Tr. of Jury Trial (Volume 3) 512:17–22). When Mr. Kearn returned from that meeting, he informed the court that he and his counsel had discussed his rights and he was "fully informed" on the matter. Doc. 145 at 12 (Tr. of Jury Trial (Volume 3) 513:8–28). Mr. Kearn has failed to meet his burden under *Strickland*. He cannot show that he was prejudiced or that there is a reasonable probability the result of the proceedings would have been different. The court denies Mr. Kearn's request for relief on this ground.

### 4. Was trial counsel ineffective because he failed to advise Mr. Kearn of available plea deals and his possible maximum sentence?

Mr. Kearn argues that his counsel failed to give him "adequate advice" about his plea offer, and thus prevented him from making an informed choice. Doc. 165 at 37. He claims counsel never informed him that his plea deal "included dropping Count 1" and that "he first

heard of this at trial." *Id.* at 38.  Mr. Kearn also asserts his counsel informed him that he could

not plead guilty because Mr. Kearn would be committing "perjury by accepting responsibility for

criminal actions he had no part of." *Id.* at 38.  And, Mr. Kearn contends, his counsel failed to

inform him of the option to plead "no contest, or nolo conendere." *Id.*

The government makes several distinct responses to Mr. Kearn's arguments.  First, the

government asserts Mr. Kearn was made aware of the potential sentence carried by each of the

charges against him at his appearance before Magistrate Judge Sebelius on May 13, 2013.  Doc.

168 at 40.  At that appearance, the court "summarized the charges" and advised Mr. Kearn of the

possible penalties on each charge.  *Id.*  The government contends the court again summarized

both the charges and potential penalties for Mr. Kearn at his arraignment on June 6, 2013.

Next, the government asserts that the court conducted a *Lafler/Frye* hearing on May 5,

2015, where the government summarized the plea agreement that it had offered to Mr. Kearn.

*See* Doc. 143 at 240–41 (Tr. of Jury Trial (Volume 1) 240:2–241:14).  Mr. Kearn's counsel

confirmed that he had informed his client about the offer, but Mr. Kearn declined the offer.  *Id.* at

240 (Tr. of Jury Trial (Volume 1) 240:12–17).  Mr. Kearn confirmed these facts in open court.

*Id.* at 241 (Tr. of Jury Trial (Volume 1) 241:11–12).  The government argues that Mr. Kearn has

failed to show how his counsel was ineffective on this basis because the court ensured Mr. Kearn

knew about the possible plea offer and had time to consider the offer.  And, even if Mr. Kearn's

counsel failed to advise him of the maximum sentence he faced, Mr. Kearn was not prejudiced

because the court, on several occasions, advised Mr. Kearn of the possible sentence he faced on

each charge.  Finally, the government notes that Mr. Kearn's argument about his counsel's

failure to advise him of the possibility of pleading "no contest" is without merit because such a

plea only would have been entered over the government's objection.  Doc. 168 at 42.  And so, the government argues, Mr. Kearn cannot show that he actually was prejudiced under *Strickland*.

The court generally agrees with the government.  First, Mr. Kearn has failed to meet his burden on ineffective assistance of counsel claims premised on his knowledge of his potential sentence and his awareness of the government's plea offer.  As the government notes, Mr. Kearn was made aware of his possible maximum sentence at least two different times by Magistrate Judge Sebelius.  *See* Doc. 10 at 1 (hearing on May 13, 2013, noting "charges and penalties explained to defendant"); Doc. 17 at 1 (hearing on June 6, 2013, noting "charges and penalties explained to defendant").  And, Mr. Kearn stated on the record that he was aware of the government's plea offer and he had reviewed it the week before trial.  Doc. 143 at 241 (Tr. of Jury Trial (Volume 1) 241:11–12).  So, the court denies Mr. Kearn's request for relief on these grounds.

Next, despite Mr. Kearn's professed desire to plead "no contest or nolo contendere," he could plead no contest only with the court's consent.  Fed. R. Crim. P. 11(a)(1).  "Before accepting a plea of [no contest], the court must consider the parties' view and the public interest in the effective administration of justice."  *Id.* 11(a)(3).  And, the court has broad discretion to decide whether to accept a nolo contendere plea.  *See United States v. Buonocore*, 416 F.3d 1124, 1129–31 (10th Cir. 2005) (holding "that a district court's adoption of a general policy against [nolo contendere] pleas is permissible").  Mr. Kearn has not established that the court would have accepted his proposed plea of nolo contendere, particularly over an objection by the government.  So, the court dismisses this claim because it is "based entirely on speculation" and does not establish prejudice.  *See Palato v. United States*, No. 11-CV-55-J, 08-CR-105-J 2012 WL 13055693, at *10 (D. Wyo. June 1, 2012) (dismissing ineffective assistance of counsel claim

based in part on counsel's failure to advise defendant about possibility of entering nolo contendere plea because it was "too speculative"); *see also United States v. Boone*, 62 F.3d 323, 327 (10th Cir. 1995) (denying defendant's claim that counsel was ineffective for failing to negotiate a plea with the government because defendant could not show (1) that the prosecutor would have accepted the plea, or (2) that the court would have accepted it).

Finally, Mr. Kearn asserts that his counsel informed him that he could not plead guilty because "he would essentially be lying to the court and thus committing perjury . . . ." Doc. 165 at 38. Mr. Kearn cites *Williams v. Jones*, 571 F.3d 1086 (10th Cir. 2009), arguing he received constitutionally deficient representation. The government does not respond directly to this claim.

Liberally construing Mr. Kearn's argument, the court—on the current record—cannot conclude that he received constitutionally adequate representation from counsel about the government's plea offer. The government has not contested Mr. Kearn's factual assertion that his counsel told him he could not plead guilty or accept the government's guilty plea offer. For example, the government did not provide, or seek permission to solicit, an affidavit from Mr. Kearn's counsel. *See Duguay v. Spencer*, 765 F. Supp. 2d 90, 98 (D. Mass. 2011) ("The [c]ourt may require attorneys to provide affidavits or other information related to their prior representation when the effectiveness of that representation is at issue." (citing *United States v. Pinson*, 584 F.3d 972, 979 (10th Cir. 2009) (further citations omitted))); *see also Pinson*, 584 F.3d at 978 ("[W]e hold that when a habeas petitioner claims ineffective assistance of counsel, he impliedly waives attorney-client privilege with respect to communications with his attorney necessary to prove or disprove his claim."). Without any information from Mr. Kearn's counsel, the "files and records of the case do not conclusively show that [Mr. Kearn] is entitled to no relief." *United States v. Herring*, 935 F.3d 1102, 1111 (10th Cir. 2019) (concluding the district

court abused its discretion when it denied defendant's claim that counsel provided ineffective assistance "in relation to the plea agreement without permitting further development of the record"). The court concludes this claim may warrant an evidentiary hearing. 28 U.S.C. § 2255(b) ("Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing . . . ."); *United States v. Beltran-Palafox*, No. 09-40022-01-JAR, 2012 WL 899262, at *3 ("An evidentiary hearing must be held on a § 2255 motion 'unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief.'" (quoting 28 U.S.C. § 2255(b))).

While it appears an evidentiary hearing may be warranted on this ground, the court is mindful of the current COVID-19 global pandemic and the problems—in terms of defendant's safety and logistical restrictions—it presents. Mr. Kearn currently is housed at a Bureau of Prisons facility in Illinois. The state of Kansas currently is under a "stay-at-home order" and the District of Kansas has suspended many in-person hearings. Transporting Mr. Kearn from Illinois to Kansas for an immediate evidentiary hearing might endanger Mr. Kearn and, possibly, others. And, independent of these public health considerations, the next person the court should hear from is Mr. Kearn's former counsel, Michael Francis. The court thus orders—as an intermediate step—the government to acquire and file an affidavit from Mr. Kearn's former counsel Michael Francis **on or before June 1, 2020**. This affidavit should address Mr. Kearn's claim that his counsel advised him that he could not accept the government's plea offer, but it should address only that claim. *See Pinson*, 584 F.3d at 979 (suggesting an order for an affidavit from counsel be "narrowly tailored" and "indicate precisely what information the attorney [is] required to disclose"). Consistent with *Pinson*'s directive, the affidavit should address Mr. Francis's recollection, if any, about the following subjects:

- **Whether Mr. Francis informed Mr. Kearn about the full contents of the government's plea offer, (including whether that offer included dropping the charge in Count I of the Indictment) and, if Mr. Francis provided that information to Mr. Kearn, when he did so; and**

- **Whether Mr. Francis told Mr. Kearn that he could not plead guilty because he would commit perjury by accepting responsibility for illegal activity he had not actually committed.**

By this Order, the court finds (and informs Mr. Francis) that Mr. Kearn impliedly has waived the attorney-client privilege that, but for Mr. Kearn's claim of ineffective assistance, otherwise would protect Mr. Francis's confidential communication with Mr. Kearn.  Mr. Kearn's wavier is limited, however, to the subjects identified in the bolded material in this paragraph.

After all parties have reviewed the affidavit, the court will evaluate next steps and, if an evidentiary hearing is warranted, the steps required to facilitate Mr. Kearn's travel.

### 5.   Was trial counsel ineffective because he failed to object to *Brady* violations?

Mr. Kearn next argues that the government committed *Brady* violations when it failed to produce the entirety of his home security footage.  He contends the government never produced portions of the more than 528 hours of security camera footage and that the undisclosed footage was exculpatory because it showed another person entering his home to "gain access to [his] cell phone, computer, and/or other evidentiary items."  Doc. 165 at 41.  Mr. Kearn argues his counsel was ineffective for failing to prevent or remedy this purported *Brady* violation.

The government argues in response, first, that Mr. Kearn's argument fails because he does not explain what evidence is on the footage or how it would exonerate him.  And, the government contends, the existence of any exculpatory evidence on the undisclosed footage is "speculative."  Doc. 168 at 43.  Mr. Kearn, the government asserts, cannot show that he was prejudiced by any purported *Brady* error by his counsel.

The court again agrees with the government.  To show prejudice, Mr. Kearn must demonstrate more than "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693.  The government commits a *Brady* violation when it withholds evidence that is favorable to a defendant and "the evidence is material either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  Mr. Kearn merely argues that there is some possibility the video footage he contends was withheld contained exculpatory evidence.  But Mr. Kearn must do more than speculate to succeed.  He must show a "reasonable probability that, but for" counsel's errors, "the result of the proceeding would have been different." *Id.* at 694.  Mr. Kearn fails to carry this burden under *Strickland* and so, the court denies his request for relief on this basis.

### 6.  Was trial counsel ineffective because he failed to defend against a double jeopardy violation?

Mr. Kearn raises several arguments about double jeopardy.  First, he asserts the jury convicted him "of both distribution and possession based on the same visual depictions."  Doc. 165 at 43.  He contends the Indictment uses "identical language in both counts" and charges that events occurred "on or about" certain dates.  *Id.*  Second, Mr. Kearn asserts the government failed to identify the "precise images at issue for each of the three counts."  *Id.* at 44.  And, Mr. Kearn continues, the jury wasn't instructed that the two charges relied on different images. Third, Mr. Kearn attaches several visual demonstrations that, in his view, show that (1) the distribution charge is "swallowed" by the production charge, (2) that "production swallows possession" because "one necessarily possesses an image he produces," and (3) "distribution swallows possession" because "one necessarily possesses an image he distributes." *Id.* at 46–51. Mr. Kearn cites caselaw analyzing whether both a receipt-of-child-pornography charge and a possession charge violate the double jeopardy clause, contending that a similar logic applies to

production, distribution, and possession charges.  And so, Mr. Kearn argues, his counsel was ineffective because he failed to raise the issue of double jeopardy.

The government asserts that "there is no double jeopardy bar" here because "each count requires an additional fact that the other counts do not."  Doc. 168 at 44–45.  The government contends that possession of child pornography requires possession, an element that a charge for production of child pornography doesn't require.  *Id.* at 46 (quoting *United States v. Gomez-Diaz*, 911 F.3d 931, 934 (8th Cir. 2018)).  And, the government continues, "possession and distribution require proof of different facts."  *Id.* (first citing *United States v. Chiaradio*, 684 F.3d 265, 280 (1st Cir. 2012), then citing *United States v. Woerner*, 709 F.3d 527, 539 (5th Cir. 2013), and then citing *United States v. McElmurry*, 776 F.3d 1061, 1065 (9th Cir. 2015)).  Finally, the government argues, even if "either Count 2 or Count 3 were lesser included offenses, the sentence in Count 1 would still control."  *Id.* at 47.  So, the government argues, even if Mr. Kearn were right and, Count 2 and Count 3 are lesser included offenses, Mr. Kearn "would still be facing the same sentence."  *Id.*; *see also id.* (citing *United States v. Benoit*, 713 F.3d 1, 18 (10th Cir. 2013) (where defendant convicted of both receipt and possession of child pornography, Tenth Circuit vacated the lesser charge of possession).  But, at bottom, the government contends, because double jeopardy does not apply to Mr. Kearn, so Mr. Kearn's counsel did not perform deficiently.

The court agrees with the government.  Mr. Kearn fails to demonstrate a viable double jeopardy objection existed in his case.

The Fifth Amendment prohibits multiple punishments for the same crime.  *Whalen v. United States*, 445 U.S. 684, 688 (1980).  But "[t]he same act or transaction may constitute separate offenses if each offense requires some fact not required to establish the other."  *United*

*States v. Meuli*, 8 F.3d 1481, 1485 (10th Cir. 1993) (citation omitted); *see also United States v. Dixon*, 509 U.S. 688, 696 (1993) ("The same-elements test, sometimes referred to as the '*Blockburger*' test, inquires whether each offense contains an element not contained in the other;" and if two offenses contain identical elements, then "they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution.").

Here, the government charged Mr. Kearn with:  (1) production of child pornography under 18 U.S.C. § 2215(b); (2) distribution of child pornography under 18 U.S.C. § 2252(a)(2); and (3) possession of child pornography under 18 U.S.C. § 2252(a)(4)(B).  *See generally* Doc. 15.  But these charges don't violate double jeopardy.  *First*, "[p]ossession of child pornography includes at least one element that production of child pornography does not:  possession." *United States v. Gomez-Diaz*, 911 F.3d 931, 934 (8th Cir. 2018).  And, although Mr. Kearn argues that "one necessarily possesses an image he produces," Doc. 165 at 50 (emphasis omitted), the Eighth Circuit has noted "that is not always the case" and "§ 2252(a)(4)(B) requires an element not required for § 2251(a)."  *Gomez-Diaz*, 911 F.3d at 934.  *Second*, possession is not a necessary element of distribution.  *United States v. Chiaradio*, 684 F.3d 265, 280 (1st Cir. 2012) (holding that while possession may be "helpful" to proving distribution, "it is technically not a necessary element" (citation and internal quotation marks omitted)); *see also United States v. McElmurry*, 776 F.3d 1061, 1063–65 (9th Cir. 2015) ("Neither possession nor distribution of child pornography is necessarily a lesser-included offense of the other.").

To support this argument, Mr. Kearn primarily relies on *United States v. Benoit*, 605 F. App'x 704 (10th Cir. 2015).  He urges the court to draw from the Circuit's analysis of receipt and possession of child pornography and apply that same reasoning to his possession and distribution charges.  The Ninth Circuit addressed precisely this argument in *McElmurry*.  776

F.3d at 1063–64.  There, the defendant likewise relied on cases holding that possession was a lesser included element of receipt of child pornography.  *Id.*  The Ninth Circuit held it is possible to distribute something without possessing it.  *Id.* at 1064 (discussing hypothetical situation where one distributes an image without possessing it).  The court finds the Ninth Circuit's reasoning persuasive and predicts that our Circuit—if presented with the issue—also would hold that possession of child pornography and distribution of child pornography are not lesser included offenses or required elements of each other.  So, Mr. Kearn cannot show his counsel's performance was deficient on this ground, nor that he was prejudiced at trial.  The court denies Mr. Kearn's request for relief on this ground because he has failed to meet his burden on either prong of *Strickland*.

### 7.   Did trial counsel's cumulative errors violate the trial's fundamental fairness?

Finally, Mr. Kearn appears to assert that his counsel's cumulative errors entitle him to relief.  But Mr. Kearn merely recites the legal standard for this analysis.  He makes no specific argument about his counsel's purported errors.

The government asserts that Mr. Kearn has failed to identify any actual errors, much less two or more.  Thus, it asserts, there is no basis to invoke the cumulative error analysis.  The government thus argues, the court should deny Mr. Kearn's request for relief under this doctrine.

The court agrees with the government.  "Cumulative error is present when the 'cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error.'"  *Workman v. Mullin*, 342 F.3d 1100, 1116 (10th Cir. 2003) (quoting *Duckett v. Mullin*, 306 F.3d 982, 992 (10th Cir. 2002)).  Mr. Kearn has failed to identify any error by counsel.  *United States v. Rivera*, 900 F.2d 1462, 1471 (10th Cir. 1990) ("[A] cumulative-error analysis should evaluate only the effect of matters

determined to be error, not the cumulative effect of non-errors.").  And, even if Mr. Kearn's

remaining claim succeeds, he still must allege two or more errors for the cumulative error

doctrine to apply.  The court declines to apply this standard to Mr. Kearn's case.

## V.    Certificate of Appealability

Finally, Rule 11 of the Rules Governing Section 2255 Proceedings requires the court to

"issue or deny a certificate of appealability when it enters a final order adverse" to the petitioner.

A court may grant a certificate of appealability only "if the applicant has made a substantial

showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A petitioner satisfies

this burden if "reasonable jurists would find the district court's assessment of the constitutional

claims debatable or wrong."  *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citations and internal

quotation marks omitted).

As explained above, Mr. Kearn has not made a substantial showing that anyone denied

him of a constitutional right.  He makes no colorable argument that his counsel was ineffective.

The court thus declines to issue a certificate of appealability.

## VI.    Conclusion

The court denies Mr. Kearn's § 2255 motion in part because he has failed to establish that

he received ineffective assistance of counsel under *Strickland*.  And the court declines to issue a

certificate of appealability.  But the court orders the government to file an affidavit from Mr.

Kearn's former counsel Michael Francis **on or before June 1, 2020**.  The affidavit must be

limited to the topics outlined in this Order.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Jonathan

Kearn's Motion to Correct (Doc. 167) is granted.

**IT IS FURTHER ORDERED THAT** defendant Johnathan Kearn's First Amended

Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence (Doc. 165) is denied

in part.

**IT IS FURTHER ORDERED THAT** the government must file an affidavit from Mr.

Kearn's former counsel Michael Francis **on or before June 1, 2020**.  The affidavit must be

limited to the topics outlined in this Order.

**IT IS SO ORDERED.**

**Dated this 30th day of April, 2020, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**

31