UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS


FILED
MAY 28 2020
Clerk, U.S. District Court
By:_____ Deputy Clerk

UNITED STATES OF AMERICA,  )
  Respondent,  )
    )
vs.  )  Case No. 5:13-cr-40057-01-DDC
    )  Habeas No. 5:19-cv-4032-DDC
JONATHAN KEARN,  )
  Movant.  )

## MOTION TO VACATE JUDGMENT

**Comes Now**, Jonathan Kearn and would respectfully show this Court as follows:

1. Movant filed this action seeking habeas relief under § 2255, following his conviction five years ago for violating 18 U.S.C. §§ 2251(b), 2252(a)(2), and 2252(a)(4)(B).

2. On April 30, 2020, this Court dismissed six out of seven grounds, while ordering discovery on the permitted ground. [Doc. 173].

3. For the reasons set forth below, and pursuant to Fed. R. Civ. Pro. 59, Mr. Kearn respectfully requests that this Court:

    a. Vacate the judgment of dismissal on the grounds that the court refers to as 1 (Competency), 5 (<u>Brady</u> violations), 6

(Double Jeopardy), and 7 (Cumulative Error). [Doc. 173 at 6-7];

    b. To the extent that the Court denies the foregoing, grant him a certificate of appealability.

PROCEDURAL BACKGROUND

    The procedural posture is fairly set forth in the Court's Memorandum and Order, with two relevant exceptions:

(1) The images referenced by the indictment are images supposedly taken with an iPhone; images evinced at trial to have actually been <u>placed</u> on the iPhone. An iPhone, as the record demonstrates, produces EXIF identity data when it either takes a picture, or when it synchronizes with another device (or is hacked) and the image is loaded to the iPhone's internal drive. [**Compare**, Doc. 173: Order at 3, **with** Trial transcript Vol. II at 479]. Historically speaking, the pictures had been archived with the state case abuse material on a computer that Bob Henry worked on prior to the images being re-placed on the iPhone.

(2) The "home security footage" was not listed on the warrant with any degree of particularity, but the Court correctly points out that it was seized, anyway. [Doc. 173 at 3].

ARGUMENT

A. Standard of Review

    Within 28 days of the judgment, the Federal Rules permit a party to ask a District Court to reconsider its orders under Rule 59 rather than take an immediate appeal. See, e.g., <u>York</u>

v. Tate, 858 F.2d 322, 326 (6th Cir. 1988) ("the purpose of Rule 59 is to allow the district court to correct its own errors, sparing the parties and appellate courts the burden of unnecessary appellate proceedings." (quotation omitted)). When deciding whether to grant a party relief under the Rule, the Court must balance "the need to bring litigation to an end, and the need to render just decisions on the basis of all the facts." Gencorp, Inc. v. American Int'l Underwriters, 178 F.3d 804, 834 (6th Cir. 1999). Reconsideration is especially appropriate where the Court has misunderstood the arguments that the losing litigant sought to make. Bank of Waunakee v. Rochester Cheese Sales, Inc., 906 F.2d 1185, 1191 (7th Cir. 1990).

In our Tenth Circuit, grounds warranting a motion under Rule 59(e) include the following: (1) an intervening change in controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice. Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000). Accordingly, "a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law. It is not appropriate to revisit issues already addresseed or advance arguments that could have been raised in prior briefing." Id. As such, Movant properly brings this as a Rule 59(e) motion, and not a second or successive 2255.

B. <u>Enumerated Errors</u>

I <u>Competency</u>

The Court never addresses the binding Supreme Court and Tenth Circuit standards of conducting a <u>nunc pro tunc</u> competency hearing. In our Tenth Circuit, there is no presumption of correctness for a retrospective competency analysis when there was no competency hearing held. <u>Barnett v. Hargett</u>, 174 F.3d 1128, 1136 (10th Cir. 1999). This was highlighted in the Reply [Doc. 172 at 6] and factual basis in Doc. 165.

The Court seems to assume, however, that "[o]ther than his alleged drug use, and 'out of character behavior,' Mr. Kearn presents no facts supporting a reasonable likelihood the court would have found him incompetent to stand trial. Indeed, the court's colloquies with Mr. Kearn [<u>i.e.</u> about <u>Lafler/Frye</u> issues and his control over the decision to testify], persuade the court that Mr. Kearn possessed a rational understanding of the proceedings against him." [Doc. 173 at 9-10].

On the Contrary, due process is violated by the Court's failure to provide an adequate <u>contemporaneous</u> hearing on Kearn's competency to stand trial. But even more critical to circuit authority error, it is impossible to now conduct a meaningful <u>nunc pro tunc</u> hearing on competency even three years after trial. <u>Griffen v. Lockhart</u>, 935 F.2d at 931.

Movant answers that five years have passed since trial (that is more than three), and yet the court engaged in a <u>nunc pro tunc</u>, "desktop" hearing, anyway but by overlooking that fact.

The Court cites primarily to Kearn's ability to answer

questions at a two-minute hearing on Lafler/Frye before trial, and his response five days later while on the stand, ignoring all the days in between and overlapping, when the trial was actually happening and Movant was not legally competent to participate in his own trial.

"All of the evidence" measured in a decision under 2255 must include evidence not included at trial. For clarity, the facts are grouped in two categories: Facts that occurred before trial (tending to show counsel was aware of bona fide information any attorney performing above objectively ascertained minimally acceptable levels would use to request a competency hearing). The other set of facts are those which occurred exclusively during the time period of the trial. For context, in any other setting, after being questioned and tested as to his debilitating drug abuse (not mere "use," but abuse), his bond would have been revoked. The trial would have been re-scheduled after a qualified expert properly evaluated Mr. Kearn under the Federal Rules of Evidence (Rules 702 & 703). At bottom, Methamphetamine and crank abuse do not present classic "drunk" psychosocial affects, they present apparently clear answers, except that those answers are based on flawed perceptions of reality. (See, DEA and medical data exhibits , Doc. 165 and following.)

At the end of the day, the Court's error was first to ignore the standard for nunc pro tunc competency hearings (Barrett), when no hearing was even held to being with; and second to conflate evidence that counsel was supposed to act upon, but did

not, where that action would have produced a different result, with the bona fide evidence of incompetence precluding Kearn's meaningful involvement during trial (i.e. not just "bookend" events).

Even if this Court does not find this issue debatable, reasonable jurists could conclude the issue presented is adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000).

When the district court denies a habeas petition on procedural grounds, a certificate of appealability should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right (here, due process under Godinez v. Moran, 509 U.S. 389 (1993), and IAC under the Sixth Amendment). Jurists of reason would find it debatable whether the district court was correct in its procedural ruling. Slack, 529 U.S. at 484. Kearn has met this burden. Five years have passed, nearly twice the legal limit precluding a nunc pro tunc hearing on competency of three years. That eternity alone is enough to cause jurists of reason to debate the district court's error.


## II  Brady Violation, and Counsel's Failure to Object

The Court says, in relevant part, that undisclosed exculpatory footage "does not exonerate him," because "[Kearn] does not explain what evidence is on the footage." [Doc. 173 at

25]. The Court also states how merely arguing "that there is some possibility the video footage he contends was withheld contained exculpatory evidence," does not meet the standard of Brady v. Maryland, 373 U.S. 83 (1963).

On the Contrary, the Court missed completely the following evidence existing on the footage and how reasonable jurists would exonerate him: "The camera footage is important because it does show Bob Henry entering and leaving the Kearn residence [during the inculpatory image time period], and his behavior on camera is not neutral evidence (especially for the jury to consider). The jury would have seen these actions of Bob henry in light of the defense theory of a different perpetrator. The greater weight of the evidence would have caused reasonable doubt as to Jonathan Kearn['s intent and actus rea to load child-pornographic content onto his device(s).] [Doc. 172: Reply at 20]. The Court's oversight further failed to account for numerous witness affidavits in the 2255 that indicate Bob Henry was the likely suspect, and was at the time an expert hacker/sabateur with motive to harm Kearn...which would have added to Kearn's own testimony and changing the weight of the evidence in his favor.

Movant answers that under Rule 59(e) standards, such a clear error of fact finding (facts that would exonerate him, even though the standard is just to make the issue "debatable"), is something reasonable jurists could argue (or for that matter agree) would result in a different outcome, and therefore a COA should be granted on this issue.

7

III <u>Double Jeopardy by Using the Same Images</u>

The Court denies this ground on the one hand by acknowledging that "one necessarily possesses an image he produces" (violating <u>Blockburger</u> because the same possessed image was used), but on the other hand says "that is not always the case," and "§ 2252(a)(4)(B) requires an element not required for § 2251(a)." [Doc. 173 at 28, citing extra-circuit authority of <u>United States v. Gomez-Diaz</u>, 911 F.3d 931, 934 (8th Cir. 2018).] The Court then proceeds to speculate on hypotheticals from the Ninth Circuit, from a case where the images in question were not re-used for each count, as they were in Kearn's case. [<u>Id</u>. at 28-29, citing <u>United States v. McElmurry</u>, 776 F.3d 1061, 1063-65 (9th Cir. 2015).

On the Contrary, Movant answers that <u>McElmurry</u> is distinguishable with a difference: First, unlike the reasoning that the images "might not" be the same element possessed in those extra-Circuit case, in the case at bar they were exactly the same images. What is more, where speculating hypotheticals on what might not be possessed and gets distributed anyway, the exact opposite conclusion was reached by the Government and the jury. (Finding that the same images were both possessed and distributed and produced).

These facts, taken together with the law of <u>United States v. Benoit</u>, 065 F.App'x 704 (10th Cir. 2015), and read together with <u>United States v. Sturm</u>, 673 F.3d 1274 (10th Cir. 2012), leap off the page as raising Fifth Amendment Double Jeopardy concerns.

8

The list in support of Rule 59(e) relief is rather comprehensive:

a. the government did not identify the precise images at issue for each of the three counts;

b. in closing, the Government asked the jury to convict Mr. Kearn, but it did not specify which images it thought were sufficient to convict on each count;

c. the government referred to the images and argued that he distributed the possessed images (TT, Vol. III at 169);

d. the jury instructions demonstrate that the jury was <u>not</u> instructed that the counts referred to distinct visual depictions, a point made clear in <u>Sturm</u> as necessary in finding a Double Jeopardy violation (<u>Sturm</u>, 673 F.3d at 1288).

Mere speculation (based on clear factual omission) that "the Ninth Circuit's reasoning" is persuasive and making "predict[ions]" about what the Tenth Circuit would say "if presented with the issue," is a straw man based on a false premise. Reasonable jurists could conclude that as-applied to the trial they actually attended, possession is a lesser included offense of either distribution or production, where the elements to prove them are based on the same, non-distinct images. Reasonable Jurists could therefore conclude that this is either a Due Process violation, or a Sixth Amendment violation (where Counsel was obligated to bring the challenge either on appeal or before trial), changing the outcome by reducing the multiplicitous conviction(s).

9

IV <u>Cumulative Error and Fundamental Fairness</u>

The Court, it seems, denies relief because "Mr. Kearn merely recites the legal standard for this analysis [of cumulative error]. He makes no specific argument about his counsel's purported errors." [Doc. 173 at 29]. Further, the court "agrees with the government," in thinking that "Mr. Kearn has failed to identify any actual errors, much less two or more." [<u>Id</u>.]

On the Contrary, there are no less than 25 reasons listed in the original 2255 motion, and re-listed on pages 24-25 of the Reply. [<u>See</u>, Docs. #165, 172]. Also, it is manifest error to conclude that the government got it right when they <u>agreed</u> (under Fed. R. Civ. Proc. Rule 8(b)(6)) with Mr. Kearn to at least this objection: "The government has conceded that counsel should have moved to suppress the Dropbox Link ... that was only found on their end of the computer,' but never found on Kearn's computer, iPhone, or in any evidence seized from his home." [Doc. 172: Reply]. As the government conceded, counsel was ineffective for failing to object to this non-existent evidence. Reasonable jurists would find the Court's conclusions debatable.

<u>CONCLUSION</u>

For all of the foregoing reasons, Jonathan Kearn respectfully requests the following relief:

1. Vacate the judgment of dismissal on the grounds the court refers to as 1 (Competency), 5 (<u>Brady</u> violations), 6 (Double

Jeopardy), and 7 (Cumulative Error). [Doc. 173 at 6-7].

2. To the extent that the Court denies the foregoing, grant him a certificate of appealability.

May 21st, 2020
Date Executed
Under penalty of perjury pursuant to
28 U.S.C. § 1746, I hereby swear and verify
that the foregoing is true and correct as an affidavit.
Further, that it has been deposited this day
in the institution's internal mail system
designed for legal mail under Prison Mailbox Rule,
United States Postal Service, first-class postage prepaid.

/s/ Jonathan E. Kearn
Jonathan Kearn, pro se
# 23150-031
P.O. Box 1000
Marion, IL  62959

Prepared by:
Eric D. Welch
Paralegal
P.O. Box 1000/10444-089
Marion, IL  62959

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was forwarded via the CM/ECF System upon filing by the clerk, or by United States Postal Service, first-class postage prepaid, upon the following:

Christine E. Kenney, AUSA
444 SE Quincy, Room 290
Topeka, KS  66683

Jonathan Kearn #23150-031
United States Penitentiary
PO Box 1000
Marion, IL 62959

SAINT LOUIS MO

25 MAY 2020 PM 7 L



⇔23150-031⇔
U S District Court
444 SE Quincy ST
Federal Bldg/ Court Clerk
Topeka, KS 66683
United States

66683-351015