# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

---

UNITED STATES OF AMERICA,    )
    Respondent,    )
        )
vs.    )      Case No. 5:13-cr-40057
        )      Habeas No. 5:19-cv-4032
JONATHAN KEARN,    )
    Movant.    )

---

MOTION TO PROPOUND INTERROGATORIES
[28 U.S.C. § 2246; and
Rule 7(c) of the Rules Governing § 2255 Proceedings]

---

Comes now, **Jonathan Kearn**, pursuant to the Court's Memorandum and Order. [Doc. 173 at 25]. The Court found it necessary to test via discovery trial counsel's "recollection, if any, about the following subjects":

1. Whether Mr. Francis informed Mr. Kearn about the full contents of the government's plea offer, (including whether that offer included dropping the charge in Count I of the Indictment) and, if Mr. Francis provided that information to Mr. Kearn, when he did so; and

2. Whether Mr. Francis told Mr. Kearn that he could not plead guilty because he would commit perjury by accepting responsibility for illegal activity he had not actually committed.

[Id.]

STANDARD

Where a habeas petition has survived initial screening, "evidence may be taken orally or by deposition, or in the discretion of the judge, by affidavit." 28 U.S.C. § 2246. If affidavits are permitted in lieu of deposition or live testimony, the law requires specific procedural safeguards to attempt to mitigate the lack of opportunity to cross-examine the affiant: First, the parties shall have the right to propound written interrogatories to the affiants. Id. See also, Rules Governing § 2255 Proceedings, Rule 7(c) ("The judge must give the party against whom ... additional materials are offered an opportunity to admit or deny their correctness.")

Second, issues of credibility should not be resolved with resort to affidavits. Blackledge v. Allison, 431 U.S. 63, 82 n.7 (1977) (quotation omitted) ("When the issue is one of credibility, resolution on the basis of affidavits can rarely be conclusive... .").

Finally, critical issues of fact may not be decided on the basis of affidavits alone. Walker v. Johnston, 312 U.S. 275, 287 (1941) ("Not by the pleadings and the affidavits, but by the whole of the testimony, must it be determined whether the petitioner has carried his burden of proof and shown his right to a discharge. The Government's contention that his allegations are improbable and unbelievable cannot serve to deny him an opportunity to support them by evidence."); United States v. Stevens, 813 F.Supp. 2d 758, 765 (W.D. Va. 2011) (explaining that affidavits received under § 2246 in a § 2255 action cannot

be used when material issues of fact exist.)

DISCUSSION OF CONTESTED FACTS

Here, after finding that proof of Mr. Kearn's allegations would entitle him to relief, [Doc. 173 at 24], the Court decided to offer trial counsel the right to respond to the allegations via affidavit. Further, the Court is asked to resolve a credibility conflict between Mr. Francis' affidavit and Mr. Kearn's sworn declarations.

The credibility resolution appears to have resulted from whether Mr. Francis may have (intentionally or mistakenly) characterized a plea as "lying to the court" (or for that matter used the actual words "perjury") in any of the pre-trial meetings between the two men (to include the Summer of 2014 which Mr. Francis' affidavit does not mention at all). Mr. Kearn was attempting to argue that his decision to go to trial was not "knowing and intelligent" in that he erroneously believed that he would commit perjury by pleading guilty. Accordingly, Kearn followed what he understood were his counsel's instructions.

What is more, Francis' affidavit omits that both Kearn and at least one witness (Dreux Doty) heard Mr. Francis express his belief in Kearn's innocence, not merely Kearn's own belief in his innocence.

Lastly, it is one thing to "inform" a cogent, coherent client on a certain date but quite another to "inform" a drugged client on the same date. This is relevant to determining if a

client was "informed" or not. Mr. Francis' affidavit improperly assumes his client legally understood the whole of the plea discussions, i.e. comprehended the meaning of the discussions counsel avers took place with his client.

Sworn Statement of Jonathan Kearn Contradicting Michael Francis:

Kearn avers the following:

1.   During the time Mr. Frances represented me in 2014 & 2015, we discussed a plea deal on at least two occasions in the summer of 2014, as well as in the weeks leading up to trial in 2015.

2.   Mr. Francis did advise me that in a guilty plea the judge would ask me under oath if I was indeed guilty, and it was my understanding that Mr. Francis fully believed I was not.   His affidavit only mentions my belief, but in context it was my understanding from discussions with Mr. Francis that pleading guilty when you are not is "lying to the court."

3.   Mr. Francis explained to me that in state-level courts there is something called a "no-contest" plea where someone in my situation could plea without actually claiming guilt and that it was "too bad this wasn't an option on the federal level."

ARGUMENT

The Court should apply a Rule 56-type standard, resolving conflicts in favor of Mr. Kearn at least until Mr. Francis can be subject to cross-examination at a deposition or at a full hearing.   See Blackledge, 431 U.S. at 80 (explaining that the respondent would prevail unless the petitioner could overcome

4

summary-judgment standards); Fed. R. Governing § 2255 Cases, Rule 12 ("The Federal Rules of Civil Procedure ... may be applied to a proceeding under these rules.") Mr. Kearn respectfully submits that this Court should allow him the right to conduct discovery into Mr. Francis' averments in his very brief affidavit.

In addition, limited documents discovery of his case file and time logs are also needed to test Mr. Francis' self-serving assertions for at least two reasons. We need to know exactly what Mr. Francis did and did not do. Only then can the reasonableness, or lack thereof, of trial counsel's time vacuum of all of 2014 from his affidavit be properly evaluated. See Strickland v. Washington, 466 U.S. 668, 690-91 (1984) ("[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.").

Second, an examination of time logs and the case file are appropriate for the Court to consider (for example, the "Exhibit A" email attachment supposedly between Mr. Francis and AUSA Christine Kenney was not given to Mr. Kearn prior to counsel's affidavit.) See, Ellen Henak, "When the Interests of Self, Clients, and Colleagues Collide: The Ethics of Ineffective Assistance of Counsel Claims," 33 Am. J. Trial Adv. 348, 361 (2010) ("When a postconviction attorney investigates a potential ineffective assistance of counsel claim, the prudent attorney will request a copy of the client's file.") Also, knowing the

total number of cases and hours worked directly bears upon the reasonableness of Mr. Francis' actions in this case.  His failures to thoroughly investigate or engage in motion practice were based on Kearn's apparent inability to comprehend critical trial stages (i.e. plea discussions as perjury in 2014, 2015, or both).  Mr. Francis' inactions may well be a product of drowning in other work, not reasonable trial strategy.

## CONCLUSION

Mr. Kearn prays that the Court allow the attached First Set of Interrogatories to Mr. Francis, and limited discovery of his case file and time logs.

_June 1st, 2020_          /s/ _Jauthn E. Kn_

Date Executed                                                      Jonathan Kearn, pro se
Under penalty of perjury pursuant to                              # 23150-031
28 U.S.C. § 1746, I hereby swear and verify                       P.O. Box 1000
that the foregoing is true and correct as an affidavit.           Marion, IL 62959
Further, that it has been deposited this day
in the institution's internal mail system                         Prepared by:
designed for legal mail under Prison Mailbox Rule,                Eric D. Welch
United States Postal Service, first-class postage prepaid.        Paralegal
                                                             P.O. Box 1000/10444-089
                                                                  Marion, IL 62959

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was forewarded via the CM/ECF System upon filing by the clerk, or by United States Postal Service, first-class postage prepaid, upon the following:

Christine E. Kenney, AUSA
444 SE Quincy, Room 290
Topeka, KS  66683

UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

---

UNITED STATES OF AMERICA, )
    Respondent, )
                 )
vs.                )     Case No. 5:13-cr-40057
                 )     Habeas No. 5:19-cv-4032
JONATHAN KEARN, )
    Movant. )

---

JONATHAN KEARN'S
FIRST SET OF INTERROGATORIES TO MICHAEL FRANCIS

---

To: Michael E. Francis, Esq.


Pursuant to the enclosed Court order, Petitioner Jonathan Kearn hereby requests that you answer each of the following interrogatories, under oath, within thirty days of service. In order to assist in orienting you as to context, the motion requesting interrogatories is hereby adopted as if fully set forth here. In addition, the following information is provided:


    Perjury, according to <u>Black's Law Dictionary</u>, Ninth Edition, 2009, is defined as "the act or an instance of a person's deliberately making false or misleading statements while under oath." <u>Id</u>.

    At bar, Mr. Kearn has averred the following in support of his 2255 (Doc. 165) "Affidavit of Jonathan Kearn":

(¶12): "MICHAEL FRANCIS told me if I went to trial and lost that I would probably do 'around 15 years at the most[.]'"

(¶13): "MICHAEL FRANCIS never communicated to me that the plea deal also agreed to drop the Production charge nor that a no contest plea was even an option. He told me that I could not honestly plea guilty as I would be lying to the Court and could be charged with perjury."

(¶14): "MICHAEL FRANCIS never talked to me about concurrent versus consecutive sentencing, nor did I have any idea that the stakes were so high in going to trial. I couldn've [sic] been sentenced consecutively, thus resulting in over 54 years in prison."

The Court has recognized up to six witness affidavits "describ[ing] their experience with Mr. Kearn's drug abuse or [] behavior during his trial." Doc. 173 at 11, citing Doc. 157-7 at 25, 28, 31, 34, 37, 39 (various witnesses describing Mr. Kearn's drug use before and during trial). These affidavits variously implicate you as far as what you witnessed prior to and at trial to include any plea discussions.

In the Affidavit of Michael Francis, (Doc. 178-1), you have said that, "On or about April 23, 2015, I met with my client and discussed the plea offer. I called Mr. Slinkard and advised him that Mr. Kearn rejected the offer. I told him my client said he did not do it (commit the offenses) and that was a problem. By 'that was a problem' I meant that he said he did not commit the crimes was his reason for not accepting the plea." And, "Mr.

2

Kearn has raised the issue that I told him that he could not plead guilty because he would commit perjury by accepting responsibility for illegal activity he has not actually committed. I have never advised a client of that."

The Court has asked the following:

"Whether Mr. Francis informed Mr. Kearn about the full contents of the government's plea offer, (including whether that offer included dropping the charge in Count I of the Indictment) and, if Mr. Francis provided that information to Mr. Kearn, when he did so; and

"Whether Mr. Francis told Mr. Kearn that he could not plead guilty because he would commit perjury by accepting responsibility for illegal activity he had not actually committed."

[Doc. 173 at 25].

## INTERROGATORY QUESTIONS

In light of the evidence above and the record as a whole, please answer the following:

1. How many hours did you work in your legal practice:

    a. In 2014?

    b. In 2015?

2. How many active legal matters did you handle:

    a. In 2014?

    b. In 2015?

3

3.   How many clients did you represent:

    a. In 2014?

    b. In 2015?

4. With respect to your affidavit filed in the above-captioned action:

    a. Identify all steps that you took to investigate the factual and legal matters set forth in ¶4 of your affidavit, identifying the dates and times spent on it.

(For context, you say you began representing Mr. Kearn in April of 2014, but only mention a 2015 date in your affidavit for the plea agreement discussed (e.g. with Mr. Slinkard). Mr. Kearn's understanding is that "lying to the court" if he admitted guilt was a discussion in 2014, but it seems the plea discussion in your affidavit is from 2015.)

    b.  To jog your memory with respect to the plea discussions, Mr. Kearn has clarified by counter-averment that you discussed pleas several times in 2014, but your affidavit only mentioned one discussion in 2015.  Can you recall the dates, times, and content of any plea discussions prior to those mentioned in your affidavit?

5.  In light of the half-dozen or so witnesses setting forth facts tending to demonstrate Kearn was unable to competently participate in your plea discussions (including Kearn's father's email to you dated April 6, 2015), your affidavit assumes Mr. Kearn comprehended and understood the ramifications of any plea agreement statements.   Do you recall ever questioning in your own mind whether Mr. Kearn was able to understand the rejected

4

plea offer you mention in your affidavit based on reasonable observations of objective behavior, as well as discussions with Kearn's father?

6.  Did you ever advise Jonathan Kearn that it was a favorable plea?

7.  Did you tell Mr. Kearn that it was too bad the feds did not have a "no-contest" plea?

8.  How many cases involving federal charges of child pornography have you handled as an attorney prior to representing Mr. Kearn?

9.  Have you ever been disciplined for attorney misconduct in any jurisdiction?  If so, identify the jurisdiction, the date of the discipline, the circumstances, and the discipline imposed.

10. Has any court ever determined that you rendered ineffective assistance of counsel in a criminal case?  If so, identify the court and provide the case caption.

11. With regard to your affidavit (Doc. 178-1), were you contacted by an officer of the Court or the Prosecutor's office prior to the Court's Memorandum & Order (Doc. 173) with regard to Mr. Kearn's instant § 2255?  If so, please list the dates and subjects discussed and the parties involved.

Respectfully Submitted,

June 1st, 2020                    /s/   Jonathan Kearn, pro se
Date Executed                                          # 23150-031
Under penalty of perjury pursuant to                   P.O. Box 1000
28 U.S.C. § 1746, I hereby swear and verify         Marion, IL  62959
that the foregoing is true and correct as an affidavit.
Further, that it has been deposited this day
in the institution's internal mail system              Prepared by:
designed for legal mail under Prison Mailbox Rule,      Eric D. Welch
United States Postal Service, first-class postage prepaid.   Paralegal
                                              P.O. Box 1000/10444-089
                                                     Marion, IL  62959

## CERTIFICATE OF SERVICE

        I hereby certify that a copy of the foregoing was forewarded via the
CM/ECF System upon filing by the clerk, or by United States Postal Service,
first-class postage prepaid, upon the following:


        Christine E. Kenney, AUSA
        444 SE Quincy, Room 290
        Topeka, KS  66683

Jonathan E. Kearn
#23150-031
United States Penitentiary
Po Box 1000
Marion, IL 62959

SAINT LOUIS MO 630

02 JUN 2020 PM 6 L

⇔23150-031⇔
U S District Court
444 SE Quincy ST
Federal Bldg/ Court Clerk
Topeka, KS 66683
United States