| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>   v.<br><br>JONATHAN KEARN,<br><br>               Defendant. | Case No. 13-40057-DDC<br>         19-cv-4032-DDC |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION FOR RECONSIDERATION**

The United States of America, by and through Stephen R. McAllister, United States Attorney for the District of Kansas, and Christine E. Kenney, Assistant United States Attorney for said District, hereby responds to the defendant's motion for reconsideration under Federal Rules of Civil Procedure, Rule 59(e). (Doc. 179.) For the reasons set forth below, the government respectfully requests the Court deny this motion.

**I.    PROCEDURAL HISTORY**

On May 29, 2013, a Grand Jury charged the defendant, Jonathan Kearn ("the defendant"), with: (1) producing a visual depiction of a minor engaged in sexually explicit conduct ("Production of Child Pornography"), in violation of 18 U.S.C. § 2251(b); (2) distributing a visual depiction of a minor engaged in sexually explicit conduct ("Distribution of Child Pornography"), in violation of 18 U.S.C. §

2252(a)(2); and (3) possessing a visual depiction of a minor engaged in sexually explicit conduct ("Possession of Child Pornography"), in violation of 18 U.S.C. § 2252(a)(4)(B). (Doc. 15.) On May 8, 2015, the jury found the defendant guilty on all three counts. (Doc. 97.) On November 16, 2015, the Court sentenced the defendant to 292 months in prison on Count 1, 240 months in prison on Count 2, and 120 months in prison on Count 3 to run concurrently. (Doc. 123.)

The defendant directly appealed to the Tenth Circuit challenging the admission of hearsay evidence, the jury instructions, his supervised release condition, and cumulative error. *United States v. Kearn*, 863 F.3d 1299, 1302–03 (10th Cir. 2017). The Tenth Circuit affirmed the judgment and sentence of the district court and dismissed the defendant's claim of ineffective assistance of counsel. *Id.* at 1313. The defendant then filed a petition for panel rehearing and rehearing *en banc,* and subsequently petitioned for a writ of certiorari from the United States Supreme Court. These requests were denied. (Doc. 156.)

On April 25, 2019, the defendant filed a Motion for Relief under 28 U.S.C. § 2255 raising seven claims for relief based on ineffective assistance of counsel. (Doc. 157.) On May 24, 2019, the defendant filed an amended motion under § 2255. (Doc. 165.) The government filed its response in opposition on June 13, 2019. (Doc. 168.)

On April 30, 2020, the Court issued a Memorandum and Order denying the defendant's § 2255 motion in part and declining to issue a certificate of appealability.

(Doc. 173 at 30.) Specifically, the Court determined that the defendant failed to demonstrate ineffective assistance of counsel on the following claims: counsel failed to request a competency hearing; counsel failed to investigate and interview witnesses; counsel failed to "engage in proper trial practice and/or strategy;" counsel failed to advise the defendant of the available plea offer and possible maximum sentence; counsel failed to object to *Brady* violations; counsel failed to defend against a double jeopardy violation; and counsel's cumulative errors "violate[d] the trial's fundamental fairness." (Doc. 173 at 6–30.) While the Court denied relief on most of these allegations, the Court did order the government to file an affidavit from the defendant's former counsel to determine if counsel properly informed the defendant about the "full contents of the government's plea offer," such as whether the offer "included dropping the charge in Count I." (Doc. 173 at 25.)

## II. DEFENDANT'S RECONSIDERATION CLAIM

The defendant now moves the Court to reconsider its decision to deny him relief under 28 U.S.C. § 2255. (Doc. 179 at 1.) First, the defendant argues the Court failed to address the standards of a *nunc pro tunc* competency hearing and should have issued a certificate of appealability because reasonable jurors would "find it debatable whether the district court was correct in its procedural ruling." (Doc. 179 at 6.) Second, the defendant argues the Court "missed completely" the exculpatory evidence existing on the video footage and the possible impact this evidence could

have had on jurors in light of his defense theory. (Doc. 179 at 7.) Third, the defendant argues that cases relied on by the Court are distinguishable from his own and the facts of his case "leap off the page as raising Fifth Amendment Double Jeopardy concerns." (Doc. 179 at 8.) Finally, the defendant argues there was cumulative error as he listed "no less than 25 reasons in the original 2255 motion" and specifically there was a "manifest error" because the government conceded "by failing to respond or otherwise plead" that "counsel should have moved to suppress the Dropbox Link" and failed to do so. (Doc. 179 at 10, referencing the defendant's Reply, Doc. 172 at 14.)

### III.  STANDARD OF REVIEW

The defendant brings this Motion for Reconsideration under Rule 59 of the Federal Rules of Civil Procedure via Rule 7.3 of the local rules for the District of Kansas. Rule 7.3 states that "a party may file a motion asking a judge or magistrate judge to reconsider an order or decision made." D. Kan. R. 7.3. If the party is seeking reconsideration of a dispositive motion, which the defendant is here, he must file a motion within 28 days of the Court's Order denying relief pursuant to Federal Rules of Civil Procedure 59(e). The defendant's motion must be considered because it was filed within the 28-day limit imposed by the Rule. However, to justify this motion to alter or amend a final judgment, the defendant must show that there has been an (1) intervening change in controlling law; (2) that there is new evidence that was

4

previously unavailable; or (3) that there is a need to correct error or prevent manifest injustice. *See, e.g.*, *Hayes Family Tr. v. State Farm Fire & Cas. Co.*, 845 F.3d 997, 1004 (10th Cir. 2017) (citing *Hannon v. Maschner*, 981 F.2d 1142, 1144 n.2 (10th Cir. 1992)). Here, the defendant argues that the Court should vacate its Order because the Court "misapprehended the facts, a party's position, or controlling law." (Doc. 179 at 3.)

## IV. ARGUMENT

In his motion for reconsideration, the defendant argues the Court should vacate its Order on four grounds relating to issues of competency, *Brady* violations, Double Jeopardy, and cumulative error. Because the Court has not misapprehended the facts, a party's position, or controlling law, the Court must deny the defendant's motion.

### A. Competency

First, the defendant alleges a violation of his right to procedural due process when the Court failed "to provide an adequate contemporaneous hearing on [his] competency to stand trial." (Doc. 179 at 4.) The Court correctly ruled on this claim.

Competency claims rely on either substantive due process issues or procedural due process issues. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). Substantive due process claims involve a "defendant's constitutional right to not be tried while incompetent," while a procedural due process claim involves "a

5

defendant's constitutional right, once a bona fide doubt has been raised as to competency, to an adequate state procedure to insure that he is in fact competent to stand trial." *Id.* The standard for competency has been well-established since the 1960s when the Supreme Court held that competency to stand trial requires the defendant have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding–and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960). Based on the defendant's arguments, the analysis is threefold. First, whether there was enough evidence to raise doubt concerning the defendant's competency at the time of trial. Second, whether the Court is able to hold a meaningful competency hearing five years after the case was tried. And third, whether a certificate of appealability should be issued on the issue of the defendant's competency.

First, a bona fide doubt may be based on a variety of factors such as "evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion." *Castro v. Ward*, 138 F.3d 810, 818 (10th Cir. 1998) (quoting *Drope v. Missouri*, 420 U.S. 162, 180 (1975)). The Tenth Circuit has also found that "evidence of mental illness and any representations of defense counsel about the defendant's incompetence" may be relevant as well. *Walker v. Gibson*, 228 F.3d 1217, 1227 (10th Cir. 2000). For comparison, in *Barnett*, the defendant "established

6

a bona fide doubt as to his competency" given his "history of severe mental problems, the need for him to regain competency on at least two occasions, and the expressed belief of counsel at sentencing that [he] was not competent." *Barnett*, 174 F.3d at 1135–26. In contrast, in *Walker*, the court found that there were no medical opinions supporting incompetence and the defense counsel did not raise competency concerns; therefore, the petitioner's history of mental problems and substance abuse, alone, did not raise a bona fide doubt. *Walker*, 228 F.3d at 1227–28. Here, although the defendant argues he was under the influence of methamphetamine before and during trial, as well as having a long history of marijuana use, the Court had two opportunities to converse directly with the defendant. The first was during the *Lafler/Frye* colloquy when the defendant confirmed he was advised of the government's plea offer. (Doc. 143, Transcript of the Jury Trial (Volume 1) at 241.) The second was when the Court inquired about the defendant's decision to testify. (Doc. 145, Transcript of Jury Trial (Volume 3) at 9–14.) Furthermore, the Court also observed the defendant when he was able to present clear and coherent testimony during trial. Like *Walker*, the defendant's substance abuse alone (but with no history of mental health issues) does not rise to the level of bona fide doubt necessary to find that the defendant was not competent to stand trial.

Second, if necessary, the Court has the ability to now conduct a meaningful hearing on competency. Relying on *Griffin v. Lockhart*, 935 F.2d 926 (8th Cir.

1991), the defendant argues "it is impossible to now conduct a meaningful *nunc pro tunc* hearing on competency" as five years have passed since trial. (Doc. 179 at 4.) However, the Tenth Circuit has held that while "retrospective competency hearings are generally disfavored," they are "permissible whenever a court can conduct a meaningful hearing to evaluate retrospectively the competency of the defendant." *McGregor v. Gibson,* 248 F.3d 946, 962 (10th Cir. 2001) (quoting *Clayton v. Gibson*, 199 F.3d 1162, 1169 (10th Cir. 1999)). The court has also identified factors relevant to whether a meaningful retrospective determination can be made. These factors include "the passage of time," the "availability of contemporaneous medical evidence" such as "medical records and prior competency determinations," "any statements made by the defendant in the trial record," and the "availability of individual and trial witnesses . . . who were in a position to interact with the defendant before and during trial, including the trial judge, counsel for both the government and defendant, and jail officials." *McGregor.* at 962–63. Based on these factors and the facts articulated above, the Court could now conduct a meaningful retrospective determination and reach the same conclusion – that the defendant was competent to stand trial.

Finally, the Court should not issue a certificate of appealability because there is no evidence a procedural due process, or more broadly a constitutional rights, violation occurred. Certificates of appealability are statutorily governed by 28

U.S.C. § 2253. Specifically, § 2253(c)(1) states that "[u]nless a circuit court justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . (B) the final order in a proceeding under section 2255." And, § 2253(c)(2) states that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." This requires the petitioner "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004).

Here, the defendant has not shown that his constitutional rights have been denied. He has not shown that there was bona fide doubt regarding his competency during trial and thus cannot demonstrate that reasonable jurists would find that the Court made a mistake in declining to hold a competency hearing. Since there was no denial of constitutional rights, it would be improper to issue a certificate of appealability.

### B. The *Brady* Violation

Second, the defendant argues the Court erred by denying relief based on an alleged *Brady* violation. The Court correctly ruled on this claim.

Established by the Supreme Court in 1963, the *Brady* standard states that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment,

9

irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). However, this does not mean the Constitution requires "the prosecution to divulge every possible shred of evidence that could conceivably benefit the defendant." *Smith v. Sec'y of New Mexico Dep't of Corr.*, 50 F.3d 801, 823 (10th Cir. 1995). To prove a *Brady* violation, the defendant must show "1) that the prosecution suppressed evidence; 2) that the evidence was favorable to the accused; and 3) that the evidence was material." *Id.* at 824 (citing *United States v. Hughes*, 33 F.3d 1248, 1251 (10th Cir. 1994)). Initially, the defendant argued that a *Brady* violation occurred when he "did not receive, and has never received, the portion of the [security footage] data that KEARN believes includes exculpatory footage; specifically, video footage of someone entering his home to gain access to KEARN's cell phone, computer, and/or other evidentiary items." (Doc. 165 at 41.) However, the defendant cannot prove that a *Brady* violation occurred because he has not met his burden of proof showing the evidence was favorable to the accused and that the evidence was material – or that it even existed.

To prove a *Brady* violation, the defendant must first show that the prosecution suppressed evidence. Under the *Brady* standard, the term suppression "does not require a finding of bad faith or any other culpable state of mind on the part of the prosecutor." *Smith*, 50 F.3d at 824. Therefore, the government may suppress evidence unknowingly and may be held responsible even if nondisclosure

was committed by a law enforcement or investigative officer. *Id.*

Second, the defendant must show that the evidence suppressed was favorable to the accused. Evidence is favorable to the accused if "disclosed and used effectively, it may make the difference between conviction and acquittal." *Id.* at 825.

Finally, the defendant must show that the video evidence suppressed was material. Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 827 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). "[A] reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Ahrensfield*, 698 F.3d 1310, 1319 (10th Cir. 2012). To determine if a reasonable probability exists, the court evaluates withheld evidence "in light of the entire record in order to determine if the omitted evidence creates a reasonable doubt that did not otherwise exist." *Id.* (quoting *Banks v. Reynolds*, 54 F.3d 1508, 1518 (10th Cir. 1995)). Therefore, it is not enough to "resort to speculation," and "the mere possibility that evidence is exculpatory does not satisfy the constitutional materiality standard." *Id.*

First, in this case there is no evidence supporting the allegation that the government suppressed the security camera footage. In his First Amended § 2255 motion, the defendant states that he "was never given access to the entirety of his home security footage," and "[t]he missing portion contains exculpatory evidence."

11

(Doc. 165 at 39.) There is simply no basis to support this claim, and the record shows otherwise. The defendant takes excerpts from the government's communications in an attempt to make it appear that he was not given copies of all the pertinent portions of the security footage. (Doc. 165 at 39–40.) In fact, a review of all correspondence from government counsel on the matter establishes that the government provided all of the pertinent video footage to the defendant and his counsel. (Doc. 157-5 at 7, email dated 3/3/2015 from government to defense counsel; "we are in a position today to give you 40 DVDs that contain the material from . . . 4/14/2013 through approximately the end of 10 p.m. hour on 4/23/2013. . . We plan on continuing to copy the Security DVR for you up to and including the end of the day on 4/27 /2013. From prior discovery, you should have the entire day on 4/28/2013. . .We estimate that it will take approximately 6 more days to complete copying of the remainder until the end of day on 4/27/2013".)

The email exchanges between the defendant and Detective Butler occurred between April 16, 2013 and April 28, 2013. (Doc. 143, Transcript of Jury Trial (Volume 1) at 282 – 83.) Thus, the defendant not only had access to the entire contents of the security recordings, he received copies of the recordings for the dates that corresponded to the email exchanges and child exploitation images.

Agent Casner's testimony further negated the defendant's claim that the security recordings contained exculpatory evidence. Agent Casner testified that she

reviewed the security system, and compared the events shown on the system to the dates and times "cheyenneandliberty" sent emails to Detective Butler and to the dates and times shown in images with EXIF data. (Doc. 144, Transcript of Jury Trial (Volume 2) at 72 – 74; Exs. 18, 19.)

Second, even if the defendant could demonstrate, beyond mere speculation, that the video footage regarding Bob Henry existed, it would not create enough reasonable doubt to undermine confidence in the outcome of the case. Specifically, the defendant argues that he presented "numerous witness affidavits in the 2255 that indicate Bob Henry was the likely suspect." (Doc. 179 at 7.) However, he still has not articulated how the speculative security video in conjunction with these affidavits would have changed the outcome of the proceedings, especially in light of the government's other evidence, such as the above referenced evidence and testimony from Agent Casner, along with emails the defendant sent on April 28, 2013 from IP addresses associated to him. (Doc. 144, Transcript of Jury Trial (Volume 2) at 28, 46, 50.)

The defendant has failed to establish a *Brady* violation, and the Court correctly ruled on this point. Thus, there is no reason to issue a certificate of appealability.

### C. Double Jeopardy

Next, the defendant argues the Court erred by finding no a Double Jeopardy violation occurred. The Court correctly ruled on this claim.

The Fifth Amendment includes the Double Jeopardy Clause which "affords a defendant three basic protections." *Ohio v. Johnson*, 467 U.S. 493, 498 (1984). Relevant here is that the clause "protects against multiple punishments for the same offense." *Id.* However, where "the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses, or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). Therefore, the "same act or transaction may constitute separate offenses if each offense requires some fact not required to establish the other." *United States v. Meuli*, 8 F.3d 1481, 1485 (10th Cir. 1993). The question here is whether the charges of production, distribution, and possession each require a fact not required to establish the others.

The Tenth Circuit has examined similar Double Jeopardy questions in the past. However, those cases discuss Double Jeopardy in regards to the charges of receiving and possessing child pornography, holding that in order to receive, one must necessarily possess. *See United States v. Sturm*, 673 F.3d 1274 (10th Cir. 2012); *United States v. Benoit*, 713 F.3d 1 (10th Cir. 2013); *United States v. Dunn*, 777 F.3d 1171 (10th Cir. 2015). The defendant argues the same logic should be applied to charges of producing, distributing, and possessing child pornography. However, courts outside of the Tenth Circuit have addressed Double Jeopardy

specifically in the context raised here. For example, in 2018, the Eighth Circuit determined that "possession of child pornography, includes at least one element that production of child pornography does not: possession." *United States v. Gomez-Diaz*, 911 F.3d 931, 934 (8th Cir. 2018). It is possible for an individual that produces child pornography to not possess it. For example, "any person who persuades a minor to engage in sexually explicit conduct for the purpose of producing any visual depiction or transports a minor for that purpose" could be convicted of producing child pornography despite never possessing it. *Id.* Similarly, in 2015, the Ninth Circuit determined that while possessing is a lessor-included offense of receiving child pornography, it is not necessarily a lessor-included offense of distributing because "one need not have constructive possession to be a distributor." *United States v. McElmurry*, 776 F.3d 1061, 1064 (9th Cir. 2015).

Here, the defendant argues that "possession is a lesser included offense of either distribution or production, where the elements to prove them are based on the same, non-distinct images." (Doc. 179 at 9.) Specifically, due to the fact that the government did not identify "the precise images at issue for each count" and the "jury was not instructed that the counts referred to distinct visual depictions" for each charge. (Doc. 179 at 9.) However, it is not an issue that the same, non-distinct images were used for all three charges because as the Tenth Circuit decided in *Benoit* and the Eighth and Ninth Circuits illustrated in their respective cases, the same act

15

may constitute different offenses if each requires additional facts or elements not required by the others. Specifically, the act of possessing child pornography requires a fact, "knowingly possesses," that producing and distributing do not.

Because each count of the defendant's convictions required an additional fact that the other counts did not, the defendant cannot establish a Double Jeopardy violation. As a result, there is no reason that a certificate of appealability should be issued.

### D.   Cumulative Error

Finally, the defendant alleges that the Court erred by refusing to find cumulative error that violated his trial's fundamental fairness. The Court correctly ruled on this claim.

Cumulative error occurs when "the cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error." *Workman v. Mullin*, 342 F.3d 1100, 1116 (10th Cir. 2003). "A cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *Id.*

This analysis acts as an extension of the harmless-error rule found in 28 U.S.C. § 2111 and the Federal Rules of Criminal Procedure Rule 52(a). Specifically, § 2111

states that "on the hearing of any appeal or writ of certiorari in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties." 28 U.S.C. § 2111. Related, Rule 52(a) states that a harmless error is "any error, defect, irregularity, or variance that does not affect substantial rights" and "must be disregarded." Fed. R. Crim. P. 52(a). Through case law, the Supreme Court has also articulated its own harmless-error standards. "A non-constitutional error is harmless unless it had a 'substantial influence on the outcome or leaves one in 'grave doubt' as to whether it had such effect." *United States v. Rivera*, 900 F.2d 1462, 1469 (10th Cir. 1990) (quoting *Kotteakos v. United States*, 328 U.S. 750, 765 (1946)). In contrast, a "constitutional error can also be held harmless, but only if the court is able to declare a belief that it was harmless beyond a reasonable doubt." *Id.* at 1470.

Here, the defendant alleges that cumulative error was the result of "no less than 25 reasons listed in the original 2255 motion, and relisted on pages 24-25 of the Reply." (Doc. 179 at 10.) Specifically, the defendant argues that it was a "manifest error" when the government "conceded that counsel should have moved to suppress the Dropbox Link" and was "ineffective for failing to object to this non-existent evidence." (Doc. 179 at 10.). This concession did not occur. In the defendant's First Amended Motion Under 28 U.S.C. § 2255, he argued that counsel failed to investigate a Dropbox Link, referenced in Exhibit 29, "that was never actually found

17

on anything in the raid of [his] home." (Doc. 165 at 26.) Later in the defendant's reply to the government's response, he stated that the government "concedes" this error "by failing to respond" to the allegation. (Doc. 172 at 12.) However, the government responded to the allegation when it stated that "all" of the claims in Ground Two, which included the failure to investigate the Dropbox Link, "fail under both *Strickland* prongs." (Doc. 168 at 23.) The government also responded by noting that "[t]he defendant fails to identify any actual errors that occurred in connection with his conviction or his sentence," and that "[t]here is no basis for a cumulative error analysis, and the defendant has failed to demonstrate he was prejudiced on this claim of cumulative error." (*Id*. at 48.)

Therefore, under both the standards articulated above, none of the defendant's claims rise to the level of being error, much less harmless error. In its April 30th Memorandum and Order, the Court determined that the defendant failed to identify any error made by counsel. And, even if failure to object to the testimony regarding the Dropbox link was found to be a harmless error, it is not enough. To argue cumulative error, the defendant would need to identify additional errors as the standard requires the petitioner to demonstrate that the cumulative effect of "*two or more* individually harmless errors" prejudiced his case.

The defendant failed to establish error, much less cumulative error. Therefore, there is no reason that a certificate of appealability should be issued.

18

## V. CONCLUSION

Because the Court has not misapprehended the facts, a party's position, or controlling law, the government respectfully requests that the Court deny the defendant's motion to reconsider its ruling, and deny issuing a certificate of appealability.

Respectfully submitted,

STEPHEN R. MCALLISTER
UNITED STATES ATTORNEY

*/s/ Christine E. Kenney*
Christine E. Kenney, #13542
Assistant U.S. Attorney
444 SE Quincy, Room 290
Topeka, KS   66683
(785) 295-2850
christine.kenney@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 5, 2020, the foregoing was electronically filed with the clerk of the court by using the CM/ECF system, which will send a copy of the foregoing to all attorneys of record.

*/s/ Christine E. Kenney*
Christine E. Kenney, #13542
Assistant U.S. Attorney
444 SE Quincy, Room 290
Topeka, KS  66683
(785) 295-2850
christine.kenney@usdoj.gov