## In the United States District Court
## For the District of Kansas

**United States of America,**
    Plaintiff,

v.                        **Case No. 13-cr-40057-DDC-1**

**Jonathan Kearn,**
    Defendant.

### Petitioner's Post-Hearing Memorandum

When the government extends a plea offer to a defendant in a criminal case, defense counsel has an obligation to adequately and accurately inform the defendant of "the advantages and disadvantages" associated with that offer.[1] The testimony and exhibits admitted during the recent evidentiary hearing confirm that Jonathan Kearn's defense attorney failed to fulfill this obligation here. First, defense counsel neglected to inform Mr. Kearn of the benefits associated with the government's Rule 11(c)(1)(C) plea offer.[2] Second, defense counsel provided Mr. Kearn with inaccurate (or at least incomplete) advice regarding the burdens imposed by Rule 11(b)(3)'s factual-basis requirement.[3] Further, there is a reasonable probability that but for defense counsel's errors and omissions, Mr. Kearn would have pleaded guilty—resulting in fewer convictions and a shorter sentence. Thus, for the reasons discussed below, Mr. Kearn was denied the effective assistance of counsel in violation of the Sixth Amendment.[4]

---

[1] *Libretti v. United States*, 516 U.S. 29, 50 (1995); *see Lafler v. Cooper*, 566 U.S. 156, 168 (2012); *Padilla v. Kentucky*, 559 U.S. 356, 370 (2010) (holding that counsel can perform deficiently during the plea-bargaining stage by providing inaccurate advice or by failing to provide advice at all).

[2] *See* Fed. R. Crim. P. 11(c)(1)(C), (c)(5)(B).

[3] *See* Fed. R. Crim. P. 11(b)(3).

[4] *See Strickland v. Washington*, 466 U.S. 668, 694 (1984); *see also Lafler*, 566 U.S. at 163–64.

1. **Relevant Procedural History**

In May 2015, a jury found Mr. Kearn guilty of (1) producing, (2) distributing, and (3) possessing a visual depiction of a minor engaged in sexually explicit conduct.[5] This Court imposed a 292-month prison sentence on Count 1, to run concurrently with a 240-month prison sentence on Count 2 and a 120-month prison sentence on Count 3.[6] The Tenth Circuit affirmed Mr. Kearn's convictions and sentence on July 21, 2017, and the Supreme Court denied his petition for certiorari on May 21, 2018.[7]

Mr. Kearn then filed a timely 28 U.S.C. § 2255 motion.[8] In relevant part, Mr. Kearn alleged his trial attorney, Michael Francis, provided ineffective assistance of counsel during the plea-bargaining stage.[9] This Court denied Mr. Kearn's § 2255 motion in part.[10] But it directed the government to produce an affidavit from Mr. Francis addressing two questions: (1) whether he "informed Mr. Kearn about the full contents of the government's plea offer" and (2) whether he "told Mr. Kearn that he could not plead guilty because he would commit perjury by accepting responsibility for illegal activity he had not actually committed."[11]

The government submitted Mr. Francis's affidavit on May 20, 2020.[12] In that affidavit, Mr. Francis stated the government offered Mr. Kearn a plea deal; that under the terms of the proposed deal, the government would dismiss Counts 1 and 2

---

[5] Doc. 15.
[6] Doc. 123.
[7] Doc. 152-1; Doc. 156.
[8] Doc. 157. Mr. Kearn amended the motion on May 24, 2019. Doc. 165.
[9] Doc. 165 at 21–22.
[10] Doc. 173.
[11] *Id.* at 25.
[12] Doc. 178-1.

in exchange for a guilty plea on Count 3; that Mr. Francis "discussed the plea offer" with Mr. Kearn on or about April 23, 2015; and that Mr. Kearn rejected the offer.[13] Although Mr. Francis described the offer as a "c1C to 10 years," he did not elaborate on the meaning of this phrase or suggest he had discussed its significance with Mr. Kearn.[14]

Mr. Francis further stated he had "never advised a client" that the client "could not plead guilty" if doing so would amount to "accepting responsibility for illegal activity" the client "ha[d] not actually committed."[15] Likewise, Mr. Francis denied ever advising a client that pleading guilty under those circumstances would constitute perjury.[16] But Mr. Francis did not specifically describe the advice he gave Mr. Kearn. Instead, he provided information about his general practice.[17]

Based on Mr. Francis's affidavit, the Court granted Mr. Kearn an evidentiary hearing "on the issue of whether [Mr. Francis] provided effective assistance of counsel when he advised Mr. Kearn about his available plea offers."[18] At that hearing, Mr. Kearn offered three general categories of evidence.

First, Mr. Kearn demonstrated that although there are various ways to satisfy Rule 11(b)(3)'s factual-basis requirement, Mr. Francis's uniform practice in federal guilty-plea cases was to advise the defendants themselves to "admit[] the factual

---

[13] *Id.* at 1.
[14] *Id.* (quoting Doc. 178-1 at 3); *see* Fed. R. Civ. P. 11(c)(1)(C).
[15] Doc. 178-1 at 2.
[16] *Id.*
[17] *Id.*
[18] Doc. 180 at 6.

basis for the crime."[19] Second, Mr. Kearn established that Rule 11(c)(1)(C) plea agreements convey significant benefits to defendants;[20] that such plea agreements are therefore capable of "resolv[ing] cases" that would otherwise "head[] to trial";[21] that Mr. Francis was unfamiliar with the nature of such plea agreements; and that Mr. Francis failed to adequately explain the benefits of such agreements to Mr. Kearn.[22] Third, Mr. Kearn demonstrated there is a reasonable probability that but for Mr. Francis's failure to provide Mr. Kearn with adequate and accurate advice during the plea-bargaining stage, Mr. Kearn would have accepted the government's Rule 11(c)(1)(C) offer.[23]

## 2. Arguments and Authorities

To prevail on his ineffective-assistance-of-counsel claim, Mr. Kearn must demonstrate (1) Mr. Francis performed deficiently—i.e., his performance "fell below an objective standard of reasonableness" and (2) Mr. Francis's deficient performance prejudiced Mr. Kearn—i.e., "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[24] Mr. Kearn can make both these showings here.

---

[19] Doc. 204 at 30–31; *see* Fed. R. Civ. P. 11(b)(3); Doc. 204 at 44–46, 59–60, 62.

[20] Doc. 204 at 60–63.

[21] *Id*. at 62.

[22] *Compare* Fed. R .Civ. P. 11(c)(1)(C), *and* Doc. 204 at 60–63, *with* Doc. 204 at 37–38.

[23] Doc. 204 at 47–48; *see Strickland*, 466 U.S. at 694; *see also Lafler*, 566 U.S. at 163–64.

[24] *Strickland*, 466 U.S. at 694 (describing the Supreme Court's two-part test for determining whether counsel was constitutionally ineffective under the Sixth Amendment); *see also Lafler*, 566 U.S. at 163–64 (discussing how *Strickland*'s prejudice prong applies to cases in which "ineffective assistance results in a rejection of the plea offer and the defendant is convicted at the ensuing trial").

## 2.1. Deficient Performance

A defendant in a criminal case has no constitutional right to demand a plea offer from the government. But once the government extends such an offer, the defendant has a constitutional right to the effective assistance of counsel in deciding whether to accept it.[25] To provide that assistance, defense counsel must understand the relevant law,[26] inform the client of the relevant law,[27] and do both in a manner that allows the defendant to meaningfully assess the advantages and disadvantages associated with accepting the government's offer.[28] Here, Mr. Francis neither familiarized himself with, nor adequately and accurately advised Mr. Kearn of, (1) the key benefits conveyed by Rule 11(c)(1)(C)'s binding-plea provision; or (2) the true nature of the burdens imposed by Rule 11(b)(3)'s factual-basis requirement.

### 2.1.1. Rule 11(c)(1)(C)'s Benefits

"A district court has 'substantial discretion' to accept or reject a plea agreement,"[29] including a plea agreement negotiated under Rule 11(c)(1)(C).[30] But if

---

[25] *Lafler*, 566 U.S. at 168.

[26] *See Hinton v. Alabama*, 571 U.S. 263, 274 (2014) ("An attorney's ignorance of a point of law that is fundamental to [the] case combined with [counsel's] failure to perform basic research on that point is a quintessential example of unreasonable performance . . . .").

[27] *See Hill v. Lockhart*, 474 U.S. 52, 62 (1985) (White, J., concurring in the judgment) ("The failure of an attorney to inform [a] client of the relevant law clearly satisfies the first prong of the *Strickland* analysis . . . ."); *see, e.g.*, *Byrd v. Skipper*, 940 F.3d 248, 257 (6th Cir. 2019) (holding that counsel's "lack of comprehension regarding the pertinent law," when "coupled with the inaccurate advice he gave his client," constituted deficient performance), *cert. denied*, 207 L. Ed. 2d 142 (May 26, 2020).

[28] *See Padilla*, 559 U.S. at 370 (citing *Libretti*, 516 U.S. at 50–51); *see, e.g.*, *United States v. Rubio-Ayala*, 2014 WL 1975179, at *8 (D. Kan. May 15, 2014) ("[Defense counsel] was required to provide enough evidence and explanation of the law to allow [the defendant] to reach his own conclusions [about whether the defendant should accept the government's plea offers].").

[29] *United States v. Sandoval-Enrique*, 870 F.3d 1207, 1213 (10th Cir. 2017) (quoting *United States v. Vanderwerff*, 788 F.3d 1266, 1271 (10th Cir. 2015))).

[30] *See Freeman v. United States*, 564 U.S. 522, 529 (2011), *holding modified by Hughes v. United States*, 138 S. Ct. 1765 (2018).

a district court accepts a Rule 11(c)(1)(C) agreement, its discretion is then cabined by "the parties' recommended sentence."[31] If, on the other hand, a district court rejects a Rule 11(c)(1)(C) plea agreement, the court must (1) advise the defendant the court is no longer required to impose the recommended sentence and (2) "give the defendant an opportunity to withdraw the plea."[32] If the defendant exercises that option, "the parties go back to the position" they were in before the plea.[33]

A Rule 11(c)(1)(C) plea therefore guarantees a defendant will receive one of two things: an agreed-upon sentence or an opportunity to return to the status quo. And this guarantee makes Rule 11(c)(1)(C) agreements "incredibly popular" with defendants.[34] First, a defendant knows that if the district court accepts the agreement, the defendant "will not get one more day in prison" than the agreement calls for.[35] Second, the defendant knows that if the district court rejects the plea agreement, the position the defendant will occupy after the rejection will be no worse than the position the defendant occupied before the plea.[36]

---

[31] *Id.*; *compare* Fed. R. Crim. P. 11(c)(1)(C) ("[S]uch a recommendation or request binds the court once the court accepts the plea agreement."), *with* Fed. R. Crim. P. 11(c)(1)(B) (explaining that when the government merely agrees to recommend—or to not oppose a request for—a particular sentence, "such a recommendation or request *does not* bind the court" (emphasis added)).

[32] Fed. R. Civ. P. 11(c)(5)(B); *compare id.*, *with* Fed. R. Civ. P. 11(c)(3)(B) ("[T]he court must advise the defendant that the defendant has *no right* to withdraw the plea if the court does not follow [a nonbinding] recommendation or request." (emphasis added)).

[33] Doc. 204 at 61.

[34] *Id.* (testifying that in defense attorney Branden Bell's experience, Rule 11(c)(1)(C) agreements can therefore help resolve "difficult cases" that would otherwise go to trial).

[35] Doc. 204 at 63; *see also United States v. Dunbar*, 718 F.3d 1268, 1270 n.1 (10th Cir. 2013) (quoting from the parties' plea agreement, which indicated the parties viewed Rule 11(c)(1)(C)'s certainty provision—i.e., the fact that if the district court accepted the agreement, it would "bring[] certainty to the sentencing process and assure[]" that the parties "benefit[ted] from the bargain they struck"—as a motivating factor).

[36] *See* Doc. 204 at 61; *see also Dunbar*, 718 F.3d at 1270 n.1 (quoting from the parties' Rule 11(c)(1)(C) plea agreement, which indicated the parties viewed Rule 11(c)(5)(B)'s status-quo

The significance of this information—particularly the first of these two points—cannot be overstated. After all, "[t]he decision whether to plead guilty" necessarily "involves assessing the respective consequences of a conviction [(1)] after trial and [(2)] by plea."[37] The more certain a defendant can be about the consequences of either option, the better equipped the defendant will be to perform this assessment.[38] Thus, as many courts have indicated, the potential certainty afforded by a Rule 11(c)(1)(C) plea will (or at least should) factor into any defendant's decision to enter (or eschew) such a plea.[39] And that means Mr. Francis had an obligation to both understand this key benefit of the government's offer and to adequately and accurately explain this benefit to Mr. Kearn.[40]

---

provision—i.e., the fact that the parties would "be restored" to their earlier positions if the district court rejected their agreement—as a motivating factor).

[37] *Lee v. United States*, 137 S. Ct. 1958, 1966 (2017).

[38] *Cf., e.g., United States v. Washington*, 619 F.3d 1252, 1259–60 (10th Cir. 2010) ("Knowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." (emphasis omitted)).

[39] *See, e.g., Gonzalez v. United States*, 722 F.3d 118, 132 (2d Cir. 2013) (suggesting that the binding nature of a Rule 11(c)(1)(C) plea offer is "a valid consideration" for purposes of determining "whether going to trial would be rational"); *United States v. DeFronzo*, 281 F. Supp. 3d 243, 247 (D. Mass. 2017) ("Petitioner made a knowing and voluntary waiver of his rights, choosing the certainty of a binding plea agreement over the uncertainty of a jury trial."); *United States v. Starks*, 2021 WL 496399, at *4 (N.D. Ill. Feb. 10, 2021) ("[The defendant] reaped substantial benefits—principally certainty and reduction of risk—from his binding plea agreement. . . ."); *Torres v. McGee*, 2019 WL 7562428, at *7 (D. Mont. Sept. 4, 2019) (noting that the defendant consciously elected to "proceed with the certainty provided by a binding plea agreement"); *Evans v. United States*, 2018 WL 2326132, at *16 (N.D. Ga. Mar. 28, 2018) ("[S]uch a plea provides certainty and security for a [d]efendant who might otherwise face the risk of a sentencing judge imposing something higher than what the parties recommended."); *United States v. Haaby*, 2012 WL 1718047, at *4 (D. Or. May 15, 2012) (suggesting, albeit not expressly stating, that by choosing "the certainty" of a binding 20-year plea deal over "the risk of a thirty-year-to life sentence" after a jury trial, the defendant chose the least worst option; noting that "go[ing] to trial" would have "exposed [the defendant] to substantially greater criminal penalties"); *United States v. Taliaferro*, 2009 WL 3644114, at *1 (D.N.H. Oct. 30, 2009) (reasoning that because the defendant faced a choice between (1) accepting a binding 15-year plea deal or (2) proceeding to trial and facing near certain conviction—followed by a 20-year mandatory-minimum prison sentence—the defendant "understandably chose the former" option).

[40] *See Von Moltke v. Gillies*, 332 U.S. 708, 721 (1948) ("Prior to trial an accused is entitled to rely upon [defense] counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer [counsel's] informed opinion as to what plea should be entered.");

The record reflects that Mr. Francis did neither here. For instance, Mr. Francis indicated he believed Mr. Kearn's sentencing exposure would still depend on the Guidelines, even once the Court accepted the Rule 11(c)(1)(C) agreement.[41] Likewise, Mr. Francis testified he was unaware of "any enforcement mechanism" that would have "ensure[d]" a ten-year sentence was "the only sentence" Mr. Kearn received under the plea agreement.[42] Thus, it appears Mr. Francis himself "did not understand [the] significance" of the government's Rule 11(c)(1)(C) offer.[43] And that means Mr. Francis could not and did not convey the significance—let alone the relative desirability—of this offer to Mr. Kearn.[44] Accordingly, Mr. Francis's performance during the plea-bargaining stage fell below an objective standard of reasonableness.[45]

---

*see also* Doc. 204 at 63, 67–69 (testifying that in Mr. Bell's experience, it is difficult to "think of a more important thing to convey to [the] client than the fact that . . . by virtue of [the] guilty plea, [the client] will not get one more day in prison . . . than what's in th[e] agreement," and that an attorney's failure to convey this information to a client once the government makes a Rule 11(c)(1)(C) offer falls below the "irreducible minimum[]" level of assistance that "any competent counsel" would provide).

[41] *See* Doc. 204 at 38. *But see Hughes v. United States*, 138 S. Ct. 1765, 1773, 1778 (2018) (explaining that although district courts must consider the Guidelines in determining *whether* to accept a Rule 11(c)(1)(C) plea agreement, "once the district court accepts the agreement, the agreed-upon sentence is the only sentence the court may impose").

[42] Doc. 204 at 38. *But see* Fed. R. Crim. P. 11(c)(5)(B) (stating that if the district court rejects a Rule 11(c)(1)(C) agreement, the court must give the defendant an opportunity to withdraw the plea); *United States v. Vallejo*, 463 F. App'x 849, 852 (11th Cir. 2012) (unpublished) (holding that the district court erred in failing to impose the agreed-upon sentence once it accepted the parties' Rule 11(c)(1)(C) agreement; vacating the defendant's sentence and remanding to the district court with directions "to resentence [the defendant] in compliance with" that agreement).

[43] *Washington*, 619 F.3d at 1259.

[44] *See* Doc. 204 at 47 (testifying that Mr. Kearn knew he was "looking at a 10-year plea offer" but that Mr. Kearn does not recall Mr. Francis discussing whether the Court would be bound by the terms of that offer); *id.* at 45 (testifying that Mr. Francis failed to discuss *any* of "the pros and cons" of accepting the government's Rule 11(c)(1)(C) plea offer with Mr. Kearn).

[45] *See Libretti*, 516 U.S. at 50 ("[I]t is the responsibility of defense counsel to inform a defendant of the advantages and disadvantages of a plea agreement . . . ."); *Washington*, 619 F.3d at 260 (explaining that "[k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty"; providing, as an example of constitutional ineffectiveness, a case where defense counsel "g[ave] no advice about [the]

### 2.1.2. Rule 11(b)(3)'s Burdens

Mr. Kearn also says Mr. Francis advised him that because Mr. Kearn believed the government's factual allegations were untrue, Mr. Kearn would be required to perjure himself if he wanted to accept the government's Rule 11(c)(1)(C) offer and plead guilty to Count 3.[46] This advice might have been true in some state courts.[47] But neither the Constitution nor Rule 11 hold to this view.[48]

Of course, Rule 11 does preclude district courts from "entering judgment on a guilty plea" without first determining "there is a factual basis for the plea."[49] But

---

desirability of [a] plea offer with [a] three-year maximum sentence when trial risked ten to forty years and [the] chances of acquittal were slim" (citing *Commonwealth v. Napper*, 385 A.2d 521 (Pa. Super. Ct. 1978))); *Rubio-Ayala*, 2014 WL 1975179, at *8 ("[Defense counsel] was required to provide enough evidence and explanation of the law to allow [the defendant] to reach his own conclusions [about whether the defendant should accept the government's plea offers].").

[46] *See, e.g.*, Doc. 165 at 21–22.

[47] *See, e.g.*, *State v. Taccetta*, 200 N.J. 183, 196 (N.J. 2009). *But see Williams v. Jones*, 571 F.3d 1086, 1087, 1091 (10th Cir. 2009) (noting that a state appellate court had already deemed defense counsel ineffective based on defense counsel's act of advising the defendant "he would be committing perjury by accepting the plea offer").

[48] *See, e.g.*, *North Carolina v. Alford*, 400 U.S. 25, 38 & n.11 (1970) (holding that although states are free to prohibit courts from accepting guilty pleas from defendants who maintain their innocence and that Rule 11 does not require federal courts to accept such pleas, courts do not "commit constitutional error" in doing so—so long as the plea is supported by an adequate factual basis); *see also* Fed. R. Crim. P. 11 advisory committee's notes to 1974 amendments ("The rule does not speak directly to the issue of whether a judge may accept a plea of guilty where there is a factual basis for the plea but the defendant asserts his innocence."). Notably, Rule 11 recognizes only three pleas: guilty, not guilty, and nolo contendere. *See* Fed. R. Crim. P. 11(a)(1). And unlike defendants who enter nolo contendere pleas—and "take[] no position on [their] guilt or innocence"—defendants who enter *Alford* pleas—and actively profess their innocence—are "actually offering, in Rule 11 terms, a guilty plea." *United States v. Mancinas-Flores*, 588 F.3d 677, 681 (9th Cir. 2009); *see United States v. Tunning*, 69 F.3d 107, 110–11 (6th Cir. 1995) ("[T]here should be no confusion regarding the difference between an *Alford*-type guilty plea and a plea of *nolo contendere*. . . . An *Alford*-type guilty plea is a guilty plea in all material respects."); *Blohm v. Comm'r*, 994 F.2d 1542, 1554 (11th Cir. 1993) (distinguishing between *Alford* pleas and pleas of nolo contendere; explaining that "[a]ssertions of innocence . . . do not transform ordinary guilty pleas into pleas of *nolo contendere*"). Thus, although Mr. Kearn does not assert he would have attempted to enter an *Alford* plea—or that the Court would have accepted such a plea had Mr. Kearn tried to enter one—cases discussing *Alford* pleas are nevertheless instructive when it comes to determining the steps a district court must take before "entering judgment on a guilty plea." Fed. R. Civ. P. 11(b)(3).

[49] Fed. R. Crim. P. 11(b)(3).

neither the Constitution nor Rule 11(b)(3) "require[s] a defendant to admit guilt" in order to satisfy this requirement.[50] Instead, courts may look beyond a defendant's own statements "to other evidence in the record to determine whether the plea has a factual basis."[51]

This Court has expressly recognized as much.[52] And as Mr. Bell noted, so has the Tenth Circuit.[53] Specifically, the Tenth Circuit has indicated that for purposes of determining whether a defendant's guilty plea is supported by a sufficient factual basis, courts may rely wholly or partially on the statements of defense counsel, the statements of government counsel, the presentence report, or any other

---

[50] *Mancinas-Flores*, 588 F.3d at 682–83 (citing *Alford*, 400 U.S. at 37)); *see Alford*, 400 U.S. at 37–38 & 38 n.11 ("[W]hile most pleas of guilty [are accompanied by] an express admission of guilt," such an admission "is not a constitutional requisite to the imposition of criminal penalty."); *id*. at 38 n.10 (explaining that Rule 11's factual-basis requirement formalizes the notion, embodied in "various state and federal court decisions," that a court shouldn't accept a guilty plea that is "coupled with claims of innocence . . . *unless* there is a factual basis for the plea" (emphasis added)).

[51] *Mancinas-Flores*, 588 F.3d at 682–83; *see, e.g.*, *Alford*, 400 U.S. at 38 (referring to "the strong factual basis for the plea *demonstrated by the State*" (emphasis added)).

[52] *See, e.g.*, *United States v. Watson*, 942 F. Supp. 1378, 1383 (D. Kan. 1996) ("We also disagree with defendant's argument that his plea of guilty lacks a factual basis because the court did not elicit an admission *from the defendant*, at the Rule 11 allocution . . . .The evidence at trial, which the court expressly referred to during the plea hearing as the factual basis for the charges against defendant, amply supports the court's finding that there was a factual basis for defendant's guilty plea." (emphasis added)).

[53] Doc. 204 at 62; *see, e.g.*, *United States v. Landeros-Lopez*, 615 F.3d 1260, 1263–64 (10th Cir. 2010) (noting that "nothing in Rule 11(b)(3) restricts a district court's consideration of a factual basis to its plea colloquy with the defendant alone"; and agreeing that, "when read in combination with the prosecutor's statements and the plea colloquy, the PSR provide[d] a sufficient factual basis" for the defendant's plea; indicating that although the district court couldn't have relied on the facts in the PSR to initially *accept* the defendant's guilty plea—because the PSR wasn't prepared until later—a sufficient factual basis nevertheless existed by the time the district court entered judgment on that plea, thereby rendering any initial Rule 11(b)(3) error harmless if such error indeed occurred); *United States v. Moran*, 452 F.3d 1167, 1171 (10th Cir. 2006) (noting that "[t]he factual basis for the plea need not come solely from the defendant's statements at the plea hearing"); *cf. United States v. Graves*, 106 F.3d 342, 345 (10th Cir. 1997) (acknowledging that the defendant "did not expressly provide a factual basis for his participation in any drug trafficking crime," but ultimately concluding the presentence report, standing alone, "provide[d] ample support for the district court's finding that a factual basis for the plea existed").

"appropriate" source of information, "so long as the factual basis is put on the record."[54] In one case, the Tenth Circuit held that a district court satisfied the factual-basis requirement by reading the charges to the defendant; verifying the defendant fully understood those charges; and confirming that the defendant wished to plead guilty to the charges as read.[55]

Other appellate courts have likewise confirmed that district courts are free to derive the requisite factual basis from sources other than the defendant's own admissions.[56] As a practical matter, it is easy to see why. Some defendants may be unable to admit to the truth of certain facts because they do not personally know whether those facts are true.[57] Other defendants may be unwilling, for various reasons, to "explicitly say what the evidence strongly suggests occurred."[58] But the latter defendants may nevertheless be willing to plead guilty so long as someone else describes that evidence.[59] And nothing in the text of Rule 11(b)(3) supports an

---

[54] *Moran*, 452 F.3d at 1171 (quoting *United States v. Smith*, 160 F.3d 117, 121 (2d Cir. 1998)).

[55] *United States v. Wade*, 940 F.2d 1375, 1377–78 (10th Cir. 1991).

[56] *See, e.g.*, *United States v. Maher*, 108 F.3d 1513, 1525 (2d Cir. 1997) (rejecting the defendant's argument that the district court was "required to find the requisite factual basis solely in a defendant's allocution"); *United States v. Antone*, 753 F.2d 1301, 1305 & n.1 (5th Cir. 1985) (acknowledging in a footnote that the defendant admitted he "did" what the indictment alleged, but nevertheless holding that "[t]he prosecutor's presentation of the[] facts" was—standing alone— sufficient to satisfy Rule 11's factual-basis requirement).

[57] *See* Doc. 204 at 59–60 (testifying that in Mr. Bell's experience, this often happens in conspiracy cases).

[58] *Id.* at 54.

[59] *See id.* at 52–54 (testifying that in Mr. Bell's experience, defendants who initially profess their innocence often encounter various "psychological stumbling block[s]" when it comes to subsequently admitting their guilt, especially "in cases that involve heinous . . . or particularly sensitive allegations such as sex cases [and] child abuse cases"); *see id.* at 46, 48–49 (testifying that it would have been very difficult for Mr. Kearn to "stand up before [his] friends and family" and admit to engaging in the charged conduct; acknowledging that Mr. Kearn would have therefore been unable to state in open court that the government's allegations "were true"; testifying that at the time he rejected the government's offer, Mr. Kearn "didn't know [he] didn't have to do it exactly like that" in order to plead guilty; testifying that if the government had "suppl[ied] the factual basis" for the plea

interpretation that would (1) hamstring district courts from accepting guilty pleas from such defendants[60] or (2) allow defendants who have entered such guilty pleas to later insist those pleas be set aside as invalid.[61] Indeed, the Seventh Circuit has gone so far as to characterize any argument to the contrary as "frivolous."[62]

Given the attractiveness of the government's proposed plea offer, the strength of the evidence against Mr. Kearn, and Mr. Kearn's insistence that he "didn't do what he was charged with,"[63] it was incumbent on Mr. Francis to fully understand—and to ensure Mr. Kearn fully understood—what burdens Rule 11(b)(3) did and did not impose on Mr. Kearn. The evidence indicates Mr. Francis did neither.

For instance, Mr. Francis's affidavit unequivocally states he never advised any client, including Mr. Kearn, that pleading guilty to a crime the client didn't commit would constitute perjury.[64] But Mr. Francis later amended this statement: he testified only that he does not recall providing such advice to Mr. Kearn.[65] In fact, Mr. Francis admitted he has no specific recollection regarding what he told Mr. Kearn about this particular topic, and conceded his affidavit describes his general

---

instead, Mr. Kearn would have been able to state in open court that the government's evidence was "strong" and "sufficient to prove" Mr. Kearn's guilt, and that "after making that statement," Mr. Kearn "would . . . have been willing to plead guilty").

[60] *See* Doc. 204 at 60–61 (describing how the Court's ability to derive the requisite factual basis from sources other than the defendant's own admissions can help the government and defense counsel negotiate plea agreements and avoid unnecessary trials).

[61] *See, e.g.*, *Landeros-Lopez*, 615 F.3d at 1263–64 (rejecting the defendant's assertion that he was entitled to such relief).

[62] *United States v. Rodriguez*, 45 F. App'x 522, 523 (7th Cir. 2002) (holding that any Rule 11 challenge to the defendant's plea would be "frivolous" where "the government presented to the court a specific factual basis that adequately support[ed] each essential element of the drug offense," and the defendant "agreed that the government would be able to prove the scenario presented").

[63] Doc. 402 at 31.

[64] Doc. 178-1 at 1.

[65] Doc. 204 at 36.

practice, rather than his actions in this specific case.[66] Mr. Kearn, on the other
hand, was demonstrably able to recall the details of his conversation with Mr.
Francis.[67] Thus, the Court should credit Mr. Kearn's statement that Mr. Francis
told Mr. Kearn he could not accept the government's offer and plead guilty to Count
3 without committing perjury in the process.[68]

    Alternatively, the Court should conclude that even if Mr. Francis did not
expressly tell Mr. Kearn pleading guilty would constitute perjury, Mr. Kearn could
and did reasonably construe Mr. Francis's advice to mean Mr. Kearn could not
plead guilty unless he was willing to admit in open court that the government's
factual allegations were true. Mr. Francis conceded in his affidavit that he typically
tells clients the presiding judge will, at the time of the plea, ask whether "the client
is pleading guilty because [the client] is guilty."[69] Likewise, Mr. Francis testified he
has historically advised his federal clients to personally "admit[] the factual basis
for the crime" if they wish to plead guilty.[70] And although Mr. Francis indicated in
his affidavit that his practice is to discuss various methods of establishing the
requisite factual basis with such clients,[71] (1) Mr. Francis does not recall whether
he actually discussed those alternatives with Mr. Kearn;[72] (2) Mr. Kearn
affirmatively recalls that Mr. Francis did *not* discuss these alternatives with him;[73]

---

[66] *Id.* at 26–28.
[67] *Id.* at 42–47.
[68] *See* Doc. 165 at 21–22; *see also* Doc. 204 at 44.
[69] Doc. 178-1 at 2.
[70] Doc. 204 at 30–31.
[71] Doc. 178-1 at 2.
[72] Doc. 204 at 28.
[73] *Id.* at 44–45.

(3) one of the alternatives outlined in Mr. Francis's affidavit is inaccurate, or at least incomplete;[74] (4) Mr. Francis testified that he "understood the law to require" the defense team to "suppl[y] factual basis" for the plea;[75] and (5) Mr. Francis indicated his general practice is to advise clients that "if they don't want to" admit the facts, "then they don't have to," but that if they "want[] to plead guilty," then they must "admit to the facts."[76]

Given Mr. Francis's inaccurate (or at least incomplete) understanding of the burdens imposed by Rule 11(b)(3)'s factual-basis requirement, it is unlikely that Mr. Francis was able to adequately explain those burdens to Mr. Kearn. It is even less likely that Mr. Francis managed to sufficiently address both the burdens imposed by Rule 11(b)(3) *and* the benefits conveyed by Rule 11(c)(1)(C) in approximately six

---

[74] *Compare* Doc. 178-1 at 2 (stating Mr. Francis typically advises clients that the Court might "have the prosecutor present facts . . . constituting the offense and then ask[] the client if [the client] agrees *with the prosecutor's statements*" (emphasis added)), *with Rodriguez*, 45 F. App'x at 523 (holding that any Rule 11 challenge to the defendant's plea would be "frivolous" where "the government presented to the court a specific factual basis that adequately support[ed] each essential element of the drug offense," and the defendant "agreed that *the government would be able to prove* the scenario presented" (emphasis added)), *and Antone*, 753 F.2d at 1305 (indicating that the prosecutor's recitation of the "facts he expected the evidence at trial to show" was sufficient, standing alone, to establish the requisite factual basis).

[75] Doc. 204 at 25.

[76] *Id.* at 36; *see id.* at 39 (confirming Mr. Francis advised his clients that (1) they could "plead guilty and admit to the facts" if they wanted to, and (2) if they did not want to "admit to the facts," their only "alternative [was] trial"). It appears Mr. Francis's error on this point stemmed in part from his mistaken understanding of the distinction between (1) no-contest pleas and (2) *Alford* pleas (which are, for purposes of Rule 11(b)(3), guilty pleas), as well as Mr. Francis's general failure to familiarize himself with federal plea-bargaining law. *See supra* n.50; *compare* Doc. 204 at 44 (testifying Mr. Francis advised Mr. Kearn that (1) "a no contest plea is something that somebody can plea if they . . . are *maintaining their innocence*" and (2) no-contest pleas are only available in state court, rather than federal court (emphasis added)), *with Mancinas-Flores*, 588 F.3d at 681 ("An *Alford* plea differs from a nolo plea in that a defendant pleading nolo contendere *takes no position on guilt or innocence*, whereas a defendant entering an *Alford* plea takes the position that he is not guilty." (emphasis added)), Doc. 204 at 64 (testifying to Mr. Bell's understanding that no-contest pleas are appropriate "where there [are] *no* protestations of innocence" (emphasis added)), Fed. R. Crim. P. 11(a)(1) (expressly recognizing that federal courts may accept no-contest pleas), *and* Doc. 204 at 64 (testifying that in Mr. Bell's experience, federal no-contest pleas exist in practice as well as theory).

minutes.[77] Instead, the record indicates that in that brief amount of time, Mr. Francis incorrectly overstated the disadvantages associated with accepting the government's offer while simultaneously failing to mention the key advantages of doing so, thereby skewing the cost–benefit calculation and depriving Mr. Kearn of the ability to make a rational and informed choice between (1) accepting the government's offer and pleading guilty or (2) going to trial. Whether via error or omission, Mr. Francis's performance during the plea-bargaining stage therefore fell below an objective standard of reasonableness.[78]

### 2.2. Prejudice

To demonstrate prejudice, Mr. Kearn must show that but for Mr. Francis's deficient performance, there exists a reasonable probability of the following: (1) Mr. Kearn would have accepted the government's Rule 11(c)(1)(C) offer; (2) the government would not have withdrawn that offer; (3) the Court would have accepted the plea agreement; and (4) Mr. Kearn would have been convicted of fewer counts, received a shorter sentence, or both.[79] Mr. Kearn can make each of these showings here.

---

[77] *Compare* Doc. 204 at 43 (offering uncontroverted testimony that Mr. Francis only spent six minutes discussing the government's plea offer with Mr. Kearn), *with* Doc. 402 at 52–57 (testifying that in Mr. Bell's experience, discussing the possibility of pleading guilty with a client who initially professes innocence—"particularly in cases that involve heinous . . . or particularly sensitive allegations such as sex cases [or] child abuse cases"—"requires a lot of work" on the part of defense counsel and frequently takes "multiple visits over multiple hours"; testifying that Mr. Bell has never managed to complete this difficult and delicate work in six minutes, and stating that "the over-under" for discussing plea offers—even in cases where clients do *not* initially profess their innocence—"is probably about an hour to an hour-and-a-half").

[78] *See Padilla*, 559 U.S. at 370 (holding that counsel can perform deficiently during the plea-bargaining phase by providing inaccurate advice or by failing to provide advice at all).

[79] *See Lafler*, 566 U.S. at 164.

First, Mr. Kearn has stated that but for Mr. Francis's "incorrect information and lack of knowledge of Federal Plea procedures," Mr. Kearn would have accepted the government's Rule 11(c)(1)(C) offer and pleaded guilty.[80] Mr. Kearn's sworn statements on this point are uncontroverted. And those statements are at least anecdotally corroborated by Mr. Bell's testimony.[81] They also find support in Mr. Francis's acknowledgement that the government's offer was a "huge" deal.[82] Indeed, given the strength of the government's case[83] and the fact that Mr. Kearn would have been choosing between (1) entering a plea that, if accepted, would trigger a guaranteed 10-year sentence on a single count or (2) going to trial on multiple counts that, if proved, would carry a sentencing exposure of 292 to 365 months,[84] there is a reasonable probability that any properly informed defendant in Mr. Kearn's position would have chosen the former option rather than the latter.[85]

Second, although the government indicated it would have withdrawn its offer had Mr. Kearn attempted to enter a no-contest plea,[86] Mr. Kearn's position is that but for Mr. Francis's deficient advice, Mr. Kearn would have pleaded guilty, not no

---

[80] Doc. 165 at 21–22; *see, e.g.*, Doc. 204 at 47.

[81] *See, e.g.*, Doc. 204 at 61, 63 (testifying that Rule 11(c)(1)(C) plea agreements are "very popular with clients," particularly in cases "with a large sentencing exposure and overwhelming evidence").

[82] Doc. 204 at 38; *see also* Doc. 204 at 43–44 (testifying that Mr. Kearn remembers Mr. Francis saying it was "too bad" Mr. Kearn could not enter a plea).

[83] *See United States v. Kearn*, 863 F.3d 1299, 1312 (10th Cir. 2017) (describing the evidence of Mr. Kearn's guilt as "overwhelming").

[84] *See* Doc. 149 at 26–27.

[85] *See, e.g.*, *Lee*, 137 S. Ct. at 1966 (noting that "[w]here a defendant has no plausible chance of an acquittal at trial, it is highly likely that [the defendant] will accept a plea if the Government offers one"); *Taliaferro*, 2009 WL 3644114, at *1 (reasoning that because the defendant faced a choice between (1) accepting a binding 15-year plea deal or (2) proceeding to trial and facing near certain conviction—followed by a 20-year mandatory-minimum prison sentence—the defendant "understandably chose the former" option).

[86] Doc. 168 at 42; *see* Doc. 204 at 66–67.

contest.[87] And the government has never suggested it would have withdrawn its Rule 11(c)(1)(C) offer had Mr. Kearn attempted to enter a guilty plea.[88]

Third, and relatedly, the Court previously indicated it would not have allowed Mr. Kearn to enter a no-contest plea.[89] But again, Mr. Kearn's position is that he would have pleaded guilty, not no contest. True, Mr. Kearn acknowledged he would have been unable to enter a guilty plea if this Court had required him to personally admit he was, in fact, "guilty of the crime and that [the government's factual allegations] were true."[90] But as discussed above, courts can (and frequently do) allow defendants to enter guilty pleas without requiring those defendants to personally admit the factual truth—as opposed to the legal sufficiency—of the government's allegations.[91] And there is no reason to think this Court would have ruled out the possibility of deriving the requisite factual basis from some other source here.[92]

---

[87] *See* Doc. 204 at 46–47.

[88] *See Smith v. Allbaugh*, 921 F.3d 1261, 1272 (10th Cir. 2019) (concluding that the second prejudice factor weighed in the defendant's favor where there was "nothing in the record to indicate the state would have withdrawn or canceled the offer" once the defendant accepted it).

[89] Doc. 173 at 22.

[90] Doc. 904 at 48–49.

[91] *See supra* Section 2.1.2.; *compare* Doc. 204 at 46–47 (testifying that Mr. Kearn would have pleaded guilty if, *e.g.*, the government had supplied the factual basis), *and id.* at 49 (testifying Mr. Kearn could have stated in open court that the government's evidence against him was not just sufficient to convict him but "strong"), *with Rodriguez*, 45 F. App'x at 523 (concluding there was an adequate factual basis for the defendant's plea where the government outlined its support for each element of the alleged offense and the defendant "agreed that the government would be able to prove the scenario presented").

[92] *See Smith*, 921 F.3d at 1272 (concluding the third prejudice factor weighed in the defendant's favor where there was "nothing in the record to suggest that the sentencing court wouldn't have accepted [the defendant's] plea").

Further, although "[t]he Sentencing Guidelines prohibit district courts from accepting Type–C agreements without first evaluating the recommended sentence in light of the defendant's Guidelines range," the recommended sentence in this case was 10 years—the statutory maximum for Count 3 and the same sentence the Court ultimately imposed on that count.[93] For all these reasons, there exists a reasonable probability the Court would have agreed to be bound by the plea agreement and would have accepted Mr. Kearn's guilty plea.[94]

Finally, once the Court accepted the plea agreement, the Court would have dismissed Counts 1 and 2 and imposed the recommended 10-year sentence.[95] Because one conviction is better than three, and because 10 years in prison is preferable to more than 24, Mr. Francis's deficient performance during the plea-bargaining stage prejudiced Mr. Kearn, thereby violating the Sixth Amendment.[96] And because "'*Strickland* prejudice and *Brecht* harmless error are essentially the same standard," the Court need not separately assess whether the resulting Sixth Amendment violation was harmless in order to grant Mr. Kearn relief under § 2255.[97]

---

[93] *See* Doc. 123; Doc. 149 at 27, 39.

[94] *Cf. Gonzalez*, 722 F.3d at 132 (explaining that in cases involving binding pleas, the fact that the district court ultimately imposes the agreed-upon sentence is "a valid consideration" when it comes to proving prejudice).

[95] *See* Fed. R. Crim. P. 11(c)(1).

[96] *See Smith*, 921 F.3d at 1272 ("[A] 20-year sentence is obviously more favorable than the 30-year sentence [the defendant] received. Thus, [the defendant] has established a reasonable probability that had his first attorney conveyed the 20-year plea offer to him, the result of the proceeding would have been different."); *see also Lafler*, 566 U.S. at 164.

[97] *Byrd v. Workman*, 645 F.3d 1159, 1167 n.9 (10th Cir. 2011) (quoting *Breakiron v. Horn*, 642 F.3d 126, 147 n.18 (3d Cir. 2011)) (citing *Brecht v. Abrahamson*, 507 U.S. 619 (1993)).

## 3. Conclusion

Faced with overwhelming evidence of his guilt and the prospect of spending upwards of 20 years in prison, Mr. Kearn was constitutionally entitled to the assistance of an attorney who not only understood the advantages and disadvantages of Mr. Kearn's other options, but who took the time to ensure Mr. Kearn understood those advantages and disadvantages as well. Mr. Kearn did not receive that assistance here. And there is a reasonable probability that, but for defense counsel's failure to provide that assistance, Mr. Kearn would have been convicted of fewer counts and would have received a shorter sentence. Thus, for the reasons discussed above, Mr. Kearn asks the Court to conclude he is entitled to relief on his surviving Sixth Amendment claim.

Respectfully submitted,

s/ Lydia Krebs
LYDIA KREBS, #22673
Assistant Federal Public Defender
117 SW 6th Avenue, Suite 200
Topeka, KS 66603-3840
Phone: 785/232-9828
Fax: 785/232-9886
lydia_krebs@fd.org

s/ Kirk Redmond
KIRK C. REDMOND, #18914
First Assistant Federal Public
Defender
117 SW 6th Avenue, Suite 200
Topeka, KS 66603-3840
Phone: 785/232-9828
Fax: 785/232-9886
kirk_redmond@fd.org

## CERTIFICATE OF SERVICE

I certify that on 05/14/2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all interested parties.

s/ Lydia Krebs
LYDIA KREBS, #22673