IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13-40057-01-DDC |
| | ) | |
| JONATHAN KEARN, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## GOVERNMENT'S POST-HEARING MEMORANDUM

COMES NOW the United States of America and hereby submits its post-hearing memorandum addressing the merits of Defendant's claim that he received ineffective assistance of counsel in relation to plea negotiations in this case, which was the subject of the evidentiary hearing held by this Court on April 19, 2021.

## I.    Background

This Court is familiar with the procedural history of the case, so the government will not repeat it here.  The government will reference the salient testimony adduced at the hearing in the discussion below.

## II.    Legal Authorities:  Ineffective Assistance of Counsel

The Sixth Amendment guarantees criminal defendants the right to the effective assistance of counsel.  U.S. Const. amend VI.  This right "extends to the

plea-bargaining process," so "[d]uring plea negotiations defendants are entitled to the effective assistance of competent counsel."  *Lafler v. Cooper*, 566 U.S. 156, 162 (2012) (internal quotation marks omitted).

A successful ineffective assistance of counsel claim must meet the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), under which a defendant must show both that counsel's representation fell "below an objective standard of reasonableness," *id*. at 688, and that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different., *id*. at 694.  *Strickland*'s two-pronged test applies to a defendant's claim that he received ineffective assistance during his plea negotiations with the government.  *See Lafler*, 566 U.S. at 162-63 (*Strickland* "applies to challenges to guilty pleas based on ineffective assistance of counsel"); *Missouri v. Frye*, 566 U.S. 134, 147-48 (2012) (applying *Strickland* to a rejected plea offer).

Under *Strickland*'s first prong—the performance prong—a defendant must show that "[c]ounsel's performance was deficient" and contained "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id*. at 688.  To meet this standard, the representation must have fallen below an objective standard of reasonableness based on prevailing

professional norms.  *Id*. at 687-88.  "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances."  *Id*. at 688.  In answering this question, the reviewing court is required to "eliminate the distorting effects of hindsight" and "indulge a strong presumption that counsel acted reasonably."  *Welch v. Workman*, 639 F.3d at 980, 1012 (10th Cir. 2011) (quotations omitted).

Under *Strickland*'s second prong—the prejudice prong—a defendant must affirmatively prove that the deficient performance prejudiced the defense.  *Battenfield v. Gibson*, 236 F.3d 1215, 1234 (10th Cir. 2001) (citing *Strickland*, 466 U.S. at 693-693).  Stated differently, a petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  "In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice."  *Lafler*, 566 U.S. at 163.  More precisely:

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less

3

severe than under the judgment and sentence that in fact were imposed.

*Id*. at 164.

## III.   Defendant Did Not Receive Ineffective Assistance of Counsel

### A.   Counsel did not perform deficiently.

This record shows that Defendant was adequately advised by counsel that he could accept a guilty plea to Count 3 and expect to receive a 10-year sentence. Counsel discussed the plea offer with Defendant.  (Doc. 178-1, at 1 (counsel stating in affidavit that "On or about April 23, 2015, I met with my client and discussed the plea offer"); Doc. 204, at 28 ("we generally would have discussed the plea").)  Defendant confirmed that counsel conveyed the plea offer to him at this Court's *Lafler-Frye* hearing before trial.[1]  At that hearing the prosecutor recited the terms of the plea offer, stating "the offer was a (c)(1)(C), a binding plea agreement to a 10-year sentence to Count 3." (Govt. Ex. 101, at 2-3.)  This Court asked Defendant if he had been made aware of this offer, and Defendant replied, "I

---

[1]    In *Frye* the Court referred to this type of hearing, stating "[t]he prosecution and the trial courts may adopt some measures to help ensure against late, frivolous, or fabricated claims after a later, less advantageous plea offer has been accepted or after a trial leading to conviction with resulting harsh consequences," 566 U.S. at 146, and opining that "formal offers can be made part of the record . . . before a trial on the merits, all to ensure that a defendant has been fully advised before those further proceedings commence." *id*.

was last week, yes, sir." (*Id*. at 3.)  Defendant testified that counsel told him he "was looking at a 10-year plea offer." (Doc. 204, at 47.)

When counsel discussed the plea offer with Defendant, he told Defendant that "a judge doesn't have to go along with the plea agreement." (*Id*. at 38.)  This was correct advice because a judge is not required to accept a Rule 11(c)(1)(C) plea agreement proposed by the parties.[2]

Defendant stated that counsel told him that "I would have to tell the judge that I was guilty of the crime if I took a guilty plea." (*Id*. at 44.)  Counsel's affidavit confirms that giving similar advice was consistent with counsel's practice, which counsel described as follows:

---

[2]    "Rule 11(c)(1)(C) makes the parties' recommended sentence binding on the court 'once the court accepts the plea agreement,' but the governing policy statement confirms that the court's acceptance is itself based on the Guidelines. *See* USSG § 6B1.2.  That policy statement forbids the district judge to accept an 11(c)(1)(C) agreement without first evaluating the recommended sentence in light of the defendant's applicable sentencing range. The commentary to § 6B1.2 advises that a court may accept an 11(c)(1)(C) agreement 'only if the court is satisfied either that such sentence is an appropriate sentence within the applicable guideline range or, if not, that the sentence departs from the applicable guideline range for justifiable reasons.' *Cf. Stinson v. United States*, 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993) (Guidelines commentary is authoritative). Any bargain between the parties is contingent until the court accepts the agreement. The Guidelines require the district judge to give due consideration to the relevant sentencing range, even if the defendant and prosecutor recommend a specific sentence as a condition of the guilty plea." *Freeman v. United States*, 564 U.S. 522, 529-30 (2011).

> My practice, in dealing with clients and plea offers is to tell the client that a[t] the time of the plea, the judge will ask the client to tell the court the facts surrounding the offense, or will ask the client if he has read the affidavits and the pleadings alleging the offense and whether the client agrees an offense is stated or will have the prosecutor present facts to the court constituting the offense and then asking the client if he agrees with the prosecutor's statements. I advise the client the judge will ask if the client is pleading guilty because he is guilty.

(Doc. 178-1, at 2.) From counsel's perspective, "If a client wants to plead guilty and admit to the facts, they understand they're pleading guilty and admitting to the facts." (Doc. 204, at 36.)

As to the issue of acknowledging a factual basis for a potential guilty plea, presumably for purposes of satisfying Federal Rule of Criminal Procedure 11(b)(3), counsel testified that because a hundred percent of the clients he had represented in federal court themselves admitted the factual basis for the crime in their plea petitions, it is likely that he would have advised any client—presumably to include Defendant—that the client would have to admit the facts surrounding the offense in his plea petition. (Doc. 204, at 30-31.) Defendant testified that he and counsel did not discuss options where he would not have to personally state a factual basis for the plea, such as where the government or the PSR supplies the factual basis. (*Id*. at 45.) Defendant stated that he did not know that he could have

pleaded guilty and have had the government supply the factual basis for the plea, but if he had known this he would have pleaded guilty. (*Id*. at 46-47.)

According to counsel, Defendant rejected the offer because he did not commit the crimes. (Doc. 178-1 at 1 ("[Defendant] said he did not commit the crimes was his reason for not accepting the plea."); *id*. ("Mr. Kearn did reject the offer."); Doc. 204, at 31 (Counsel testifying Defendant "told me that he would not plead guilty" and his attitude was "[t]hat he didn't do it—didn't do what he was charged with"). At the hearing, Defendant agreed he would not have been able to say he was guilty at any plea hearing. (*Id*. at 48-49.) At no point during his representation of Defendant did counsel believe Defendant would plead guilty. (*Id*. at 31-32.)

This record establishes that counsel's advice was neither deficient nor objectively unreasonable. By his own telling, Defendant understood that he "was looking at a 10-year plea offer." (Doc. 204, at 47.) Counsel had undoubtedly advised him of this when he discussed the offer, and the prosecutor also advised him of this at the *Lafler/Frye* hearing, where the prosecutor stated that the offer "was a (c)(1)(C), a binding plea agreement to a 10-year sentence to Count 3," which was "the possession charge." (Govt. Ex. 101, at 2-3.) From this

information, Defendant knew the advantages and disadvantages of accepting the plea versus going to trial.

Defendant suggests that counsel's advice was deficient for two main reasons, namely: (1) "counsel neglected to inform [him] of the benefits associated with Rule 11(c)(1)(C)'s plea offer," and (2) "counsel provided [him] with inaccurate (or at least incomplete) advice regarding the burdens imposed by Rule 11(b)(3)'s factual basis requirement." (Doc. 206, at 1.) The first claim is belied by the record; the second claim is a red herring because Defendant would not have entered a guilty plea irrespective of the burdens imposed by Rule 11(b)(3)'s factual basis requirement.

As to the first claim, Defendant makes several arguments that find no support in the record. For example, he states that counsel "indicated he believed [Defendant's] sentencing exposure would still depend on the Guidelines, even once the Court accepted the rule 11(c)(1)(C) agreement (Doc. 206, at 8), and in support of this claim he cites page 38 of the hearing transcript (id. n.41), but that page contains no testimony that supports this claim or an inference supporting it.

He further claims that counsel appears not to have understood the significance of the government's Rule 11(c)(1)(C) offer because he was "unaware of 'any enforcement mechanism' that would have 'ensure[d]' a ten-year sentence

was 'the only sentence' Defendant would have received under the plea agreement (*id.*), and in support of this claim he cites page 38 of the hearing transcript (*id.* n.42).  But the record does not establish that counsel misunderstood the significance of the plea offer.  The question posed to counsel on page 38 asked, "So are you aware of any enforcement mechanism for—to ensure that the only sentence from that plea would be 10 years?"; and counsel responded, "No, I'm not, because a judge doesn't have to go along with the plea agreement."  (Doc. 204, at 38.)  Counsel was *correct* that the judge does not have to go along with the plea agreement (until the judge accepts it), *see supra* n.2, but counsel's answer did purport to address or pronounce on whether a judge is required to go along with the plea agreement after accepting it.  Defendant simply assumes that counsel's answer purported to do so, but this is not a fair reading of counsel's response to the question.

Defendant also claims, without record support, that counsel "indicated he believed Mr. Kearn's sentencing exposure would still depend on the Guidelines, even once the Court accepted the Rule 11(c)(1)(C) plea agreement."  (Doc. 206, at 8 & n.41.)  For this claim Defendant cites page 38 of the hearing transcript (*id.*), but this page contains no such indication that counsel belabored under any such specific belief.  (*See* Doc. 204, at 38.)  Of course, the Guidelines are relevant in the

Rule 11(c)(1)(C) plea context, as district courts must give them due consideration in deciding whether to accept a Rule 11(c)(1)(C) agreement.  *See* n.2, *supra*.

Based on his assumption that counsel misunderstood the significance of the Rule 11(c)(1)(C) plea offer, Defendant infers that counsel "could not and did not convey the significance—let alone the relative desirability—of this offer to [Defendant]."  (Doc. 206, at 8.)  But the record shows that Defendant understood the significance of the offer, given both his testimony that he understood he "was looking at a 10-year plea offer" (Doc. 204, at 47), and the prosecutor's recitation of the offer at the *Lafler/Frye* hearing as "a (c)(1)(C), a binding plea agreement to a 10-year sentence to Count 3," which was "the possession charge" (Govt. Ex. 101, at 2-3), which Defendant confirmed he had been made aware of (*id.* at 3). Given Defendant's own statement of his understanding of the offer and the prosecutor's correct recitation of the offer, any reasonable person in Defendant's shoes would have understood the significance of the offer:  that he would get a 10-year sentence upon his entry of a guilty plea to Count 3.  Defendant did not have to understand the "enforcement mechanism" or anything else about Rule 11(c)(1)(C) to appreciate this significance.

As to the second claim—regarding Rule 11(b)(3)'s burdens with respect to the factual basis requirement—Defendant suggests that the main reason he could

not accept this offer stemmed from counsel's inadequate advice regarding *who* would supply the factual basis for his guilty plea for purposes of complying with Rule 11(b)(3)'s requirement that, "[b]efore entering judgment on a guilty plea, the court must determine there is a factual basis for the plea."

Defendant advances two lines of argument on this point.  First, he claims that counsel "advised him that because [he] believed the government's factual allegations were untrue, [he] would be required to perjure himself if he wanted to accept the government's Rule 11(c)(1)(C) offer and plead guilty to Count 3." (Doc. 206, at 9.)  Second, he claims that even if counsel did not tell him that pleading guilty would constitute perjury, Defendant "did reasonably construe [counsel's] advise to mean [Defendant] could not plead guilty unless he was willing to admit in open court that the government's factual allegations were true." (*Id*. at 13.)

The record rebuts Defendant's claim that counsel told him that pleading guilty would constitute perjury.  Counsel stated in his affidavit that he has "never" advised a client that he would commit perjury by accepting responsibility for illegal activity he has not actually committed (Doc. 178-1, at 1), and he testified at the hearing that he "[did not] recall ever advising a client of that" (Doc. 204, at 36) and "[did not] recall telling [Defendant] that he'd be committing perjury" by

11

pleading guilty (*id*.).  Defendant did not testify to the contrary at the hearing,

although he did allege in his first § 2255 motion that counsel so advised him.

(Doc. 157-7, at 19, ¶ 13.)

Defendant urges this Court to "credit [Defendant's] statement that [counsel]

told [Defendant] he could not accept the government's offer and plead guilty to

Count 3 without committing perjury in the process."  (Doc. 206, at 13 (citing Doc.

165, at 21-22 and Doc. 204, at 44)).  But Defendant's citations to the record where

Defendant supposedly made this "statement" do not establish that Defendant stated

that counsel told him that pleading guilty would constitute perjury, as distinct from

Defendant thinking in his own mind that he could not plead guilty without

committing perjury.

The first citation—to Doc. 165, at 21-22—does not allege that counsel told

Defendant this; rather, it talks about what Defendant "believed" based on that

advice.  (Doc. 164, at 21-22 ("Based on counsel's advice, KEARN believed he

could not plead guilty because a pretrial discussion with counsel confirmed he

would essentially be lying to the Court and thus committing perjury by accepting

responsibility for criminal actions he had no part of.").)

Neither does the second citation—to Doc. 204, at 44—allege that counsel told him this.  The relevant passage on this page does not even contain the word "perjury":

> Q.   (By Mr. Redmond)   Did you talk about the factual basis for the guilty plea?
>
> A.   (By Defendant) By factual basis, if you're saying would I have to say I was guilty of the—of the crime, then, yes, we did.
>
> Q.  And what was the advice that you received?
>
> A.  That I would have to tell the judge that I was guilty of the crime if I took a guilty plea.  And since I was not guilty of the crime, I couldn't honestly say that to the judge in good conscience.
>
> Q.  Is that what Mr. Francis is saying to you or what you were saying to Mr. Francis?
>
> A.  Mr. Francis is saying to me.

(Doc. 204, at 44.)  So, obviously, this passage does not contain a statement by counsel to Defendant that he would be committing perjury if he entered a guilty plea, as opposed to talking about whether he could enter a plea "in good conscience."

Defendants' second line of attack—arguing that counsel misadvised him about Rule 11(b)(3)'s burdens—fares no better.  In effect, Defendant claims that counsel's advice made him think he "could not plead guilty unless he was willing

13

to admit in open court that the government's factual allegations were true" (Doc. 206, at 13) and failed to advise him that Rule 11(b)(3)'s factual-basis requirement could be satisfied by a means other than Defendant having to personally state a factual basis for the plea, such as (1) an option where the government could supply the factual basis for the plea; or (2) an option where the PSR could supply the factual basis for the plea. (*See* Doc. 204, at 44-45; Doc. 206, at 13-14.) Defendant testified that had he known that he "could have pled guilty and had the government supply the factual basis," he would have pled guilty and accepted the Rule 11(c)(1)(C) plea. (Doc. 204, at 46-47; *see also id*. at 49 (Defendant testified he would have been willing to plead guilty if he could have done so by acknowledging for purposes of establishing the factual basis that "the government's evidence is sufficient to prove you guilty beyond a reasonable doubt").)

This claim lacks merit because (1) it is premised on a misperception that Defendant could have entered a guilty plea without admitting his factual guilt; and (2) it erroneously assumes that a defendant's agreement that the government has sufficient evidence to prove him guilty (for purposes of satisfying Rule 11(b)(3)'s factual basis requirement) is a makeweight or substitute for a guilty plea, which it is not.

First, contrary to Defendant's apparent perception, he could not have entered a guilty plea without admitting his factual guilt or the factual allegations pleaded by the government in Count 3, even if he had been presented the option of agreeing that the government's evidence was sufficient to prove him guilty beyond a reasonable doubt.  That is, even if he had agreed to admit the government's evidence was sufficient to prove him guilty, Defendant would still have been required to enter a guilty plea in order to plead guilty.  And doing so required much more than just agreeing that the government had sufficient evidence to prove his guilt:  it required that he admit that he committed the acts described in Count 3.

To illustrate, Count 3 charged that on May 7, 2013, in the District of Kansas, Defendant:

> knowingly possessed and accessed with the intent to view at least one (1) matter which contained any visual depiction that had been shipped and transported using any means and facility of interstate and foreign commerce, including by computer, and the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256, and such visual depiction is of such conduct, in violation of Title 18, United States Code, Section 2252(a)(4)(B).

(Doc. 15, at 2-3.)

So in order to plead guilty to this charge, Defendant would have had to admit all of the factual allegations in Count 3, namely, that (1) on May 7, 2013 (2)

in the District of Kansas, he (3) knowingly (4) possessed and accessed with intent to view (5) at least one visual depiction involving a minor engaging in sexually explicit conduct, (6) which had traveled in interstate commerce.  Contrary to Defendant's apparent perception, he could not have entered a guilty plea to Count 3 without *admitting these facts*, which comprise the factual and legal elements of Count 3, because a guilty plea is, by definition, an admission of the factual acts described in the charge to which a defendant pleads guilty.  *See United States v. Broce*, 488 U.S. 563, 569 (1989) ("A plea of guilty and the ensuing conviction comprehend all of the *factual* and legal *elements* necessary to sustain a binding, final judgment of guilt and a lawful sentence." (emphasis added)); *United States v. Allen*, 24 F.3d 1180, 1183 (10th Cir. 1994) (stating "a defendant who makes a counseled and voluntary guilty plea *admits* both *the acts described in the indictment* and the legal consequences of those acts" (emphasis added)); *United States v. Brown*, 164 F.3d 518, 521 (10th Cir. 1998) (explaining an "unconditional plea *admit[s] all material allegations* already contained in the [ ] indictment" (emphasis added)); *United States v. Kelsey*, 15 F.3d 152, 153 (10th Cir. 1994) ("A plea of guilty is the equivalent of *admitting all material facts alleged in the charge*." (emphasis added)).  Accordingly, counsel's advice to Defendant that he

16

would be required to admit his factual guilt if he pleaded guilty was manifestly correct.

Moreover, Defendant could not have avoided this requirement by having the government provide the factual basis for Count 3 and agreeing that the government's stated basis was sufficient for this Court to find him guilty, as he apparently assumes.  Defendant seems to be confusing Rule 11's requirement that "the court must determine that there is a factual basis for the plea," Fed. R. Crim. P. 11(b)(3), with the guilty plea itself.[3]  That is, he seems to be saying that when the court determines there is a factual basis for the plea—i.e., such as when a defendant admits the government has sufficient evidence to prove his guilt—then that suffices for the court to enter a guilty plea on a defendant's behalf.  But this is incorrect; in addition to requiring that the court determine there is a factual basis for the plea, Rule 11 also requires that the defendant actually enter a plea; if he does not, the court must enter a plea of not guilty.  Fed. R. Crim. P. 11(a)(1), (4). A district court may not enter a guilty plea if a defendant does not plead guilty, *id*.,

---

[3]    (*See*, *e.g.*, Doc. 204, at 44 ("Q. (By Mr. Redmond) Did you talk about the factual basis for the guilty plea?" A. (By Defendant) By factual basis if you're saying would I have to say I was guilty of the—of the crime—then, yes, we did.").)

and a defendant cannot enter a guilty plea without admitting the factual acts described in the charge to which he is pleading guilty.[4]

In sum, counsel correctly and adequately advised Defendant regarding the plea offer.  Defendant knew from either counsel or the prosecutor or both that he was looking at a 10-year deal if he entered a guilty plea to Count 3, so he knew the cost-benefit calculation of going to trial.  Counsel correctly advised Defendant that he would have to admit his factual and legal guilt as part of any plea, and counsel never told Defendant that he would be committing perjury if he entered a plea. Finally, even if counsel had spent more time discussing the plea offer with Defendant, such discussions would likely have been a waste of time since Defendant told counsel that he was not guilty of the offense and would not plead guilty.  (*See* Doc. 178-1 at 1; Doc. 204, at 31.)  Given all of this, counsel's performance was neither deficient nor objectively unreasonable.

**B.      Any Alleged Deficient Performance Did Not Prejudice Defendant.**

To show prejudice in the guilty-plea context, Defendant must show that but for the ineffective assistance of counsel, (1) he would have accepted the plea offer;

---

[4]      Although a defendant may enter a no-contest plea without admitting his factual guilt, Defendant was not offered a no-contest plea here, so this option was never available to him.  Nor was Defendant offered an *Alford* plea, which Defendant "does not assert he would have attempted to enter."  (Doc. 206, at 9 n.48.)

(2) the prosecution would not have withdrawn it; (3) this Court would have accepted its terms; and (4) his conviction or sentence, or both, under the plea's terms would have been less severe than under the judgment and sentence that were imposed. *Lafler*, 566 U.S. at 164. On this record, Defendant cannot establish the first or third or these requirements, so he cannot show prejudice.

Defendant would not have accepted the plea offer because would not have admitted as part of any guilty plea that the government's factual allegations were true. As much is clear from Defendant's testimony at the hearing, where the prosecutor referred to a question posed by this Court to a defendant in another case during a plea colloquy, asking that defendant: "And your plea agreement says that you admit that you knowingly committed this crime and you are, in fact, guilty of it. And those things are true?" (Doc. 204, at 48.) Posing a similar hypothetical question to Defendant here, the prosecutor asked him: "Had Judge Crabtree asked you at a plea hearing, would you have been able to say you were guilty of the crime and that those things were true?" (*Id*. at 49.) Defendant replied, "No, ma'am." (*Id*.)

Defendant's response to the prosecutor's question forecloses any claim of prejudice. By this response, Defendant made clear that he would not have entered a guilty plea to Count 3, which would have required him to admit that he was

guilty of the acts described in Count 3.  Had this Court asked him if he was guilty of the crime and acts alleged in Count 3, he would have said "no."  Accordingly, he would not have accepted the government's offer, which he could have done only by entering a guilty plea, which necessarily would have required him to admit the acts described in Count 3, which he said he would not have done.  *See Allen*, 24 F.3d at 1183 (stating "a defendant who makes a counseled and voluntary guilty plea *admits* both *the acts described in the indictment* and the legal consequences of those acts" (emphasis added)); *Brown*, 164 F.3d at 521 (explaining an "unconditional plea *admit[s] all material allegations already contained in the [ ] indictment*" (emphasis added)); *Kelsey*, 15 F.3d at 153 ("A plea of guilty *is the equivalent of admitting all material facts alleged in the charge*." (emphasis added)).  Critically, Defendant acknowledges in his post-hearing brief that "he would have been unable to enter a guilty plea if this Court had required him to personally admit he was, in in fact, guilty of the crime and that the government's factual allegations were true."  (Doc. 206, at 17 (internal quotation marks and alterations omitted).)

Nor does Defendant establish that this Court would have accepted the plea—for two reasons.  First, as Defendant made clear in his testimony, even though he was willing to agree that the government had sufficient evidence to prove him

guilty on Count 3, he would have nonetheless denied his factual and legal guilt on Count 3.  (Doc. 204, at 48-49.)  Upon receiving this denial at any plea hearing, this Court would have had to construe such denial as a refusal to enter a guilty plea, which would have triggered this Court's duty to enter a not guilty plea.  *See* Fed. R. Crim. P. 11(a)(4) ("If a defendant refuses to enter a plea . . . the court must enter a plea of not guilty.").  Thus, this Court probably would not have accepted his guilty plea—and, necessarily, the terms of the plea offer—because the central term of the plea offer was that Defendant enter a guilty plea.

Second, Defendant has not established that, even if he had entered a guilty plea, this Court would have agreed to be bound by the plea offer, including its 10-year term.  Only this Court can know if it would have agreed to be so bound, and Defendant cannot presume to know what this Court would have done.  So unless and until this Court states that it would have agreed to be bound by the plea offer after giving due consideration to the Guidelines, *see* n.2, *supra*, Defendant cannot establish prejudice.

In sum, Defendant fails to show prejudice.  He would not have entered a guilty plea to the plea offer because doing so would have required him to admit his factual and legal guilt on Count 3, and he was unwilling to make these admissions.  And, had he attempted to enter a guilty plea without making these admissions, this

Court would have been required to reject his attempted guilty plea and enter a not guilty plea on his behalf.  Finally, this record is silent on the issue of whether this Court would have agreed to be bound by the plea offer; therefore, Defendant's claim of prejudice is foreclosed unless and until this Court states that it would have agreed to be so bound.

## IV.   Remedy

Defendant asserts he is "entitled to relief" on his claim but he does not specify the remedy to which he claims to be entitled.  (Doc. 206, at 19.)   If this Court finds Defendant entitled to relief on his claim, then as a remedy this Court should order the government to reoffer the plea subject to this Court's discretionary decision to reject it—but no more.

In *Lafler*, the Court instructed that "Sixth Amendment remedies should be tailored to the injury suffered from the constitutional violation" and "neutralize the taint" of any such violation without "grant[ing] a windfall to the defendant or needlessly squander[ing] the considerable resources the States properly invested in the criminal prosecution."  566 U.S. at 170 (internal quotation marks omitted; alterations added).  When a Sixth Amendment deprivation causes a defendant to reject "an offer . . .  for a guilty plea to a count or counts less serious than the ones for which a defendant was convicted" at trial, "resentencing alone [based on the

convictions at trial] will not be full redress for the constitutional injury." *Id*. at 171. "In these circumstances, the proper exercise of discretion to remedy the constitutional injury may be to require the prosecution to reoffer the plea proposal," permitting the judge to "exercise discretion in deciding whether to vacate the conviction from trial and accept the plea or leave the conviction undisturbed." *Id*.

Here, the only appropriately tailored remedy that would fully neutralize the taint of any alleged violation would be to require the prosecution to reoffer the plea. This remedy would restore Defendant to the position he was in before trial without granting him an undue windfall. This approach would allow a remedy that "does not require the prosecution to incur the expense of conducting a new trial," *id*. at 172, thereby conserving the government's resources. Of course, once the proposal is reoffered, this Court does not have to accept it, but may "then exercise discretion in deciding whether to vacate the conviction from trial and accept the plea or leave the conviction undisturbed." *Id*. at 171. In exercising such discretion, this Court must give due consideration to the advisory Guidelines sentencing range and find that justifiable reasons support acceptance, as the Guidelines and *Freeman* instruct. *See* USSG § 6B1.2(c)(2) & cmt.; *see also supra* n.2 (quoting *Freeman*).

Any other remedy, such as vacating Defendant's convictions and granting him a new trial, or resentencing him to 10 years' imprisonment on his current convictions without requiring him to enter a guilty plea, would grant Defendant an undue windfall and do far more than simply neutralize the alleged taint.  Vacating Defendant's convictions and granting him a new trial would put him in a better position than the one he occupied on the eve of trial because he would get a second bite at the apple [a new trial] without having to admit his guilt, thus giving him the chance to escape without penalty on all the charges in the indictment.

Moreover, resentencing Defendant to 10 years' imprisonment on his current convictions would also grant him an undue windfall.  In this scenario, Defendant would obtain the benefit of the offered *guilty* plea without admitting his guilt or accepting responsibility for his actions, thus depriving the government of the bargained-for consideration (i.e., the admission of guilt) upon which the plea offer was premised.

Thus, if Defendant is entitled to a remedy, the only appropriately tailored remedy that would neutralize any taint from the alleged violation would be to require the government to reoffer the plea, subject to this Court's discretionary decision to reject it.  *See Lafler*, 566 U.S. at 171 (noting, in deciding whether to

accept a reoffered plea, a court may take account of a defendant's earlier expressed

willingness, or unwillingness, to accept responsibility for his or her actions").

## V.      Conclusion

Based on the testimony adduced at the hearing and the pleadings submitted

by the parties, this Court should deny Defendant's claim that he received

ineffective assistance of counsel relating to negotiation of the plea offer.  Counsel

adequately and reasonably advised Defendant about the plea offer.  The record

shows that Defendant was aware of its terms yet decided to reject it because he did

not want to plead guilty or otherwise admit his factual guilt, which a guilty plea

necessarily requires.  Even if counsel's advice was deficient in some respect,

Defendant still cannot prevail on his claim because he cannot show that, but for

receiving the deficient advice, he would have entered a guilty plea and that this

Court would have agreed to be bound by the plea offer.  Finally, if Defendant

prevails on the merits of his motion, he is entitled to a single remedy—to be

reoffered the plea, subject to this Court's discretionary decision to reject it—

because this is the only appropriately tailored remedy that would neutralize the

taint of the alleged deficient advice of counsel.

Respectfully submitted,

DUSTON J. SLINKARD
Acting United States Attorney

s/ *James A. Brown*
JAMES A. BROWN
Kan. S. Ct. No. 14254
Assistant United States Attorney
District of Kansas
444 SE Quincy, Room 290
Topeka, KS  66683
Tel.:  (785) 295-2850
FAX: (785) 295-2853
James.Brown2@usdoj.gov

## **CERTIFICATIONS**

I certify that this document was electronically filed on May 27, 2021, with

the Clerk of the Court by using the ECF system, which will send a copy of the

Notice of Docket to all interested ECF system participants as of the time of the

filing, including to counsel of record for Defendant.

s/ *James A. Brown*
Assistant United States Attorney