# In the United States District Court
# For the District of Kansas

**United States of America,**
    Plaintiff,

v.                                   **Case No. 13-cr-40057-DDC-1**

**Jonathan Kearn,**
    Defendant.

## Petitioner's Reply

We make two points, and note our agreement with the government concerning the proper remedy.

### 1. Mr. Kearn's counsel performed deficiently.

The government doesn't dispute that Mr. Kearn was entitled to the effective assistance of counsel during plea negotiations[1], or that his counsel bore the responsibility to inform him of the advantages or disadvantages of a plea agreement.[2] Instead, the government defends counsel's performance on the facts.[3] But as the hearing evidence demonstrated, counsel's six-minute[4] discussion of the government's plea offer was constitutionally deficient.

---

[1] *Lafler v. Cooper*, 566 U.S. 156, 162 (2012).
[2] *Libretti v. United States*, 516 U.S. 29, 50 (1995). Mr. Bell identified three "irreducible minimums any competent counsel is going to employ" during the plea process: (1) spending sufficient time with the client, (2) explaining the law accurately, and (3) explaining the pros and cons of the offered plea agreement. Doc. 204 at 67-68.
[3] *Compare* Doc. 207 at 4 (asserting that Mr. Kearn was "adequately advised by counsel") *with* Doc. 204 at 45 (Q: Did Mr. Francis counsel you to accept the plea offer? A: No. Q: Did you weigh the pros and cons of that plea offer with Mr. Francis? A: No.).
[4] Doc. 204 at 43.

### 1.1   Counsel's knowledge concerning the factual basis.

Mr. Kearn's counsel, Michael Francis, has participated in nine guilty pleas in federal court.[5] None of those pleas were pursuant to a Rule 11(c)(1)(C) agreement.[6] In all of those pleas, Mr. Francis affirmatively supplied the factual basis in the plea petition, because he believed the law to require that approach.[7] He advised all his federal clients consistently with that belief,[8] including Mr. Kearn.[9] The hearing evidence demonstrates that Mr. Francis was unaware of outstanding Tenth Circuit precedent establishing that defendants are not responsible for establishing the factual basis for the plea agreement.[10]

---

[5] Doc. 204 at 16, 24.
[6] *See* Petitioner's Exh 2-10.
[7] Doc. 204 at 24-25.
[8] Doc 204 at 30-31. Mr. Francis also supplied an affidavit in which he explained that he would advise clients that during a guilty plea hearing, either (1) the client must state the factual basis, (2) the judge will ask the client whether an offense is stated, or (3) the prosecutor will present a factual basis, and the Court will ask whether the client agrees with that factual basis. Doc. 204 at 28. Mr. Francis conceded in his testimony that his affidavit included his practice in both state and federal courts, and that the rules in state court are different. Doc. 204 at 30. Mr. Francis's testimony clarified that it was his practice to advise federal clients that they would need to state a factual basis. Doc. 204 at 30 (Q: "[B]ecause your practice in federal court was to have the client admit the facts surround[ing?] the offense in the plea petition, that it's likely you would have given consistent advice to any federal client?" A: "I believe that's true because I – it was my understanding that we were going to fill out a petition to enter a plea in those cases."). Thus, the second and third options listed in Mr. Francis's affidavit are not relevant here.
[9] Doc. 204 at 44-45.
[10] *United States v. Landeros-Lopez*, 615 F.3d 1260, 1263–64 (10th Cir. 2010) (noting that "nothing in Rule 11(b)(3) restricts a district court's consideration of a factual basis to its plea colloquy with the defendant alone"; and agreeing that, "when read in combination with the prosecutor's statements and the plea colloquy, the PSR provide[d] a sufficient factual basis" for the defendant's plea; indicating that although the district court couldn't have relied on the facts in the PSR to initially *accept* the defendant's guilty plea—because the PSR wasn't prepared until later—a sufficient factual basis nevertheless existed by the time the district court entered judgment on that plea, thereby rendering any initial Rule 11(b)(3) error harmless if such error indeed occurred); *United States v. Moran*, 452 F.3d 1167, 1171 (10th Cir. 2006) (noting that "[t]he factual basis for the plea need not come solely from the defendant's statements at the plea hearing"); *see* Petitioner's Exh. 11 at 31

**1.2   Counsel's knowledge concerning (c)(1)(C) agreements.**

The hearing evidence disclosed that Mr. Francis does not know what a (c)(1)(C) plea agreement is.[11] When asked to explain the ten-year "binding plea" offered in this case, Mr. Francis replied that Mr. Kearn would plead guilty to one count, and two others would be dismissed.[12] As to the ten-year sentence, Mr. Francis testified:[13]

---

(Court approves a factual basis providing that the "parties agree the Government could present the following facts constituting the offense at trial"); Doc. 204 at 60 ("[I]n order to go around that – that hurdle or go over it, I'll point out that the language in the plea agreement says you're not saying that you know this, you're saying that the government has evidence to prove it.").

[11] The government also says that Mr. Kearn knew the nature of the agreement, because it was referred to as a (c)(1)(C) at the *Lafler/Frye* hearing. Doc. 207 at 10. But as Mr. Bell pointed out, "without explaining the particular mechanics of how [a binding plea] constrains the court and what the defendant's options are, if the court does not agree to be so constrained, then the term [(c)(1)(C)] has almost no meaning."

[12] *See* Doc. 204 at 37. That, of course, describes a Rule 11(c)(1)(A) agreement, where the government agrees to "not bring, or will move to dismiss, other charges". Mr. Francis's familiarity with a 11(c)(1)(A) agreement is not surprising, as that is the only kind of agreement his clients have ever entered in federal court.

[13] Doc. 204 at 38. The government says that we provided no record evidence that Mr. Francis believed that Mr. Kearn's sentencing exposure would depend on the guidelines if the Court accepted the binding plea agreement. Doc. 207 at 8. That's wrong; Mr. Francis's discussion of "looking at the schedule" and "if you don't have 'x' number offenses" was a reference to the federal sentencing guidelines. *Id.*

> Q. How did you know that Mr. Kearn was going to receive a 10-year sentence?
>
> A. Well, I don't know if it was actually going to be 10 years other than by looking at the schedule of -- if you don't have "x" number offenses and you plead to this offense, then I believe this is what it was. Either that or else Mr. Slinkard had told me that that was what it was going to be. I don't have an independent recollection at this time.

When asked whether he was aware of an enforcement mechanism in the plea agreement concerning the ten-year sentence, Mr. Francis replied, "No, I'm not, because a judge doesn't have to go along with the plea agreement."[14]

The government seizes on this last phrase to argue that Mr. Francis's advice was correct, because a district court is not bound to impose the sentence proposed in a (c)(1)(C) plea agreement until it accepts that agreement.[15] But the context of Mr. Francis's testimony makes clear that he believed a ten-year sentence had one of two sources: the sentencing guidelines, or because "Mr. Slinkard had told me that that was what it was going to be."[16] Glaringly absent from Mr. Francis's advice was the feature of (c)(1)(C) agreements that makes them "incredibly popular"[17] with clients:

---

[14] Doc. 204 at 38.
[15] Doc. 207 at 9.
[16] Doc. 204 at 38.
[17] Doc 204 at 61.

certainty of outcome.[18] Mr. Francis did not know, and did not explain to Mr. Kearn, that (c)(1)(C) plea agreements guarantee that the client will either receive the bargained-for sentence, or can withdraw the plea if the Court does not impose that sentence. With a (c)(1)(C) agreement, Mr. Kearn would never have been subject to the uncertainty of the sentencing guidelines (or the predictions of the prosecutor). Mr. Francis's failure to so advise Mr. Kearn was constitutionally deficient.[19]

### 2. Prejudice.

The government says Mr. Kearn can't show prejudice because: (1) he would never have accepted the government's plea offer, and (2) the Court would not have accepted its terms.[20] We consider those arguments in turn.

As to Mr. Kearn, the government points to his testimony that he could not have said he "was guilty of the crime and that these things were true."[21] The government neglects to mention Mr. Kearn's answer to the very next two questions:[22]

---

[18] *Id.*
[19] *Id.* at 61, 69-70.
[20] Doc. 207 at 18.
[21] Doc. 207 at 19.
[22] *See* Doc. 204 at 49; *See also id.* at 46-47.

> Q. At a guilty plea hearing, could you have said that the government's evidence is sufficient to prove you guilty beyond a reasonable doubt?
> A. Yes, the evidence is strong before the court as it stands now, yeah.
> Q. And after making that statement, would you have been willing to plead guilty?
> A. Yes.

Mr. Kearn's uncontroverted testimony is consistent with the other evidence in this case. As Mr. Bell explained, many clients, particularly in cases that involve sexual offenses, maintain their innocence throughout much of the representation.[23] But a client's initial reservations about a guilty plea routinely evaporate if counsel organizes the plea hearing in a manner that is sensitive to the client's concerns.[24] Crucially, counsel can explain that the law does not require that the client themself establish the factual basis.[25]

That is especially true concerning Mr. Francis's failure to advise Mr. Kearn about the (c)(1)(C) nature of the proposed plea agreement. Mr. Bell testified, "[I]n

---

[23] Doc. 207 at 52.
[24] Doc. 204 at 56.
[25] *Supra* n.8. Contrary to the government's suggestion, we are not confused about Rule 11's requirements. Doc. 207 at 17. We do not propose that "agreeing that the government's stated basis was sufficient for this Court to find [Mr. Kearn] guilty." *Id*. Rather, Mr. Kearn's testimony, and the evidence corroborating it, establishes that had the government laid a sufficient factual basis, Mr. Kearn would have pled guilty.

some of the most difficult cases or negotiations I've had, it's been a (c)(1)(C) that has made all the difference."[26] "[E]specially with a large sentencing exposure and overwhelming evidence, I can't think of a more important thing to convey to a client than the fact that this is a binding plea[.]"[27] Had Mr. Kearn been adequately advised, there is a reasonable probability that he would have pled guilty.

The government concludes with a brief paragraph speculating that the Court would not have agreed to be bound by the plea agreement.[28] The government doesn't affirmatively argue or present any reasoned basis to suggest that the Court would have rejected the plea agreement, and counsel's experience with the Court leads us to conclude that it is very unlikely the Court would have rejected a binding plea agreement to the statutory maximum on Count 3. Again, Mr. Kearn has established a reasonable probability that the result of the proceeding would have been different if he had received constitutionally adequate assistance from his counsel.

### 3. Remedy.

While we disagree with some of the government's underlying reasoning, we concur that the appropriate remedy for this Sixth Amendment violation is to require the government to reoffer the plea agreement.[29] Once Mr. Kearn accepts that offer, the Court would then decide whether to accept the plea agreement. If it

---

[26] Doc. 204 at 61.
[27] Doc. 204 at 63.
[28] Doc. 207 at 21.
[29] Doc 207 at 23.

chooses to do so, it should vacate petitioner's convictions on Counts One and Two, and sentence Mr. Kearn to 120 months on Count 3.

Respectfully submitted,

s/ Lydia Krebs
LYDIA KREBS, #22673
Assistant Federal Public Defender
117 SW 6th Avenue, Suite 200
Topeka, KS 66603-3840
Phone: 785/232-9828
Fax: 785/232-9886
lydia_krebs@fd.org

s/ Kirk Redmond
KIRK C. REDMOND, #18914
First Assistant Federal Public Defender
117 SW 6th Avenue, Suite 200
Topeka, KS 66603-3840
Phone: 785/232-9828
Fax: 785/232-9886
kirk_redmond@fd.org

CERTIFICATE OF SERVICE

      I certify that on 06/11/2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all interested parties.

                s/ Lydia Krebs
                LYDIA KREBS, #22673