FILED
United States Court of Appeals
Tenth Circuit

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

December 2, 2022

Christopher M. Wolpert
Clerk of Court

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellant,

v.

JONATHAN KEARN,

    Defendant - Appellee.

No. 22-3068

---

**Appeal from the United States District Court
for the District of Kansas
(D.C. Nos. 5:19-CV-04032-DDC &
5:13-CR-40057-DDC-1)**

---

Submitted on the briefs[*]:

James A. Brown, Assistant United States Attorney (Duston J. Slinkard, United States Attorney, with him on the briefs), Office of the United States Attorney, District of Kansas, Topeka, KS, for Appellant.

Lydia Krebs, Assistant Federal Public Defender (Melody Brannon, Federal Public Defender, with her on the briefs), Office of the Federal Public Defender, District of Kansas, Wichita, KS, for Appellee.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

_____

Before **TYMKOVICH**, **SEYMOUR**, and **PHILLIPS**, Circuit Judges.
_____

**PHILLIPS**, Circuit Judge.
_____

Under 28 U.S.C. § 2255, district courts have authority to vacate a prisoner's sentence for a constitutional violation and order a resentencing hearing. One type of constitutional violation now warrants our attention: ineffective assistance of counsel in plea discussions as spelled out in *Lafler v. Cooper*, 566 U.S. 156 (2012). For these violations, district courts may require the government to reoffer a rejected plea if the defendant rejected it because of ineffective assistance of counsel. Before turning to *Lafler* and ineffective assistance, however, we must first consider whether we have appellate jurisdiction to hear the government's appeal. We hold that the government's appeal is presently interlocutory. An appealable final judgment will arise only after the district court issues a resentencing order. We thus lack appellate jurisdiction and remand to the district court for proceedings consistent with this opinion.

## BACKGROUND

A federal jury convicted Jonathan Kearn of three charges arising from his photographing and distributing pornographic images of his four-year-old daughter. The district court sentenced Kearn to 292 months' imprisonment, the low end of the advisory range set forth in the U.S. Sentencing Guidelines. Kearn appealed his conviction and sentence, asserting multiple issues, including ineffective assistance of

2

counsel. We affirmed after determining that "the evidence of Kearn's guilt was overwhelming" and doubting that "even absent any of Kearn's alleged errors, the outcome of the trial would have been different." *United States v. Kearn*, 863 F.3d 1299, 1312-13 (10th Cir. 2017). But we left unresolved Kearn's ineffective-assistance claims, treating them as premature and properly raised "in collateral proceedings, not on direct appeal." *Id.* at 1305 n.1 (quoting *United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc)).

Now, Kearn brings his ineffective-assistance-of-counsel claims under 28 U.S.C. § 2255. He may do so to collaterally attack his sentence and seek a resentencing as relief. § 2255(b). Kearn's § 2255 Motion to Vacate, Set Aside, or Correct Sentence asserts that his trial counsel performed deficiently by inadequately explaining the government's plea offer to him.[1] In an amended motion, Kearn alleged that he had declined to accept the plea offer because his trial counsel had advised him that he "would essentially be lying to the Court and thus committing perjury by accepting responsibility for criminal actions he had no part of." J.A. vol. I, at 132-33.

The pretrial record provided the district court little help in assessing Kearn's claims about the plea negotiations. The court knew it conducted a *Lafler*/*Frye*

---

[1] Kearn's § 2255 motion presented fourteen grounds attacking his conviction and sentence. Seven of those pertained to ineffective assistance of counsel. Like the district court, we focus only on the ineffective-assistance claim about trial counsel's guilty-plea advice.

3

hearing[2] shortly before trial, where it heard testimony about the government's rejected plea offer under Federal Rule of Criminal Procedure 11(c)(1)(C). Under this offer, Kearn could have pleaded guilty to the least serious of the child-pornography offenses (Count Three) in exchange for his agreeing to a binding ten-year imprisonment term, with the government dropping the more serious counts (Counts One and Two).[3] At the hearing, Kearn's trial counsel, Michael Francis, stated that he had timely relayed the offer to Kearn.

The court's limited knowledge about the parties' plea negotiations spurred it to ask the parties for additional information to better evaluate Kearn's § 2255 motion. It ordered Kearn's trial counsel to furnish an affidavit addressing the underlying plea discussions and further scheduled an evidentiary hearing. The affidavit addressed trial counsel's general practices in representing criminal defendants. For example, counsel stated that he had "never advised a client" against pleading guilty for fear of

---

[2] *Lafler*, 566 U.S. 156; *Missouri v. Frye*, 566 U.S. 134 (2012). District courts may hold *Lafler*/*Frye* hearings to establish a record about whether defense counsel effectively conveyed a plea offer to defendants. *See Frye*, 566 U.S. at 146 ("The prosecution and the trial courts may adopt some measures to help ensure against late, frivolous, or fabricated claims after a later, less advantageous plea offer has been accepted or after a trial leading to conviction with resulting harsh consequences.").

[3] Count One charged Kearn with production of child pornography by a parent or legal guardian in violation of 18 U.S.C. § 2251(b), (e), carrying a statutory penalty of fifteen to thirty years' imprisonment. Count Two charged Kearn with distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2), (b)(1), carrying a statutory penalty of five to twenty years' imprisonment. And Count Three charged Kearn with possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B), (b)(2), carrying a statutory maximum sentence of ten years' imprisonment.

a perjury charge; that he routinely advised clients of three ways by which they could furnish a factual basis for their guilty pleas;[4] and that he "advise[d] the client that the judge will ask if the client is pleading guilty because he is guilty." J.A. vol. I, at 264-65.

At the later evidentiary hearing, trial counsel testified more specifically about his representation of Kearn. Though he could not recall specifics of his discussions with Kearn about the plea offer, he stated that he "generally would have told" Kearn about the ways courts establish a factual basis for a plea. J.A. vol. II, at 336-37. He also testified on cross-examination that Kearn maintained his innocence throughout the plea discussions and at trial:

> Q. Mr. Francis, did you ever advise Jonathan Kearn not to accept the plea agreement that was offered in this case?
>
> A. No.
>
> Q. Did Mr. Kearn ever tell you that he would accept the plea offer and plead guilty?
>
> A. He told me that he would not plead guilty.
>
> Q. Okay. What was the defendant's attitude about pleading guilty to the charges in this case?
>
> A. That he didn't do it—didn't do what he was charged with.
>
> Q. And, at any point during your representation, did you believe the defendant would plead guilty?

---

[4] Trial counsel declared that he advised clients that they could lay a factual basis (1) by admitting factual guilt in open court, (2) by acknowledging that affidavits and pleadings establish that guilt, or (3) by affirmatively answering prosecutors' questions about the facts of the crime.

5

  A. I didn't think he would.

*Id.* at 340. In addition, trial counsel recalled advising Kearn about the binding nature of Rule 11(c)(1)(C) plea agreements. In doing so, as we understand it, trial counsel expressed uncertainty about whether the proposed plea's ten-year sentence "was actually going to be [ten] years" and noted "a judge doesn't have to go along with the plea agreement." *Id.* at 347.[5]

  Kearn also testified at the evidentiary hearing. He reported that his trial counsel had spoken to him for roughly six minutes about the government's plea offer. Kearn recounted that trial counsel never advised him to accept the plea offer, that trial counsel did not advise him about Federal Rule of Criminal Procedure 11, and that trial counsel did not describe "an option where [Kearn] would not have to personally state a factual basis for the plea." *Id.* at 353-54. He did not recall how trial counsel explained the binding nature of the ten-year sentence. But he testified that had he known that the government could supply the factual basis for the plea, he would have accepted it. On cross-examination, however, Kearn admitted that he would have answered "No" if the judge had asked him if he were factually guilty.

---

[5] From the record, we are uncertain whether trial counsel fully understood how Rule 11(c)(1)(C) pleas work. For instance, we are unsure whether he believed the district court would assess the sentencing guidelines in determining whether to accept the Rule 11(c)(1)(C) plea agreement's ten-year sentence or whether he believed the court could vary from the binding ten-year sentence by consulting the sentencing guidelines. *Id.* ("I don't know if [the sentence] was actually going to be [ten] years other than by looking at the schedule of—if you don't have 'x' number offenses and you plead to this offense, then I believe this is what it was.").

6

The district court later issued a written order granting Kearn's § 2255 motion. It concluded that "the totality of trial counsel's legal advice during the plea process fell below an objective standard of reasonableness." *United States v. Kearn*, 578 F. Supp. 3d 1221, 1232 (D. Kan. 2022). It found that trial counsel failed to explain to Kearn how Rule 11(c)(1)(C) pleas work, overstated Kearn's required participation in laying a factual basis of guilt, and spent insufficient time advising Kearn of the plea offer. *Id.* at 1233-38. The district court also concluded that trial counsel's deficient performance prejudiced Kearn. Characterizing the prejudice inquiry as "a difficult one," the district court sought analytical help from a D.C. Circuit case. *Id.* at 1238-41 (citing *United States v. Knight*, 981 F.3d 1095 (D.C. Cir. 2020)). From that case, the district court reasoned that trial counsel's deficient performance had prejudiced Kearn because "[t]here was a significant and material disparity between the government's plea offer and Mr. Kearn's sentencing exposure if convicted at trial," and because "nothing in the record suggests that Mr. Kearn was so intent on going to trial that no plea deal could convince him to do otherwise." *Id.* at 1241-42. The district court also stated that it would have accepted the Rule 11(c)(1)(C) plea if the parties had presented it to the court. *Id.* at 1243.

The district court acknowledged that Kearn still maintained his innocence even during the evidentiary hearing. *Id.* at 1242-43. But the court sided with Kearn's position that he could have pleaded guilty under a "very narrow circumstance: where the government supplied the factual basis for the guilty plea, and [Kearn] acknowledged that the government had sufficient evidence to convict him at trial."

7

*Id.* at 1241-43. According to the court, "had Mr. Kearn confirmed that the government possessed sufficient evidence to convict him and presented Circuit authority opining that he need not admit his guilt to supply the requisite factual basis—it's far more likely than not that the court would have accepted his guilty plea." *Id.* at 1243.[6]

As to the remedy, the district court required the government "to reoffer the plea proposal." *Id.* at 1244 (quoting *Lafler*, 566 U.S. at 171). Relying on the Supreme Court's guidance in *Lafler*, the district court reasoned that resentencing would "restore the parties to their positions before trial without granting Mr. Kearn an undue windfall." *Id.* It thus required the government to reoffer the plea within twenty days of the order, at which point the court would "set the case for a status conference to discuss Mr. Kearn's decision, and, if necessary, schedule a change of plea hearing." *Id.* at 1244-45.[7]

---

[6] We are uncertain whether the district court believes that Kearn may proceed with a plea under *North Carolina v. Alford*, even over the government's objection. *See* 400 U.S. 25, 37 (1970) ("An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime."); Fed. R. Crim. P. 11(a)(2) (mandating that the court and the government consent to entry of an *Alford* plea). Because we conclude that we presently lack appellate jurisdiction, we do not comment further on this question.

[7] The court also suggested that it could weigh in on whether to vacate Kearn's conviction if Kearn accepted the plea. *Id.* at 1244 ("[T]he court can 'exercise discretion in deciding whether to vacate the conviction from trial and accept the plea or leave the conviction undisturbed.'" (quoting *Lafler*, 566 U.S. at 171)).

The government reoffered the plea deal as ordered. Kearn informed the court that he intended to accept the government's reoffered plea. The district court then scheduled a change-of-plea hearing and resentencing set for the same day.

Soon after reoffering the plea, the government moved the district court to reconsider its grant of Kearn's § 2255 motion. There, the government questioned how Kearn could establish a factual basis at the change-of-plea hearing, noting that "a guilty plea requires an affirmative *admission* by a defendant that he is guilty and knowingly committed the acts constituting the crime charged." J.A. vol. II, at 490. Put differently, according to the government, admitting to the sufficiency of the government's evidence "will not establish a *guilty plea*, as it is neither a guilty plea, nor a makeweight for a guilty plea, and does not provide an adequate basis for this Court to enter a guilty plea." *Id.* at 492.

The district court denied the government's motion. It reasoned that "[t]he guilty plea is an independent act with its own legal consequences separate and apart from the factual basis for the guilty plea." *Id.* at 512. In other words, the district court agreed with Kearn that the government's understanding of guilty pleas "incorrectly 'conflate[d] the issue of whether there's a factual basis for a guilty plea with the issue of whether there's a guilty plea at all." *Id.* at 511. Because "the factual basis for the guilty plea and the guilty plea itself are distinct components of a plea hearing," the court commented, defendants may plead guilty "[n]o matter who supplies the factual basis for the plea and no matter how they supply it." *Id.* at 512. And because Kearn was never properly advised that he could plead guilty and simply admit that the

9

government could prove Count Three, the district court denied the government's reconsideration motion.

Before the district court held its change-of-plea and resentencing hearings, the government appealed the district court's orders. In our court, Kearn moved to dismiss for lack of appellate jurisdiction. We now conclude that we lack jurisdiction and dismiss this appeal.

## DISCUSSION

This case raises important questions about ineffective assistance of counsel in the plea-offer context. But before we get there, we must assure ourselves of our jurisdiction. That's ordinarily an easy task in the habeas context: parties may appeal only final decisions from the district court. 28 U.S.C. § 2255(d) ("An appeal may be taken to the court of appeals from the order entered on the motion as from a final judgment on application for a writ of habeas corpus."); *see also United States v. Harper*, 545 F.3d 1230, 1233 (10th Cir. 2008) (reasoning that final orders in habeas litigation turn on "whether the district court's decision effectively terminated the petitioner's ability to proceed before that court").[8] A final decision is "one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945) (citation omitted). To

---

[8] Equally applicable is final-order jurisdiction under 28 U.S.C. § 1291. *See Stubblefield v. Windsor Cap. Grp.*, 74 F.3d 990, 996 (10th Cir. 1996) (declining jurisdiction under § 1291 when "the litigation was very far from over" and "the district court's decision did not 'terminat[e] all matters as to all parties and causes of action'" (alteration in original) (quoting *Primas v. City of Oklahoma City*, 958 F.2d 1506, 1513 (10th Cir. 1992))).

that end, we routinely declare our jurisdiction over final judgments for § 2255 motions in summary fashion. *E.g.*, *United States v. Boone*, 62 F.3d 323, 324 (10th Cir. 1995) (exercising jurisdiction over denial of § 2255 motion alleging ineffective assistance).

At first glance, the district court's judgment appears final. After all, it resolved Kearn's § 2255 motion—a civil suit—by holding that trial counsel's representation of Kearn was both constitutionally deficient and prejudicial. Indeed, as mentioned, the district court telegraphed to the parties that it would have accepted the Rule 11(c)(1)(C) plea agreement. *Kearn*, 578 F. Supp. 3d at 1243-44. It noted that the plea's ten-year stipulated sentence represented the statutory maximum for Count Three and that "the government believed [ten] years in prison [to be] the 'appropriate disposition.'" *Id.* (quoting Fed. R. Crim. P. 11(c)(1)(C)).

But at second glance, *Andrews v. United States* precludes appellate jurisdiction in this very circumstance—a court's grant of § 2255 relief in the form of a resentencing. In *Andrews*, two codefendants collaterally attacked their original sentences after the district court neglected to afford them the right to allocute. 373 U.S. 334, 336 & n.3 (1963) (citing Fed. R. Crim. P. 32(a) (current version at Fed. R. Crim. P. 32(i)(4)(A)). The pair thus asked the court to vacate their original sentences and resentence them. *Id.* at 336. The district court acknowledged its error and ordered resentencings. *Id.* But before the resentencing hearings occurred, the government appealed the district court's § 2255 resentencing order. *Id.* With the case in that posture (the same as here), the Supreme Court ruled that "the orders were

11

interlocutory, not final." *Id.* at 339. The Court found it "obvious that there could be no final disposition of the § 2255 proceedings until the petitioners were resentenced." *Id.* at 340 (citing *Parr v. United States*, 351 U.S. 513, 518 (1956)).

*Andrews* governs Kearn's case. The Court invoked the "standards of finality" in habeas proceedings "as to the whole subject-matter and as to all the causes of action involved." *Id.* (second quoting *Collins v. Miller*, 252 U.S. 364, 370 (1920)). And the Court deduced that the "basic reason" for finality is "particularly apparent" in habeas resentencing cases:

> Until the petitioners are resentenced, it is impossible to know whether the Government will be able to show any colorable claim of prejudicial error. The District Court may, as before, sentence the petitioners to the same 25 years' imprisonment; it may place one or both of them on probation; it may make some other disposition with respect to their sentences.

*Id.* Under *Andrews*, we will obtain appellate jurisdiction only after Kearn's resentencing. *See also United States v. Cruz*, 774 F.3d 1278, 1284 (10th Cir. 2014) (concluding that time to appeal accrues as of the resentencing order and not as of the earlier § 2255 order); *Wiggins v. United States*, 900 F.3d 618, 621 (8th Cir. 2018); *United States v. Stitt*, 459 F.3d 483, 485 (4th Cir. 2006); *United States v. Martin*, 226 F.3d 1042, 1048 (9th Cir. 2000).

We hold that when district courts resentence defendants based on reoffered pleas under *Lafler*, we lack appellate jurisdiction until the district courts resentence defendants. We express no opinion on our jurisdiction stemming from other potential remedies under *Lafler*.

In arguing otherwise, the government relies on *United States v. Blackwell*, 127 F.3d 947 (10th Cir. 1997). There, we concluded that appellate jurisdiction arose when a district court vacated a § 2255 petitioner's sentence and guilty plea and awarded the defendant (Blackwell) the opportunity to enter a new plea. *Id.* at 950-51. In other words, the district court determined that no conviction or sentence remained against Blackwell and restarted a new criminal proceeding against him. We considered this situation equivalent to a district court's awarding a new trial as § 2255 relief because, in both situations, "nothing more remained to be done" in the § 2255 proceeding. *Id.* at 951 (collecting cases). We further noted that "[a] more final termination of the § 2255 action can scarcely be imagined" because the district court's order was akin to those that "return[ed] [the parties] to Square One." *Id.* (quoting *United States v. Dunham Concrete Prods., Inc.*, 501 F.2d 80, 81-82 (5th Cir. 1974)).

Kearn's case differs from *Blackwell*. In *Blackwell*, the § 2255 proceeding ended when the district court ordered a criminal proceeding to begin anew with Blackwell's entry of a new plea. Kearn has no option to relitigate his guilt. Neither he nor the government can begin Kearn's criminal prosecution again through entry of a new plea and a new criminal trial. Rather, Kearn remains convicted of the child-pornography crimes; his only option therefore is to accept or reject a newly offered ten-year guilty plea. And consistent with our jurisdiction in *Blackwell*, § 2255(b) does not include new trials or plea entries as remedies, furthering the conclusion that the § 2255 proceedings in *Blackwell* ended when the district court

13

vacated the sentence.[9] In contrast, § 2255(b) provides resentencing as a remedy, meaning the district court maintains jurisdiction through the resentencing proceeding. *Andrews*, 373 U.S. at 339-40; *accord Allen*, 613 F.2d at 1250-51. Only after the district court resentences Kearn will the § 2255 proceedings end.

## CONCLUSION

We lack appellate jurisdiction because the district court's orders granting Kearn's § 2255 motion and setting a future resentencing are not final. We therefore dismiss this appeal.[10]

---

[9] Of course, § 2255 includes the *grant* of a new trial as a remedy. It does not sweep in as a civil remedy the entirety of the new criminal trial. *See United States v. Allen*, 613 F.3d 1248, 1251 (3d Cir. 1980) ("All the § 2255 court can do is grant a motion to retry. Once it does that, jurisdiction to retry the defendant shifts to an entirely severable basis. . . . [T]he jurisdictional basis for the trial, grant of a new trial, and retrial is not the same." (citation omitted)).

[10] Because we lack appellate jurisdiction, we also deny as moot Kearn's requests for expedited consideration.

14