1                    UNITED STATES DISTRICT COURT
                        DISTRICT OF KANSAS
2

3
UNITED STATES OF AMERICA,            )
4                                    )    Case No. 13-40057
     Plaintiff,                      )
5                                    )
     v.                              )    Kansas City, Kansas
6                                    )    Date:  1/12/2023
JONATHAN KEARN,                      )
7                                    )
     Defendant.                      )
8    ...................................

9         TRANSCRIPT OF CHANGE OF PLEA and SENTENCING HEARING

10          BEFORE THE HONORABLE DANIEL D. CRABTREE
                UNITED STATES DISTRICT COURT JUDGE
11

12
     APPEARANCES:
13
     For the            Christine Kenney
14   Plaintiff:         Carrie Capwell - KC
                        Office of United States Attorney
15                      290 US Courthouse
                        444 SE Quincy
16                      Topeka, KS 66683

17
     For the            Kirk C. Redmond
18   Defendant:         Lydia Krebs
                        Office of Federal Public Defender
19                      117 SW 6th Avenue
                        Suite 200
20                      Topeka, KS 66603

21

22

23

24     Proceedings recorded by machine shorthand, transcript
     produced by computer-aided transcription.
25

1                          I N D E X

2

3   Change of Plea Hearing                            7

4   Sentencing Hearing                              31

5   Judgment Vacated and Guilty Plea Accepted       40

6   Imposition of Sentence                          41

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1      (Court called to order.)

2         THE COURT:  This is No. 13-40057.  It's captioned the

3 *United States of America against Jonathan Kearn*.  I'll begin by

4 asking for your appearances beginning with the United States.

5         MS. KENNEY:  May it please the court, the United

6 States appears by Christine Kenney, Assistant United States

7 Attorney.  With me at counsel table is the district's criminal

8 chief, Carrie Capwell.

9         THE COURT:  Ladies, good afternoon.

10         And for the defendant, Mr. Kearn.

11         MR. REDMOND:  Hi, good afternoon, Your Honor.

12 Mr. Kearn is present personally and with counsel Lydia Krebs

13 and Kirk Redmond.

14         THE COURT:  All right.  Mr. Redmond, Mr. Krebs and

15 Mr. Kearn, good afternoon.

16         THE DEFENDANT:  Good afternoon, Your Honor.

17         THE COURT:  This is noticed on the docket as a change

18 of plea hearing and sentencing in Mr. Kearn's case.  I feel

19 sort of obliged to provide a bit of context about how we get

20 from -- got to this point today, and certainly you feel free to

21 supplement or correct the way I understand the state of play.

22         Back in November of 2015, the court entered judgment

23 against Mr. Kearn imposing a sentence:  292 months on Count 1,

24 240 months on Count 2, 120 months on Count 3.  This was

25 consistent with the jury verdict in the case, which convicted

1   or found Mr. Kearn guilty on all three counts.  Those sentences

2   were to run concurrently.  The court also imposed a five-year

3   term of supervision under all three counts all running

4   concurrently.  The Tenth Circuit affirmed that judgment, and

5   then post-judgment proceedings began.

6         I have it, on April 25th in Document 173, Mr. Kearn

7   filed an amended motion to vacate, set aside, or correct the

8   sentence invoking Section 2255 of Title 28.

9         About a year later on April 30th of 2020, the court,

10  in a memorandum and order, denied six of the seven claims of

11  ineffective assistance advanced by the amended motion but found

12  his seventh claim also asserting ineffective assistance during

13  plea negotiations required an evidentiary hearing.  So the

14  court set one.

15        At some point in this process -- I'm sorry I didn't

16  write down the date -- the Federal Public Defender's Office

17  entered the case on Mr. Kearn's behalf and participated in --

18  along with the U.S. Attorney's Office in an evidentiary hearing

19  on April 19th of 2021.

20        On January 4th of 2022, the court issued its

21  memorandum and order in Document 210.  This -- in summary, this

22  order found that Mr. Kearn had established a violation of his

23  Sixth Amendment right to effective assistance of counsel, and

24  as a remedy ordered the government to reoffer the plea

25  agreement that it offered pretrial under Rule 11(c)(1)(C).

1          The government then moved the court to reconsider that

2     decision on January 27th.  The court denied the government's

3     motion and set the case for status hearing.

4          At this point, somewhat below the radar, the court

5     understands that -- or at least my radar, the court understands

6     the government complied and re-offered the plea agreement to

7     Mr. Kearn, the one it had offered him pretrial, and Mr. Kearn

8     informed the court he wished to accept it.

9          The government also then appealed the court's decision

10    granting the ineffective assistance claim.  And after a period

11    of briefing, the circuit concluded that it had no jurisdiction

12    to consider that appeal.

13         It seems like a decent place to stop and ask if you

14    think I've made material omissions about sort of the state of

15    play that got us to this or disagree with what I've recited.

16         MS. KENNEY:  Your Honor, I don't think you made any

17    material omissions.  I just want to clarify that the -- there

18    wasn't a plea agreement initially.  The initial offer was a

19    verbal offer to plead but was followed up with a written plea

20    agreement at this court's order.

21         THE COURT:  All right.  Thank you.  I think I did say

22    plea agreement, and I think your version of it is the accurate

23    one.  I apologize.

24         Mr. Redmond, Ms. Krebs?

25         MR. REDMOND:  Nothing from us, Your Honor.

1      THE COURT:  So we're here today, and I'm interested in

2   some input from the parties about how to proceed.  It's a

3   little unusual.  Actually I've been thinking about this a

4   while.  It's a bit of an odd space.  We have a judgment against

5   Mr. Kearn in place, and it feels at least odd to vacate that

6   judgment until Mr. Kearn actually does plead guilty as he's

7   announced he intends to do, if he does.  It also feels a little

8   bit odd to have a full plea colloquy with him without -- with a

9   judgment in place.

10      Left to my own instincts, I would probably conduct

11   most of the plea colloquy and stop before accepting the plea.

12   And then armed with the defendant's intentions, vacate the plea

13   and then accept -- accept it if that's the way things go.  But

14   I've never been here before in this kind of procedural space

15   and don't know if you have, and if you see it differently, just

16   think my idea generally is bad, I'd be interested in your

17   input.

18      Ms. Kenney, do you?

19      MS. KENNEY:  Your Honor, I don't see a better way

20   forward.  I don't think the court can vacate the -- I would

21   suggest the court should not vacate the judgment until --

22   unless and until the defendant actually pleads guilty.

23      THE COURT:  Mr. Redmond, Ms. Krebs?

24      MR. REDMOND:  That's a terrific idea.  Better than

25   none.

1          THE COURT:  All right.  Then let me invite Mr. Kearn

2    and his counsel to come to the lectern so I can question him

3    about his intentions.

4          Good afternoon, Mr. Kearn.

5          THE DEFENDANT:  Good afternoon, Your Honor.

6          THE COURT:  Can I ask you, please, to raise your right

7    hand and accept the oath from the deputy clerk.

8      (Defendant sworn.)

9          THE COURT:  Sir, I'm pretty clear on who you are, but

10   just for purposes of the record, will you say your full name

11   for us?

12         THE DEFENDANT:  Sure.  My name is Jonathan Edward

13   Kearn.

14         THE COURT:  Mr. Kearn, how old are you, sir?

15         THE DEFENDANT:  I'm 47 years old.

16         THE COURT:  Mr. Kearn, the oath you just took, it is a

17   real oath.  Here's what I mean by that.  It -- when you

18   accepted that oath, it obligated you to give truthful answers

19   and only truthful answers to the questions you elect to answer

20   during this hearing.

21         I am supposed to tell you, so I will, that if you were

22   to violate that oath, for instance, give a false answer, it

23   could provide the prosecutor with a reason to charge you with

24   an additional crime such as perjury or something like that.

25   Does all that make sense to you?

1          THE DEFENDANT:  Yes, it does.

2          THE COURT:  Mr. Kearn, I'm informed that you wish to

3  plead guilty to the charge in Count 3 of the indictment against

4  you, which is Document 15 in the case.

5          Mr. Redmond, do I have that right?

6          MR. REDMOND:  You do, Your Honor.

7          THE COURT:  Mr. Kearn, I'm going to ask you 30 minutes

8  worth of questions.  It's a lot.  It seems like a lot, it is,

9  but I know this is an important decision for you to make and I

10  want to make sure you're in the right frame of mind to make

11  it --

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  -- you've thought carefully about it.

14          Let me -- let me ask some questions about your state

15  of mind today.  As you stand there today, are you under the

16  influence of any kind of drug or substance or alcohol or other

17  intoxicant?

18          THE DEFENDANT:  No, Your Honor.

19          THE COURT:  And you can move that microphone up so

20  it's more consistent with your height.

21          THE DEFENDANT:  Thank you.

22          THE COURT:  Are you taking any medication currently?

23          THE DEFENDANT:  I do take one medication for pain.

24          THE COURT:  Okay.  Have you taken that medication over

25  the last few weeks like you're supposed to?

1          THE DEFENDANT:  Yes, I have.

2          THE COURT:  Does that medication interfere or limit

3     your ability to think clearly?

4          THE DEFENDANT:  It does not.

5          THE COURT:  Good.

6          Let me just come at it directly:  Are you thinking

7     clearly today?

8          THE DEFENDANT:  I am thinking clearly, Your Honor.

9          THE COURT:  You understand what you're doing?

10          THE DEFENDANT:  I do.

11          THE COURT:  My questions, at least so far, make sense

12     to you?

13          THE DEFENDANT:  Yes, they do.

14          THE COURT:  Your surroundings, things are kind of

15     where they're supposed to be?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Good.

18          Mr. Kearn, you were charged originally in this case by

19     something called an indictment.  Did you receive a copy of that

20     indictment?

21          THE DEFENDANT:  Yes, I did.

22          THE COURT:  And did you read it carefully?

23          THE DEFENDANT:  I have.

24          THE COURT:  And have you also both -- well, let me ask

25     about it now.  Have you gone over that indictment carefully

1    with your current attorneys?

2           THE DEFENDANT:  Yes.  On Count 1, sir?

3           THE COURT:  I'm actually asking about the whole

4    indictment.

5           THE DEFENDANT:  Yes, we have gone over the entire

6    indictment he together.

7           THE COURT:  And have you had time to ask them any

8    questions you wanted to ask?

9           THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  Did they answer all your questions to your

11   satisfaction?

12          THE DEFENDANT:  Yes, they did.

13          THE COURT:  And has -- I suspect it might seem

14   unnecessary, but nonetheless I'll ask:  Have your lawyers

15   explained to you the evidence the prosecutor says she has and

16   would offer against you at a trial?

17          THE DEFENDANT:  Yes, they have.

18          THE COURT:  Your lawyers also explained what the

19   charges are against you in the indictment?

20          THE DEFENDANT:  Yes.

21          THE COURT:  You have, at least in an ordinary case,

22   the right to a full jury trial to decide whether you're guilty

23   or not guilty.  Do you understand that -- about that -- do you

24   understand that right exists?

25          THE DEFENDANT:  Yes, I do.

Case No. 13-40057  USA v Jonathan Kearn  1.12.23

1   THE COURT:  As I said, I was advised that you and the

2   government had agreed on a plea agreement that's in writing.

3   Am I right about that?

4   THE DEFENDANT:  That is correct.

5   THE COURT:  And have you read that plea agreement

6   carefully?

7   THE DEFENDANT:  Yes, I have.

8   THE COURT:  Have you gone over it carefully with your

9   current attorneys?

10   THE DEFENDANT:  Yes, I have.

11   THE COURT:  And have you asked them everything you

12   wanted to ask about that plea agreement?

13   THE DEFENDANT:  Yes, I have.

14   THE COURT:  How did they do:  Did they answer all your

15   questions satisfactorily?

16   THE DEFENDANT:  They did, yeah.

17   THE COURT:  Have you helped them prepare a second

18   document called a petition to enter plea of guilty?

19   THE DEFENDANT:  That's what we looked at couple days

20   -- yes, I have.

21   THE COURT:  And did you get a chance to read that

22   document very carefully?

23   THE DEFENDANT:  Yes, I have.

24   THE COURT:  And did you have enough time to ask your

25   attorneys anything you wanted to ask about that petition?

1          THE DEFENDANT:  Yes, I have.

2          THE COURT:  And I'll ask again how they did:  Did they

3     answer all those questions satisfactory as well?

4          THE DEFENDANT:  They did.

5          THE COURT:  Do you believe you understand the sentence

6     you face if you do plead guilty today to Count 3 under your

7     plea agreement with the government?

8          THE DEFENDANT:  Yes, Your Honor, I believe I do.

9          THE COURT:  Are you fully satisfied with the way your

10    attorneys have represented you in the post-conviction part of

11    this case?

12          THE DEFENDANT:  My attorneys here today?

13          THE COURT:  Yeah, that's a bad question.

14          THE DEFENDANT:  Okay.

15          THE COURT:  Let me try to improve it.  Are you fully

16    satisfied with the way that Mr. Redmond and Ms. Krebs have

17    represented you in your petition for relief after your appeal

18    affirmed your convictions?

19          THE DEFENDANT:  Your Honor, I am fully satisfied, yes.

20          THE COURT:  Are you fully satisfied with the way those

21    lawyers -- the advice those lawyers -- let me start over.

22          Are you fully satisfied with the way those lawyers

23    have represented you on your petition under Section 2255?

24          THE DEFENDANT:  Yes, I am.

25          THE COURT:  Mr. Kearn, the decision to plead guilty to

1    Count 3 in the indictment, who made that decision?

2            THE DEFENDANT:  That decision was made by myself, Your

3    Honor.

4            THE COURT:  I take it you did it after you closely

5    consulted with your current lawyers?

6            THE DEFENDANT:  That's correct.

7            THE COURT:  Good.

8            Did anyone ever try to force you to plead guilty to

9    that charge in Count 3?

10           THE DEFENDANT:  Never, no, sir.

11           THE COURT:  Has anyone ever tried -- has anyone ever

12   threatened you to get you to plead guilty to any charge?

13           THE DEFENDANT:  No.

14           THE COURT:  Mr. Kearn, I'm going to ask the prosecutor

15   to stand and give an oral summary of the content -- the key

16   provisions in your plea agreement.  You're great about

17   listening to my questions.  I hope you will listen to her

18   summary just as carefully.  Because when she finishes, I'm

19   going to ask you a question or two about what she said.  Make

20   sense to you?

21           THE DEFENDANT:  Yes, it does.

22           THE COURT:  All right.  Ms. Kenney, please.

23           MS. KENNEY:  Thank you, Your Honor.  Is it okay if I

24   do it from counsel table?

25           THE COURT:  It is with me.  If you are concerned about

1    seeing me, you can move around too.

2           MS. KENNEY:  No, it's all right.  It's a little

3    crowded there.

4           Your Honor, the significant terms of the plea

5    agreement between the defendant and the United States

6    Attorney's Office for the District of Kansas are that the

7    defendant agrees to plead guilty to Count 3 of the indictment

8    charging a violation of 18 U.S.C. 2252(a)(4)(B), that is

9    possession and access with intent to view child pornography.

10          Both parties agree the facts constituting the offense

11   to which the defendant is pleading guilty are outlined in

12   paragraph 2.

13          Paragraph 3 sets forth the parties' proposed

14   disposition of this case, which includes 10 years in custody, a

15   five-year term of supervised release, and the $100 mandatory

16   special assessment.

17          Your Honor, I feel a need to note here that this would

18   have predated the JVTA which the court may be used to seeing in

19   these cases.

20          THE COURT:  Thanks for reminding me.

21          MS. KENNEY:  Paragraph 4 notes that the parties are

22   not requesting a guideline sentence.

23          Paragraph 5 sets forth the government's additional

24   agreements to dismiss Counts 1 and 2 of the indictment at the

25   time of sentencing and to not file any additional charges based

1    upon the facts underlying the current indictment.

2            Paragraph 6 sets forth the consequences for any breach

3    of this plea agreement.

4            Paragraph 7 explains that it is solely within the

5    discretion of the court whether to accept the proposed binding

6    plea agreement.

7            And, in paragraph 8, the defendant understands that he

8    will not be allowed to withdraw his plea unless the court

9    rejects the plea agreement.

10           Paragraph 9 sets forth the property that the defendant

11   agrees to forfeit.

12           In paragraph 10, the defendant agrees to pay the

13   special assessment of $100 no later than the date of

14   sentencing.

15           And paragraph 11 explains that, except in the very

16   limited circumstances set forth in that paragraph, the

17   defendant waives his right to appeal and to collaterally attack

18   any part of this case.

19           Paragraph 12 the defendant waives his rights under the

20   Freedom of Information Act.

21           And paragraph 15 sets forth the defendant's

22   obligations to register under the Sex Offender Registration and

23   Notification Act.

24           Your Honor -- Your Honor, the only parties to this

25   agreement are the defendant and the United States Attorney's

1    Office for the District of Kansas.

2         The plea agreement contains all of the terms of the

3    agreement between the parties, and the defendant acknowledges

4    he is pleading guilty because he is guilty.

5         THE COURT:  Thank you, Ms. Kenney.

6         Mr. Kearn, is your understanding of your plea

7    agreement with the United States government in your case

8    consistent with everything the prosecutor just said?

9         THE DEFENDANT:  Can I have just a minute?

10        THE COURT:  Of course.  Just step away from the

11   microphone so we won't overhear you.

12    (Counsel conferring with defendant.)

13        THE COURT:  Do you remember the question?  Let me --

14   let me say it again.  Is your understanding of your plea

15   agreement with the United States government in your case

16   consistent with everything the prosecutor just told me?

17        THE DEFENDANT:  Yes, it's consistent with Ms. Kenney,

18   yes.

19        THE COURT:  So let me just review a few parts of the

20   plea agreement.  I'll tell you where I'm looking, I think it

21   will help put my question in some context.  Let's start on

22   page 1 in paragraph 1.  There it recites that you've agreed to

23   plead guilty to Count 3 of the indictment.  This count accuses

24   you of violating Section 2252(a)(4)(B) of Title 18 of the

25   United States Code.  This is a felony charge that is commonly

1    described as possession and access with intent to view child

2    pornography.  Mr. Kearn, do you understand that is the felony

3    charge you are pleading guilty to today under your plea

4    agreement?

5            THE DEFENDANT:  I do, Your Honor.

6            THE COURT:  The next -- it's actually not the next

7    sentence but on down in paragraph 1 there is this sentence:

8    "By entering into this plea agreement, the defendant admits to

9    knowingly committing the offense" -- and I'm referring to the

10   one I just described -- "and to being guilty on of the offense"

11   -- again referring to the charge in Count 3.  Are both of those

12   statements true and correct?

13           THE DEFENDANT:  That's true, Your Honor.

14           THE COURT:  The rest of paragraph 1 recites the

15   maximum sentence that the law authorizes to impose on you if

16   you do plead guilty to the charge in Count 3.  I want to make

17   sure you understand what that maximum sentence is.  Do you?

18           THE DEFENDANT:  I do.

19           THE COURT:  All right.  That leads us to the factual

20   basis for the guilty plea.  And, Mr. Redmond, I'm going to look

21   to you for some guidance on how Mr. Kearn suggests that he

22   establish the required factual basis for his plea today.

23           MR. REDMOND:  Your Honor, the way that the government

24   did this in the plea agreement was to set out the facts as

25   summarized in the Tenth Circuit's appeal -- direct appeal when

1    Mr. Kearn's appealing his conviction.  We agree that the facts

2    constituting the offense to which the defendant is pleading

3    guilty are contained in paragraph 2.

4              THE COURT:  Is that true, Mr. Kearn?

5              THE DEFENDANT:  That is true.

6              THE COURT:  Ms. Kenney, do you have any concerns or

7    wish to amplify or correct anything about the factual basis?

8              MS. KENNEY:  Your Honor, I don't have concerns about

9    the factual bases in as far as that is for the purpose of the

10   court making a factual finding pursuant to the rule.  I do have

11   concerns, and it's a continuing concern, regarding whether or

12   not the defendant is actually admitting he did the things that

13   are charged in Count 3.  But, in terms of whether or not

14   there's sufficient information in paragraph 2 for the court to

15   make that factual finding, I don't have any problem with that.

16             THE COURT:  Well, let me ask -- I think -- I think I

17   just asked him that.  I had just asked him if he knowingly

18   committed the offense in Count 3 and if he's guilty of it, and

19   he told me he was.

20             MS. KENNEY:  He -- he did, Your Honor.  And I will

21   just -- I'll explain that my concerns have been the same as

22   they were from the hearing that we had almost two years ago

23   now, but also, when the defendant submitted his amended

24   petition to plead guilty, he changed paragraph 4 of the

25   petition, and that raised concerns for me regarding the

1   defendant's admission that he did the things that are charged

2   in Count 3.

3           THE COURT:  You say paragraph 4?

4           MS. KENNEY:  I'm sorry, paragraph 5.

5           THE COURT:  And what is it in paragraph 5 that

6   concerns you?

7           MS. KENNEY:  Well, the court's form and the original

8   petition said that basically I represent to the court that I

9   did the following acts in connection with the charges made

10  against me in Counts 3 -- or I'm not sure it said Count 3.  The

11  amended says, "I represent to the court that the government

12  could prove the following facts beyond a reasonable doubt."

13  It's changed the form, so that caused me some concern.

14          THE COURT:  I don't think I have the current

15  version -- advanced copy of the petition, because the one I

16  have says, "I represent to the court that I did the following

17  acts."

18          MR. REDMOND:  Could I approach, Your Honor?

19          THE COURT:  Give me a moment to catch up with you.

20          So, Ms. Kenney, you are referencing the words right

21  before the Count 3 that's centered at the bottom of page 1?

22          MS. KENNEY:  That's correct.

23          THE COURT:  And the words that trouble you are what?

24          MS. KENNEY:  The words that trouble me, Your Honor, is

25  the change from "I represent to the court that I did the

1    following acts" to "I represent to the court that the

2    government could prove the following facts."

3         THE COURT:  Well, I mean, I recognize there's a change

4    in the form, but so what.  I mean, I don't think the form

5    supersedes the things that our circuit has said are sufficient,

6    Ms. Kenney.  So I'm trying to understand what there is about

7    the changed words in the petition that don't hit the mark the

8    circuit says a pleading defendant has to hit.

9         MS. KENNEY:  The government's concern, Your Honor, is

10   that there is a -- is that the distinction is between a guilty

11   plea and an Alford plea; that's the government's concern.  It's

12   been our concern throughout this that there was never an offer

13   of an Alford plea, and the government wants to make sure that

14   there isn't -- that this doesn't become an Alford plea, quite

15   frankly.  That's our concern.

16        Our position is that the defendant has to admit his

17   legal and factual guilt in order for it to be a guilty plea.  I

18   understand that, you know, the whole fight over the court's

19   finding on the 2255 is that the defense and the government

20   don't see eye to eye on that issue.  That's the government's

21   position, is that there has to be a legal and factual admission

22   to Count 3.

23        THE COURT:  Well, and what -- what -- tell me the

24   authority that says there has to be a factual admission?

25   Because I'm looking at the language from our circuit which

1   specifically says the court doesn't have to just rely on a

2   colloquy with the defendant.  There's a variety of ways to

3   establish factual basis.  It says you can look to answers

4   provided by counsel.  You can look to the content of the

5   presentence report or whatever means is appropriate in a

6   specific case.

7        I do understand that there's a deviation between this

8   case and the one you normally insist in your negotiations, but

9   I don't understand why this -- these words fall short of the

10  alternative that the circuit has blessed.  And before I reject

11  your position -- I don't want to reject it.  I want to make

12  sure I understand it before I decide -- make up my mind about

13  it, and I don't yet understand it.

14       MS. KENNEY:  And I apologize if I'm not being clear,

15  Your Honor.  Our -- and I'm looking at the brief that we filed,

16  I believe it was our appellate brief.  It's a whole page of

17  cases that explain what a guilty plea is and the -- the actual

18  admission to what he did -- what -- what any defendant, but in

19  this case what the defendant did in Count 3, that is a

20  different admission or finding than the court's finding of a

21  factual bases.  We conceded that -- I think we conceded that

22  the court could make a factual finding by a variety of ways:

23  by the defendant admitting to it, by the government presenting

24  the facts, or by the court adopting the facts in the

25  presentence report.  We agree with that.

1          Our position is, though, that in order to distinguish

2     between a guilty plea and an Alford plea, the defendant has to

3     say that he did what he's charged with doing in Count 3.

4     That's the government's position.

5          THE COURT:  And you -- in your view, saying I'm guilty

6     of that offense and I committed that offense, that isn't

7     sufficient?

8          MS. KENNEY:  No, I think that would be sufficient if

9     that's what he said.

10          THE COURT:  He absolutely said it when I asked him --

11     when I summarized the language in his plea agreement.  What

12     Count 3 accused him of doing I asked him, as his plea agreement

13     recites, "Did you commit that offense and are you guilty of

14     that offense?"  And he told me, "Yes."

15          And I -- I'm not asking the government to forfeit any

16     of its positions on appeal, and I understand you want to be

17     careful with that line.  But I'm not sure where the slippage is

18     between what Mr. Kearn has said and what you think he has to

19     say to comply with your list of cases.

20          MS. KENNEY:  And perhaps I didn't hear the court's

21     question that clearly that.

22          THE COURT:  Let me try -- let me ask it again and

23     focus -- we'll all focus on it and see where that leaves us.

24          MS. KENNEY:  Thank you.

25          THE COURT:  Mr. Kearn, I'm back to the first page of

1    your plea agreement, and we talked about this before, but there

2    it recites and summarizes the specific felony crime you're

3    accused of committing.  Do you see that?

4            THE DEFENDANT:  Yes, Your Honor.

5            THE COURT:  And it's commonly called possession and

6    access with intent to view child pornography, which is the

7    short way of referring to a violation of Section 2252(a)(4)(B)

8    of Title 18.  And so I'll ask you directly:  Did you knowingly

9    commit that offense?

10           THE DEFENDANT:  Yes, Your Honor.

11           THE COURT:  And are you guilty of that offense?

12           THE DEFENDANT:  I plead guilty, sir.

13           THE COURT:  Are you guilty of it?

14           THE DEFENDANT:  Yes, Your Honor.

15           THE COURT:  So, Ms. Kenney, with that refocused

16   conversation on those words, I come back to you to see if you

17   have remaining concerns about the sufficiency of the factual

18   basis that I've received.

19           MS. KENNEY:  No, Your Honor, and thank you for

20   indulging me.

21           THE COURT:  Not -- not at all.  I understand the need

22   to be thoughtful about this, so don't apologize.

23           I can't remember, so let me -- let me put my question

24   to you again, Ms. Kenney, and I'll ask you again, Mr. Redmond,

25   so everybody is on the same page with the same question.

1  Ms. Kenney, does the government have concerns about the factual

2  basis that I've heard today from Mr. Kearn?

3           MS. KENNEY:  We do not.

4           THE COURT:  Mr. Redmond, do you have any concerns

5  about the factual basis that you want to amplify or clarify?

6           MR. REDMOND:  No, Your Honor.

7           THE COURT:  Let's go forward then to paragraph 3 on

8  that same page, page 3.  This is called a proposed

9  Rule 11(c)(1)(C) sentence.  Mr. Kearn, Rule 11(c)(1)(C) is, of

10 course, a part of the Federal Rules of Criminal Procedure.

11 It's a specific kind of plea agreement.  My understanding is

12 that your plea agreement is one of those, and so I want to ask

13 this question of you.  Your agreement says that you are -- you

14 and the government are jointly recommending that you receive a

15 sentence of 120 months in a federal prison on your conviction

16 on Count 3 and you will be convicted on it if you do plead

17 guilty.  Do you understand you are facing a 120-month term?

18           THE DEFENDANT:  I do, Your Honor.

19           THE COURT:  And you also are recommending -- you and

20 the government both are recommending that you will serve five

21 years of supervised release as your sentence in this case.  Are

22 you recommending that as your sentence?

23           THE DEFENDANT:  Yes, Your Honor.

24           THE COURT:  And you've talked with your lawyers --

25 these lawyers about what supervised release is, am I right?

1           THE DEFENDANT:  Yes.

2           THE COURT:  Mr. Kearn, would you look over on page 6

3    right at the bottom of the page, and it carries over to page 7.

4    This provision is called waiver of appeal and collateral

5    attack.  I've read this provision carefully.  I understand it

6    to say that you've voluntarily waived, meaning give up your --

7    a substantial part of your right to appeal or later

8    collaterally attack your conviction on Count 3 and your

9    sentence on Count 3.  Let me just confirm:  Have you read this

10   provision carefully?

11          THE DEFENDANT:  Yes, I have, Your Honor.

12          THE COURT:  And do you understand it?

13          THE DEFENDANT:  I do.

14          THE COURT:  All right.  Do you have any unresolved

15   questions at all about this paragraph?

16          THE DEFENDANT:  No, I do not.

17          THE COURT:  And I don't -- I don't want to throw a

18   wrench in our discussion, but there is a provision in

19   paragraph 11, it's over near the end of it on page 7, that

20   talks about what happens with this waiver if the government

21   appeals.  Do you see that?

22          THE DEFENDANT:  I do see it, yes, Your Honor.

23          THE COURT:  And I just want to be sure of this.  Do

24   you understand that if you plead guilty today and receive the

25   sentence you're asking for there is a possibility, a

1    likelihood, a certainty, I don't know which it is, that the

2    government may appeal that decision and that sentence and say

3    that the court was wrong for doing what it did?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  My last question about your plea agreement

6    is on page 9.  It's near the end of paragraph 17, and I'm

7    looking at these words, "This plea agreement embodies each and

8    every term of the agreement between the parties."  Mr. Kearn,

9    my understanding of those words is that they mean this:  All

10   the agreements that you have with the United States government

11   about the subject of your plea in this case are in writing and

12   are contained in this plea agreement.  Is that your

13   understanding of those words?

14             THE DEFENDANT:  Yes, it is.

15             THE COURT:  And is that statement actually a true one?

16             THE DEFENDANT:  That is a true statement.

17             THE COURT:  Mr. Kearn, I have some brief questions

18   about some of the consequences of pleading guilty to Count 3.

19   The short version of it is this:  If you plead guilty to

20   Count 3, there's not going to be a trial at any time of any

21   kind on that charge.  Do you understand that?

22             THE DEFENDANT:  Yes, Your Honor.

23             THE COURT:  If you are -- if you plead guilty and you

24   are convicted on that plea, you stand to lose important civil

25   rights.  These are things like the right to vote, the right to

1  serve on a jury, the right to hold a public office, the right

2  to buy and possess a handgun.  Do you understand you stand to

3  lose those important civil rights and possibly others if you do

4  plead guilty today?

5          THE DEFENDANT:  Yes, I do.

6          THE COURT:  Mr. Kearn, I know you have developed --

7  I've read some of your filings.  I know you've developed a

8  familiarity of some degree with the federal court criminal

9  justice system.  I want to be sure of this:  If you plead

10 guilty today and receive the sentence that your plea agreement

11 requests, the one you recommend, you will be facing 120 months

12 in federal prison.  Do you understand that?

13         THE DEFENDANT:  Yes, I do.

14         THE COURT:  And I take it -- let me be sure you

15 understand that, in the federal criminal justice system, people

16 don't get released early on parole or probation?

17         THE DEFENDANT:  I do understand that, yes.

18         THE COURT:  Mr. Redmond, has Mr. Kearn signed the plea

19 -- original plea agreement and the petition?

20         MR. REDMOND:  We have executed those documents in open

21 court if I can approach.

22         THE COURT:  May I inspect them please?

23         MR. REDMOND:  Thank you.

24         THE COURT:  Mr. Kearn, your attorneys have handed me

25 two documents.  Let's talk about them one at a time.  The first

1    is called a petition to enter a plea of guilty.  And on a

2    page near the end of that petition your name is typed and

3    there's a signature above your name.  Is that your signature

4    there?

5              THE DEFENDANT:  Is it --

6              THE COURT:  Do you want to see it?

7              THE DEFENDANT:  Is it the form I just signed?  I

8    believe it is.

9              THE COURT:  I believe it is, but let's be sure.

10             MS. KREBS:  May I approach?

11             THE COURT:  Yes, of course.

12             THE DEFENDANT:  Here?  Correct.  Yes, Your Honor.

13             THE COURT:  And when you put your signature on that

14   petition, did you intend for it to confirm that all the

15   statements in it are indeed true and correct statements?

16             THE DEFENDANT:  Yes, Your Honor.

17             THE COURT:  A similar situation with the other

18   document your attorney handed up to me.  This document is

19   called plea agreement pursuant to Federal Rule of Criminal

20   Procedure 11(c)(1)(C).  On the last page of that document,

21   page 10, similar situation, your name's typed.  Looks like a

22   signature above it.  Is that your signature there as well?

23             THE DEFENDANT:  Yes, it is, Your Honor.

24             THE COURT:  And when you placed -- did you sign this

25   plea agreement because it is in fact your plea agreement with

1   the government in your case?

2           THE DEFENDANT:  Yes, I did.

3           THE COURT:  And when you placed your signature on this

4   agreement, did you intend for your signature to confirm that

5   you personally agreed to all the promises, terms, conditions

6   and agreements that it recites?

7           THE DEFENDANT:  Yes, I did, Your Honor.

8           THE COURT:  Counsel, let me check with you a final

9   time.  Mr. Redmond, Ms. Krebs, do you know of any reason

10  Mr. Kearn shouldn't plead guilty to the charge in Count 3?

11          MR. REDMOND:  No, Your Honor.

12          MS. KREBS:  No, Your Honor.

13          THE COURT:  Does Mr. Krebs (sic) wish for me to read

14  the formal indictment in this case or does he waive that

15  reading?

16          MR. REDMOND:  He wishes to waive.

17          THE COURT:  Is that correct, Mr. Kearn?

18          THE DEFENDANT:  That's correct, Your Honor.

19          THE COURT:  Ms. Kenney, does the United States know of

20  any reason I should not accept a guilty plea from Mr. Kearn?

21          MS. KENNEY:  Your Honor, I'm not trying to belabor the

22  point.  I'm just not sure when I need to make this statement,

23  so I will make it twice.  The government notes its continuing

24  objection to the grant of the 2255 and the court's acceptance

25  of this plea.  Beyond preserving the record, no.

1          THE COURT:  I understand your position.

2          Mr. Kearn, I'm almost out of questions on this part of

3    our hearing today.  Do you have any questions you want to stop

4    and ask your attorneys or me?

5          THE DEFENDANT:  I do not at this point, sir.

6          THE COURT:  And is it still your desire to plead

7    guilty to Count 3?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  Then I do ask you how do you plead to the

10   charge against you in Count 3 of the indictment, guilty or not

11   guilty?

12         THE DEFENDANT:  Guilty, Your Honor.

13         THE COURT:  All right.  The court finds that the

14   defendant, John Kearn, is a mentally competent person.  The

15   court also finds that his decision to plead guilty to the

16   charge in Count 3 is an informed, intelligent, knowing, and

17   purely voluntary decision that is supported by an actual basis

18   in fact.

19         Counsel, at this time I am going to provisionally --

20   or recognize provisionally that I plan to vacate the existing

21   judgment in the case, Document 123, if I do, in fact, accept

22   the plea agreement during the sentencing phase of the hearing.

23         Counsel, that concludes the work I had intended to do

24   on the plea portion of this hearing.  Can you think of anything

25   that I haven't done that we need to take up before we shut the

1    chapter on it?

2            MR. REDMOND:  Not from Mr. Kearn, Your Honor.

3            THE COURT:  Ms. Kenney?

4            MS. KENNEY:  No, Your Honor.

5            THE COURT:  I will sign the proposed order that

6    Mr. Kearn was kind enough to submit with his petition, and I'll

7    tender that petition and order, counsel's certificate, along

8    with the original plea agreement to the deputy clerk to record.

9            Counsel, I'm ready to move on to the sentencing phase

10   of the case unless you need a moment or have -- think there's

11   something we should do in between.

12           MR. REDMOND:  No, we're ready to proceed, Your Honor.

13           THE COURT:  All right.  Why don't I invite you to

14   return to your counsel table.  There's no need for you to stand

15   up during the entirety of the hearing.  Thank you very much.

16           All right.  This is the sentencing hearing in Case

17   No. 13-40057.  Again, this is -- this case is the *United States*

18   *of America against Jonathan Kearn,* and I trust the appearances

19   remain the same.

20           Ms. Kenney, let me start with the requirement of the

21   Justice for All Act and the -- has notice been provided to the

22   identifiable victims of Mr. Kearn's crime?

23           MS. KENNEY:  To the best of our ability, Your Honor,

24   there -- notice has been provided to the last known addresses

25   of any identifiable victims.  I cannot represent to the court

1   that notice was actually received, but our office did make that

2   attempt.

3            THE COURT:  And that was provided by notice to the

4   victim's mother and legal guardian?

5            MS. KENNEY:  That's correct.  I believe we also

6   reached out to social services just to cover our bases, but --

7   but yes.

8            THE COURT:  All right.  And I -- this is addressed in

9   paragraph 29.  I don't think I need to belabor the point.

10   Thank you for that background.

11            Counsel, I'll identify for you the materials that I

12   received before today and reviewed to prepare for this hearing.

13            I did receive the amended Presentence Investigation

14   Report that was filed on the case's docket as Document 220.

15            I also received and reviewed sentencing

16   recommendations that were prepared by the United States

17   Probation Office.  I don't plan to disclose those or make them

18   a part of the record of this hearing.  I do, though, make the

19   amended Presentence Investigation Report, Document 220, a part

20   of the record of this hearing.

21            Counsel, have I overlooked anything I should have

22   reviewed to prepare for this hearing?

23            MS. KENNEY:  Nothing more known to the government.

24            MR. REDMOND:  I know of none, Your Honor.

25            THE COURT:  All right.  Give me just a moment, I've

1    got my cases commingled; I apologize.

2              I'll address Mr. Kearn's counsel with what's required

3    by Rule 32.  Counsel, I'll ask you:  Are you able to confirm

4    that you both -- that you have both read and discussed the

5    amended presentence report?

6              MR. REDMOND:  We have, Your Honor.

7              THE COURT:  And did the calendar leave you sufficient

8    time to complete that review and to address all of Mr. Kearn's

9    questions about that report and about this hearing?

10             MR. REDMOND:  It did.

11             THE COURT:  From what you could discern at least, did

12   it appear all your answers were satisfactory to Mr. Kearn?

13             MR. REDMOND:  I'm pretty certain that they were.

14             THE COURT:  Does Mr. Kearn wish to make any new

15   objections to the amended presentence report that he's not

16   asserted previously?

17             MR. REDMOND:  No.  Thank you, Your Honor.

18             THE COURT:  Do you know of any legal reason why we

19   should not have your client's sentencing hearing today?

20             MR. REDMOND:  We do not.

21             THE COURT:  Thank you very much.

22             Mr. Kearn, I'm required and I do now address you

23   personally on the subjects in Rule 32.  Are you able to verify

24   that you yourself have personally read the amended presentence

25   report?

1          THE DEFENDANT:  Yes, I have read it.

2          THE COURT:  And are you able to verify what

3    Mr. Redmond told me, that you and he discussed that report?

4          THE DEFENDANT:  That is correct, we did.

5          THE COURT:  Did they answer -- did your attorneys

6    answer all your questions about it?

7          THE DEFENDANT:  Yes, he has.

8          THE COURT:  And did they answer all your questions

9    satisfactorily?

10          THE DEFENDANT:  Yes, he did.

11          THE COURT:  Do you know of any reason we should not

12   have your sentencing hearing today?

13          THE DEFENDANT:  I do not.

14          THE COURT:  Thank you very much.

15          The court notes that there are no objections in the

16   amended presentence report, so I'll turn to any comments that

17   counsel for either party wishes to make.  I don't mean to

18   suggest that you need to, but certainly I want to hear any

19   statements, any sentencing comments you wish to make.  And,

20   naturally, I'll call on Mr. Kearn to hear from him if he wishes

21   to make a statement.

22          Ms. Kenney, does the United States have sentencing

23   commentary or other statements?

24          MS. KENNEY:  We have nothing more to add, Your Honor.

25          THE COURT:  Mr. Redmond?

1          MR. REDMOND:  Only a request for a recommendation for

2     the low security facility at FCI Englewood.  The BOP has

3     arranged that facility to largely take folks accused of crimes

4     like this, or convicted of crimes like this, so it would be for

5     Mr. Kearn's benefit as well while he will continue to be

6     incarcerated.  I have nothing else to say.  And Mr. Kearn will

7     tell the court that he is -- does not intend to exercise his

8     right to allocute.

9          THE COURT:  All right.  Mr. Kearn, I'll just verify

10    that right with you.  Can you confirm what your lawyer told me,

11    do you wish to make a statement today as part of your

12    sentencing hearing in mitigation of the sentence you face?

13          THE DEFENDANT:  I do not, Your Honor.

14          THE COURT:  All right.  Thank you.

15          Give me just a minute, I've got to put my hands on

16    something that I can't put my hands on right at the moment and

17    I can't find it.  I'm unable to find the things that I was

18    referencing.  I'm going to have to reprint those, so give me

19    just a moment.

20          All right.  Counsel, I'll share with you the findings

21    I proposed to make and then share both the tentative sentence

22    and briefly describe the justification for the court's

23    tentative sentence.

24          The court plans to find that the total offense level

25    that applies here is Level 29, and Mr. Kearn's criminal history

1    is the lowest level category one.  These two things combined

2    produce a guideline range of 87 to 108 months.

3          The court notes that the parties jointly recommended

4    sentences above that range at 120 months.  And so when I have

5    completed my overview of the tentative sentence, I'll be

6    interested to hear from the parties for any rationale above

7    that guideline range.

8          The guidelines recommend a term of supervised release.

9    Statutory mandate is at least five years.  The guideline range

10   on supervised release is five years to life.

11         I am planning, consistent with the parties' plea

12   agreement, to impose a 120-month custody sentence and a

13   five-year term of supervised release.  I am not planning to

14   impose a fine.  I agree with the comments in the presentence

15   report that a fine in these circumstances would be unfruitful.

16         Mr. Kearn, you will owe a mandated -- statutorily

17   mandated special assessment.  It's the amount of $100.

18         I don't plan to impose an assessment under the AVAA or

19   the JVTA.

20         Mr. Kearn, as I think you know, I'm required by

21   statute to impose a sentence on you that is both sufficient but

22   not any greater than necessary.  Measuring that standard by the

23   purposes of sentencing that Congress has identified in federal

24   statute in deciding the particular sentence to impose here, I

25   have considered the guideline range recommended by the

 1    Sentencing Guidelines.  I've also considered the parties' plea

 2    agreement under Rule 11(c)(1)(C), and, of course, the content

 3    of the presentence report.

 4         This offense involves a very serious charge and now

 5    conviction:  the defendant taking pornographic pictures of his

 6    young child after he began communicating with an undercover law

 7    enforcement officer in an Internet chat room where people

 8    congregate to trade child pornography.  He then distributed

 9    those photos through the Internet.

10         After considering the various sources of information,

11    the nature and circumstances of this offense, the defendant's

12    history and characteristics, and all the other sentencing

13    factors, including the need to protect the public and enter a

14    sentence that adequately deters Mr. Kearn from additional

15    crimes and the general principles of deterrence, I do plan to

16    impose the jointly recommended sentence of 120 months in

17    principle followed by five years of supervised release.  I do

18    believe this sentence is both sufficient and not any greater

19    than necessary to reflect the serious nature of his criminal

20    offense.  I believe it will promote respect for our laws, and

21    it will provide just punishment for Mr. Kearn.

22         The supervised release term that will follow the

23    custody sentence will allow Mr. Kearn to continue to receive

24    correctional treatment in an effective setting and assist his

25    efforts to reintegrate his life into the lawful community.

1          In terms of the conditions of supervision, they will

2     be the mandatory and special conditions that they are all set

3     out in Part D of Mr. Kearn's presentence report.

4          The nature of this offense and the defendant's history

5     do warrant, and the court's condition will require, him to

6     submit to a sex offender assessment and also to follow the

7     probation office's policies requiring him to abide by computer

8     and Internet monitoring.  This will not impose greater

9     deprivation of liberty than is necessary to protect the public.

10         The nature of the offense Mr. Kearn committed and his

11    history outlined in the presentence report do warrant a

12    condition for no contact with anyone under the age of 18 and no

13    contact with any victim of this offense.  Based on this

14    offense, this condition does not impose a greater deprivation

15    of liberty than is necessary to protect the public.

16         The nature of this history -- the nature of the

17    offense the defendant committed and his history, as outlined in

18    the presentence report, also warrant a condition precluding the

19    defendant from accessing any child pornography or materials --

20    any materials which depict sexually explicit conduct involving

21    a minor.  This condition, the court finds, is directly related

22    to Mr. Kearn in his history -- in his history of poor

23    decision-making involving child pornography.  This condition is

24    necessary, the court concludes, to protect the public from

25    further crimes.

1           The court -- the court also plans to impose a

2    condition that will allow searches of Mr. Kearn's person and

3    property that he controls.  The court believes that this

4    condition is needed and appropriate to assist the probation

5    office in its efforts to verify Mr. Kearn's compliance with his

6    conditions of supervision.  Mr. Kearn has now pleaded guilty to

7    possessing child pornography of one of his children.  To ensure

8    adequate deterrence to criminal conduct in the future and also

9    to protect the public from further crimes, this search

10   condition is appropriate.

11          By federal statute, a felony under Chapters 109A, 110

12   and 117 are defined as crimes of violence.  Thus, Mr. Kearn

13   will remain in custody and his detention will be mandated until

14   he is designated for designation by the Bureau of Prisons.

15          Counsel, that is the proposed finding and the

16   tentative sentence and the conditions that go along with the

17   term of supervision.  I'll hear from you with any objections

18   you wish to make or preserve and also with any commentary you

19   wish to supply based on the disparity between the guideline

20   range and the proposed sentence.

21          Ms. Kenney?

22          MS. KENNEY:  Your Honor, unless the court needs

23   additional comment regarding the disparity, I think it's

24   abundantly clear the distinction between the deal that the

25   defendant is getting with this sentence versus what he would

1   have been facing with the conviction on Count 1 and/or 2.  The

2   government would just -- we have no additional objections.  We

3   would just continue to note our previous objections.

4            THE COURT:  Understood.  And I agree with you, I think

5   the disparity is well-explained by the unusual at least

6   procedural history that leads us to this hearing.

7            Mr. Redmond, does Mr. Kearn have any objections to the

8   court's proposed findings, proposed sentence, or aspects of its

9   justification?

10           MR. REDMOND:  We have nothing further, Your Honor.

11           THE COURT:  All right.  Can I invite Mr. Kearn to come

12   back to the lectern.  I'll formally impose the sentence and

13   conclude the hearing.

14           All right.  Consistent with my earlier outline at the

15   beginning of this hearing, the court does vacate the existing

16   judgment in the case, Document 123.  It does accept Mr. Kearn's

17   guilty plea and now deems him guilty on Count 3 of the

18   indictment.

19           The court also accepts the parties' plea agreement

20   made in -- under Rule 11(c)(1)(C) and determines that the

21   Presentence Investigation Report and the previously stated

22   findings are accurate.  I also find that the presentence report

23   provides an added factual basis for the court to accept

24   Mr. Kearn's guilty plea today.  I do state that the findings in

25   the presentence report are accurate, and I order them

1   incorporated into the following sentence.

2          Under the Sentencing Reform Act of 1984, it is the

3   court's judgement that the defendant Jonathan Kearn be

4   sentenced, and, Mr. Kearn, you are now sentenced to the custody

5   of the Bureau of Prisons for a term lasting 120 months.  This

6   term in prison will be followed by five years of supervised

7   release.

8          Within 72 hours after you're released from custody by

9   the Bureau of Prisons, you must report to the United States

10  Probation Office in the judicial district where you are

11  released.

12          While you're on supervised release, you must comply

13  with the mandatory and standard conditions that this court has

14  adopted and also with the special conditions of supervision as

15  set out in Part D of your presentence report.

16          Mr. Kearn, you are ordered to pay to the United States

17  a special assessment in the amount of $100 to the Crime Victims

18  Fund under 18, United States Code, Section 3013.  Payment of

19  this assessment is due immediately, and you may satisfy the

20  obligation while in the custody of the Bureau of Prisons.

21          No fine is imposed.

22          Both the government and Mr. Kearn are advised of their

23  respective rights to appeal from this sentence and the

24  conviction that produced it.  Any appeal you do take from this

25  sentence is subject to Section 3742 of Title 18 of the United

 1   States Code and also subject to the waiver in the plea

 2   agreement between the parties in the case.

 3        Mr. Kearn, you are advised it is your right to appeal

 4   the conviction and this sentence, but only to the extent you've

 5   not waived that right in your plea agreement.  Whatever right

 6   of appeal you have, you can lose your right to appeal if you

 7   fail to file a timely notice of appeal in the district court.

 8        Under Rule 4(b) of the Federal Rules of Appellate

 9   Procedure, you have 14 days after judgment is entered against

10   you to file a notice of appeal.  If you so request, the clerk

11   of our court will prepare and then immediately file a notice of

12   appeal on your behalf.  If you're unable to pay the costs of

13   taking an appeal, you do have the right to apply for leave to

14   appeal *in forma pauperis*.

15        Mr. Kearn, at the end of this hearing, you'll be

16   remanded yet again to the custody of the United States Marshal

17   Service pending your designation by the Federal Bureau of

18   Prisons.

19        That is the sentence of the court.

20        I do note just some loose ends here.  Remaining now

21   are the complaint, which was used to originally charge

22   Mr. Kearn, and then Counts 2 and 3 of the indictment.

23   Ms. Kenney, what does the government want to do with those --

24   those items?

25        MS. KENNEY:  Your Honor, the government would move to

1   dismiss the complaint.  I'm surprised that I overlooked that at

2   the previous sentencing, so I -- we would move to dismiss the

3   complaint in this case.

4        Subject to the government's continuing objection and

5   pursuant to the plea agreement that the court ordered that we

6   reoffer, the government moves at this time to dismiss Counts 1

7   and 2 of the indictment.

8        THE COURT:  All right.  Any objection to proceeding in

9   that fashion, Mr. Redmond, Ms. Krebs?

10       MR. REDMOND:  No, Your Honor.

11       THE COURT:  All right.  Then the complaint in Counts 1

12  and 2 of the indictment are dismissed subject to the parties'

13  agreement and possible appeal of the action.

14       There is also an -- one last loose end, and that is

15  the plea agreement addresses the forfeiture of a black

16  iPhone 4S, but I don't believe there's a preliminary order of

17  forfeiture on file, and I don't think this phone was previously

18  forfeited during Mr. Kearn's earlier sentence.  What's -- what

19  do the parties want to do with that unresolved matter?

20       MS. KENNEY:  Your Honor, it's -- you're probably

21  right, because the forfeiture kind of got lost in the -- at the

22  end of the trial.  That phone was entered into evidence.  At

23  this point it probably just needs to be either forfeited or

24  destroyed.  I didn't appreciate that there wasn't a preliminary

25  order of forfeiture on file.

1          THE COURT:  Me either.

2          MS. KENNEY:  That's my fault.  If the court would

3     entertain that after the sentencing or allow me to make an oral

4     motion and then follow it up, I have a feeling that the items

5     will be destroyed either way.

6          THE COURT:  Mr. Redmond, what's Mr. Kearn's wish about

7     this?

8          MR. REDMOND:  Could I have just a moment?

9          THE COURT:  Yes, please.

10    (Counsel conferring with defendant.)

11         MR. REDMOND:  Thank you, Your Honor.  After

12    consultation with Mr. Kearn and Ms. Kenney, it's our

13    understanding Customs and Border Patrol took custody of that

14    phone in 2013.  We don't have any objection to a forfeiture

15    thereof.

16         THE COURT:  All right.  Ms. Kenney, if you will

17    provide a proposed order of forfeiture, I guess we'll need

18    preliminary and final, I'll act on them based on counsel's

19    statement during the hearing.

20         MS. KENNEY:  Thank you, Your Honor.  I will follow up

21    on that.

22         THE COURT:  Ms. Kenney, is there anything else from

23    your table we ought to take up before we conclude today's

24    hearings?

25         MS. KENNEY:  No, Your Honor.

1      THE COURT:  Mr. Redmond, Ms. Krebs, anything further?

2      MR. REDMOND:  No, Your Honor.

3      THE COURT:  All right.  Thank you very much.  We'll

4  close the record and be in recess.

5      (Proceedings adjourned.)

6

7

8                         CERTIFICATE

9      I certify that the foregoing is a true and correct

10  transcript from the stenographically reported proceedings in

11  the above-entitled matter.

12      DATE:  January 17, 2023

13
                    /s/Kimberly R. Greiner
14                  KIMBERLY R. GREINER, RMR, CRR, CRC, RDR
                    United States Court Reporter
15

16

17

18

19

20

21

22

23

24

25