CLOSED,APPEAL

# U.S. District Court
## DISTRICT OF KANSAS (Topeka)
## CRIMINAL DOCKET FOR CASE #: 5:13–cr–40057–DDC All Defendants

Case title: USA v. Kearn

 Related  Case:   5:19–cv–04032–DDC
 Magistrate judge case number:  5:13–mj–05042–KGS

Date Filed: 05/29/2013

Date Terminated: 02/02/2023

Assigned to: District Judge Daniel
D. Crabtree

Appeals court case numbers:
15–3121 10CCA, 22–3068 10
CCA

**Defendant (1)**

| | | |
|---|---|---|
| **Jonathan Kearn** | represented by | **Kirk C. Redmond** |
| *23150–031* | | Office of Federal Public Defender – Topeka |
| *BOND* | | 117 SW 6th Avenue, Suite 200 |
| *TERMINATED: 02/02/2023* | | Topeka, KS 66603 |
| *also known as* | | 785–232–9828 |
| Jonathan Edward Kearn | | Alternative Phone: |
| *TERMINATED: 02/02/2023* | | Cell Phone: 7858407514 |
| | | Email: kirk_redmond@fd.org |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Designation: Public Defender or Community* |
| | | *Defender Appointment* |
| | | *Bar Number: 18914* |
| | | *Bar Status: Active* |
| | | |
| | | **Lydia Krebs Albert** |
| | | Federal Public Defender, District of Kansas |
| | | 850 Epic Center |
| | | 301 N. Main |
| | | Wichita, KS 67202 |
| | | 785–232–9828 |
| | | Fax: 785–232–9886 |
| | | Alternative Phone: |
| | | Cell Phone: |
| | | Email: lydia_krebs@fd.org |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

*Designation: Public Defender or Community*
*Defender Appointment*
*Bar Number: 22673*
*Bar Status: Active*

**Matthew B. Works**
Matthew B. Works, PA
425 Kansas
Topeka, KS 66603
785–234–0051
Alternative Phone:
Cell Phone:
Email: worksmatthew@aol.com
 *TERMINATED: 04/10/2014*
*LEAD ATTORNEY*
*Designation: Retained*
*Bar Number: 11215*
*Bar Status: Retired*

**Melody Brannon**
Office of Federal Public Defender – Topeka
117 SW 6th Avenue, Suite 200
Topeka, KS 66603
785 232 9828
Fax: 785–232–9886
Alternative Phone:
Cell Phone: 7854389040
Email: melody_brannon@fd.org
 *TERMINATED: 12/19/2013*
*LEAD ATTORNEY*
*Designation: Public Defender or Community*
*Defender Appointment*
*Bar Number: 17612*
*Bar Status: Active*

**Daniel T. Hansmeier**
Office of Federal Public Defender – KCK
500 State Avenue, Suite 201
Kansas City, KS 66101–2400
913–551–6901
Fax: 913–551–6562
Alternative Phone:
Cell Phone: 217–416–6383
Email: daniel_hansmeier@fd.org
 *TERMINATED: 02/18/2022*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or Community*
*Defender Appointment*
*Bar Number: IL6288086*
*Bar Status: Active*

**Michael E. Francis**

434 SW Topeka Blvd.
Topeka, KS 66603
785–235–3415
Fax: 785–235–8089
Alternative Phone:
Cell Phone: 785–640–8919
Email: mfrancis26@cox.net
 *TERMINATED: 02/18/2022*
*Designation: Retained*
*Bar Number: 08783*
*Bar Status: Active*

**Pending Counts**

18:2252(a)(4)(B) Sexual
exploitation/other abuse of
children (INDICTMENT FILED
5/29/13)
(3)

**Disposition**

Amended Judgment filed 2/2/2023 – Sentenced to
120 months imprisonment, 5 years supervised
release and $100 special assessment fee. Judgment
filed 11/20/2015 (Vacated 2/2/2023) –– Sentenced
to 120 months imprisonment (292 months on Count
1, 240 months on Count 2 and 120 months on
Count 3 to run concurrently) 5 years supervised
release (5 years/count to run concurrently) and
$300 special assessment fee ($100/count).

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**

18:2251(b) Custodial person of a
minor, permitting minor to engage
in sexually explicit conduct to
produce a visual depiction
(INDICTMENT FILED 5/29/13)
(1)

18:2252(a)(2) Receive, distribute
visual depiction involving sexual
exploit of a minor (INDICTMENT
FILED 5/29/13)
(2)

**Disposition**

Amended Judgment filed 2/2/2023 – Dismissed.
Judgment filed 11/20/2015 (Vacated 2/2/2023) ––
Sentenced to 120 months imprisonment (292
months on Count 1, 240 months on Count 2 and
120 months on Count 3 to run concurrently) 5 years
supervised release ( 5 years/count to run
concurrently) and $300 special assessment fee
($100/count).

Amended Judgment filed 2/2/2023 – Dismissed.
Judgment filed 11/20/2015 (Vacated 2/2/2023) ––
Sentenced to 120 months imprisonment (292
months on Count 1, 240 months on Count 2 and
120 months on Count 3 to run concurrently) 5 years
supervised release ( 5 years/count to run
concurrently) and $300 special assessment fee
($100/count).

**Highest Offense Level
(Terminated)**

Felony

**Complaints**                                           **Disposition**

18:2251(b) – Knowingly permitted
minor to engage in sexually
explicit conduct for the purpose of
producing a visual depiction that
would be transported in interstate
or foreign commerce
(COMPLAINT FILED 5/10/2013)

---

**Plaintiff**

**USA**                              represented by   **Annette Gurney**
                                                      Office of United States Attorney – Wichita
                                                      301 North Main Street, Suite 1200
                                                      Wichita, KS 67202–4812
                                                      316–269–6481
                                                      Fax: 316–269–6484
                                                      Alternative Phone:
                                                      Cell Phone: 316–250–8393
                                                      Email: annette.gurney@usdoj.gov
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*
                                                      *Bar Number: 11602*
                                                      *Bar Status: Active*

                                                      **Christine E. Kenney**
                                                      Office of United States Attorney – Topeka
                                                      290 U.S. Courthouse
                                                      444 S.E. Quincy
                                                      Topeka, KS 66683–3592
                                                      785–295–2854
                                                      Fax: 785–295–2853
                                                      Alternative Phone:
                                                      Cell Phone: 785–217–4479
                                                      Email: christine.kenney@usdoj.gov
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*
                                                      *Designation: Retained*
                                                      *Bar Number: 13542*
                                                      *Bar Status: Active*

                                                      **James A. Brown**
                                                      Office of United States Attorney – Topeka
                                                      290 US Courthouse
                                                      444 SE Quincy
                                                      Topeka, KS 66683–3592
                                                      785–295–2850
                                                      Fax: 785–295–2853
                                                      Alternative Phone:
                                                      Cell Phone: 785–312–0710

Email: james.brown2@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*
*Bar Number: 14254*
*Bar Status: Active*

Email All Attorneys
Email All Attorneys and Additional Recipients

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 05/10/2013 | 1 | | SEALED COMPLAINT filed as to Jonathan Kearn. (Sealed User MS) [5:13−mj−05042−KGS] (Entered: 05/10/2013) |
| 05/10/2013 | 2 | | AFFIDAVIT in Support of 1 Complaint (Sealed) by USA as to Jonathan Kearn. (Sealed User MS) [5:13−mj−05042−KGS] (Entered: 05/10/2013) |
| 05/10/2013 | 3 | | MOTION to Seal by USA as to Jonathan Kearn. (Sealed User MS) [5:13−mj−05042−KGS] (Entered: 05/10/2013) |
| 05/10/2013 | 4 | | ORDER granting 3 Motion to Seal as to Jonathan Kearn. Signed by Magistrate Judge K. Gary Sebelius on 5/10/2013. (Sealed User MS) [5:13−mj−05042−KGS] (Entered: 05/10/2013) |
| 05/13/2013 | 5 | | NOTICE OF HEARING as to Defendant Jonathan Kearn. <span style="color:red">THIS IS AN OFFICIAL NOTICE FOR THIS HEARING.</span> (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Initial Appearance set for 5/13/2013 at 10:30 AM in Courtroom 470 (KGS) before Magistrate Judge K. Gary Sebelius. (sg)[5:13−mj−05042−KGS] (Entered: 05/13/2013) |
| 05/13/2013 | 6 | | MOTION to Unseal by USA as to Jonathan Kearn. (ms) [5:13−mj−05042−KGS] (Entered: 05/13/2013) |
| 05/13/2013 | 7 | | ORDER granting 6 Motion to Unseal as to Jonathan Kearn. Signed by Magistrate Judge K. Gary Sebelius on 5/13/2013. (ms) [5:13−mj−05042−KGS] (Entered: 05/13/2013) |
| 05/13/2013 | 8 | | ENTRY OF APPEARANCE by attorney Melody J. Evans appearing for Jonathan Kearn. (Evans, Melody)[5:13−mj−05042−KGS] (Entered: 05/13/2013) |
| 05/13/2013 | 9 | | NOTICE OF HEARING as to Defendant Jonathan Kearn. <span style="color:red">THIS IS AN OFFICIAL NOTICE FOR THIS HEARING.</span> (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Detention Hearing set for 5/16/2013 at 10:30 AM in Courtroom 470 (KGS) before Magistrate Judge K. Gary Sebelius. Preliminary Hearing set for 5/16/2013 at 10:30 AM in Courtroom 470 (KGS) before Magistrate Judge K. Gary Sebelius. (sg)[5:13−mj−05042−KGS] (Entered: 05/13/2013) |
| 05/13/2013 | | | ARREST of Jonathan Kearn on 5/10/2013. (ms) [5:13−mj−05042−KGS] (Entered: 05/14/2013) |
| 05/13/2013 | 10 | | MINUTE ENTRY for RULE 5 proceedings held 5/13/2013 before Magistrate Judge K. Gary Sebelius as to Jonathan Kearn. Defendant is remanded to the |

| | | | |
|---|---|---|---|
| | | | temporary custody of the United States Marshal's Service pending further proceedings in this matter. (Network @11:20 AM) (ms) [5:13−mj−05042−KGS] (Entered: 05/14/2013) |
| 05/13/2013 | 11 | | FINANCIAL AFFIDAVIT by Jonathan Kearn. (ms) [5:13−mj−05042−KGS] (Entered: 05/14/2013) |
| 05/13/2013 | 12 | | ARREST WARRANT returned executed on 5/10/2013 as to Jonathan Kearn. (ms)[5:13−mj−05042−KGS] (Entered: 05/14/2013) |
| 05/16/2013 | 13 | | MINUTE ENTRY for PRELIMINARY and DETENTION proceedings held 5/16/2013 before Magistrate Judge K. Gary Sebelius as to Jonathan Kearn. The court, after hearing the proffers of the parties and arguments of counsel, finds that the government's motion for pretrial detention is DENIED. (Network @ 11:01 AM) (ms) [5:13−mj−05042−KGS] (Entered: 05/16/2013) |
| 05/16/2013 | 14 | | ORDER SETTING CONDITIONS OF RELEASE as to Jonathan Kearn − Personal Recognizance or Unsecured Bond. Signed by Magistrate Judge K. Gary Sebelius on 5/16/2013. (ms) [5:13−mj−05042−KGS] (Entered: 05/16/2013) |
| 05/29/2013 | 15 | | INDICTMENT filed against defendant Jonathan Kearn (1) as to counts 1−3. Warrant issued. (mb) (Entered: 05/30/2013) |
| 05/31/2013 | 16 | | NOTICE OF HEARING as to Defendant Jonathan Kearn.  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)Initial Appearance and Arraignment set for 6/6/2013 at 09:30 AM in Courtroom 470 (KGS) before Magistrate Judge K. Gary Sebelius. (bt) (Entered: 05/31/2013) |
| 06/06/2013 | 17 | | MINUTE ENTRY of RULE 5/INITIAL APPEARANCE, ARRAIGNMENT & DISCOVERY proceedings held 6/6/13 before Magistrate Judge K. Gary Sebelius as to defendant Jonathan Kearn (1): Attorney Andy McGowan present for Melody Evans. Court enters a not guilty plea as to Counts 1−3 of indictment for defendant (Defendant remains silent). Defendant remains on conditional release. (Tape #NETWORK @ 10:41 a.m.) (mb) (Entered: 06/06/2013) |
| 06/06/2013 | 18 | | PRETRIAL ORDER NO. 1 ENTERED: The deadline for filing a motion to toll speedy trial is 21 days after arraignment. Signed by Magistrate Judge K. Gary Sebelius on 6/6/2013. (mb) (Entered: 06/07/2013) |
| 06/06/2013 | 19 | | ARREST WARRANT returned executed on 6/6/13 as to defendant Jonathan Kearn (mb) (Entered: 06/07/2013) |
| 06/25/2013 | 20 | | Joint Motion to Toll Speedy Trial by Jonathan Kearn. (Evans, Melody) (Entered: 06/25/2013) |
| 06/26/2013 | 21 | | ORDER granting 20 Motion to toll speedy trial as to defendant Jonathan Kearn (1). Signed by District Judge Julie A. Robinson on 6/26/2013. (mb) (Entered: 06/26/2013) |
| 06/26/2013 | 22 | | PRETRIAL ORDER NO. 2 ENTERED: Estimated trial time 5−7 days. Final Pretrial Conference set for 7/26/2013 at 01:00 PM & Jury Trial set for 8/6/2013 at 09:00 AM all hearings to be held in Courtroom 401 (JAR) before District Judge Julie A. Robinson. Signed by District Judge Julie A. Robinson |

| | | | |
|---|---|---|---|
| | | | on 6/26/2013. (mb) (Entered: 06/26/2013) |
| 07/08/2013 | 23 | | MOTION for Extension of Time Pretrial Deadlines by Jonathan Kearn. (Evans, Melody) Corrected motion event on 7/9/2013. (mb) (Entered: 07/08/2013) |
| 07/10/2013 | 24 | | ORDER granting 23 Motion for Extension of pretrial deadlines as to defendant Jonathan Kearn (1): See order for details. Signed by District Judge Julie A. Robinson on 7/9/2013. (mb) (Entered: 07/10/2013) |
| 07/10/2013 | 25 | | NOTICE OF CANCELLED HEARING: Pretrial on 7/26/13 at 1:00 p.m. as to Defendant Jonathan Kearn cancelled. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (pp) (Entered: 07/10/2013) |
| 07/10/2013 | 26 | | NOTICE OF HEARING as to Defendant Jonathan Kearn.  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Pretrial Conference set for 7/26/2013 at 01:30 PM in Courtroom 401 (JAR) before District Judge Julie A. Robinson. (pp) (Entered: 07/10/2013) |
| 07/11/2013 | 27 | | Second MOTION To Extend Speedy Trial *(Joint)* by Jonathan Kearn. (Evans, Melody) (Entered: 07/11/2013) |
| 07/17/2013 | 28 | | ORDER granting 27 Motion to toll speedy trial as to defendant Jonathan Kearn (1). Final Pretrial Conference set for 1:30 PM on 10/7/13 & Jury trial set for 9:00 AM on 10/21/13 both hearings to be held in Courtroom 401 (JAR) before District Judge Julie A. Robinson. Signed by District Judge Julie A. Robinson on 7/16/2013. (mb) (Entered: 07/17/2013) |
| 07/17/2013 | 29 | | NOTICE OF HEARING as to Defendant Jonathan Kearn.  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Final Pretrial Conference set for 10/7/2013 at 01:30 PM & Jury Trial set for 10/21/2013 at 09:00 AM both hearings to be held in Courtroom 401 (JAR) before District Judge Julie A. Robinson. (mb) (Entered: 07/17/2013) |
| 07/23/2013 | 30 | | AMENDED ORDER as to defendant Jonathan Kearn: Granting 27 Second Motion to Toll Speedy Trial filed by defendant Jonathan Kearn. Signed by District Judge Julie A. Robinson on 7/23/2013. (mb) (Entered: 07/23/2013) |
| 08/22/2013 | 31 | | NOTICE OF CANCELLED HEARING: Final Pretrial Conference on October 7, 2013 as to Defendant Jonathan Kearn cancelled. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (Robinson, Julie) (Entered: 08/22/2013) |
| 09/05/2013 | 32 | | THIRD MOTION to Toll Speedy Trial by Jonathan Kearn. (Evans, Melody) (Entered: 09/05/2013) |
| 09/13/2013 | 33 | | ORDER granting 32 Third Motion to Toll Speedy Trial filed by Jonathan Kearn as to Jonathan Kearn. Jury Trial set for 1/7/2014 at 09:00 AM in Courtroom 401 (JAR) before District Judge Julie A. Robinson. Signed by District Judge Julie A. Robinson on 9/13/2013. (bt) (Entered: 09/13/2013) |
| 10/29/2013 | 34 | | MOTION to Reschedule Pretrial Deadlines by Jonathan Kearn. (Evans, Melody) (Entered: 10/29/2013) |

| 10/29/2013 | 35 | | CONSENT & ORDER Modifying Conditions of Release as to defendant Jonathan Kearn (1). Signed by Magistrate Judge K. Gary Sebelius on 10/29/2013. (mb) (Entered: 10/29/2013) |
|---|---|---|---|
| 10/30/2013 | 36 | | ORDER granting 34 Motion to Reschedule Pretrial Deadlines as to Jonathan Kearn (1). See Order for details. Signed by District Judge Julie A. Robinson on 10/30/2013. (bt) (Entered: 10/30/2013) |
| 12/11/2013 | 37 | | NOTICE OF HEARING as to Defendant Jonathan Kearn.  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Status Conference set for 12/16/2013 at 09:00 AM in Courtroom 401 (JAR) before District Judge Julie A. Robinson. (bw) (Entered: 12/11/2013) |
| 12/16/2013 | 38 | | MINUTE ENTRY for proceedings held before District Judge Julie A. Robinson: STATUS CONFERENCE as to Jonathan Kearn held on 12/16/2013. (Court Reporter Harris.) (bw) (Entered: 12/17/2013) |
| 12/17/2013 | 39 | | NOTICE OF HEARING as to Defendant Jonathan Kearn.  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Status Conference set for 12/20/2013 at 09:00 AM in Courtroom 401 (JAR) before District Judge Julie A. Robinson. (bw) (Entered: 12/17/2013) |
| 12/18/2013 | 40 | | ENTRY OF APPEARANCE by attorney Matthew B. Works appearing for Jonathan Kearn. (Works, Matthew) (Entered: 12/18/2013) |
| 12/19/2013 | 41 | | NOTICE OF WITHDRAWAL OF APPEARANCE by attorney Melody Brannon Evans. (Evans, Melody) (Entered: 12/19/2013) |
| 12/20/2013 | 42 | | NOTICE OF HEARING as to Defendant Jonathan Kearn.  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Status Conference rescheduled for 12/20/2013 at 01:30 PM (moved from the 9:00 a.m. docket) in Courtroom 401 (JAR) before District Judge Julie A. Robinson. (bw) (Entered: 12/20/2013) |
| 12/20/2013 | 43 | | MINUTE ENTRY for proceedings held before District Judge Julie A. Robinson: STATUS CONFERENCE as to Jonathan Kearn held on 12/20/2013. Status conference scheduled for 1/27/2014. (Court Reporter Harris.) (bw) (Entered: 12/20/2013) |
| 12/31/2013 | 44 | | MOTION to Continue jury trial by Jonathan Kearn. (Works, Matthew) (Entered: 12/31/2013) |
| 01/02/2014 | 45 | | ORDER as to Jonathan Kearn re 44 Motion to Continue. Status Conference set for 1/27/2014 at 01:30 PM in Courtroom 401 (JAR) before District Judge Julie A. Robinson. Signed by District Judge Julie A. Robinson on 1/2/2014. (bw) (Entered: 01/02/2014) |
| 01/27/2014 | 46 | | MINUTE ENTRY for proceedings held before District Judge Julie A. Robinson: STATUS CONFERENCE as to Jonathan Kearn held on 1/27/2014. Motions due by 3/31/2014. Response deadline 4/14/2014. Jury Trial set for 6/19/2014 at 09:00 AM in Courtroom 401 (JAR) before District Judge Julie A. Robinson. Motion Hearing set for 4/28/2014 at 09:00 AM in Courtroom 401 (JAR) before District Judge Julie A. Robinson. (Court Reporter Harris.) (bw) |

| | | | |
|---|---|---|---|
| | | | (Entered: 01/28/2014) |
| 01/28/2014 | 47 | | GENERAL ORDER OF DISCOVERY & SCHEDULING estimated trial time 4–5 days as to Jonathan Kearn. Motions due by 3/31/2014. Response deadline 4/14/2014 Motion Hearing set for 4/28/2014 at 09:00 AM in Courtroom 401 (JAR) before District Judge Julie A. Robinson. Jury Trial set for 6/19/2014 at 09:00 AM in Courtroom 401 (JAR) before District Judge Julie A. Robinson. Signed by District Judge Julie A. Robinson on 1/28/2014. (bw) (Entered: 01/28/2014) |
| 02/19/2014 | 48 | | MOTION to Modify Conditions of Release by Jonathan Kearn. (Works, Matthew) (Entered: 02/19/2014) |
| 03/31/2014 | 49 | | MINUTE ENTRY as to Jonathan Kearn. STATUS CONFERENCE by telephone held on 3/31/2014 before Magistrate Judge K. Gary Sebelius. Defendant moves to withdraw the 48 Motion to Modify Conditions of Release as to Jonathan Kearn – GRANTED. The Court notes that a modification to Defendant's Conditions of Pretrial Release is not necessary in this instance as Defendant is authorized to have contact with his three older children (C.K., L.K. and C.K.) as long as there is direct supervision of such contact by a responsible adult. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (sg) (Entered: 03/31/2014) |
| 04/10/2014 | 50 | | WITHDRAWAL OF COUNSEL by Mark Works and ENTRY OF APPEARANCE OF SUBSTITUTED COUNSEL. (Francis, Michael) (Entered: 04/10/2014) |
| 04/10/2014 | 51 | | NOTICE OF HEARING as to Defendant Jonathan Kearn.  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Status Conference rescheduled for 4/14/2014 at 09:00 AM in Courtroom 401 (JAR) before District Judge Julie A. Robinson. (bw) (Entered: 04/10/2014) |
| 04/10/2014 | 52 | | MOTION to Continue Jury Trial by Jonathan Kearn. (Francis, Michael) (Entered: 04/10/2014) |
| 04/11/2014 | 53 | | WAIVER of Appearance by Jonathan Kearn. (Francis, Michael) (Entered: 04/11/2014) |
| 04/14/2014 | 54 | | MINUTE ENTRY for proceedings held before District Judge Julie A. Robinson: STATUS CONFERENCE as to Jonathan Kearn held on 4/14/2014 granting 52 Motion to Continue. Time excluded from 6/19/2014 until 8/26/2014 as to Jonathan Kearn (1). Motions due by 6/23/2014. Response deadline 6/30/2014. Motion Hearing set for 7/14/2014 at 09:00 AM in Courtroom 401 (JAR) before District Judge Julie A. Robinson. Jury Trial set for 8/26/2014 at 09:00 AM in Courtroom 401 (JAR) before District Judge Julie A. Robinson. (Court Reporter Sherry Harris.) (bw) (Entered: 04/14/2014) |
| 04/24/2014 | 55 | | ORDER for disposal of seized property as to defendant Jonathan Kearn. Signed by District Judge Julie A. Robinson on 4/24/14. (mb) (Entered: 04/24/2014) |
| 05/15/2014 | 56 | | MINUTE ORDER REASSIGNING CASE: Case reassigned to District Judge Daniel D. Crabtree for all further proceedings. District Judge Julie A. Robinson no longer assigned to case Signed by deputy clerk on 5/15/14. (This |

| | | | |
|---|---|---|---|
| | | | is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (daw) (Entered: 05/15/2014) |
| 06/19/2014 | 57 | | SECOND MOTION to Continue Jury Trial by Jonathan Kearn. (Francis, Michael) (Entered: 06/19/2014) |
| 07/09/2014 | 58 | | ORDER as to Jonathan Kearn – The Motion Hearing set for 7/14/2014 is CONTINUED TO 7/15/2014 at 01:30 PM in Courtroom 401 (DDC) before District Judge Daniel D. Crabtree. The 57 Second MOTION to Continue Jury Trial filed by Jonathan Kearn will be heard at the 7/15/2014 motion hearing. Signed by District Judge Daniel D. Crabtree on 07/09/2014. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (mig) (Entered: 07/09/2014) |
| 07/15/2014 | 59 | | MINUTE ENTRY for proceedings held before District Judge Daniel D. Crabtree: Motion hearing held on 7/15/2014. Defendant's Second Motion to Continue 57 is granted. Motions due by 10/10/2014. Response due 10/17/2014. Motion Hearing set for 11/17/2014 at 01:30 PM in Courtroom 401 (DDC) before District Judge Daniel D. Crabtree. Jury Trial set for 12/9/2014 at 09:00 AM in Courtroom 401 (DDC) before District Judge Daniel D. Crabtree. Excludable time designated from 07/15/2014 until 12/09/2014 as to Jonathan Kearn. The defendant remains on bond. (Court Reporter Sherry Harris.) (mig) (Entered: 07/15/2014) |
| 10/09/2014 | 60 | | MOTION to Inspect Computers and other Property Seized by Jonathan Kearn. (Francis, Michael) (Entered: 10/09/2014) |
| 10/14/2014 | 61 | | NOTICE OF HEARING ON MOTION as to Jonathan Kearn.  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING re 60 Motion to Inspect Computers and other Property Seized: Motion Hearing set for 10/20/2014 at 01:30 PM in Courtroom 401 (DDC) before District Judge Daniel D. Crabtree. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(mig) (Entered: 10/14/2014) |
| 10/14/2014 | 62 | | NOTICE of Government's Expert Witnesses and Request for Defense Expert Witness Disclosure by USA as to Jonathan Kearn. (Kenney, Christine) (Entered: 10/14/2014) |
| 10/16/2014 | 63 | | RESPONSE TO MOTION by USA as to Jonathan Kearn re 60 Motion to Inspect Computers and other Property Seized. (Kenney, Christine) (Entered: 10/16/2014) |
| 10/20/2014 | 64 | | MINUTE ENTRY for proceedings held before District Judge Daniel D. Crabtree: STATUS CONFERENCE as to Jonathan Kearn held on 10/20/2014. (Court Reporter Sherry Harris.) (mig) (Entered: 10/20/2014) |
| 11/05/2014 | 65 | | RULE 404(b) NOTICE by USA as to Jonathan Kearn. (Kenney, Christine) (Entered: 11/05/2014) |
| 11/12/2014 | 66 | | ORDER as to defendant Jonathan Kearn: Motions In Limine due 12/1/14; Response due 12/4/14; In Limine Conference set for 12/5/2014 at 02:30 PM and Jury Trial set for 12/9/2014 at 09:00 AM in Courtroom 401 (DDC) before District Judge Daniel D. Crabtree. See order for further deadlines. Signed by District Judge Daniel D. Crabtree on 11/12/14. (msb) (Entered: 11/12/2014) |
| 11/17/2014 | 67 | | |

| | | | |
|---|---|---|---|
| | | | MINUTE ENTRY for proceedings held before District Judge Daniel D. Crabtree: MOTION HEARING as to Jonathan Kearn held on 11/17/2014. Status Conference set for 12/15/2014 at 09:00 AM in Courtroom 401 (DDC) before District Judge Daniel D. Crabtree. (Court Reporter Sherry Harris.) (mig) (Entered: 11/17/2014) |
| 12/15/2014 | 68 | | MINUTE ENTRY for proceedings held before District Judge Daniel D. Crabtree: STATUS CONFERENCE as to Jonathan Kearn held on 12/15/2014. Jury Trial set for 1/27/2015 at 09:00 AM in Courtroom 401 (DDC) before District Judge Daniel D. Crabtree. Designated time, 12/15/2014 until 1/27/2015, excludable as to Jonathan Kearn. (Court Reporter Sherry Harris.) (mig) (Entered: 12/15/2014) |
| 12/18/2014 | 69 | | AMENDED DOCUMENT re 62 Notice of Government's Expert Witnesses and Request for Defense Expert Witness Disclosure by USA as to Jonathan. Kearn (Kenney, Christine) (Entered: 12/18/2014) |
| 01/06/2015 | 70 | | PRETRIAL ORDER NO. 2 ENTERED: Estimated trial time 4 days. Limine conference set for 1/23/2015 at 2:30 PM and Jury Trial set for 1/27/2015 at 09:00 AM in Courtroom 401 (DDC) before District Judge Daniel D. Crabtree. See Order for further deadlines. Signed by District Judge Daniel D. Crabtree on 1/6/15. (msb) (Entered: 01/06/2015) |
| 01/07/2015 | 71 | | NOTICE OF HEARING as to Defendant Jonathan Kearn.  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING. In Limine Conference set for 1/23/2015 at 02:30 PM in Courtroom 401 (DDC) before District Judge Daniel D. Crabtree. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (mig) (Entered: 01/07/2015) |
| 01/08/2015 | 72 | | NOTICE of Intent to Use Federal Rules of Evidence 902 Certifications by USA as to Jonathan Kearn. (Kenney, Christine) (Entered: 01/08/2015) |
| 01/15/2015 | 73 | | EXHIBIT LIST by USA as to Jonathan Kearn. (Attachments: # 1 Attachment A)(Kenney, Christine) (Entered: 01/15/2015) |
| 01/15/2015 | 74 | | WITNESS LIST by USA as to Jonathan Kearn. (Attachments: # 1 Attachment A)(Kenney, Christine) (Entered: 01/15/2015) |
| 01/15/2015 | 75 | | AMENDED NOTICE of Intent to Use Federal Rules of Evidence 902 Certifications by USA as to Jonathan Kearn. (Kenney, Christine) (Entered: 01/15/2015) |
| 01/15/2015 | 76 | | PROPOSED JURY INSTRUCTIONS by USA as to Jonathan Kearn. (Attachments: # 1 Attachment A)(Kenney, Christine) (Entered: 01/15/2015) |
| 01/19/2015 | 77 | | THIRD MOTION to Continue Jury Trial by Jonathan Kearn. (Francis, Michael) (Entered: 01/19/2015) |
| 01/20/2015 | 78 | | NOTICE OF HEARING ON MOTION as to Jonathan Kearn.  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING re 77 Third Motion to Continue Jury Trial: Motion Hearing set for 1/21/2015 at 10:00 AM in Courtroom 401 (DDC) before District Judge Daniel D. Crabtree. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(mig) (Entered: 01/20/2015) |
| 01/20/2015 | 79 | | |

| | | |
|---|---|---|
| | | RESPONSE IN OPPOSITION by USA as to Jonathan Kearn re 77 Third Motion to Continue Jury Trial. (Attachments: # 1 Attachment A, # 2 Attachment B, # 3 Attachment C, # 4 Attachment D) (Kenney, Christine) (Entered: 01/20/2015) |
| 01/21/2015 | 80 | MINUTE ENTRY for proceedings held before District Judge Daniel D. Crabtree: MOTION HEARING as to Jonathan Kearn held on 1/21/2015. Jury Trial continued and reset for 5/5/2015 at 09:00 AM in Courtroom 401 (DDC) before District Judge Daniel D. Crabtree. Designated time, 1/19/2015 until 5/5/2015, excludable as to Jonathan Kearn. Defendant remains on release. (Court Reporter Sherry Harris.) (Attachments: # 1 Exhibit Sheet) (mig) Modified on 1/21/2015 (mig). (Entered: 01/21/2015) |
| 01/22/2015 | 81 | ORDER granting 77 Defendant's Third Motion to Continue Trial as to Jonathan Kearn (1). Signed by District Judge Daniel D. Crabtree on 1/22/2015. (mig) (Entered: 01/22/2015) |
| 04/03/2015 | 82 | AMENDED PRETRIAL ORDER NO. 2 ENTERED: Estimated trial time 4 days. In Limine Conference set for 5/1/2015 at 02:30 PM in Courtroom 401 (DDC) and Jury Trial set for 5/5/2015 at 09:00 AM in Courtroom 401 (DDC) before District Judge Daniel D. Crabtree. Signed by District Judge Daniel D. Crabtree on 4/3/15. (msb) (Entered: 04/03/2015) |
| 04/23/2015 | 83 | WITNESS LIST by Jonathan Kearn. (Attachments: # 1 Witness Sheet)(Francis, Michael) (Entered: 04/23/2015) |
| 04/23/2015 | 84 | EXHIBIT LIST by Jonathan Kearn. (Attachments: # 1 Exhibit Sheet)(Francis, Michael) (Entered: 04/23/2015) |
| 04/23/2015 | 85 | EXHIBIT LIST by USA as to Jonathan Kearn. (Attachments: # 1 Attachment A)(Kenney, Christine) (Entered: 04/23/2015) |
| 04/27/2015 | 86 | MOTION in Limine to Restrict Opinion Testimony of Defense Computer Examiner by USA as to Jonathan Kearn. (Attachments: # 1 Attachment A)(Kenney, Christine) (Entered: 04/27/2015) |
| 05/01/2015 | 87 | MINUTE ENTRY for proceedings held before District Judge Daniel D. Crabtree: IN LIMINE CONFERENCE as to Jonathan Kearn held on 5/1/2015. (Court Reporter Sherry Harris.) (mig) (Entered: 05/01/2015) |
| 05/04/2015 | 88 | EXHIBIT LIST by USA as to Jonathan Kearn. (Attachments: # 1 Attachment A)(Kenney, Christine) (Entered: 05/04/2015) |
| 05/05/2015 | 89 | MINUTE ENTRY for proceedings held before District Judge Daniel D. Crabtree: JURY TRIAL as to Jonathan Kearn held on 5/5/2015. Voir Dire and jury selection held. Plaintiff begins presentation of evidence. Trial to resume on 5/6/2015 at 9:00 a.m. (Court Reporter Sherry Harris.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (mig) (Entered: 05/05/2015) |
| 05/06/2015 | 90 | MINUTE ENTRY for proceedings held before District Judge Daniel D. Crabtree: JURY TRIAL as to Jonathan Kearn held on 5/6/2015. Plaintiff continues presentation of evidence. Plaintiff rests. Trial to resume on 5/7/2015. (Court Reporter Sherry Harris.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (mig) (Entered: 05/06/2015) |

| 05/07/2015 | 91 | | COURT'S PROPOSED JURY INSTRUCTIONS FOR USE AT INSTRUCTION CONFERENCE. (cmh) (Entered: 05/07/2015) |
|---|---|---|---|
| 05/07/2015 | 92 | | MINUTE ENTRY for proceedings held before District Judge Daniel D. Crabtree: JURY TRIAL as to Jonathan Kearn held on 5/7/2015. Defendant presents evidence. Defendant rests. Instruction conference held. The Court instructs the jury. Closing arguments made. Trial to resume on 5/8/2015. (Court Reporter Sherry Harris.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (mig) (Entered: 05/07/2015) |
| 05/08/2015 | 93 | | ORDER as to Jonathan Kearn. Signed by District Judge Daniel D. Crabtree on 05/08/2015. (mig) (Entered: 05/08/2015) |
| 05/08/2015 | 94 | | MINUTE ENTRY for proceedings held before District Judge Daniel D. Crabtree: JURY TRIAL as to Jonathan Kearn held on 5/8/2015. Verdict returned. Sentencing set for 8/10/2015 at 01:30 PM in Courtroom 401 (DDC) before District Judge Daniel D. Crabtree. (Court Reporter Sherry Harris.) (Attachments: # 1 Witness Sheet, # 2 Exhibit List, # 3 Exhibit List) (mig) (Entered: 05/08/2015) |
| 05/08/2015 | 95 | | JURY INSTRUCTIONS as to Jonathan Kearn. (mig) (Entered: 05/08/2015) |
| 05/08/2015 | 96 | | Jury question filed as to Jonathan Kearn. (mig) (Entered: 05/08/2015) |
| 05/08/2015 | 97 | | JURY VERDICT as to Jonathan Kearn (1) Guilty on Count 1,2,3. (mig) (Entered: 05/08/2015) |
| 05/13/2015 | 98 | | RECEIPT – trial exhibits returned to defendant's counsel via regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (mig) (Entered: 05/13/2015) |
| 05/14/2015 | 99 | | MOTION for Acquittal by Jonathan Kearn. (Francis, Michael) (Entered: 05/14/2015) |
| 05/18/2015 | 100 | | PRO SE NOTICE OF APPEAL TO 10CCA by defendant Jonathan Kearn. (Attachment: # 1 Mailing Envelope)(msb) (Entered: 05/18/2015) |
| 05/18/2015 | | | APPEAL FEE STATUS: Filing fee not paid. Re: Notice of Appeal 100 on behalf of Defendant Jonathan Kearn (THIS IS A TEXT ONLY ENTRY–NO DOCUMENT IS ASSOCIATED WITH THIS TRANSACTION) (msb) (Entered: 05/18/2015) |
| 05/18/2015 | 101 | | PRELIMINARY RECORD ON APPEAL transmitted to 10CCA as to defendant Jonathan Kearn's 100 Notice of Appeal. (Attachment: # 1 Preliminary Record on Appeal)(msb) (Entered: 05/18/2015) |
| 05/19/2015 | 102 | | APPEAL DOCKETED in 10CCA on 5/19/15 and assigned Appeal No. 15–3121: Re 100 Notice of Appeal filed by defendant Jonathan Kearn. (msb) (Entered: 05/19/2015) |
| 05/20/2015 | 103 | | RECEIPT – trial exhibits returned to government's counsel. (mig) (Entered: 05/20/2015) |
| 05/27/2015 | 104 | | RESPONSE IN OPPOSITION by USA as to Jonathan Kearn re 99 Motion for Acquittal. (Kenney, Christine) (Entered: 05/27/2015) |
| 06/25/2015 | 105 | | |

| | | | |
|---|---|---|---|
| | | | MEMORANDUM AND ORDER denying <u>99</u> Motion for Acquittal as to Jonathan Kearn (1). Signed by District Judge Daniel D. Crabtree on 06/25/2015. (mig) (Entered: 06/25/2015) |
| 07/17/2015 | <u>106</u> | | PRESENTENCE INVESTIGATION REPORT as to Jonathan Kearn.<br><br>**(NOTE: Access to this document is restricted to the USA and this defendant.)**<br><br>(USPO) (Entered: 07/17/2015) |
| 08/04/2015 | <u>107</u> | | SENTENCING MEMORANDUM by USA as to Jonathan Kearn. (Kenney, Christine) (Entered: 08/04/2015) |
| 08/05/2015 | <u>108</u> | | MOTION to Continue Sentencing by Jonathan Kearn. (Francis, Michael) (Entered: 08/05/2015) |
| 08/05/2015 | <u>109</u> | | ORDER granting <u>108</u> Motion to Continue as to Jonathan Kearn (1.) Sentencing set for 8/10/2015 is CONTINUED to 8/26/2015 at 01:30 PM in Courtroom 401 (DDC) before District Judge Daniel D. Crabtree. Signed by District Judge Daniel D. Crabtree on 08/05/2015. (mig) (Entered: 08/05/2015) |
| 08/21/2015 | <u>110</u> | | SECOND MOTION to Continue Sentencing by Jonathan Kearn. (Francis, Michael) (Entered: 08/21/2015) |
| 08/21/2015 | <u>111</u> | | ORDER granting <u>110</u> Motion to Continue as to Jonathan Kearn (1). Sentencing set for 8/26/2015 is CONTINUED to 10/13/2015 at 09:00 AM in Courtroom 401 (DDC) before District Judge Daniel D. Crabtree. Signed by District Judge Daniel D. Crabtree on 08/21/2015. (mig) (Entered: 08/21/2015) |
| 09/04/2015 | <u>112</u> | | ORDER of 10CCA as to defendant Jonathan Kearn: Abatement of appeal is continued. Re <u>100</u> Notice of Appeal. (Appeal No. 15−3121) (msb) (Entered: 09/04/2015) |
| 10/08/2015 | <u>113</u> | | SENTENCING MEMORANDUM by Jonathan Kearn. (Francis, Michael) (Entered: 10/08/2015) |
| 10/13/2015 | <u>114</u> | | MOTION to Withdraw Michael E. Francis as Attorney by Jonathan Kearn. (Francis, Michael) (Entered: 10/13/2015) |
| 10/13/2015 | <u>115</u> | | MINUTE ENTRY for proceedings held before District Judge Daniel D. Crabtree: DOCKET CALL as to Jonathan Kearn held on 10/13/2015. Defendant remanded to custody. (Court Reporter Sherry Harris.) (mig) (Entered: 10/13/2015) |
| 10/13/2015 | 116 | | NOTICE OF CONTINUED HEARING: Sentencing as to Defendant Jonathan Kearn set for 10/13/2015 is CONTINUED to 11/16/2015 at 1:30 p.m. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (mig) (Entered: 10/13/2015) |
| 10/13/2015 | 117 | | NOTICE OF HEARING as to Defendant Jonathan Kearn.  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Sentencing set for 11/16/2015 at 01:30 PM in Topeka Courtroom 401 (DDC) before District Judge Daniel D. Crabtree. (mig) (Entered: 10/13/2015) |

| 10/13/2015 | 118 | | AFFIDAVIT of FINANCIAL STATUS by Jonathan Kearn. (hs) (Entered: 10/13/2015) |
|---|---|---|---|
| 10/16/2015 | 119 | | NOTICE OF HEARING ON MOTION as to Jonathan Kearn.  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING re 114 Motion to Withdraw Michael E. Francis as Attorney: (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Motion Hearing set for 10/21/2015 at 02:30 PM in Topeka Courtroom 401 (DDC) before District Judge Daniel D. Crabtree. (mig) (Entered: 10/16/2015) |
| 10/20/2015 | 120 | | NOTICE OF RESET HEARING ON MOTION [NEW TIME] as to Jonathan Kearn re 114 Motion to Withdraw Michael E. Francis as Attorney. Motion Hearing set for 10/21/2015 at 02:00 PM in Topeka Courtroom 401 (DDC) before District Judge Daniel D. Crabtree. (mig) (Entered: 10/20/2015) |
| 10/21/2015 | 121 | | MINUTE ENTRY for proceedings held before District Judge Daniel D. Crabtree: MOTION HEARING as to Jonathan Kearn held on 10/21/2015. Defendant remanded to custody. (Court Reporter Sherry Harris.) (mig) (Entered: 10/23/2015) |
| 11/16/2015 | 122 | | MINUTE ENTRY for proceedings held before District Judge Daniel D. Crabtree: SENTENCING HEARING held on 11/16/2015 as to defendant Jonathan Kearn. (Court Reporter Sherry Harris.) (Attachments: # 1 Witness Sheet) (mig) (Entered: 11/16/2015) |
| 11/20/2015 | 123 | | (VACATED per 235 ) –– JUDGMENT as to defendant Jonathan Kearn (1) – Sentenced to 292 months imprisonment on count 1, 240 months imprisonment on count 2 and 120 months imprisonment on count 3, to be served concurrently to each other; 5 years supervised release on each count, to be served concurrently; $300 total assessment. Signed by District Judge Daniel D. Crabtree on 11/20/15. (msb) Modified on 2/2/2023, see the Amended Judgment filed at 236 . (mam) (Entered: 11/20/2015) |
| 11/20/2015 | 124 | | (VACATED per 235 ) –– STATEMENT OF REASONS as to defendant Jonathan Kearn re 123 Judgment.<br><br>(NOTE: Access to this document is restricted to the USA and this defendant.)<br><br>(msb) Modified on 2/2/2023, see 237 for the Amended Statement of Reasons. (mam) (Entered: 11/20/2015) |
| 11/30/2015 | 125 | | NOTICE OF APPEAL TO 10CCA as to defendant Jonathan Kearn. (Francis, Michael) (Entered: 11/30/2015) |
| 11/30/2015 | 126 | | MOTION to Determine Appointment of Counsel by Jonathan Kearn. (Francis, Michael) Modified on 11/30/2015 to reflect proper event. (hs) (Entered: 11/30/2015) |
| 12/01/2015 | 127 | | PRELIMINARY RECORD ON APPEAL transmitted to 10CCA as to Jonathan Kearn re 125 Notice of Appeal – Final Judgment. (Attachments: # 1 Preliminary Packet) (hs) (Entered: 12/01/2015) |
| 12/01/2015 | 128 | | TRANSCRIPT ORDER FORM: Transcript Requested Trial (May 5–7, 2015) and Sentencing (November 16, 2015) re 125 Notice of Appeal – Final |

| | | | |
|---|---|---|---|
| | | | Judgment filed by Jonathan Kearn. (Francis, Michael) Modified on 12/3/2015, Original document filed was the incorrect document. (Additional attachment added on 12/3/2015: # 1 Transcript Order Form) (hs) (Entered: 12/01/2015) |
| 12/03/2015 | 129 | | **(NOTE: Access to document is restricted pursuant to the courts privacy policy.)** <br><br> MOTION for Leave to Appeal In Forma Pauperis by Jonathan Kearn. (Attachments: # 1 Affidavit in Support of Motion to Appeal In Forma Pauperis)(Francis, Michael) (Entered: 12/03/2015) |
| 12/03/2015 | 130 | | ORDER granting 129 Motion for Leave to Appeal In Forma Pauperis as to Jonathan Kearn (1). Signed by District Judge Daniel D. Crabtree on 12/03/2015. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (mig) (Entered: 12/03/2015) |
| 12/03/2015 | 131 | | LETTER FROM 10CCA stating 125 Notice of Appeal shall be treated as an Amended Notice of Appeal in 10CCA case 15–3121. (hs) (Entered: 12/03/2015) |
| 12/08/2015 | 132 | | MOTION to Withdraw Document 126 by Jonathan Kearn. (Francis, Michael) (Entered: 12/08/2015) |
| 12/08/2015 | 133 | | ORDER granting 132 Motion to Withdraw Document as to Jonathan Kearn (1). Signed by District Judge Daniel D. Crabtree on 12/08/2015. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (mig) (Entered: 12/08/2015) |
| 02/10/2016 | 134 | | ORDER of 10CCA as to Jonathan Kearn (Appeal No. 15–3121). See Order for details. (hs) (Entered: 02/11/2016) |
| 03/01/2016 | 135 | | ENTRY OF APPEARANCE by attorney Daniel T. Hansmeier appearing for Jonathan Kearn. (Hansmeier, Daniel) (Entered: 03/01/2016) |
| 03/01/2016 | 136 | | DESIGNATION OF RECORD ON APPEAL by Jonathan Kearn re 125 Notice of Appeal – Final Judgment. (Appeal No. 15–3121) (Hansmeier, Daniel) (Entered: 03/01/2016) |
| 03/01/2016 | 137 | | TRANSCRIPT ORDER FORM: Transcript Requested 10/20/14 Stat Conf; 11/17/14 Mot Hrg; 1/21/15 Mot Hrg; 5/1/15 Limine Conf; 5/5/15 Voir Dire, Opn Stmts, Trial; 5/6/15 Trial; 5/7/15 Trial, Inst Conf, Jury Inst, Clsg Arg; 5/8/15 Verdict; 11/13/15 Dckt Call; 10/21/15 Mot Hrg; 11/16/15 Sent Hrg re 125 Notice of Appeal – Final Judgment filed by Jonathan Kearn. (Hansmeier, Daniel) (Entered: 03/01/2016) |
| 03/10/2016 | 138 | | TRANSCRIPT ORDER FORM by Court Reporter S. Harris re 125 Notice of Appeal – Final Judgment filed by Jonathan Kearn, 100 Notice of Appeal filed by Jonathan Kearn. (Appeal No. 15–3121) Transcript due by 5/10/2016. (sh) (Entered: 03/10/2016) |
| 05/11/2016 | 139 | | TRANSCRIPT OF MOTIONS HEARING (15 pgs) held 10–20–14 as to Jonathan Kearn before Judge D. Crabtree. Court Reporter: Sherry Harris, 785–338–5354, sherry_harris@ksd.uscourts.gov. <br><br> **NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of** |

| | | | |
|---|---|---|---|
| | | | **Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 8/9/2016. (sh) (Entered: 05/11/2016) |
| 05/11/2016 | 140 | | TRANSCRIPT OF MOTIONS HEARING (13 pgs) held 11−17−14 as to Jonathan Kearn before Judge D. Crabtree. Court Reporter: Sherry Harris, 785−338−5354, sherry_harris@ksd.uscourts.gov.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 8/9/2016. (sh) (Entered: 05/11/2016) |
| 05/11/2016 | 141 | | TRANSCRIPT OF MOTIONS HEARING (MOTION TO CONTINUE TRIAL) (32 pgs) held 1−21−15 as to Jonathan Kearn before Judge D. Crabtree. Court Reporter: Sherry Harris, 785−338−5354, sherry_harris@ksd.uscourts.gov.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 8/9/2016. (sh) (Entered: 05/11/2016) |
| 05/11/2016 | 142 | | TRANSCRIPT OF IN LIMINE CONFERENCE (36 pgs) held 5−1−15 as to Jonathan Kearn before Judge D. Crabtree. Court Reporter: Sherry Harris, 785−338−5354, sherry_harris@ksd.uscourts.gov. |

| | | |
|---|---|---|
| | | **NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 8/9/2016. (sh) (Entered: 05/11/2016) |
| 05/31/2016 | 143 | TRANSCRIPT OF JURY TRIAL (VOLUME 1) (pgs 1–313) held 5–5–15 as to Jonathan Kearn before Judge D. Crabtree. Court Reporter: Sherry Harris, 785–338–5354, sherry_harris@ksd.uscourts.gov.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 8/29/2016. (sh) (Entered: 05/31/2016) |
| 05/31/2016 | 144 | TRANSCRIPT OF JURY TRIAL (VOLUME 2) (pgs 314–501) held 5–6–15 as to Jonathan Kearn before Judge D. Crabtree. Court Reporter: Sherry Harris, 785–338–5354, sherry_harris@ksd.uscourts.gov.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 8/29/2016. (sh) (Entered: 05/31/2016) |
| 05/31/2016 | 145 | TRANSCRIPT OF JURY TRIAL (VOLUME 3) (pgs 502–705) held 5–7–15 as to Jonathan Kearn before Judge D. Crabtree. Court Reporter: Sherry Harris, 785–338–5354, sherry_harris@ksd.uscourts.gov. |

| | | | |
|---|---|---|---|
| | | | **NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 8/29/2016. (sh) (Entered: 05/31/2016) |
| 05/31/2016 | 146 | | TRANSCRIPT OF JURY TRIAL (VOLUME 4) (pgs 706–715) held 5–8–15 as to Jonathan Kearn before Judge D. Crabtree. Court Reporter: Sherry Harris, 785–338–5354, sherry_harris@ksd.uscourts.gov.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 8/29/2016. (sh) (Entered: 05/31/2016) |
| 05/31/2016 | 147 | | TRANSCRIPT OF SENTENCING HEARING (21 pgs) held 10–13–15 as to Jonathan Kearn before Judge D. Crabtree. Court Reporter: Sherry Harris, 785–338–5354, sherry_harris@ksd.uscourts.gov.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 8/29/2016. (sh) (Entered: 05/31/2016) |
| 05/31/2016 | 148 | | TRANSCRIPT OF MOTIONS HEARING (MOTION TO WITHDRAW, DOCUMENT 114) held 10–21–15 as to Jonathan Kearn before Judge D. Crabtree. Court Reporter: Sherry Harris, 785–338–5354, |

| | | | |
|---|---|---|---|
| | | | sherry_harris@ksd.uscourts.gov.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 8/29/2016. (sh) (Entered: 05/31/2016) |
| 05/31/2016 | 149 | | TRANSCRIPT OF SENTENCING HEARING (43 pgs) held 11−16−15 as to Jonathan Kearn before Judge D. Crabtree. Court Reporter: Sherry Harris, 785−338−5354, sherry_harris@ksd.uscourts.gov.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 8/29/2016. (sh) (Entered: 05/31/2016) |
| 06/17/2016 | 150 | | RECORD ON APPEAL, Volumes 1, 2 and 3, transmitted to 10CCA electronically as to Jonathan Kearn re 125 Notice of Appeal – Final Judgment. (Appeal No. 15−3121) (ht) (Entered: 06/17/2016) |
| 09/28/2016 | 151 | | ORDER of 10CCA granting Appellant's unopposed Motion for Leave to Supplement the Record on Appeal. (Appeal No. 15−3121). (ht) (Entered: 09/29/2016) |
| 10/10/2017 | 152 | | MANDATE from 10CCA affirming the decision of the District Court and Appellant's claim of ineffective assistance of counsel is dismissed without prejudice as to Jonathan Kearn. (Appeal No. 15−3121) (Attachments: # 1 Opinion, # 2 Mandate Letter)(ht) (Entered: 10/10/2017) |
| 01/19/2018 | 153 | | LETTER FROM 10CCA advising petition for writ of certiorari filed. Re 125 Notice of Appeal – Final Judgment; assigned Supreme Court No. 17−7210 as to defendant Jonathan Kearn. (Appeal No. 15−3121) (msb) (Entered: 01/19/2018) |
| 02/27/2018 | 154 | | MOTION for Release of Property by Jonathan Kearn. (ht) (Entered: 02/27/2018) |

| 03/16/2018 | 155 | | ORDER granting 154 Motion for Return of Property as to Jonathan Kearn (1). Signed by District Judge Daniel D. Crabtree on 03/16/2018. Mailed to pro se party Jonathan Kearn by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (mig) (Entered: 03/16/2018) |
| 05/21/2018 | 156 | | LETTER FROM 10CCA advising petition for writ of certiorari denied re 125 Notice of Appeal – Final Judgment; assigned Supreme Court No. 17–7210 as to Jonathan Kearn. (Appeal No. 15–3121) (ht) (Entered: 05/21/2018) |
| 04/25/2019 | 157 | | MOTION to Vacate under 28 U.S.C. 2255 by Jonathan Kearn. (Attachments: # 1 Grounds in Support, # 2 Exhibit List, # 3 Exhibits 1–12, # 4 Exhibits 13–17, # 5 Exhibits 18–44, # 6 Exhibits 45–57, # 7 Exhibits 58–70, # 8 Letter to Clerk, # 9 Mailing Envelope) (msb)<br>Civil case 5:19–cv–04032–DDC opened. (Entered: 04/26/2019) |
| 04/26/2019 | 158 | | MOTION for Leave to Proceed in forma pauperis by defendant Jonathan Kearn. NOTE Access to document is restricted pursuant to the courts privacy policy. (msb) (Entered: 04/26/2019) |
| 04/26/2019 | 159 | | ORDER re 157 Motion to Vacate under 28 U.S.C. 2255 filed by Jonathan Kearn – the government must file a Response by 5/28/2019. Signed by District Judge Daniel D. Crabtree on 04/26/2019. Mailed to pro se party Jonathan Kearn by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (mig) (Entered: 04/26/2019) |
| 05/02/2019 | 160 | | SEALED MOTION for Leave to File Under Seal exhibits to 2255 motion by defendant Jonathan Kearn. (Attachment: # 1 Mailing Envelope)(msb) (Entered: 05/02/2019) |
| 05/06/2019 | 161 | | MOTION for leave to file amended pleading by defendant Jonathan Kearn. (Attachments: # 1 Amnended Pleading, # 2 Mailing Envelope)(msb) Corrected file date on 5/9/2019 (msb). (Entered: 05/08/2019) |
| 05/21/2019 | 162 | | MOTION for Extension of Time to File Appellee's Brief by USA as to Jonathan Kearn. (Kenney, Christine) (Entered: 05/21/2019) |
| 05/22/2019 | 163 | | ORDER granting 162 Motion for Extension of Time to File Response to defendant's Motion to Vacate (Doc. 157 ). Government's Response deadline extended to 6/28/2019. Signed by District Judge Daniel D. Crabtree on 05/22/2019. Mailed to pro se party Jonathan Kearn by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (mig) (Entered: 05/22/2019) |
| 05/24/2019 | 164 | | MEMORANDUM AND ORDER granting 161 Motion for Leave to file amended 2255 Motion to Vacate as to defendant Jonathan Kearn (1). Signed by District Judge Daniel D. Crabtree on 5/24/19. Mailed to pro se party Jonathan Kearn by regular mail (msb) (Entered: 05/24/2019) |
| 05/24/2019 | 165 | | AMENDED MOTION to Vacate under 28 U.S.C. 2255 by defendant Jonathan Kearn. (msb) Modified Motion event on 5/24/2019. (msb) (Entered: 05/24/2019) |
| 05/24/2019 | 166 | | ORDER granting in part and denying in part 160 Sealed Motion for Leave to File Under Seal as to defendant Jonathan Kearn (1). Signed by District Judge Daniel D. Crabtree on 5/24/19. Mailed to pro se party Jonathan Kearn by regular mail (msb) (Entered: 05/24/2019) |

| 06/03/2019 | 167 | | MOTION to Correct 165 Motion to Vacate under 28 U.S.C. 2255 filed by defendant Jonathan Kearn. (Attachment: # 1 Mailing Envelope)(msb) (Entered: 06/04/2019) |
|---|---|---|---|
| 06/13/2019 | 168 | | RESPONSE TO MOTION by USA as to Jonathan Kearn re 157 Motion to Vacate under 28 U.S.C. 2255, 165 Motion to Vacate under 28 U.S.C. 2255. (Kenney, Christine) (Entered: 06/13/2019) |
| 07/01/2019 | 169 | | MOTION for Extension of Time to File Reply to 157 Motion to Vacate under 28 U.S.C. 2255 by defendant Jonathan Kearn. (Attachment: # 1 Mailing Envelope)(msb) (Entered: 07/01/2019) |
| 07/16/2019 | 170 | | ORDER granting in part and denying in part 169 Motion for Extension of Time to File Reply to defendant's Motion to Vacate under 28 U.S.C. 2255 as to Jonathan Kearn (1). The court extends the Reply deadline to 7/31/2019. The court denies the portion of the Motion that seeks to have the Clerk send the defendant a copy of the government's Response (Doc. 168). Signed by District Judge Daniel D. Crabtree on 07/16/2019. Mailed to pro se party Jonathan Kearn by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (mig) (Entered: 07/16/2019) |
| 07/17/2019 | 171 | | ORDER – Yesterday, in a text entry order, the court granted Mr. Kearn's motion to extend the deadline for filing a Reply. Doc. 170. But in that same order, the court denied the rest of Mr. Kearn's motion, *i.e.*, his request asking the court to order the clerk to mail him "a copy of whatever was filed... as soon as possible." *See* Doc. 169 . Though its text entry didn't say it, the court denied Mr. Kearn's request because the address he had provided with his motion was the exact same address that the government––according to the certificate of service for its Response––had used to serve its Response on Mr. Kearns. *Compare* Doc. 168 at 50 *with* Doc. 169 at 2. On its own motion, the court elects to reconsider its ruling on that portion of Mr. Kearn's motion. And, reasoning that it won't hurt anything, the court has decided to grant the remainder of Doc. 169. Specifically, the court, construing Mr. Kearn's motion to seek a copy of the government's Response (Doc. 168) to his pending motion, orders the clerk to send Doc. 168 to Mr. Kearn by first class mail. The clerk should use the address that Mr. Kearn provided in his most recent filing––Doc 169. IT IS SO ORDERED. Signed by District Judge Daniel D. Crabtree on 07/17/2019. Mailed to pro se party Jonathan Kearn by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (mig) (Entered: 07/17/2019) |
| 08/01/2019 | 172 | | REPLY TO RESPONSE TO MOTION by defendant Jonathan Kearn: Re 157 Motion to Vacate under 28 U.S.C. 2255, 165 Motion to Vacate under 28 U.S.C. 2255. (msb) (Attachment on 8/1/2019: # 1 Mailing Envelope) (msb) Modified link on 8/2/2019. (jal) (Entered: 08/01/2019) |
| 04/30/2020 | 173 | | MEMORANDUM AND ORDER: Defendant Jonathan Kearn's Motion to Correct 167 is granted. Kearn's First Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence 165 is denied in part. The government must file an affidavit from Mr. Kearn's former counsel Michael Francis on or before June 1, 2020. Signed by District Judge Daniel D. Crabtree on 4/30/2020. Mailed to pro se party Jonathan Kearn by regular mail. (mls) (Entered: 04/30/2020) |

| 04/30/2020 | 174 | | ORDER denying without prejudice Motion for Leave to Proceed in forma pauperis 158 . Mr. Kearn does not adequately support his motion with a financial affidavit. The court directs the Clerk of the Court to mail Mr. Kearn a copy of the court's form application and financial affidavit to complete and file with the court to request to proceed in forma pauperis. Signed by District Judge Daniel D. Crabtree on 4/30/2020. Mailed to pro se party Jonathan Kearn by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (mls) (Entered: 05/01/2020) |
|---|---|---|---|
| 05/11/2020 | 175 | | NOTICE of Intent as to Jonathan Kearn. (mls) (Entered: 05/11/2020) |
| 05/14/2020 | 176 | | MOTION to Appoint Counsel by Jonathan Kearn. (mls) (Entered: 05/15/2020) |
| 05/14/2020 | 177 | | MOTION for Leave to Proceed in forma pauperis by Jonathan Kearn. NOTE Access to document is restricted pursuant to the courts privacy policy. (Attachments: # 1 Statement of Account Balances, Email Re Inquiry, and Envelope) (mls) (Entered: 05/15/2020) |
| 05/20/2020 | 178 | | SUPPLEMENTAL RESPONSE TO MOTION by USA as to Jonathan Kearn re 165 Motion to Vacate under 28 U.S.C. 2255. (Attachments: # 1 Exhibit A)(Kenney, Christine) (Entered: 05/20/2020) |
| 05/28/2020 | 179 | | MOTION to Vacate Judgment re 173 by Jonathan Kearn. (mls) (Entered: 06/01/2020) |
| 06/01/2020 | 180 | | MEMORANDUM AND ORDER granting Jonathan Kearn's Motion to Appoint Counsel 176 . Jonathan Kearn's Application to Proceed without Prepayment of Fees 177 is denied. The court appoints the Office of the Federal Public Defender for the District of Kansas to represent Mr. Kearn for the limited purpose of preparing for and participating in the evidentiary hearing in this case. The court will conduct a status conference with the parties on June 15, 2020, on its 9:00 a.m. docket. Signed by District Judge Daniel D. Crabtree on 6/1/2020. Mailed to pro se party Jonathan Kearn by regular mail. (mls) (Entered: 06/01/2020) |
| 06/01/2020 | 181 | | ENTRY OF APPEARANCE by attorney Kirk C. Redmond appearing for Jonathan Kearn. (Redmond, Kirk) (Entered: 06/01/2020) |
| 06/01/2020 | 182 | | ENTRY OF APPEARANCE by attorney Lydia Krebs appearing for Jonathan Kearn. (Krebs, Lydia) (Entered: 06/01/2020) |
| 06/01/2020 | 183 | | NOTICE OF HEARING as to Defendant Jonathan Kearn.  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Status Conference set for 6/15/2020 at 09:00 AM in Topeka Courtroom 403 before District Judge Daniel D. Crabtree. (mig) (Entered: 06/01/2020) |
| 06/08/2020 | 184 | | ORDER regarding correspondence received from Jonathan Kearn. Signed by District Judge Daniel D. Crabtree on 06/08/2020. (Attachments: # 1 Exhibit 1) (mig) (Entered: 06/08/2020) |
| 06/09/2020 | 185 | | AMENDED NOTICE OF HEARING as to Defendant Jonathan Kearn.  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Telephone Status Conference set for 6/15/2020 at 09:00 AM in Telephone DDC – CONFERENCE LINE 1–888–363–4749; ACCESS CODE 8354715 before |

| | | | |
|---|---|---|---|
| | | | District Judge Daniel D. Crabtree. (mig) (Entered: 06/09/2020) |
| 06/15/2020 | 186 | | MINUTE ENTRY for proceedings held before District Judge Daniel D. Crabtree: TELEPHONE STATUS CONFERENCE as to Jonathan Kearn held on 6/15/2020. Status Conference set for 9/8/2020 at 09:00 AM in Topeka Courtroom 403 before District Judge Daniel D. Crabtree. Evidentiary Hearing set for 10/14/2020 at 09:00 AM in Topeka Courtroom 403 before District Judge Daniel D. Crabtree. (Court Reporter Kim Greiner) (mig) (Entered: 06/15/2020) |
| 07/13/2020 | 187 | | MOTION for Extension of Time to File Response as to 179 Motion to Vacate Judgment by USA as to Jonathan Kearn. (Kenney, Christine) Modified on 2/17/2023, now linked to 179 . (mam) (Entered: 07/13/2020) |
| 07/14/2020 | 188 | | ORDER granting 187 Motion for Extension of Time to File Response to defendant's Motion to Vacate (Doc. 179 ). Government's Response deadline extended to 8/14/2020. Signed by District Judge Daniel D. Crabtree on 07/14/2020. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (mig) (Entered: 07/14/2020) |
| 08/05/2020 | 189 | | RESPONSE TO MOTION by USA as to Jonathan Kearn re 179 Motion to Vacate. (Kenney, Christine) (Entered: 08/05/2020) |
| 08/19/2020 | 190 | | UNOPPOSED MOTION for Extension of Time to File a Reply as to 179 Motion to Vacate Judgment by Jonathan Kearn. (Redmond, Kirk) Modified on 2/17/2023, now linked to 179 . (mam) (Entered: 08/19/2020) |
| 08/19/2020 | 191 | | UNOPPOSED MOTION for order for Defendant's Custodial Access to Electronically Stored Data by Jonathan Kearn. (Redmond, Kirk) (Entered: 08/19/2020) |
| 08/24/2020 | 192 | | ORDER granting 191 Motion for Order for Defendant's Custodial Access to Electronically Stored Data as to Jonathan Kearn (1). Signed by District Judge Daniel D. Crabtree on 08/24/2020. (mig) (Entered: 08/24/2020) |
| 08/24/2020 | 193 | | ORDER granting 190 Motion for Extension of Time to File Reply to defendant's Motion to Vacate (Doc. 179 ) as to Jonathan Kearn (1). Reply deadline extended to 9/2/2020. Signed by District Judge Daniel D. Crabtree on 08/24/2020. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (mig) (Entered: 08/24/2020) |
| 08/25/2020 | 194 | | AMENDED NOTICE OF HEARING [NEW TIME] as to Defendant Jonathan Kearn.  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Evidentiary Hearing set for 10/14/2020 at 01:30 PM in Topeka Courtroom 403 before District Judge Daniel D. Crabtree. (mig) (Entered: 08/25/2020) |
| 09/08/2020 | 195 | | MINUTE ENTRY for proceedings held before District Judge Daniel D. Crabtree: STATUS CONFERENCE as to Jonathan Kearn held on 9/8/2020. Defendant remanded to custody. (Court Reporter Kim Greiner) (mig) (Entered: 09/08/2020) |
| 09/08/2020 | 196 | | AMENDED NOTICE OF HEARING [COURTROOM CHANGE] as to Defendant Jonathan Kearn.  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Evidentiary Hearing set for 10/14/2020 at 01:30 |

| | | | |
|---|---|---|---|
| | | | PM in Topeka Courtroom 401 (HLT) before District Judge Daniel D. Crabtree. (mig) (Entered: 09/08/2020) |
| 10/09/2020 | 197 | | UNOPPOSED MOTION to Continue Evidentiary Hearing by Jonathan Kearn. (Redmond, Kirk) (Entered: 10/09/2020) |
| 10/13/2020 | 198 | | ORDER granting 197 Unopposed Motion to Continue as to Jonathan Kearn (1). Evidentiary Hearing set for 10/14/2020 is CONTINUED to 11/13/2020 at 01:30 PM in Topeka Courtroom 401 (HLT) before District Judge Daniel D. Crabtree. Signed by District Judge Daniel D. Crabtree on 10/13/2020. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (mig) (Entered: 10/13/2020) |
| 11/03/2020 | 199 | | AMENDED NOTICE OF HEARING [NEW DATE] as to Defendant Jonathan Kearn.  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING.  (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Evidentiary Hearing set for 12/2/2020 at 01:30 PM in Topeka Courtroom 401 (HLT) before District Judge Daniel D. Crabtree. (mig) (Entered: 11/03/2020) |
| 11/23/2020 | 200 | | NOTICE OF HEARING as to Defendant Jonathan Kearn.  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Telephone Status Conference set for 11/23/2020 at 03:30 PM in Telephone DDC – CONFERENCE LINE 1–888–363–4749; ACCESS CODE 8354715 before District Judge Daniel D. Crabtree. (mig) (Entered: 11/23/2020) |
| 11/23/2020 | 201 | | MINUTE ENTRY for proceedings held before District Judge Daniel D. Crabtree: TELEPHONE STATUS CONFERENCE as to Jonathan Kearn held on 11/23/2020. The court continues the Evidentiary Hearing scheduled for December 2, 2020 to a date to be determined. Defendant remains in custody. (Court Reporter Kim Greiner) (mig) (Entered: 11/23/2020) |
| 03/12/2021 | 202 | | NOTICE OF HEARING as to Defendant Jonathan Kearn.  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Evidentiary Hearing set for 4/19/2021 at 01:30 PM in Topeka Courtroom 401 (TC) before District Judge Daniel D. Crabtree. (mig) (Entered: 03/12/2021) |
| 04/19/2021 | 203 | | MINUTE ENTRY for proceedings held before District Judge Daniel D. Crabtree: EVIDENTIARY HEARING as to Jonathan Kearn held on 4/19/2021. (Court Reporter Kim Greiner) (Attachments: # 1 Witness Sheet, # 2 Government's Exhibit List, # 3 Defendant's Exhibit List) (mig) (Entered: 04/20/2021) |
| 04/23/2021 | 204 | | TRANSCRIPT of Evidentiary Hearing held April 19, 2021 as to Jonathan Kearn before Judge Daniel D. Crabtree, Court Reporter Kim Greiner, 913–735–2314, kim_greiner@ksd.uscourts.gov. Transcript purchased by: Kirk Redmond. |
| | | | **NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time,** |

| | | | **this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 7/22/2021. (kg) (Entered: 04/23/2021) |
|---|---|---|---|
| 04/29/2021 | 205 | | ENTRY OF APPEARANCE on behalf of USA by James A. Brown, AUSA. (Brown, James) (Entered: 04/29/2021) |
| 05/14/2021 | 206 | | MEMORANDUM OF LAW by Jonathan Kearn. (Krebs, Lydia) (Entered: 05/14/2021) |
| 05/27/2021 | 207 | | MEMORANDUM OF LAW by USA as to Jonathan Kearn. (Brown, James) (Entered: 05/27/2021) |
| 06/11/2021 | 208 | | REPLY to 207 Memorandum of Law by All Defendants as to Jonathan Kearn. (Krebs, Lydia) (Entered: 06/11/2021) |
| 01/04/2022 | 209 | | MEMORANDUM AND ORDER denying 179 Jonathan Kearn's Motion to Vacate which the court construes as a reconsideration motion under either D. Kan. Rule 7.3(b) or Fed. R. Civ. P. 59(e). Signed by District Judge Daniel D. Crabtree on 1/4/2022. (mls) (Entered: 01/04/2022) |
| 01/04/2022 | 210 | | MEMORANDUM AND ORDER granting in part Jonathan Kearn's Amended Motion to Vacate under § 2255 165 . The government, as remedy for the constitutional violation found in this Order, must re−offer its Rule 11(c)(1)(C) plea agreement to Mr. Kearn within 20 days of the date of this Order. Signed by District Judge Daniel D. Crabtree on 1/4/2022. (mls) (Entered: 01/04/2022) |
| 01/13/2022 | 211 | | MOTION for Reconsideration and Clarification by USA as to Jonathan Kearn. (Brown, James) (Entered: 01/13/2022) |
| 01/19/2022 | 212 | | RESPONSE TO MOTION by Jonathan Kearn re 211 Motion for Reconsideration and Clarification. (Krebs, Lydia) (Entered: 01/19/2022) |
| 01/21/2022 | 214 | | NOTICE OF INTENT TO CHANGE PLEA and NOTICE OF HEARINGS as to Defendant Jonathan Kearn.  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING. The defendant Jonathan Kearn has notified the court as of this date that he intends to change his plea. The time from this notice until the change of plea hearing (including any continuances) is excludable time for speedy trial purposes. Change of Plea Hearing and Sentencing set for 4/20/2022 at 04:30 PM in Topeka Courtroom 401 (TC) before District Judge Daniel D. Crabtree. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (mig) (Entered: 03/25/2022) |
| 01/27/2022 | 213 | | MEMORANDUM AND ORDER denying 211 Motion for Reconsideration and Clarification filed by USA as to defendant Jonathan Kearn (1). Status Conference in the case on Thursday, February 3, 2022, on its 1:30 p.m. docket in Kansas City, Kansas. The court sets this conference as an in−person hearing but will convert it to a video conference if the parties agree. Signed by District Judge Daniel D. Crabtree on 1/27/22. (msb) (Entered: 01/27/2022) |
| 03/28/2022 | 215 | | NOTICE OF APPEAL TO 10CCA by USA re: 210 Memorandum and Order, 213 Memorandum and Order as to defendant Jonathan Kearn. (Brown, James) |

| | | | |
|---|---|---|---|
| | | | Modified on 3/29/2022 to update docket text and linked entries. (jal) (Entered: 03/28/2022) |
| 03/29/2022 | 216 | | PRELIMINARY RECORD ON APPEAL transmitted to 10CCA as to Jonathan Kearn re 215 Notice of Appeal – Final Judgment. (Attachments: # 1 Preliminary Packet) (jal) (Entered: 03/29/2022) |
| 03/29/2022 | 217 | | APPEAL DOCKETED in 10CCA on 3/29/2022 and assigned Appeal No. 22–3068 re 215 Notice of Appeal – Final Judgment filed by USA as to Jonathan Kearn. (jal) (Entered: 03/29/2022) |
| 04/18/2022 | 218 | | NOTICE OF RESET CHANGE OF PLEA HEARING AND SENTENCING [NEW TIME]. The defendant Jonathan Kearn previously notified the court of his intent to change plea re 214 Notice of Intent to Change Plea. The time from the original notice until the change of plea hearing is excludable time for speedy trial purposes. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Change of Plea Hearing and Sentencing RESET for 4/20/2022 at 05:00 PM in Topeka Courtroom 401 (TC) before District Judge Daniel D. Crabtree. (mig) (Entered: 04/18/2022) |
| 04/18/2022 | 219 | | (DISREGARD, see 220 for the corrected filing. –– AMENDED PRESENTENCE INVESTIGATION REPORT as to Jonathan Kearn.<br><br>**(NOTE: Access to this document is restricted to the USA and this defendant.)**<br><br>(USPO) (Entered: 04/18/2022) |
| 04/18/2022 | 220 | | AMENDED PRESENTENCE INVESTIGATION REPORT as to Jonathan Kearn.<br><br>**(NOTE: Access to this document is restricted to the USA and this defendant.)**<br><br>(USPO) (Entered: 04/18/2022) |
| 04/19/2022 | 221 | | ORDER. On the court's own motion, the Change of Plea Hearing and Sentencing as to Jonathan Kearn set for 4/20/2022 are continued to a date to be determined. The defendant Jonathan Kearn previously notified the court of his intent to change plea re 214 Notice of Intent to Change Plea. The time from the original notice until the change of plea hearing is excludable time for speedy trial purposes. Signed by District Judge Daniel D. Crabtree on 04/19/2022. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (mig) (Entered: 04/19/2022) |
| 04/25/2022 | 222 | | ORDER of 10CCA as to Jonathan Kearn. See Order for details. (Appeal No. 22–3068) (jal) (Entered: 04/25/2022) |
| 04/25/2022 | 223 | | TRANSCRIPT ORDER FORM: Transcript Already on File re 215 Notice of Appeal – Final Judgment filed by USA. (Brown, James) (Entered: 04/25/2022) |
| 04/25/2022 | 224 | | LETTER TO 10CCA stating record is complete as to Jonathan Kearn re 215 Notice of Appeal – Final Judgment. (Appeal No. 22–3068) (jal) (Entered: 04/25/2022) |

| 12/19/2022 | 225 | | ORDER of 10CCA DISMISSING APPEAL as to Jonathan Kearn re 215 Notice of Appeal – Final Judgment. (Appeal No. 22–3068) (jal) (Entered: 12/19/2022) |
|---|---|---|---|
| 12/19/2022 | 226 | | ORDER of 10CCA as to Jonathan Kearn. (Appeal No. 22–3068) (Attachments: # 1 Order of the 10th CCA) (jal) (Entered: 12/19/2022) |
| 12/29/2022 | 227 | | NOTICE OF RESET CHANGE OF PLEA HEARING AND SENTENCING. The defendant Jonathan Kearn previously notified the court of his intent to change plea re 214 Notice of Intent to Change Plea. The time from the original notice until the change of plea hearing is excludable time for speedy trial purposes. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Change of Plea Hearing and Sentencing reset for 1/12/2023 at 01:30 PM in KC Courtroom 476 (DDC) before District Judge Daniel D. Crabtree. (mig) (Entered: 12/29/2022) |
| 01/12/2023 | 228 | | MINUTE ENTRY for proceedings held before District Judge Daniel D. Crabtree: CHANGE OF PLEA HEARING as to Jonathan Kearn held on 1/12/2023. (Court Reporter Kim Greiner) (mig) (Entered: 01/13/2023) |
| 01/12/2023 | 229 | | MINUTE ENTRY for proceedings held before District Judge Daniel D. Crabtree: SENTENCING HEARING held on 1/12/2023 as to defendant Jonathan Kearn. (Court Reporter Kim Greiner) (mig) (Entered: 01/13/2023) |
| 01/12/2023 | 230 | | PETITION TO ENTER PLEA OF GUILTY AND ORDER ENTERING PLEA as to Jonathan Kearn (1) – Count 3 of the Indictment. Signed by District Judge Daniel D. Crabtree on 1/12/2023. (mam) (Entered: 01/18/2023) |
| 01/12/2023 | 231 | | PLEA AGREEMENT as to Jonathan Kearn re 230 Petition and Order to Enter Plea of Guilty. (mam) (Entered: 01/18/2023) |
| 01/19/2023 | 232 | | TRANSCRIPT of Change of Plea Hearing and Sentencing Hearing held January 12, 2023 as to Jonathan Kearn before Judge Daniel D. Crabtree, Court Reporter Kim Greiner, 913–735–2314, kim_greiner@ksd.uscourts.gov. Transcript purchased by: Christine Kenney.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 4/19/2023. (kg) (Entered: 01/19/2023) |
| 01/20/2023 | 233 | | MOTION for Preliminary Order of Forfeiture by USA as to Jonathan Kearn. (Gurney, Annette) (Entered: 01/20/2023) |
| 01/24/2023 | 234 | | ORDER granting 233 Motion for Preliminary Order of Forfeiture as to Jonathan Kearn (1). Signed by District Judge Daniel D. Crabtree on 1/24/2023. |

| | | | |
|---|---|---|---|
| | | | (kas) (Entered: 01/24/2023) |
| 02/02/2023 | 235 | | ORDER MEMORIALIZING ACTIONS TAKEN DURING HEARING ON JANUARY 12, 2023 (WITH DIRECTIONS TO THE CLERK) as to Jonathan Kearn. Signed by District Judge Daniel D. Crabtree on 2/2/2023. (mam) (Additional attachment added on 2/2/2023: # 1 Corrected Order) (mam) (Entered: 02/02/2023) |
| 02/02/2023 | 236 | | AMENDED JUDGMENT as to Jonathan Kearn (1). Count 3 of the Indictment – Sentenced to 120 months imprisonment, 5 years supervised release and $100 special assessment fee. Counts 1 and 2 of the Indictment are dismissed on the motion of the USA. Signed by District Judge Daniel D. Crabtree on 2/2/2023. (mam) (Entered: 02/02/2023) |
| 02/02/2023 | 237 | | AMENDED STATEMENT OF REASONS as to Jonathan Kearn re 236 Amended Judgment.<br><br>**(NOTE: Access to this document is restricted to the USA and this defendant.)**<br><br>(Attachments: # 1 Reason for Amendment) (mam) (Entered: 02/02/2023) |
| 02/02/2023 | 238 | | DOCKET ANNOTATION re 235 : A corrected version is attached for noticing purposes. (mam) (Entered: 02/02/2023) |
| 02/17/2023 | 239 | | NOTICE OF APPEAL TO 10CCA by USA as to Jonathan Kearn re 210 , 213 Memorandum and Orders and 236 Amended Judgment as to defendant Jonathan Kearn. (Brown, James) Modified on 2/17/2023, now linked to the appealed documents. (mam) (Entered: 02/17/2023) |
| 02/17/2023 | | | APPEAL FEE STATUS: Filing fee waived re 239 Notice of Appeal on behalf of Plaintiff USA. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (mam) (Entered: 02/17/2023) |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

       Plaintiff,

v.

       Case No. 13-40057-01-DDC

JONATHAN KEARN,

       Defendant.

## MEMORANDUM AND ORDER

This matter comes before the court on Jonathan Kearn's Amended Motion to Vacate, Set Aside, or Correct a Sentence Under 28 U.S.C. § 2255 (Doc. 165). The court previously denied six of the seven claims Mr. Kearn raised in his motion, *see* Doc. 173, but left undecided Mr. Kearn's ineffective assistance of counsel claim based on his attorney's advice during the plea process, *see id.* at 24–25. The court appointed counsel to assist Mr. Kearn on this remaining claim and conducted an evidentiary hearing on it. *See* Doc. 180. After the parties finished with the evidence, the parties submitted post-hearing briefing. *See* Docs. 203, 206, 207, & 208.

The question presented by Mr. Kearn's motion is not about his guilt. The jury decided that question several years ago. Their 2015 verdict convicted Mr. Kearn of three federal child pornography charges stemming from pictures he took of his four-and-a-half-year-old daughter and then shared on the internet. *See* Doc. 97. And in affirming Mr. Kearn's conviction in 2017, the Tenth Circuit characterized "the evidence of [Mr.] Kearn's guilt [as] overwhelming[.]" *United States v. Kearn*, 863 F.3d 1299, 1312 (10th Cir. 2017), *cert. denied*, 138 S. Ct. 2025 (2018).

But no matter his guilt, Mr. Kearn had a constitutional right to effective assistance of counsel. This Order addresses that right as it pertains to the critical stage of plea bargaining, which, as the Supreme Court has recognized, "'is not some adjunct to the criminal justice system; it *is* the criminal justice system.'" *Missouri v. Frye*, 566 U.S. 134, 144 (2012) (quoting Scott & Stuntz, *Plea Bargaining as Contract*, 101 Yale L.J. 1909, 1912 (1992)).

Before trial, the government offered Mr. Kearn a plea deal under Fed. R. Crim. P. 11(c)(1)(C). If accepted, Mr. Kearn would plead guilty to a single offense in exchange for the government's agreement to a sentence of 10 years in prison. Mr. Kearn rejected that deal and proceeded to trial. After his conviction, the court sentenced him to 292 months in prison—more than 24 years. So, Mr. Kearn's decision was a costly one. And it's that decision he now seeks to undo. Specifically, Mr. Kearn argues that his trial counsel inadequately and inaccurately advised him during the plea process, and that but for that ineffective advice, he would've accepted the government's offer and pleaded guilty.

The court recognizes the difficulty with this claim. It first requires the court to evaluate the performance of counsel with the benefit of hindsight. Even more challenging, it requires the court to reach back in time and construct a counterfactual world to determine what Mr. Kearn would've done had he received the legal advice he claims he'd have received from effective assistance. But after considering at great length the focused and admirable guidance from the parties on this difficult claim, the court concludes it must decide those daunting questions. The court also concludes that Mr. Kearn didn't receive effective assistance of counsel and that this deficient legal advice prejudiced him substantially. Thus, for reasons explained below, the court grants Mr. Kearn's § 2255 motion (Doc. 165), but only in part.

## I.   Background

### A.   Procedural Background

This case began many years ago.  On May 29, 2013, a grand jury indicted Mr. Kearn on three charges:  (1) permitting his minor children to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, violating 18 U.S.C. § 2251(b); (2) distributing a visual depiction of a minor engaged in sexually explicit conduct, violating 18 U.S.C. § 2252(a)(2); and (3) possessing a visual depiction of a minor engaged in sexually explicit conduct, violating 18 U.S.C. § 2252(a)(4)(B).  Doc. 15 at 1–3.  After a four-day trial in May 2015, a jury convicted Mr. Kearn on all three charges.  Doc. 97 at 1–3.  This court sentenced Mr. Kearn to 292 months' imprisonment on Count One, 240 months' imprisonment on Count Two, and 120 months' imprisonment on Count Three, all to run concurrently.  Doc. 123 at 2.  The court also ordered five years of supervised release.  *Id.* at 3.  Mr. Kearn appealed his convictions to the Tenth Circuit.  *See United States v. Kearn*, 863 F.3d 1299, 1302–03 (10th Cir. 2017).  The Tenth Circuit affirmed.  *Id.* at 1313; *see also* Doc. 152-1.  Mr. Kearn petitioned for a writ of certiorari from the United States Supreme Court, which it denied on May 21, 2018.  Doc. 156.

On April 25, 2019, Mr. Kearn filed a Motion for Relief under 28 U.S.C. § 2255 along with 70 exhibits, asking the court to vacate his sentence based on ineffective assistance of trial counsel.  *See* Doc. 157.  Mr. Kearn then filed an amended § 2255 motion (Doc. 165) and also filed a Motion to Correct (Doc. 167), asking the court to consider his previously filed exhibits with his amended § 2255 motion.  The court granted his Motion to Correct (Doc. 167) and considered Mr. Kearn's previously filed exhibits with his amended § 2255 motion.  *See* Doc. 173.

3

The court considered and rejected all but one of Mr. Kearn's claims of ineffective assistance of counsel. *See generally* Doc. 173. The lone surviving claim asserted that Mr. Kearn's counsel had advised him that he could not plead guilty because, if he did, he would commit perjury by accepting responsibility for something he asserted he didn't do. *See id.* at 20–21 (citing Doc. 165 at 37–38). The court concluded that—on the extant record—it couldn't determine whether Mr. Kearn had received constitutionally adequate representation from counsel about the government's plea offer. So, the court concluded that this claim "may warrant" an evidentiary hearing. *Id.* at 24. But, citing logistical constraints imposed by the COVID-19 pandemic, the court ordered the government to submit an affidavit from Mr. Kearn's former trial counsel addressing Mr. Kearn's remaining claim. *Id.* at 24–25. The court noted that "[a]fter all parties have reviewed the affidavit, the court will evaluate next steps and, if an evidentiary hearing is warranted, the steps required to facilitate Mr. Kearn's travel." *Id.* at 25.

The government then filed an Affidavit from Mr. Kearn's former trial counsel, Mr. Michael Francis, whom the court refers to throughout this Order as "counsel" or "trial counsel." Doc. 178; Doc. 178-1. Counsel's Affidavit contested Mr. Kearn's allegations of ineffective assistance of counsel during the plea process. *See* Doc. 178-1. The court thus determined that the factual dispute created by the Affidavit required an evidentiary hearing "solely on the issue of whether Mr. Kearn's trial counsel provided effective assistance of counsel when he advised Mr. Kearn about his available plea offers." Doc. 180 at 5–6. The court appointed the Office of the Federal Public Defender for the District of Kansas to represent Mr. Kearn in the evidentiary hearing. *Id.* at 6–7.

The evidentiary hearing took place on April 19, 2021. Mr. Kearn's counsel called three witnesses: (1) Mr. Kearn's trial counsel, (2) Mr. Kearn, and (3) Branden Bell, a criminal defense

attorney with many years of experience in federal court criminal cases. *See generally* Doc. 204. The court summarizes their testimony in parts B, C, and D. The court begins by summarizing the events surrounding the plea offer and Mr. Kearn's rejection of it, as gleaned from the testimony of Mr. Kearn and his trial counsel. Then, the court summarizes the testimony of Mr. Kearn's trial counsel and Mr. Bell about their experiences with plea bargaining in federal court. These summaries comprise the court's findings providing the factual basis for this Order's ultimate conclusions.

### B.      The Government's Rule 11(c)(1)(C) Plea Offer

Before Mr. Kearn's criminal trial, the government offered him a Rule 11(c)(1)(C) "binding plea agreement to a 10-year sentence to Count [Three]." Doc. 204 at 33. In exchange for Mr. Kearn's guilty plea to the possession charge in Count Three, the government would've dismissed the production and distribution charges in Counts One and Two of the Indictment. *Id.* at 37–38. Mr. Kearn's trial counsel recognized this offer as a "huge" deal for Mr. Kearn, who faced a sentence exposure of 292 to 365 months (about 24 to 30 years). *Id.* at 38.

Mr. Kearn's trial counsel discussed the government's 11(c)(1)(C) plea offer with him just once. *Id.* at 42–43; *see also* Doc. 178-1 at 1 (Counsel Aff.).[1] During an hour-long meeting in counsel's office, the two discussed the plea offer for about six minutes. Doc. 204 at 43 (Kearn Testimony). During those six minutes, counsel described the 10-year plea offer but advised Mr. Kearn that the court "d[idn't] have to go along with the plea agreement." *Id.* at 38 (Counsel Testimony). Counsel didn't advise Mr. Kearn to accept or reject the plea offer. *Id.* at 31

---

[1]      Trial counsel testified that he didn't "remember specifically what [he] told" Mr. Kearn when he advised him of the plea offer. Doc. 204 at 28. As a result, the court relies mostly on Mr. Kearn's testimony for its factual findings about this meeting between Mr. Kearn and his trial counsel. But for each moment in this important sequence of events, the court notes whose testimony it relies on for its factual finding. And where counsel's testimony about his general advice to clients is relevant, the court relies on that testimony to corroborate Mr. Kearn's testimony about counsel's specific advice to him.

(Counsel Testimony), 45 (Kearn Testimony). He didn't "weigh the pros and cons of that plea offer" with Mr. Kearn. *Id.* at 45 (Kearn Testimony). Nor did he discuss or explain to Mr. Kearn anything about <u>Federal Rule of Criminal Procedure 11</u>, specifically Rule 11(c)(1)(C). *Id.* at 44 (Kearn Testimony).

In those six minutes, counsel also advised Mr. Kearn about the need to supply a factual basis for the guilty plea. *Id.* (Kearn Testimony); *see also id.* at 30–31 (Counsel Testimony). According to Mr. Kearn, counsel advised him that if he accepted the guilty plea, he "would have to tell the judge [he] was guilty of the crime[.]" *Id.* at 44. And, counsel continued, because Mr. Kearn claimed he "was not guilty of the crime," he "couldn't honestly say . . . to the judge in good conscience" that he was guilty of the crime. *Id.* (Kearn Testimony). Counsel did not "talk about an option where [Mr. Kearn] would not have to personally state a factual basis for the plea[.]" *Id.* 44–45 (Kearn Testimony); *see also id.* at 30–31 (Counsel Testimony) (agreeing that it's "likely" he would have advised Mr. Kearn that he would have to "admit [ ] the factual basis for the crime" himself). Nor did counsel discuss the possibility that the government could supply the factual basis for the guilty plea and that Mr. Kearn simply could agree that the government's evidence "would be sufficient to support a guilty verdict beyond a reasonable doubt[.]" *Id.* at 45 (Kearn Testimony). Counsel devoted the rest of this one-hour meeting to trial strategy. *Id.* at 43 (Kearn Testimony).

At the end of the meeting, Mr. Kearn told his counsel that "he would not plead guilty" because "he didn't do it—didn't do what he was charged with." *Id.* at 31 (Counsel Testimony). Counsel noted in response that it was "too bad there's not a no contest plea" offered in federal court. *Id.* at 44 (Kearn Testimony).

6

Later, Mr. Kearn's counsel called the prosecutor in the case and left a voicemail declining the government's plea offer. He explained that Mr. Kearn said "he didn't do it," so "that's a problem." Gov. Ex. 100; *see also* <u>Doc. 178-1 at 3</u> (prosecutor email to counsel noting that Mr. Kearn had rejected "an offer of a c1C to 10 years"). Counsel testified that he did not believe at any point during his representation of Mr. Kearn that his client would plead guilty. <u>Doc. 204 at 31</u>.

Shortly before trial, during a *Lafler/Frye* colloquy, Mr. Kearn acknowledged that he was made aware of the government's "binding plea agreement to a 10-year sentence to Count [Three]." *See* Gov. Ex. 101; <u>Doc. 143 at 240</u>–41. He then proceeded to trial where he convicted on all three charges and later sentenced to more than 24 years in prison. At the evidentiary hearing on the current motion, Mr. Kearn testified that had he known the government could supply the factual basis for the guilty plea, he would have accepted the government's plea offer. <u>Doc. 204 at 46</u>–47; *see also id.* at 49 (Mr. Kearn testified he could have stated the government's evidence was sufficient to prove him guilty beyond a reasonable doubt). But, on cross examination, the government asked Mr. Kearn if he could have admitted that he knowingly committed the crime and was, in fact, guilty of it. *Id.* at 48 (noting that the court has asked that question in the past to defendants during their change of plea hearings). Mr. Kearn said he could not. *Id.*

### C. Trial Counsel's Testimony About Federal Plea Agreements

Mr. Kearn's trial counsel could not recall specifically how he advised Mr. Kearn about the government's plea offer. <u>Doc. 204 at 28</u>. But in his Affidavit, counsel listed the general advice he customarily provides clients about plea offers. *See* <u>Doc. 204 at 26</u>; <u>Doc. 178-1 at 2</u>

7

(Counsel Aff.). And he testified about that general advice at the evidentiary hearing. *See* Doc. 204 at 28–31.

In his practice, trial counsel advises his clients about supplying a factual basis for the plea at a hearing. Counsel testified that he was aware of three potential ways that defendants could meet this requirement: (1) "the judge will ask the client to tell the court the facts surrounding the offense[;]" (2) the judge "will ask the client if he has read the affidavits and pleadings alleging the offense and whether the client agrees an offense is stated[;]" or (3) the judge "will have the prosecutor present facts to the court constituting the offense and then ask[ ] the client if he agrees with the prosecutor's statements." Doc. 178-1 at 2 (Counsel Aff.). But, in all cases, counsel advises his clients "that the judge will ask if the client is pleading guilty because he is guilty." *Id.*

Before Mr. Kearn's 2015 trial, his counsel had represented nine criminal defendants who pleaded guilty in federal court. Doc. 204 at 24. In all nine, counsel or the defendant personally provided the factual basis for the guilty plea in the plea petition. *Id.* at 16–25; *see also id.* at 29 (counsel testifying that in all nine cases the client "in some way had to acknowledge what the facts were" but noting that "in the majority of the cases, the client didn't tell the judge what the facts were"). Counsel regularly advised his clients that they would have to admit the facts surrounding the offense in the plea petition if they wanted to plead guilty. *Id.* at 25; *see also id.* at 30–31. He provided this advice because he believed the law required it. *Id.* at 25. As he testified, "if a client wants to plead guilty and admit to the facts, they can, but the alternative is trial." *Id.* at 39. At the hearing, counsel agreed he likely would have advised Mr. Kearn that he would have to supply and admit the factual basis for his guilty plea in his plea petition. *Id.* at 30–31.

8

Counsel also testified about his knowledge of Rule 11(c)(1)(C) plea agreements. Of his involvement in the nine federal court plea agreements that preceded Mr. Kearn's trial, none of them involved Rule 11(c)(1)(C). *See* Def. Exs. 2–10. While counsel recognized that such agreements were "binding," he testified that he wasn't aware of any enforcement mechanisms to ensure the court actually sentenced the defendant to the term of imprisonment from the plea offer because "a judge doesn't have to go along with the plea agreement." Doc. 204 at 38. Counsel testified that he believed he so advised Mr. Kearn. *Id.* Counsel also testified that he didn't know if Mr. Kearn would actually receive a 10-year sentence if he pleaded guilty because that would depend on the Sentencing Guidelines. *See id.* ("Well, I don't know if it was actually going to be 10 years other than by looking at the schedule of—if you don't have 'x' number offenses and you plead to this offense, then I believe this is what it was.").

### D.      Mr. Bell's Testimony About Federal Plea Agreements

Mr. Kearn also offered testimony by Branden Bell, a criminal defense attorney based in Kansas City. Mr. Bell has practiced primarily in federal court for 12 years. Doc. 204 at 51. By the time of the hearing on this motion, he had represented some 240 clients in federal court, many of them while a member of the Office of the Federal Public Defender for this judicial district. *Id.*

Mr. Bell testified that it is common for criminal defendants to profess their innocence to him when charged with sensitive crimes, like sex cases or child abuse cases. *Id.* at 52. But in cases like these, "if there's a plea offer that substantially reduces their exposure, [his] goal is to make sure that [defendants] have all the information available to them but make the prospect of a plea hearing seem as painless as possible[.]" *Id.*

When it comes to supplying the requisite factual basis for a plea, Mr. Bell testified that there are several options. One involves working with the government to change the language of the plea agreement to provide that his "client agrees that the government has evidence that would show" a certain fact. *Id.* at 59. Mr. Bell testified that he regularly uses this approach in conspiracy cases where a plea agreement asks his client to admit facts outside the scope of their personal knowledge. *Id.* But he also testified that this practice works for clients who are "reluctant" to plead guilty because a "psychological hurdle" prevents them from personally admitting the facts of the offense. *See id.* at 60. To overcome this hurdle, Mr. Bell explained that he shows clients "that the language in the plea agreement says you're not saying that you know this, you're saying that the government has evidence to prove it." *Id.* And, at the plea hearing itself, Mr. Bell explained that the defendant doesn't have to supply the factual basis for the plea. *Id.* at 62. The defendant certainly can provide it, but it is not legally required. *Id.* In Mr. Bell's experience, the factual basis for a guilty plea may come from the government or even a presentence report. *Id.*[2]

Mr. Bell also testified about his knowledge of Rule 11(c)(1)(C) agreements, like the one the government offered to Mr. Kearn. Mr. Bell explained that Rule 11(c)(1)(C) agreements, in his experience, are "incredibly popular with clients." *Id.* at 61. This is so because of the certainty they provide. If the court accepts the plea agreement, the "court is bound to sentence the defendant" to the term of imprisonment set by the plea agreement. *Id.* at 61. And if the court rejects the 11(c)(1)(C) agreement, then "defendant is given the option to withdraw his guilty plea and essentially the parties go back to the position that they [occupied] before . . . the change of

---

[2]       Mr. Bell acknowledged that the presentence report can serve as the factual basis for the guilty plea only "if the court reserves judgment on whether to accept a plea and then later looks at the presentence report and then is satisfied . . . from that document that there is a factual basis[.]" Doc. 204 at 62.

plea hearing." *Id.* at 61. In Mr. Bell's view, the "certainty of a (c)(1)(C) puts clients' minds at ease . . . because now they know what's going to happen to them." *Id.* at 61–62. He testified that Rule 11(c)(1)(C)'s binding nature was "in [his] experience, the most attractive feature of the plea agreement to a client." *Id.* at 63. He opined that in cases where defendant faces a large sentence and overwhelming evidence, nothing is more important to convey than "the fact that this is a binding plea, which means, by virtue of your guilty plea, [defendant] will not get one more day in prison . . . than what's in this agreement." *Id.* In Mr. Bell's experience, simply stating a plea offer is "binding" is insufficient to convey the value of a Rule 11(c)(1)(C) agreement to a client. *Id.* In his view, without "explaining the particular mechanics of how [a Rule 11(c)(1)(C) agreement] constrains the court and what the defendant's options are" if the court doesn't accept the agreement, then the word "binding" in the term binding plea agreement "almost has no meaning." *Id.* at 64.

Finally, Mr. Bell explained his practice with clients who have professed their innocence. In his words, "when the evidence is overwhelming and a client is still persisting in their innocence, that is always an indication to me that . . . there's a psychological stumbling block that is not . . . allowing the client to come out and explicitly say what the evidence strongly suggests occurred." *Id.* at 53–54. In these situations, Mr. Bell believes his role is "to try and lower that psychological hurdle[.]" *Id.* at 54. This involves repeatedly explaining the plea offer and its structure to help defendants make an informed decision. *Id.* at 54–55. Specifically, in Mr. Bell's view when the government has presented a "very good plea offer," then he will spend more time than usual discussing the plea offer with a defendant. *Id.* at 54. Mr. Bell testified that he spends about an hour to an hour and a half discussing a plea offer with a client. *Id.* at 58. And, depending on how reluctant a client is to accept a plea deal, these conversations may take

place over multiple visits and multiple hours. *Id.* at 57. Mr. Bell testified that he never has

completed a plea offer discussion in six minutes. *Id.* at 56–57.

At all times, Mr. Bell views his role as providing his clients with all the information they

need so they can make an informed decision. *Id.* at 54–55. At minimum, Mr. Bell believes,

competent counsel should spend sufficient time with clients to allow them to review the plea

agreement and its pros and cons, as well as to explain the nature of a Rule 11(c)(1)(C)

agreement. *Id.* at 67–71.

## II.   **Legal Standard**

A prisoner in federal custody may move to vacate his sentence if such "sentence was

imposed in violation of the Constitution or laws of the United States[.]" 28 U.S.C. § 2255(a).

The Sixth Amendment of the United States Constitution guarantees a right to counsel "that

extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). So, if a

prisoner in federal custody was denied that right—specifically, if he receives ineffective advice

causing him to reject a favorable plea deal and go to trial, only to receive a much harsher

sentence—then he is entitled to relief under § 2255. *See In re Graham*, 714 F.3d 1181, 1182

(10th Cir. 2013) (per curiam) (citing *Lafler*, 566 U.S. at 174). The Supreme Court has "held 'the

two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective

assistance of counsel.'" *Lafler*, 566 U.S. at 162–63 (quoting *Hill v. Lockhart*, 474 U.S. 52, 58

(1985)); *see also Strickland v. Washington*, 466 U.S. 668 (1984).

To prevail on *Strickland*'s first prong—constitutionally deficient performance—

defendant "must show 'that counsel's representation fell below an objective standard of

reasonableness[.]'" *United States v. Moya*, 676 F.3d 1211, 1213 (10th Cir. 2012) (quoting

*Strickland*, 466 U.S. at 688). But there is a "a strong presumption that counsel provided effective

assistance." *United States v. Holloway*, 939 F.3d 1088, 1103 (10th Cir. 2019) (quotation cleaned up); *see also Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential.").  "A fair assessment of attorney performance requires" the court to make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.  "[T]o show that his counsel was deficient, [defendant] must demonstrate that the errors were so serious that 'counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Hanson v. Sherrod*, 797 F.3d 810, 826 (10th Cir. 2015) (quoting *Strickland*, 466 U.S. at 687); *see also Wilson v. Sirmons*, 536 F.3d 1064, 1083 (10th Cir. 2008) ("Counsel's performance must be completely unreasonable to be constitutionally ineffective, not merely wrong." (quotation cleaned up)).

The Supreme Court has recognized the deficient performance prong "is necessarily linked to the practice and expectations of the legal community" as well as the "prevailing norms of practice as reflected in American Bar Association standards and the like[.]" *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010) (quotation cleaned up).  In the context of plea agreements, counsel has a "critical obligation . . . to advise the client of 'the advantages and disadvantages of a plea agreement.'" *Id.* at 370 (quoting *Libretti v. United States*, 516 U.S. 29, 50–51 (1995)).  And counsel's "ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*." *Hinton v. Alabama*, 571 U.S. 263, 274 (2014).

*Strickland*'s second prong—prejudice—requires a defendant to "'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lafler*, 566 U.S. at 163 (quoting *Strickland*, 466 U.S. at 694).  "In

13

the context of pleas a defendant must show the outcome of the plea process would have been
different with competent advice." *Id.* When a defendant alleges ineffective assistance led the
defendant to reject a plea offer, a defendant must establish that "but for the ineffective advice of
counsel there is a reasonable probability" that:

> [1] defendant would have accepted the plea . . . [2] the prosecution would not have
> withdrawn it in light of intervening circumstances . . . [3] the court would have
> accepted its terms, and . . . [4] the conviction or sentence, or both, under the offer's
> terms would have been less severe than under the judgment and sentence that in
> fact were imposed.

*Id.* at 164. "A reasonable probability is a probability sufficient to undermine confidence in the
outcome." *Strickland*, 466 U.S. at 694. This standard "does not require that the [defendant] show
that counsel's deficient conduct more likely than not altered the outcome in the case[.]" *Byrd v.
Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011) (quotation cleaned up). But "mere speculation is
not sufficient to satisfy this burden." *Id.*

The court's analysis, following, applies this legal standard to Mr. Kearn's ineffective
assistance of counsel claim.

## III.   Analysis

Mr. Kearn argues that his trial counsel provided ineffective assistance because he failed
to explain adequately and accurately two aspects of his specific plea offer: "(1) the key benefits
conveyed by Rule 11(c)(1)(C)'s binding-plea provision;" and "(2) the true nature of the burdens
imposed by Rule 11(b)(3)'s factual-basis requirement." Doc. 206 at 5. Mr. Kearn argues that
this deficient advice skewed his cost-benefit analysis of the government's plea offer and
deprived him of "the ability to make a rational and informed choice" when he decided to reject
the plea offer and go to trial. *Id.* at 15. And, Mr. Kearn contends, but for this deficient advice,
there's a reasonable probability he would've made a different choice—he would've accepted the
government's offer, pleaded guilty, and not proceeded to trial.

14

In response, the government argues that Mr. Kearn's trial counsel didn't provide deficient performance in either respect. To the contrary, the government contends, counsel provided sufficient information for Mr. Kearn to understand that he was rejecting a "binding" plea deal to 10 years in prison. *See* <u>Doc. 207 at 10</u>. And more importantly, the government continues, Mr. Kearn can't show that he would've pleaded guilty to the offense because he was unwilling to admit that he was, in fact, guilty. *Id.* at 19–20.

The court agrees with Mr. Kearn. When viewed in the aggregate, the totality of trial counsel's legal advice during the plea process fell below an objective standard of reasonableness. In short, trial counsel understated the benefits of Rule 11(c)(1)(C)'s binding nature while overstating the burdens imposed by Rule 11(b)(3)'s factual basis requirement. And, given the complex mix of legal and personal issues involved in this case, *i.e.*, Mr. Kearn's victims were his daughters, the court is confident that trial counsel couldn't have provided constitutionally adequate advice on these topics in the six minutes he devoted to the government's plea offer.

To be sure, the court is unwilling to conclude that any individual aspect of counsel's performance was deficient. His testimony in this case shows that his understanding of each legal issue relevant here was, at worst, incomplete and imprecise. But, when viewed as a whole, counsel's incomplete and imprecise advice amounted to deficient performance. The advice skewed Mr. Kearn's ability to make an informed choice whether to accept the government's plea offer or proceed to trial. And this advice prejudiced Mr. Kearn. It clouded the narrow path to a guilty plea he now says he would've accepted. The court is thus persuaded that Mr. Kearn's Sixth Amendment rights were violated, entitling him to relief. The court explains how it reaches this conclusion below.

15

A. ***Strickland* Prong One:  Deficient Performance**

The court discusses trial counsel's deficient performance in two individual aspects:  his failure to advise Mr. Kearn adequately about (1) the benefits of Rule 11(c)(1)(C), and (2) the burdens of Rule 11(b)(3).  But the court again emphasizes that it considers these two aspects in tandem to determine whether counsel performed deficiently.

1. **Benefits of Rule 11(c)(1)(C)**

A plea agreement under Fed. R. Crim. P. 11(c)(1)(C) is an interesting animal.  It's commonly called a "binding" plea agreement.  While that terminology is true in some sense, it's not the entire truth.  Rule 11(c)(1)(C) provides that a plea agreement under this part of Rule 11 may recommend to the court "a specific sentence or sentencing range" that the government believes will provide "the appropriate disposition of the case[.]"  But the court isn't bound to accept that recommendation.  Indeed, the Supreme Court has instructed that when "deciding whether to accept an agreement" under Rule 11(c)(1)(C), "the district court must consider the Sentencing Guidelines." *Hughes v. United States*, 138 S. Ct. 1765, 1773 (2018).  But if the court does accept the agreement, it is bound by the agreement, and "the agreed-upon sentence is the only sentence the court may impose." *Id.* at 1778; *see also* Fed. R. Crim. P. 11(c)(1)(C) (noting that the agreement's recommendation "binds the court once the court accepts the plea agreement").

On the other hand, if the court chooses not to accept the plea agreement, the court must inform the defendant that the court isn't bound by the recommended sentence.  Fed. R. Crim. P. 11(c)(5)(B).  And, importantly, the court then must give the defendant the opportunity to withdraw his guilty plea. *Id.* Also, it must inform the defendant that if he chooses not to withdraw his guilty plea, the court "may dispose of the case less favorably" than the plea

16

agreement recommends. Fed. R. Crim. P. 11(c)(5)(C). So, a Rule 11(c)(1)(C) agreement provides the defendant with a significant level of certainty no matter what the court decides. The defendant either will receive the agreed-upon sentence or have the right to withdraw the guilty plea and return the case to its pre-plea posture. In either outcome, the defendant retains substantial control over his fate. *See Freeman v. United States*, 564 U.S. 522, 540 n.5 (2011) (Sotomayor, J., concurring) ("Rule 11(c)(1)(C)'s entire purpose is to allow the parties' intent to determine sentencing outcomes.").[3]

Here, the government offered Mr. Kearn such a plea agreement under Rule 11(c)(1)(C). Specifically, the government offered to drop Counts One and Two of the Indictment (the production and distribution charges), in exchange for his guilty plea to Count Three (the possession charge). The agreement also would've recommended a sentence of 10 years in prison, the statutory maximum for Count Three. *See* 18 U.S.C. §§ 2252(a)(4)(B), 2252(b)(2); *see also* Doc. 106 at 11 (Presentence Report).

When trial counsel discussed this offer with Mr. Kearn, he devoted just six minutes to the subject. While it isn't entirely clear what Mr. Kearn's counsel told him, it's apparent that he didn't discuss the contours of Rule 11(c)(1)(C) in much depth. He explained that the plea offer was a "binding" one for 10 years. But, he qualified, the 10-year sentence wasn't guaranteed because the "judge doesn't have to go along with the plea agreement." Doc. 204 at 38. And, when asked at the hearing how he knew Mr. Kearn would receive a 10-year sentence under the plea offer, counsel responded, "Well, I don't know if it was actually going to be 10 years other

---

[3]      Contrasting this process with a plea under Rule 11(c)(1)(B) only further underscores the certainty an 11(c)(1)(C) agreement provides. Under Rule 11(c)(1)(B), the court is not bound by the recommended sentence *at all*. And, significantly, if the court rejects the agreement, a defendant has no right to withdraw the plea. *See* Fed. R. Crim. P. 11(c)(3)(B). Thus, under that subsection of Rule 11, a defendant has almost no control over his sentencing fate.

17

than by looking at the schedule of—if you don't have 'x' number offenses and you plead to this offense, then I believe this is what it was. Either that or else [the prosecutor] had told me that that was what it was going to be." *Id.*

Mr. Kearn argues that this testimony reveals his trial counsel's misunderstanding of how Rule 11(c)(1)(C) agreements work. While the court understands his argument, the court concludes that counsel's testimony during the hearing was, at worst, incomplete or imprecise. Trial counsel is correct that the court doesn't have to accept a Rule 11(c)(1)(C) agreement. And it's true that the court considers—indeed, it must consider the Sentencing Guidelines (or, as trial counsel called it, "the schedule") to determine whether to accept an 11(c)(1)(C) agreement.

Nevertheless, in the plea agreement context, counsel has a "critical obligation . . . to advise the client of 'the advantages and disadvantages of a plea agreement.'" *Padilla v. Kentucky*, 559 U.S. 356, 370 (2010) (quoting *Libretti v. United States*, 516 U.S. 29, 50–51 (1995)). And here, the court finds, trial counsel failed to convey the extraordinary value of a Rule 11(c)(1)(C) agreement to Mr. Kearn, who was facing enormous sentencing exposure and overwhelming evidence of guilt. Instead, the evidence establishes that trial counsel provided Mr. Kearn only with the downsides of such agreements. He told Mr. Kearn that the court didn't have to accept the agreement, and so there wasn't an absolute guarantee of a 10-year sentence. But he didn't clarify that Mr. Kearn, by accepting the plea agreement, either would receive the agreed-upon 10-year sentence, or he would have the opportunity to withdraw his guilty plea and return to the status quo. In other words, trial counsel didn't advise Mr. Kearn about the certainty the government's plea agreement offered.

Courts across the country have recognized the benefits that flow from the certainty of a Rule 11(c)(1)(C) agreement. *See, e.g.*, *United States v. Starks*, No. 06 CR 324-22, 2021 WL

18

496399, at *4 (N.D. Ill. Feb. 10, 2021) (noting that a defendant "reaped substantial benefits—principally certainty and reduction of risk" from his plea agreement under Rule 11(c)(1)(C)); *Evans v. United States*, No. 1:14-CR-52-TWT-JSA-3, 2018 WL 2326132, at *16 (N.D. Ga. Mar. 28, 2018), *report and recommendation adopted*, No. 1:14-CR-52-3-TWT, 2018 WL 2321983 (N.D. Ga. May 22, 2018) (explaining how a Rule 11(c)(1)(C) agreement "provides certainty and security for a Defendant who might otherwise face the risk of a sentencing judge imposing something higher than what the parties recommended"); *see also United States v. DeFronzo*, 281 F. Supp. 3d 243, 247 (D. Mass. 2017) (contrasting "the certainty of a binding plea agreement over the uncertainty of a jury trial"). And Mr. Bell testified that, in his experience, Rule 11(c)(1)(C) agreements are "incredibly popular" with clients because of the certainty they provide. Doc. 204 at 61. Without adequately explaining the mechanics behind the certainty of a Rule 11(c)(1)(C) agreement, trial counsel materially understated its benefits.

In a related context, our Circuit has explained that knowledge "of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." *United States v. Washington*, 619 F.3d 1252, 1259–60 (10th Cir. 2010) (quotation cleaned up). And so, where counsel displays a failure "to understand the basic structure and mechanics of the sentencing guidelines[,]" such that the defendant is "incapable" of "mak[ing] reasonably informed decisions[,]" that failure amounts to deficient performance under *Strickland*. *Id.* at 1260.

Mindful of this guidance, the court likewise concludes that a failure to understand the basic structure and mechanics of this important aspect of the Federal Rules of Criminal Procedure can amount to deficient performance. To be sure, trial counsel hasn't displayed "complete unfamiliarity" with Rule 11(c)(1)(C). *See id.* at 1259. But his failure to provide the

19

full picture about the benefits of Rule 11(c)(1)(C) nonetheless deprived Mr. Kearn of a meaningful chance to assess the government's plea offer. *See Byrd v. Skipper*, 940 F.3d 248, 259 (6th Cir. 2019) (concluding that, given counsel's deficient advice about a plea offer, defendant's "'choice' to forgo [the] plea was no choice at all").

### 2. Burdens of Rule 11(b)(3)

Counsel's advice also materially overstated the burdens imposed on Mr. Kearn to provide the factual basis for a guilty plea under Fed. R. Crim. P. 11(b)(3). This errant advice imposed an unnecessary roadblock in Mr. Kearn's assessment of the government's plea offer.

"Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). Rule 11(b)(3) requires courts to take this step "to prevent a defendant who committed no crime from pleading guilty to one, and to prevent a defendant who is guilty of a lesser offense from pleading guilty to a higher charge." 1A, Charles Alan Wright, Arthur R. Miller & Andrew D. Leipold, *Federal Practice and Procedure, Federal Rules of Criminal Procedure* § 180 (5th ed. 2021) (citing *McCarthy v. United States*, 394 U.S. 459, 467 (1969)).

Often, the court makes this determination after questioning the defendant about the facts of his offense. But "nothing in Rule 11(b)(3) restricts a district court's consideration of a factual basis to its plea colloquy with the defendant alone." *United States v. Landeros-Lopez*, 615 F.3d 1260, 1263 (10th Cir. 2010). Indeed, the court "can look to a variety of sources to satisfy the [factual basis] requirement." Wright, Miller & Leipold, *supra*, § 180. As our Circuit has explained, district courts "may look to answers provided by counsel for the defense and government, the presentence report,[4] or whatever means is appropriate in a specific case—so

---

[4] To be more precise, a presentence report typically doesn't provide the requisite factual basis for accepting a guilty plea during the plea hearing because such reports customarily are prepared after that

long as the factual basis is put on the record." *United States v. Moran*, 452 F.3d 1167, 1171

(10th Cir. 2006) (quotation cleaned up).

From his Affidavit and testimony, it appears that trial counsel was aware of these

multiple paths to supplying a factual basis for a guilty plea. His Affidavit describing his general

advice to clients explains three such paths that a plea colloquy can follow: (1) "the judge will

ask the client to tell the court the facts surrounding the offense[;]" (2) the judge "will ask the

client if he has read the affidavits and pleadings alleging the offense and whether the client

agrees an offense is stated[;]" or (3) the judge "will have the prosecutor present facts to the court

constituting the offense and then ask[ ] the client if he agrees with the prosecutor's statements."

Doc. 178-1 at 2 (Counsel Aff.); *see also* Doc. 204 at 28–29 (counsel testimony acknowledging

"three different ways that a plea hearing can go").

But in his testimony, counsel conceded that he regularly advised his clients to take the

first path. Doc. 204 at 29–30. Indeed, in all nine federal court guilty pleas trial counsel had

---

hearing concludes. *See Landeros-Lopez*, 615 F.3d at 1264 ("Because the PSR was not prepared until after [defendant's] guilty plea was accepted, we cannot look to it in considering whether the district court correctly determined there was a factual basis for accepting the plea."). But the federal rules don't require the parties to provide the factual basis during the plea hearing itself. *See* Fed. R. Crim. P. 11(b)(3) (requiring court to determine that there is a factual basis for the plea "[b]efore *entering judgment* on a guilty plea" (emphasis added)); *see also United States v. Moran*, 452 F.3d 1167, 1171 (10th Cir. 2006) ("[A]ny finding of an adequate factual basis at the initial plea hearing is necessarily preliminary[.]" (quoting *Howard v. United States*, 135 F.3d 506, 509 (7th Cir. 1998)).

Thus, presentence reports are relevant to the factual basis requirement, but only when the court enters *judgment* on the guilty plea. Such reports likely aren't relevant to accepting the factual basis for a plea at the change of plea hearing. But the court knows of nothing requiring courts to decide whether to accept a defendant's guilty plea during the change of plea hearing. *See* Wright, Miller & Leipold, *supra*, § 177 ("At the conclusion of the plea colloquy the district court may accept the guilty plea, reject it, or may defer a decision pending further consideration of the accompanying plea agreement or the presentence report."). So, to make a long story short, presentence reports *can* supply the factual basis for a plea, but only when: (a) the court delays its decision to accept the plea until sometime after the plea hearing concludes but accepts it before entering judgment; or (b) the relatively rare circumstance where the United States Probation Office conducts a pre-plea investigation and prepares a presentence report before the change of plea hearing.

21

participated in before Mr. Kearn's case, the defendant had supplied the factual basis for the

guilty plea in the plea petition. *Id.* at 16–25. And while counsel couldn't recall the specific

advice he gave Mr. Kearn, he testified that he likely would've advised him to do the same. *See*

*id.* at 30–31. He testified that he would've done so because he believed the law required

defendants to admit the facts. *Id.* at 25.

But the law doesn't require defendants to admit the facts. Relevant here, the government

could've satisfied the factual basis requirement by reciting a summary of the evidence it had

adduced of Mr. Kearn's guilt. Mr. Kearn then could've acknowledged that the government

possessed evidence sufficient to support a conviction beyond a reasonable doubt. As explained

above, Rule 11(b)(3) allows such a procedure. And the Tenth Circuit impliedly has approved of

it. *See United States v. Sandoval*, 427 F. App'x 621, 624 (10th Cir. 2011) (noting how district

court accepted a guilty plea where defendant "agreed the government could prove a factual basis

to support each charge"); *see also United States v. Rodriguez*, 45 F. App'x 522, 523 (7th Cir.

2002) (approving plea colloquy where "the government presented to the court a specific factual

basis that adequately support[ed] each essential element of the drug offense, and [defendant]

agreed that the government would be able to prove the scenario presented").

Also, the undersigned judicial officer has followed this procedure for establishing a

factual basis when circumstances required it. *See* Def. Ex. 12 (Transcript of Change of Plea

Hearing, *United States v. Martinez-Martinez*, No. 18-20090 (D. Kan. Sept. 19, 2019), ECF No.

46 at 22–23). And, Mr. Bell testified that he regularly follows this process for establishing a

factual basis when a client maintains innocence even after receiving a favorable plea offer. In

this situation, Mr. Bell explained, he'll work with the government to change the language of a

plea agreement to state that the "client agrees that the government has evidence that would

show" a certain fact.  <u>Doc. 204 at 59</u>.  In Mr. Bell's experience, this lowers any "psychological hurdle" preventing clients from personally admitting the facts of their charged offense.  *Id.* at 60.  It allows clients to satisfy the factual basis requirement for a guilty plea, but also abides their desire not to admit the facts of the charged offense in open court.  *See id.*

Given Mr. Kearn's protests of innocence before trial and his unwillingness to admit to a factual basis in open court, advice about this option for a plea colloquy was decidedly relevant to Mr. Kearn's decision whether to accept the government's plea offer.  But the evidence adduced at the hearing established that trial counsel didn't advise Mr. Kearn about any alternatives to supplying a factual basis for the guilty plea.  Instead, counsel advised Mr. Kearn that he would have to admit the facts of his charged offense.  And if he were unwilling to do that, he couldn't plead guilty.  As counsel agreed at the hearing, "if a client wants to plead guilty and admit to the facts, they can, but the alternative is trial."  *Id.* at 39.

In this situation, counsel's advice was, again, incomplete and imprecise.  No statute, rule, or other legal authority required Mr. Kearn to admit the facts in open court.  But his belief—based on trial counsel's advice—that he must do so to plead guilty foreclosed accepting the plea deal as a viable option.  In short, counsel's failure to advise adequately about any alternatives to supply the factual basis closed Mr. Kearn's narrow path to a guilty plea before he even knew it existed.

In the end, Mr. Kearn provides a compelling and persuasive theory of deficient performance.  Counsel understated the benefits of the Rule 11(c)(1)(C) agreement, while overstating the burdens of Rule 11(b)(3)'s factual basis requirement.  And even if counsel's understanding of both rules is more complete than his testimony gives him credit for (which very well may be the case), the court is confident of this much:  in the difficult personal circumstances

23

facing Mr. Kearn, counsel could not have informed Mr. Kearn adequately about the effect of these rules in six minutes. Mr. Bell testified that situations like this one often require multiple visits over multiple hours to advise a client adequately about an 11(c)(1)(C) agreement. Doc. 204 at 57. While the court does not suggest Mr. Bell's specific practices represent the constitutionally required standard, they do demonstrate the ineffectiveness of counsel's assistance here. The court concludes that devoting just six minutes to walking this client through a plea offer and the procedures required to accept it amounts to deficient performance under the Sixth Amendment. This deficient performance understandably skewed the cost-benefit calculation in Mr. Kearn's mind and deprived him of the ability to make an informed, rational choice about whether to accept the government's plea offer or go to trial. The question then becomes whether this deficient advice prejudiced Mr. Kearn. And that's the question the court turns to next.

### B. *Strickland* Prong Two: Prejudice

In a case like this, *Strickland*'s prejudice inquiry is a difficult one. The court must first imagine a world different from the one described above—the real facts where Mr. Kearn received deficient advice from his counsel. That is, the court must construct a counterfactual world in which Mr. Kearn's counsel adequately had advised him about the immense benefits of the government's plea offer and the relatively light burden of supplying a factual basis for a guilty plea. *See Lafler*, 566 U.S. at 163 ("To establish *Strickland* prejudice a defendant must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" (quoting *Strickland*, 466 U.S. at 694)); *see also Mayfield v. United States*, 955 F.3d 707, 713 (8th Cir. 2020) (explaining that, under *Lafler*, the prejudice inquiry requires district courts "to make findings about what likely would have

24

transpired in . . . a counterfactual scenario" where counsel adequately advised the defendant). The court must then determine how Mr. Kearn would've responded to this counterfactual scenario. Or, more precisely, the court must determine whether there is a reasonable probability that things would've gone as Mr. Kearn now says they would have—that he would have accepted the government's plea offer, acknowledged at the plea hearing that the government had sufficient evidence to convict him, and then, pleaded guilty in open court. *See Lafler*, 566 U.S. at 164.

In this situation—where choosing "to stand trial, [and] not choosing to waive it, is the prejudice alleged"—the Supreme Court has required defendants to establish four things. *Id.* at 163–64. A defendant must demonstrate that "but for the ineffective advice of counsel there is a reasonable probability that" (1) "the defendant would have accepted the plea[,]" (2) "the prosecution would not have withdrawn it in light of intervening circumstances," (3) "that the court would have accepted its terms," and (4) "that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Id.* at 164.

The government doesn't dispute Mr. Kearn's ability to satisfy the second and fourth requirements. *See* Doc. 207 at 19 (arguing only that Mr. Kearn "cannot establish the first or third o[f] these requirements"). And the court agrees. Mr. Kearn has made those two required showings. Nothing suggests that the government would've withdrawn its Rule 11(c)(1)(C) plea offer because of intervening circumstances. *See Smith v. Allbaugh*, 921 F.3d 1261, 1272 (10th Cir. 2019) (concluding that the second prejudice requirement weighed in defendant's favor where there was "nothing in the record to indicate the state would have withdrawn or canceled the offer" once the defendant accepted it). And the government's concession in its papers that it

25

wouldn't have withdrawn the offer suffices for *Lafler*'s second prejudice requirement.  Also, it's apparent that the plea offer's terms (10 years in prison and a dismissal of Counts One and Two in exchange for a guilty plea on Count Three alone) were far less severe than the judgment and sentence that the court actually imposed (a conviction on all three counts and a sentence of more than 24 years in prison).  So, the court concludes Mr. Kearn has made the requisite showing on *Lafler*'s fourth requirement as well.

That leaves the most difficult inquiry—whether there's a reasonable probability that Mr. Kearn would've accepted the plea deal but for his counsel's deficient advice.  As one would expect, Mr. Kearn contends there is.  While he maintains that he could not and would not have admitted to the facts of the charged offense, he asserts that he would've pleaded guilty in one narrow circumstance:  one where the government would supply the factual basis for the plea and he would acknowledge that the government had sufficient evidence to convict him.   The government responds in form, arguing that no such thing would have happened.  In its view, even if the government had supplied the factual basis for the plea, Mr. Kearn still would've had to admit his guilt in open court.  And, the government contends, that's something Mr. Kearn just couldn't do, given the specific questions this court has asked defendants in the past when they entered their guilty pleas.

The court concludes otherwise.  It agrees with Mr. Kearn that there is a reasonable probability that, but for his counsel's deficient advice, he would've accepted the government's plea offer.  To reach this finding, the court relies heavily on the recent opinion from the D.C. Circuit in *United States v. Knight*, 981 F.3d 1095 (D.C. Cir. 2020).  This case explored at length the difficulties of the prejudice inquiry in a case like this one.  But before summarizing that decision, the court explains why it relies so heavily on it here.

26

While neither party cited *Knight* in their papers, their arguments led the court to it. In his post-hearing brief, Mr. Kearn cited one of the Supreme Court's latest decisions about ineffective assistance of counsel in the plea process, *Lee v. United States*, 137 S. Ct. 1958 (2017). That case dealt with the inverse of Mr. Kearn's situation. Unlike Mr. Kearn, the *Lee* defendant chose to plead guilty and waived his right to a trial. But after learning about the deportation consequences of his guilty plea, the defendant later argued that—but for the ineffective assistance of counsel—he would've instead taken his chances at trial even though the evidence against him was overwhelming. The Supreme Court agreed with the defendant for reasons that don't matter here. But in reaching its conclusion, the Supreme Court provided clear instruction for courts facing ineffective assistance of counsel claims arising from the plea process: "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to *contemporaneous evidence* to substantiate a defendant's expressed preferences." *Id.* at 1967 (second emphasis added).

This direction from the Supreme Court isn't new, at least not in our Circuit. Long ago, the Tenth Circuit cautioned district courts to "remain suspicious of bald, post hoc and unsupported statements that a defendant would have changed his plea absent counsel's errors[.]" *Heard v. Addison*, 728 F.3d 1170, 1184 (10th Cir. 2013); *see also United States v. Watson*, 766 F.3d 1219, 1226 (10th Cir. 2014) (explaining that defendants need something more than a "self-serving statement" that "does no more than open the door to conjecture"). But what counts as contemporaneous evidence after *Lee*? Conducting its own research while looking for an answer to that question led the court to *Knight*.

27

In that case, the D.C. Circuit contemplated a situation analogous to Mr. Kearn's: one where defendant received constitutionally inadequate advice that led him to reject a favorable plea offer. The sole question in *Knight* asked whether there was a reasonable probability that, but for that deficient advice, the defendant would've accepted the offer and pleaded guilty. Confronting that issue, the D.C. Circuit began by acknowledging *Lee*'s direction about contemporaneous evidence. *See Knight*, 981 F.3d at 1101–02. But, the D.C. Circuit emphasized, "the Supreme Court did not suggest in *Lee* that a defendant must hypothesize his counsel's advice might be erroneous and state contemporaneously that his plea decision would differ if that were so." *Id.* at 1106 (quotation cleaned up). Instead, the D.C. Circuit stressed, when courts go looking for contemporaneous evidence of what a defendant would've done in a counterfactual world, courts must consider "the direct negative impact that counsel's shortcomings had on [a defendant's] understanding of his circumstances at the time he was deciding whether to accept the plea offer." *Id.* at 1102. As a result, the "choices that the defendant *actually made* do not necessarily shed any useful light on the choices that he *would have made* if he had been properly advised." *Id.* at 1105–06 (quotation cleaned up); *see also Byrd v. Skipper*, 940 F.3d 248, 258 (6th Cir. 2019) (explaining that because the defendant "lacked the requisite information to weigh the options in front of him" due to counsel's deficient advice, "whatever desire [defendant] exhibited before trial is not dispositive of what he would have done if he were properly educated about the charges against him"), *cert. denied*, 140 S. Ct. 2803 (2020).

All that makes sense. Courts can't rationally expect defendants to theorize contemporaneously about the decisions they would make if they were receiving different advice. If courts required this kind of evidence, no defendant could show prejudice. And that can't be

28

what *Lafler* and *Lee* intended. *Lafler* envisions a world—albeit a limited one—where defendants can show that they would've pleaded guilty had they not received constitutionally inadequate advice. Applying a standard that effectively forecloses defendants from making the requisite showing would ignore *Lafler* and leave only a shell of a constitutional right. It would mean defendants could receive constitutionally inadequate advice but never secure any relief. The court doesn't take that path here because, in its judgment, that's not what the Supreme Court or our Circuit intended. So, absent clear direction from the Supreme Court or the Tenth Circuit about what qualifies as sufficient "contemporaneous evidence," the court follows the trail blazed by the D.C. Circuit in *Knight*. And the court thus predicts that the Tenth Circuit, if presented with the question, would do the same.

Using that approach, *Knight* highlighted two key pieces of contemporaneous evidence corroborating the defendant's post hoc testimony that he would have pleaded guilty had he received different advice.

*First*, there was an extreme disparity in sentencing exposure between accepting the plea offer and going to trial. The plea offer required *Knight*'s defendant to plead guilty to a single charge with a guideline range of two to six years. But proceeding to trial "risked a ten-count indictment in federal court, dramatically greater sentencing exposure, and an actual imposed sentence of more than twenty-two years." *Id.* at 1103. The D.C. Circuit held that this severe disparity and the generosity of the plea offer itself qualified as "contemporaneous evidence" that the defendant would've accepted the offer "had counsel correctly apprised him of how favorable it was[.]" *Knight*, 981 F.3d at 1103 (noting the characterization of the plea offer as "incredibly sweet"). In so concluding, the D.C. Circuit relied on post-*Lee* decisions from other circuits recognizing that "severe disparity" in sentencing exposure between a plea offer and a sentence

29

after trial was "compelling evidence that the defendant would have accepted a plea offer but for counsel's constitutionally deficient performance." *Id.* (first citing *Dodson v. Ballard*, 800 F. App'x 171, 181 (4th Cir. 2020); then citing *Byrd v. Skipper*, 940 F.3d 248, 259 (6th Cir. 2019)).

*Second*, there also was evidence that *Knight*'s defendant, at the time of the plea offer, was "amenable to accepting the plea offer" and "not otherwise . . . dead-set on going to trial[.]" *Id.* at 1104. The defendant testified at the § 2255 evidentiary hearing that "when his counsel informed him the government had extended a plea offer, his first question was 'how much time does the government want for that?'" *Id.* (quotation cleaned up). The D.C. Circuit concluded that this "question suggest[ed] that [defendant's] decision whether to accept the plea offer was calibrated to the sentence that he would receive as a result of pleading guilty." *Id.* Also, at an earlier hearing when the plea offer still was open to defendant, counsel incorrectly informed him in open court that the guilty plea would require 10 years in prison. At first, the defendant was resistant. But when counsel said he would talk to defendant some more about the offer, the defendant replied "okay." *Id.* This exchange, the D.C. Circuit reasoned, "indicates that . . . [defendant] was amenable to further discussion and possibly to changing his mind[.]" *Id.* And nothing in the record otherwise suggested that the defendant "was dead-set on going to trial no matter its risks and consequences[.]" *Id.* So, the D.C. Circuit determined, a "reasonable probability" existed "that [the defendant] would have changed his mind" and pleaded guilty if his counsel had advised him properly. *Id.*; *see also Byrd*, 940 F.3d at 259 (concluding that defendant showed contemporaneous evidence that he would've pleaded guilty because "he specifically asked [his counsel] about the possibility of pleading" but his counsel "convinced him to stay the course" and proceed to trial).

30

In sum, the D.C. Circuit was persuaded by two key pieces of contemporaneous evidence: (1) the significant disparity in sentencing exposure between the plea offer and going to trial; and (2) evidence from the period when the plea was available to defendant showing that the defendant was amenable to pleading guilty and not otherwise dead-set on going to trial. When "[c]ombined with [defendant's] after-the-fact testimony" that he would've accepted the plea deal had his counsel adequately advised him, these two pieces of contemporaneous evidence "suffice[d] to show a reasonable probability that [defendant] would have accepted the plea offer" but for his counsel's deficient advice. *Knight*, 981 F.3d at 1103.

Applying *Knight*'s reasoning to this case's facts, the court concludes that Mr. Kearn likewise has established a reasonable probability that he would've accepted the government's plea offer but for his counsel's deficient advice. This is a close and difficult call. Mr. Kearn acknowledges that he would've pleaded guilty only in a very narrow circumstance: where the government supplied the factual basis for the guilty plea, and he acknowledged that the government had sufficient evidence to convict him at trial. *See* Doc. 204 at 46–47, 49. And he lacks the same kind of contemporaneous evidence present in *Knight*, *i.e.*, evidence suggesting that he was amenable to pleading guilty. But, as explained fully below, nothing in the record suggests that Mr. Kearn was dead set on going to trial and that no plea offer, no matter how advantageous, could deter him. On close facts such as these, where Mr. Kearn need only show a "reasonable probability" that he would've chosen differently, the court concludes that Mr. Kearn has done enough to make the required showing. The court explains that finding in more detail below, focusing on the two kinds of contemporaneous evidence identified by the D.C. Circuit in *Knight*.

31

*First*, there's no doubt.  There was a significant and material disparity between the government's plea offer and Mr. Kearn's sentencing exposure if convicted at trial.  The plea deal offered a 10-year sentence in exchange for a guilty plea on Count Three of the Indictment, but dropped the charges in Counts One and Two.  In contrast, by going to trial Mr. Kearn risked conviction on all three counts, a dramatically higher sentencing exposure of more than 30 years in prison, and a guidelines range sentence of 292 to 365 months in prison.  *See* Doc. 106 at 12 (Presentence Report).

*Second*, nothing in the record suggests that Mr. Kearn was so intent on going to trial that no plea deal could convince him to do otherwise.  On the contrary, the record suggests that he resisted the guilty plea because of his reluctance to admit the facts of his charged offense, personally and in open court.  He testified at the evidentiary hearing on the current motion that it would've been difficult for him to admit the facts of his offense "before [his] friends and family[.]"  Doc. 204 at 46.  Trial counsel testified that Mr. Kearn rejected the plea deal because Mr. Kearn said "he didn't do it—didn't do what he was charged with."  *Id.* at 31.  And in the voicemail message counsel used to inform the prosecutor of Mr. Kearn's decision, he confirmed Mr. Kearn's refusal to admit the facts of his offense.  *See* Gov. Ex. 100 (rejecting plea offer because Mr. Kearn said "he didn't do it," so "that's a problem").  Nowhere does the record suggest that Mr. Kearn's objection to the plea offer was an objection to the fact of a guilty plea itself.  Mr. Kearn testified that had he known the government could supply the factual basis for a plea, he would've accepted the deal, and would've pleaded guilty.  *See* Doc. 204 at 46–47, 49.  And while that's a post-hoc assertion, the contemporaneous evidence comports with it.

Also, counsel's testimony at the hearing suggests that Mr. Kearn potentially was amenable to accepting the government's plea offer.  When questioned whether he thought at any

32

point during his representation that Mr. Kearn would plead guilty, counsel testified that he "didn't think he would," but that he was only confident of this belief after the *Lafler*/*Frye* colloquy—moments before the trial began. Doc. 204 at 31–32. Crucially, counsel immediately qualified his testimony, and said "there's always a time they might" plead guilty. *Id.* at 32. While this statement didn't implicate Mr. Kearn specifically, the court finds it significant that counsel offered this testimony on his own, unprompted. *See id.*

The court is mindful that this evidence must bear a lot of weight. But the evidence in *Knight* suggesting the defendant was amenable to pleading guilty—though a bit stronger than here—was no slam dunk. Still, the D.C. Circuit concluded that evidence showed a "reasonable probability" of a different outcome. And that's all a defendant needs to show in these circumstances to secure relief. The "absence of unequivocal contemporaneous evidence that [the defendant] affirmatively wanted a plea deal" does not mean "that he cannot show a *reasonable probability* that he would have accepted the plea offer if he had been provided the effective assistance of counsel." *Knight*, 981 F.3d at 1106 (emphasis added).

As more support for this conclusion, the court compares Mr. Kearn's case to *United States v. Watson*, 766 F.3d 1219 (10th Cir. 2014). There, the Tenth Circuit held that the defendant had "fail[ed] to point to any evidence" suggesting he would've accepted a plea deal had his counsel adequately advised him about it. *Id.* at 1227. In fact, the *Watson* record supported the opposite inference: that "under no circumstances" would the defendant have pleaded guilty because that would have required the defendant to forfeit his insurance license, something the defendant "repeatedly" told his counsel he would not do. *Id.*

Here, no such independent factor dictated Mr. Kearn's choice even if his counsel had provided constitutionally adequate advice. To the contrary, counsel easily could have alleviated

33

the main sticking point for Mr. Kearn—his unwillingness to admit the facts of his charged offense in open court—had he informed Mr. Kearn that he didn't have to admit the facts personally. In other words, Mr. Kearn didn't demonstrate "a stubborn insistence on proceeding to trial[.]" *United States v. Barajas*, No. 10-20077-02-JWL, 2015 WL 2165300, at *7 (D. Kan. May 8, 2015) (recognizing that evidence of such behavior might foreclose a finding of prejudice under *Watson*). That is a meaningful distinction from *Watson*.

Finally, the court notes that it would've accepted both Mr. Kearn's desired procedure for supplying a factual basis for the guilty plea and the Rule 11(c)(1)(C) agreement itself. Obviously, the parties can't do much to argue this point. But the government highlights an important issue that, the court believes, it should address.

The government argues that even though it certainly could have supplied the factual basis for the guilty plea, and Mr. Kearn could have admitted that the government had the evidence to convict him at trial, he still would've had to admit his guilt to enter a guilty plea. *See* Doc. 207 at 17, 19–20. And, the government contends, Mr. Kearn couldn't do that because he testified that he couldn't answer a specific question this court has asked defendants in the past. But the government ignores Mr. Kearn's other testimony on this question. It's true that in our court, judges frequently asks defendants during plea colloquies whether they "knowingly committed this crime" and "are, in fact, guilty of it." Doc. 204 at 48 (reciting a question the court asked during a plea colloquy). And Mr. Kearn did testify that he could not say that he knowingly committed the crime and was, in fact, guilty of it. *See id.* at 48–49. But, importantly, Mr. Kearn also testified that he could have acknowledged the government had evidence to convict him at trial, and that after "making that statement," he would "have been willing to plead guilty[.]" *Id.* at 49. In other words, as long as the plea hearing played out in the narrow circumstances Mr.

34

Kearn describes, he would've pleaded guilty. And had Mr. Kearn's trial counsel provided the explanation Mr. Kearn now has made, it's extremely likely that the court would have accepted Mr. Kearn's plea on that basis. That is—had Mr. Kearn confirmed that the government possessed sufficient evidence to convict him and presented Circuit authority opining that he need not admit his guilt to supply the requisite factual basis—it's far more likely than not that the court would have accepted his guilty plea. The court expresses special confidence about that prediction here because of the dramatic difference in sentencing exposure.

The court also concludes that it would've accepted the Rule 11(c)(1)(C) agreement. Two circumstances make that conclusion an easy one. *First*, the proposed 10-year sentence on the remaining count for possession of child pornography represented the statutory maximum. *See* 18 U.S.C. §§ 2252(a)(4)(B), 2252(b)(2); *see also* Doc. 106 at 11 (Presentence Report). And *second*, the court finds it significant that the government believed 10 years in prison was the "appropriate disposition" of Mr. Kearn's case. *See* Fed. R. Crim. P. 11(c)(1)(C). So, the court concludes that it would've accepted the plea agreement under Rule 11(c)(1)(C). And, bound by that agreement, the court would've sentenced Mr. Kearn to 10 years in prison on the single possession conviction.

In sum, Mr. Kearn adequately has demonstrated prejudice under *Strickland*. He has shown a reasonable probability that but for the deficient advice by his counsel, he would have accepted the plea offer, the prosecution would not have withdrawn it, the court would have accepted its terms, and both the conviction and sentence under the offer's terms would have been less severe than the sentence the court in fact imposed. *Lafler*, 566 U.S. at 164. Mr. Kearn thus has established a violation of his Sixth Amendment right to effective assistance of counsel. He is entitled to relief.

35

C.      Remedy

"Sixth Amendment remedies should be 'tailored to the injury suffered from the constitutional violation[.]'" *Lafler*, 566 U.S. at 170 (quoting *United States v. Morrison*, 449 U.S. 361, 364 (1981)).  That is, the remedy must "'neutralize the taint'" of any such violation without "grant[ing] a windfall to the defendant or needlessly squander[ing] the considerable resources the [government] properly invested in the criminal prosecution[.]"  *Id.* (quoting *Morrison*, 449 U.S. at 365).  So, in a situation like this, where the government offered a plea deal "to a count or counts less serious than the ones for which a defendant was convicted after trial," the Supreme Court has suggested that the proper remedy is for the court "to require the prosecution to reoffer the plea proposal."  *Id.* at 171.  And then, the court can "exercise discretion in deciding whether to vacate the conviction from trial and accept the plea or leave the conviction undisturbed."  *Id.*

Both Mr. Kearn and the government agree that this procedure—should the court find a Sixth Amendment violation—is the proper remedy.  In fact, the government was the first to suggest this remedy.  *See* Doc. 207 at 22.  While *Lafler* made clear that the court has considerable discretion to fashion a remedy in a case like this one, *see* 566 U.S. at 171, the court concludes that ordering the government to reoffer the plea deal is the appropriate remedy here.  That was the remedy the D.C. Circuit ordered in *Knight*.  981 F.3d at 1107 ("[T]he appropriate remedy calls upon the government to reoffer the original plea deal to [the defendant].").  And, as the government highlights, this remedy would restore the parties to their positions before trial without granting Mr. Kearn an undue windfall.  It also would avoid imposing the expense of conducting a new trial on the government.  *See Lafler*, 566 U.S. at 170 (outlining these specific considerations for courts determining a remedy).  The court thus concludes that this remedy

36

"neutralizes the taint" of the constitutional violation while appropriately balancing the parties' competing interests.

The court thus orders the government to re-offer the Rule 11(c)(1)(C) plea agreement that would drop the production and distribution charges in Counts One and Two of the Indictment and recommend a 10-year sentence in exchange for a guilty plea on the possession charge in Count Three of the Indictment. Once the government re-offers the plea deal, the court then will set the case for a status conference to discuss Mr. Kearn's decision, and, if necessary, schedule a change of plea hearing.

## IV.  Conclusion

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Kearn's Amended Motion to Vacate Sentence under § 2255 (Doc. 165) is granted in part.

**IT IS FURTHER ORDERED BY THE COURT THAT** the government, as remedy for the constitutional violation found in this Order, must re-offer its Rule 11(c)(1)(C) plea agreement to Mr. Kearn within 20 days of the date of this Order.

**IT IS SO ORDERED.**

**Dated this 4th day of January, 2022, at Kansas City, Kansas.**

> **s/ Daniel D. Crabtree**
> **Daniel D. Crabtree**
> **United States District Judge**

37

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

v.

JONATHAN KEARN,

        Defendant.

Case No. 13-40057-01-DDC

## MEMORANDUM AND ORDER

In a Memorandum and Order dated January 4, 2022, the court found that defendant Jonathan Kearn had received ineffective assistance of counsel in the plea-bargaining process, thus violating his Sixth Amendment rights. *See generally* Doc. 210. And so, the court granted, in part, Mr. Kearn's motion under 28 U.S.C. § 2255. *Id.* Before the court now is the government's Motion for Reconsideration and Clarification (Doc. 211) of that Order. Mr. Kearn has filed a Response (Doc. 212). For reasons explained below, the court denies the government's motion.

Motions for reconsideration are appropriate only where there is: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, [or] (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Id.* Such a motion isn't an appropriate vehicle "to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id.*

The court assumes familiarity with its January 4 Order (Doc. 210) determining that Mr. Kearn had received ineffective assistance of counsel.  But, in short form, the court concluded that (1) Mr. Kearn had received deficient advice from his trial counsel when he rejected the government's plea offer under Fed. R. Crim. P. 11(c)(1)(C) and proceeded to trial; and (2) that trial counsel's deficient advice prejudiced him.  Specifically, the court concluded that Mr. Kearn demonstrated a reasonable probability that had he received effective advice, he would have accepted the government's plea offer and pleaded guilty in a very narrow circumstance.  That is, "he could have acknowledged the government had evidence to convict him at trial"—supplying a factual basis for his guilty plea under Fed. R. Crim. P. 11(b)(3).  Doc. 210 at 34.  And then, "after making that statement, he would have been willing to plead guilty." *Id.* (quotation cleaned up).  In other words, he would've entered a guilty plea in open court.

The government's motion trains its fire on that conclusion from the court's Order.  In the government's view, the court's Order allows "a defendant's acknowledgement that the government has the evidence to prove him guilty" to serve as a substitute—a "makeweight," the government calls it—for a guilty plea.  Doc. 211 at 5.  The government argues that, if its reading of the court's Order is correct, then the court "has clearly erred." *Id.*  But, the government concedes, perhaps it "has misperceived the import" of the court's Order. *Id.* at 12.  In that case, the government asks the court to answer three specific questions.  In general, the government's questions ask whether it is correct in its reading of the court's Order and whether the court will (or won't) allow specific actions during future proceedings in this case. *See id.* at 12–13.[1]

---

[1]     The government's questions are:

   1.  Does this Court's order hold that a defendant's agreement that the government has the evidence to prove him guilty—for purposes of establishing the factual basis for the plea under Rule 11(b)(3)—is itself a guilty plea, a makeweight for a guilty plea, or an adequate basis upon which this Court may enter a guilty plea on a defendant's behalf?

2

One properly could restyle the government's request for answers about future proceedings as a "Motion for an Advisory Opinion." But, of course, Article III forbids federal courts from providing advisory opinions. *See Columbian Fin. Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1376 (10th Cir. 2011) (citing *Flast v. Cohen*, 392 U.S. 83, 96 (1968)). The court thus denies the government's request for clarification in the form of answers to three questions that haven't presented themselves yet.

But—so that it is clear—the court never has indicated that supplying a factual basis for a guilty plea may serve as a substitute (or a makeweight) for the guilty plea itself. And if the government reads the court's Order in that fashion, its reading is incorrect. As Mr. Kearn noted in his papers, such a reading incorrectly "conflates the issue of whether there's a factual basis for a guilty plea with the issue of whether there's a guilty plea at all." Doc. 212 at 3. The court's Order distinguished between those two important steps that occur during a change of plea hearing. To drive home the point, the court concluded previously that: (1) had Mr. Kearn acknowledged the government had the evidence to convict him *and then*, (2) "after making that statement" separately entered a guilty plea, there's a reasonable probability the court would've accepted his guilty plea. Doc. 210 at 34 (quotation cleaned up). Accepting a guilty plea in this scenario in no way authorizes the factual basis for a plea to serve as a substitute for the guilty plea itself.

---

2. Does this Court's order as to remedy contemplate that Defendant may enter a guilty plea to Count 3 without both (a) saying that he is "guilty" and (b) admitting his factual and legal guilt as to the acts described in Count 3?

3. If, at any future plea hearing, if Defendant says that he is guilty but refuses to admit his factual and legal guilt of the acts described in Count 3, will the Court accept his guilty plea?

Doc. 211 at 12–13.

3

The guilty plea is an independent act with its own legal consequences separate and apart from the factual basis for the guilty plea.  As the government correctly stresses, "a guilty plea is an admission of all the elements of a formal criminal charge[.]"  *McCarthy v. United States*, 394 U.S. 459, 466 (1969); *see also United States v. Kelsey*, 15 F.3d 152, 153 (10th Cir. 1994) ("A plea of guilty is the equivalent of admitting all material facts alleged in the charge."); *United States v. Allen*, 24 F.3d 1180, 1183 (10th Cir. 1994) (explaining that "a counseled and voluntary guilty plea admits both the acts described in the indictment and the legal consequences of those acts" (footnote omitted)).  No matter who supplies the factual basis for the plea and no matter how they supply it, a defendant, to plead guilty, still must enter a guilty plea.  It's axiomatic.  *See United States v. Wade*, 940 F.2d 1375, 1377–78 (10th Cir. 1991) (noting that a defendant's guilty plea "made with an understanding of the nature of the charges and the consequences of pleading guilty, was a voluntary admission of all of the allegations in the indictment" where (1) defendant equivocated in admitting the factual basis for the plea, but conceded "he had no evidence to contravene the government's evidence of guilt[;]" (2) the indictment was read in open court and defendant "understood the charge" after conferring with counsel; and (3) when the court asked defendant how he wished to plead, defendant answered "guilty").  This premise—that the factual basis for the guilty plea and the guilty plea itself are distinct components of a plea hearing— underlie Mr. Kearn's § 2255 motion, his testimony at the evidentiary hearing, and the court's Order.  *See* Doc. 210 at 34–35.  To the extent the government reads the Order otherwise, its reading is incorrect.

Having determined that the government indeed has "misperceived the import" of the court's Order, Doc. 211 at 12, the court concludes there's nothing left to reconsider.  The government hasn't demonstrated that the court's Order "misapprehended the facts, a party's

position, or the controlling law." *Servants of the Paraclete*, 204 F.3d at 1012. And, to the extent

the government's motion tries to resurrect arguments about Mr. Kearn's hypothetical guilty plea,

the court rejects such attempts. Reconsideration motions are inappropriate vehicles "to revisit

issues already addressed[.]" *Id.*; *see* Doc. 210 at 34–35 (rejecting the government's argument

that Mr. Kearn couldn't enter a guilty plea because the government "ignore[d]" Mr. Kearn's

testimony that he would have entered a guilty plea "as long as the plea hearing played out in the

narrow circumstances [he] describe[d]").

  **IT IS THEREFORE ORDERED BY THE COURT THAT** the government's Motion

for Reconsideration and Clarification (Doc. 211) is denied.

  **IT IS FURTHER ORDERED BY THE COURT THAT** the court will conduct a Status

Conference in the case on Thursday, February 3, 2022, on its 1:30 p.m. docket in Kansas City,

Kansas. The court sets this conference as an in-person hearing but will convert it to a video

conference if the parties agree.

  **IT IS SO ORDERED.**

  **Dated this 27th day of January, 2022, at Kansas City, Kansas.**

       **s/ Daniel D. Crabtree**
       **Daniel D. Crabtree**
       **United States District Judge**

# United States District Court
## District of Kansas

| | |
|---|---|
| UNITED STATES OF AMERICA | **AMENDED JUDGMENT IN A CRIMINAL CASE** |
| v. | Case Number: 5:13CR40057 - 001 |
| Jonathan Kearn | USM Number: 23150-031 |
| | *Defendant's Attorney: Kirk C. Redmond and Lydia Krebs |

**Date of Original Judgment:**   **11/16/2015**
(Or Date of Last Amended Judgment)

## THE DEFENDANT:

\*☒   pleaded guilty to count(s): <u>3 of a three-count Indictment</u>.
☐   pleaded nolo contendere to count(s) __ which was accepted by the court.
☐   was found guilty on count(s) __ after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| *<u>18 U.S.C. § 2252(a)(4)(B)</u> and <u>18 U.S.C. § 2252(b)(2)</u> | Possession of Child Pornography, a Class C Felony | 05/07/2013 | 3 |

The defendant is sentenced as provided in pages 1 through 7 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐   The defendant has been found not guilty on count(s) __.

\*☒   <u>The Complaint and Counts 1 and 2 of the Indictment</u> are dismissed on the motion of the United States.

IT IS ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant shall notify the court and United States attorney of material changes in economic circumstances.

| |
|---|
| *01/12/2023 |
| Date of Imposition of Judgment |
| s/ Daniel D. Crabtree |
| Signature of Judge |
| Honorable Daniel D Crabtree, U.S. District Judge |
| Name & Title of Judge |
| 02/02/2023 |
| Date |

DEFENDANT:      Jonathan  Kearn
CASE NUMBER:    5:13CR40057 - 001

# IMPRISONMENT

    \*The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of <u>120 months</u>.

    \*Ct. 3: 120 months

☒    The Court makes the following recommendations to the Bureau of Prisons:

    \*The Court recommends designation to FCI Englewood, located in Littleton, Colorado to facilitate family visitation.

☒    The defendant is remanded to the custody of the United States Marshal.

☐    The defendant shall surrender to the United States Marshal for this district.

    ☐ at ___ on ___.

    ☐ as notified by the United States Marshal.

☐    The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐ before ___ on ___.

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Officer.

# RETURN

I have executed this judgment as follows:

_____

_____

_____

    Defendant delivered on _____ to _____

at _____, with a certified copy of this judgment.

                      _____

                           UNITED STATES MARSHAL

               By _____

                          Deputy U.S.  Marshal

AO 245C    (Rev. 09/19 - D/KS 04/20) Amended Judgment in a Criminal Case        (NOTE: Identify Changes with Asterisks (*))
       Sheet 3 – Supervised Release

DEFENDANT:    Jonathan  Kearn
CASE NUMBER:    5:13CR40057 - 001

# SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of <u>5 years</u>.

     *Count 3:   Five (5) years supervised release.

# MANDATORY CONDITIONS

1.   You must not commit another federal, state, or local crime.

2.   You must not unlawfully possess a controlled substance.

3.   You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, not to exceed eight (8) drug tests per month.

     ☐   The above drug testing condition is suspended based on the court's determination that you pose a low risk of future substance abuse. *(Check if applicable.)*

4. ☐   You must make restitution in accordance with <u>18 U.S.C. §§ 3663</u> and <u>3663A</u> or any other statute authorizing a sentence of restitution. *(Check if applicable.)*

5. ☒   You must cooperate in the collection of DNA as directed by the probation officer. *(Check if applicable.)*

6. ☒   You must comply with the requirements of the Sex Offender Registration and Notification Act (<u>34 U.S.C. § 20901</u>, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(Check if applicable.)*

7. ☐   You must participate in an approved program for domestic violence. *(Check if applicable.)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

AO 245C    (Rev. 09/19 - D/KS 04/20) Amended Judgment in a Criminal Case    (NOTE: Identify Changes with Asterisks (*))
Sheet 3A – Supervised Release

Judgment – Page **4** of **7**

DEFENDANT:      Jonathan  Kearn
CASE NUMBER:    5:13CR40057 - 001

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.

2.  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.

3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.

4.  You must answer truthfully the questions asked by your probation officer.

5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.

7.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

8.  You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.

9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.

10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or Tasers).

11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.

12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may, after obtaining court approval, require you to notify the person about the risk and you must comply with that instruction.

13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. I understand additional information regarding these conditions is available at the www.uscourts.gov.


Defendant's Signature  _____    Date  _____

AO 245C    (Rev. 09/19 - D/KS 04/20) Amended Judgment in a Criminal Case                    (NOTE: Identify Changes with Asterisks (*))
           Sheet 3C - Supervised Release

Judgment – Page **5** of **7**

DEFENDANT:       Jonathan  Kearn
CASE NUMBER:     5:13CR40057 - 001

# SPECIAL CONDITIONS OF SUPERVISION

1.    The defendant shall have no contact with any person under the age of 18 except: (1) in the presence of an adult who is aware of the nature of the defendant's background and offense(s), and who has been approved by the U.S. Probation Office; (2) in the course of normal commercial business; or (3) in other cases of unintentional and incidental contact.

2.    Submit to a sex offender assessment, and follow the recommendations of such assessment.

3.    No contact with the victim of the offense.

4.    The defendant shall neither possess nor have under his/her control any material that depicts sexually explicit conduct involving adults or minor[s], child pornography, or visual depictions of minor[s] engaged in sexually explicit conduct, all as defined in 18 U.S.C. 2256.

5.    As directed by the U.S. Probation Officer, the defendant shall cooperate with and abide by the policies of the United States Probation Office's Computer and Internet Monitoring Program which includes restrictions related to: computer and Internet usage, possession and use of electronic, cellular, gaming, and Internet appliance devices; possession and use of computer hardware and software, encryption hardware or software, and accessing certain types of web sites to include: social networking, chat rooms, and those depicting sexually explicit conduct or pornographic material. The defendant will also be subject to computer monitoring, and will provide the United States Probation Office with a complete inventory of all electronic and Internet capable devices, user account information as well as password(s).

6.    The defendant shall submit his/her person, house, residence, vehicle(s), papers, business or place of employment and any property under the defendant's control to a search, conducted by the United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release. Failure to submit to a search may be grounds for revocation. The defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

ACKNOWLEDGMENT OF CONDITIONS:
I have read or have had read to me the conditions of supervision set forth in this judgment; and I fully understand them. I have been provided a copy of them. I understand upon finding of a violation of probation or supervised release, the Court may (1) revoke supervision, (2) extend the term of supervision and/or (3) modify the conditions of supervision.


Defendant's Signature  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯   Date  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯


USPO Signature  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯   Date  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

Judgment – Page **6** of **7**

DEFENDANT:      Jonathan  Kearn
CASE NUMBER:   5:13CR40057 - 001

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the Schedule of Payments set forth in this Judgment.

|  | **Assessment** | **Restitution** | **Fine** | **AVAA Assessment*** | **JVTA Assessment**** |
|---|---|---|---|---|---|
| **TOTALS** | *$100 | None | None | Not applicable | Not applicable |

☐    The determination of restitution is deferred until ___. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐    The defendant shall make restitution (including community restitution) to the following payees in the amounts listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.  However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| **TOTALS** | $ | $ | |

☐    Restitution amount ordered pursuant to plea agreement $___.

☐    The defendant shall pay interest on any fine or restitution of more than $2,500, unless the fine or restitution is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f).  All of the payment options set forth in this Judgment may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐    The court determined that the defendant does not have the ability to pay interest, and it is ordered that:

☐ the interest requirement is waived for the ☐ fine and/or ☐ restitution.

☐ the interest requirement for the ☐ fine and/or ☐ restitution is modified as follows:

*Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
**Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
***Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245C    (Rev. 09/19 - D/KS 04/20) Amended Judgment in a Criminal Case                    (NOTE:  Identify Changes with Asterisks (*))
Sheet 6 – Schedule of Payments

DEFENDANT:    Jonathan  Kearn
CASE NUMBER:   5:13CR40057 - 001

# SCHEDULE OF PAYMENTS

Criminal monetary penalties are due immediately. Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows, but this schedule in no way abrogates or modifies the government's ability to use any lawful means at any time to satisfy any remaining criminal monetary penalty balance, even if the defendant is in full compliance with the payment schedule:

A    ☐    Lump sum payment of $___ due immediately, balance due

        ☐ not later than ___, or

        ☐ in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

B    ☒    Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☒ F below); or

C    ☐    Payment in monthly installments of not less than 5% of the defendant's monthly gross household income over a period of ___ years to commence ___ days after the date of this judgment; or

D    ☐    Payment of not less than 10%  of the funds deposited each month into the inmate's trust fund account and monthly installments of not less than 5% of the defendant's monthly gross household income over a period of ____ years, to commence ___ days after release from imprisonment to a term of supervision;  or

E    ☐    Payment during the term of supervised release will commence within ____ (e.g., 30 or 60 days) after release from imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F    ☒    Special instructions regarding the payment of criminal monetary penalties:

If restitution is ordered, the Clerk, U.S. District Court, may hold and accumulate restitution payments, without distribution, until the amount accumulated is such that the minimum distribution to any restitution victim will not be less than $25.

Payments should be made to Clerk, U.S. District Court, U.S. Courthouse - Room 204, 401 N. Market, Wichita, Kansas 67202, or may be paid electronically via Pay.Gov.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐    Joint and Several

Defendant and Co-Defendant Names and Case Numbers (*including defendant number*), Total Amount, Joint and Several Amount and corresponding payee, if appropriate.

| Case Number
Defendant and Co-Defendant Names
(including defendant number) | Total Amount | Joint and Several
Amount | Corresponding Payee,
if appropriate |
|---|---|---|---|
| | | | |

☐    The defendant shall pay the cost of prosecution.

☐    The defendant shall pay the following court cost(s):

☒    The defendant shall forfeit the defendant's interest in the following property to the United States.  Payments against any money judgment ordered as part of a forfeiture order should be made payable to the United States of America, c/o United States Attorney, Attn: Asset Forfeiture Unit, 1200 Epic Center, 301 N. Main, Wichita, Kansas 67202.

*The Court orders forfeiture of the following property to the United States: Black iPhone 4s.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| v. | ) | Case No.  13-cr-40057-01-DDC |
| | ) | 19-cv-04032-DDC |
| JONATHAN KEARN, | ) | |
| | ) | |
| Defendant-Petitioner. | ) | |
| _____ | ) | |

## GOVERNMENT'S NOTICE OF APPEAL

COMES NOW the United States of America, Plaintiff-Respondent, hereby gives notice of its intent to appeal the district court's orders granting Defendant's motion under 28 U.S.C. § 2255.  The government intends to appeal the district court's January 4, 2022 order granting that motion (Doc. 210), as well as its January 27, 2022 order denying reconsideration of that order (Doc. 213), as well as the amended judgment (Doc. 236) docketed on February 2, 2023.  This notice is timely under Fed. R. App. P. 4(a)(1)(B)(i).

1

Respectfully submitted,

DUSTON J. SLINKARD
United States Attorney

s/ *James A. Brown*
JAMES A. BROWN
Kan. S. Ct. No. 14254
Assistant United States Attorney
District of Kansas
444 SE Quincy, Room 290
Topeka, KS  66683
Tel.:  (785) 295-2850
FAX: (785) 295-2853
James.Brown2@usdoj.gov

## **CERTIFICATIONS**

I certify that this document was electronically filed on February 17, 2023,

with the Clerk of the Court by using the ECF system, which will send a copy of the

Notice of Docket to all interested ECF system participants as of the time of the

filing, including to counsel of record for Defendant.


s/ *James A. Brown*
Assistant United States Attorney

2